IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Case No.: 1:25-CR-00272-MSN |
| | ) | |
| James B. Comey, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **JAMES B. COMEY, JR.'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT**

James B. Comey, Jr., by and through undersigned counsel, and pursuant to Federal Rule of Criminal Procedure 12(b), moves this Court to dismiss the government's indictment. As explained in the accompanying Memorandum, the indictment is fatally flawed because it results directly from a paradigmatic violation of the Appointments Clause and the statute authorizing appointments of interim U.S. Attorneys, 28 U.S.C. § 546. The official who purported to secure and sign the indictment was invalidly appointed to her position as interim U.S. Attorney. Because of that fundamental constitutional and statutory defect, the indictment is a nullity and must be dismissed. That dismissal must be with prejudice in order to deter the government's willfully unlawful conduct.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

      A.    Legal Background ................................................................. 2

      B.    Factual Background ............................................................. 3

ARGUMENT ...................................................................................................... 7

   I.    MS. HALLIGAN'S APPOINTMENT AS INTERIM UNITED STATES ATTORNEY VIOLATES SECTION 546 AND THE APPOINTMENTS CLAUSE ........................................................................................ 7

      A.    Ms. Halligan's Appointment Is Not Authorized By Section 546 ............. 8

           1.    Ms. Halligan's appointment is inconsistent with Section 546's text ...................................................... 8

           2.    Statutory structure and history confirm the best reading of the text ............................................................ 12

      B.    Ms. Halligan's Appointment Also Violates The Appointments Clause ......................................................... 17

   II.    MS. HALLIGAN'S UNLAWFUL APPOINTMENT WARRANTS DISMISSAL OF THE INDICMENT WITH PREJUDICE ................................. 18

      A.    Dismissal Of The Indictment Is The Proper Remedy .............................. 18

      B.    Dismissal Of The Indictment Should Be With Prejudice ........................ 22

CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

### Cases

*Babb v. Wilkie,*
589 U.S. 399 (2020)..................................................................................8

*Bank of Nova Scotia v. United States,*
487 U.S. 250 (1988).........................................................................20, 21, 22

*Bartenwerfer v. Buckley,*
598 U.S. 69 (2023)...................................................................................8

*Casa De Maryland v. U.S. Dep't of Homeland Sec.,*
924 F.3d 684 (4th Cir. 2019) ...................................................................15

*Chapman v. California,*
386 U.S. 18 (1966).................................................................................21

*Collins v. Yellen,*
594 U.S. 220 (2021).........................................................................18, 19, 20

*Corley v. United States,*
556 U.S. 303 (2009)...............................................................................11

*Edmond v. United States,*
520 U.S. 651 (1997)...............................................................................2, 7

*Freytag v. Comm'r,*
501 U.S. 868 (1991)...........................................................................17, 21

*Gov't of Virgin Islands v. Fahie,*
419 F.3d 249 (3d Cir. 2005)....................................................................22

*Loper Bright Enterprises v. Raimondo,*
603 U.S. 369 (2024).................................................................................15

*Lucia v. SEC,*
585 U.S. 237 (2018)...........................................................................19, 20

*McFadden v. United States,*
576 U.S. 186 (2015)..................................................................................9

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.,*
583 U.S. 366 (2018)..................................................................................12

# TABLE OF AUTHORITIES
(continued)

**Page**

*Myers v. United States*,
    272 U.S. 52 (1926)...................................................................................................2

*Rose v. Clark*,
    478 U.S. 570 (1986)................................................................................................20

*Ryder v. United States*,
    515 U.S. 177 (1995)...........................................................................................19, 20

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)................................................................................................10

*Trump v. United States*,
    603 U.S. 593 (2024)...........................................................................................18, 21

*Trump v. United States*,
    No. 22-cv-81294 (S.D. Fl. Aug. 22, 2022) .............................................................5

*United States v. Bundy*,
    968 F.3d 1019 (9th Cir. 2020) .....................................................................23, 24, 25

*United States v. Garcia, et al*,
    No. 25-cr-227, 2025 WL 2784640 (D. Nev. Sept. 30, 2025) .................................14

*United States v. Germaine*,
    99 U.S. 508 (1878)...................................................................................................2

*United States v. Giraud*,
    No. 24-cr-00768, 2025 WL 2416737 (D.N.J. Aug. 21, 2025)....................... *passim*

*United States v. Giraud*,
    No. 25-2635 (3d Cir. Oct. 6, 2025)..................................................................11, 17

*United States v. Goodson*,
    204 F.3d 508 (4th Cir. 2000) .................................................................................22

*United States v. Hansen*,
    599 U.S. 762 (2023)................................................................................................14

*United States v. Hasting*,
    461 U.S. 499 (1983)...........................................................................................22, 25

*United States v. Mills*,
    995 F.2d 480 (4th Cir. 1993) .................................................................................20

## TABLE OF AUTHORITIES
(continued)

**Page**

*United States v. Perkins*,
    116 U.S. 483 (1886)........................................................................................................18

*United States v. Sells Eng'g, Inc.*,
    463 U.S. 418 (1983)........................................................................................................21

*United States v. Sotomayor Vazquez*,
    69 F. Supp. 2d 286 (D.P.R. 1999).................................................................................13

*United States v. Trump*,
    740 F. Supp. 3d 1245 (S.D. Fla. 2024) ...............................................................18, 19, 24

*United States v. Williams*,
    504 U.S. 36 (1992)..........................................................................................................22

**Constitution, Statutes, Regulations, and Court Rules**

U.S. Const.:
    Art. II § 2, Cl. 2...........................................................................................1, 2, 7, 8, 13, 17

18 U.S.C.
    § 1001(a)(2) .....................................................................................................................6
    § 1505...............................................................................................................................6
    § 3282(a) .....................................................................................................................5, 24
    § 3288.............................................................................................................................25

Act of Mar. 3, 1863, ch. 93, § 2, 12 Stat. 768 (1863) ...................................................14

Act of June 24, 1898, § 2, 30 Stat. 487 (1898) .............................................................15

Judiciary Act of 1789, § 35, 1 Stat. 73.............................................................................2

Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-34,
    § 2, 121 Stat. 224 (2007)...............................................................................................16

Pub. L. No. 89-554, § 4(c), 80 Stat. 618 (1966) ............................................................15

Pub. L. No. 99-646, § 69, 100 Stat. 3616-17 (1986) .....................................................15

Pub. L. No. 109-177, Title V, § 502, 120 Stat. 246 (2006) ...........................................16

# TABLE OF AUTHORITIES
(continued)

**Page**

28 U.S.C.
§ 541.................................................................................................8, 12, 13, 16
§ 541(a) .....................................................................................................2, 8
§ 546............................................................................................................ *passim*
§ 546(a) ....................................................................................................... *passim*
§ 546(b) ...........................................................................................................3
§ 546(c) ......................................................................................................3, 11
§ 546(c)(1) ......................................................................................................12
§ 546(c)(2) ......................................................................................4, 9, 10, 11
§ 546(d) ....................................................................................................... *passim*

Fed. R. Crim. P.
1(b)(1)(D)........................................................................................................21
6(d)(1)............................................................................................................21
12(b)(3)(A)........................................................................................................1

**Miscellaneous**

*The Federalist* No. 76 (C. Rossiter ed. 1961) .................................................3

The Glenn Beck Program: *Bill Essayli* (Jul. 22, 2025), http://bit.ly/4nc6yck ...............14

Alan Feuer, *Trump's Pick to Replace Ousted U.S. Attorney Lacks Prosecutorial Experience*, N.Y. Times (Sept. 22, 2025) ...................................................................5

Definition of Vacancy for the Purpose of Interim Appointment of United States Attorneys pursuant to 28 U.S.C. 546, as amended, Office of Legal Counsel (Nov. 13, 1986) .................................................................................15, 16

H.R. Rep. No. 110-58 (2007).................................................................16, 17

James A. Heilpern, *Interim United States Attorneys*, 28 Geo. Mason L. Rev. 187 (2020).................................................................................................................2

Order of Appointment, *In the Matter of the Appointment of Erik S. Siebert as United States Attorney* (E.D.V.A. May 9, 2025) ...........................................4

Robert H. Jackson, *The Federal Prosecutor: Address to the Second Annual Conference of the United States Attorneys*, 31 J. Crim. L & Criminology 3 (1940).................................................................................................................3

Glenn Thrush, *et al*, *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure from the President*, N.Y. Times (Sept. 19, 2025) ...........................4

## TABLE OF AUTHORITIES
(continued)

**Page**

U.S. Dep't of Justice, Bicentennial Celebration of the United States Attorneys, Intro. (1989) ..............................................................................................................2

United States Attorney's Office, Eastern District of Virginia, *About the District* (last visited Oct. 20, 2025) ........................................................................................3

United States Attorney's Office, Eastern District of Virginia, *Erik Siebert appointed Interim U.S. Attorney for the Eastern District of Virginia* (Jan. 21, 2025) ......................................................................................................................4

United States Attorney's Office, Eastern District of Virginia, *U.S. Attorney Jessica D. Aber announces resignation* (Jan. 17, 2025) ...........................................4

Webster's New International Dictionary 1 (2d ed. 1954) ................................................9

153 Cong. Rec. (daily ed. Feb. 15, 2007)
S1993 .......................................................................................................................16
S1995 .......................................................................................................................16

153 Cong. Rec. (daily ed. May 22, 2007)
H5554 .......................................................................................................................16
H5556 .......................................................................................................................16

## <u>INTRODUCTION</u>

The indictment in this case is fatally flawed because it resulted directly from a paradigmatic violation of the Constitution's Appointments Clause—a core element of the separation of powers that defines when and how officers of the United States acquire their authority to act. Here, the official who signed the indictment—and from all indications the sole official who presented the case to the grand jury—was defectively appointed to her office as an interim U.S. Attorney. Rather than conform to constitutional and statutory requirements for such appointments, *see* U.S. Const. Art. II, § 2, cl. 2 (Appointments Clause); 28 U.S.C. § 546 (limited Attorney General authority to appoint interim U.S. Attorneys), her purported appointment violated the congressionally designed and constitutionally compelled means for the Attorney General to appoint an official as interim U.S. Attorney.

The remedy for this violation is clear: the Supreme Court has repeatedly held that the effect of this fundamental violation of the Appointments Clause is that the defectively appointed officer's actions are a nullity. And because no properly appointed Executive Branch official sought and obtained the indictment, the indictment is equally a nullity. The United States cannot charge, maintain, and prosecute a case through an official who has no entitlement to exercise governmental authority. Accordingly, the indictment must be dismissed under Federal Rule of Criminal Procedure 12(b)(3)(A). And, under the extraordinary circumstances of this case, where the defective appointment was made in defiance of the law and for the sole purpose of securing an indictment grounded in retaliatory animus days before the relevant statute of limitations expired, the dismissal must be with prejudice.

## BACKGROUND

### A.    Legal Background

The Appointments Clause specifies how "Officers of the United States" must be appointed. U.S. Const. Art. II, § 2, cl. 2.  The Clause "very clearly divides all its officers into two classes": principal officers and inferior officers.  *United States v. Germaine*, 99 U.S. 508, 509 (1878). Principal officers must be appointed by the President "with the Advice and Consent of the Senate." U.S. Const. Art. II, § 2, cl. 2.  Although the default mode of appointment of all officers is through presidential nomination and Senate confirmation, the Constitution allows Congress to "by Law vest" the appointment of inferior officers "in the President alone, in the Courts of Law, or in the Heads of Departments."  *Id.*  And Congress may require presidential appointment and Senate confirmation of inferior officers.  *See Edmond v. United States*, 520 U.S. 651, 660 (1997).

U.S. Attorneys are inferior officers.  *See Myers v. United States*, 272 U.S. 52, 159 (1926). Nonetheless, from 1789 through today, Congress has always provided "by Law" for the appointment of U.S. Attorneys through presidential nomination; and beginning with President Washington, presidents all sought the advice and consent of the Senate when making these appointments.  *See* 28 U.S.C. § 541(a); Judiciary Act of 1789, § 35, 1 Stat. 73 (requiring that the appointee be a "person learned in the law to act as attorney for the United States"); James A. Heilpern, *Interim United States Attorneys*, 28 Geo. Mason L. Rev. 187, 190 (2020).  Among the first U.S. Attorney appointees in Viriginia was John Marshall, later Chief Justice of the United States.  *See* U.S. Dep't of Justice, Bicentennial Celebration of the United States Attorneys, Intro. (1989).

The longstanding practice of Senate advice and consent—now codified in 28 U.S.C. § 541(a)—reflects the recognition that U.S. Attorneys wield immense power over individual liberty.  Indeed, then-Attorney General Robert Jackson maintained that "[t]he prosecutor has more

control over life, liberty, and reputation than any other person in America."  Robert H. Jackson, *The Federal Prosecutor:  Address to the Second Annual Conference of the United States Attorneys*, 31 J. Crim. L & Criminology 3 (1940).  By requiring joint participation of the President and the Senate, Congress sought to ensure "a judicious choice" for U.S. Attorney and to prevent selection of someone "who had no other merit" except for being "personally allied" with the President.  *The Federalist* No. 76, p. 455, 458 (C. Rossiter ed. 1961) (A. Hamilton).  As the Framers recognized, vesting appointment authority solely in the President could "render" an officer "the obsequious instrument of [the President's] pleasure" and pose a dangerous threat to individual liberty.  *Id.*

Congress enacted 28 U.S.C. § 546 to address "[v]acancies" in the office of U.S. Attorney. Subsections (a) and (b) provide that "the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant," except that "[t]he Attorney General shall not appoint" someone whose appointment has already been rejected by the Senate. *Id.* § 546(a), (b).  Subsection (c) specifies that "[a] person appointed as United States attorney under this section may serve until the earlier of" "(1) the qualification of a United States attorney for such district appointed by the President" and confirmed by the Senate "or (2) the expiration of 120 days after appointment by the Attorney General under this section."  *Id.* § 546(c).  Finally, subsection (d) states that "[i]f an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled."  *Id.* § 546(d).

## B.    Factual Background

The U.S. Attorney's Office for the Eastern District of Virginia, which serves "more than six million residents," has "built a prominent reputation for prosecuting and defending some of the nation's most significant national and international cases."[1]  On January 20, 2025, Jessica Aber,

---

[1] United States Attorney's Office, Eastern District of Virginia, *About the District* (last visited Oct. 20, 2025), https://perma.cc/Y9T2-6LYM.

who was appointed by President Biden and confirmed by the Senate, resigned as U.S. Attorney for the Eastern District of Virginia.[2]   On the following day, the Attorney General appointed Erik Siebert as interim U.S. Attorney pursuant to 28 U.S.C. § 546.[3]

Mr. Siebert's appointment expired "120 days after appointment by the Attorney General under [Section 546]," 28 U.S.C. § 546(c)(2)—*i.e.*, on May 21, 2025.  At that time, the district judges of the Eastern District of Virginia exercised their appointment authority under Section 546(d) to unanimously retain Mr. Siebert as interim U.S. Attorney.[4]  The Trump Administration reportedly began pressuring Mr. Siebert to indict Mr. Comey and New York Attorney General Letitia James.  When Mr. Siebert appeared unwilling to do so, President Trump told reporters in the Oval Office that he wanted Siebert "out"; Mr. Siebert resigned on September 19, 2025.[5]

On September 20, President Trump publicly posted—and later withdrew—a statement on social media directly urging the Attorney General to prosecute Mr. Comey, Attorney General James, and Senator Adam Schiff, and to appoint Lindsey Halligan as interim U.S. Attorney.  The post read as follows:

> Pam: I have reviewed over 30 statements and posts saying that, essentially, "same old story as last time, all talk, no action. Nothing is being done. What about Comey, Adam "Shifty" Schiff, Leticia??? They're all guilty as hell, but nothing is going to be done." Then we almost put in a Democrat supported U.S. Attorney, in Virginia, with a really bad Republican past. A Woke RINO, who was never going to do his job. That's why two of the worst Dem Senators PUSHED him so hard. He even lied to the media and said he quit, and that we had no case. No, I fired him, and there is a GREAT CASE, and many lawyers, and legal pundits, say so. Lindsey Halligan is a really good lawyer, and likes you, a lot. We can't delay any longer, it's killing our reputation and credibility. They impeached me twice,

---

[2] United States Attorney's Office, Eastern District of Virginia, *U.S. Attorney Jessica D. Aber announces resignation* (Jan. 17, 2025), https://perma.cc/UTW3-8C36.

[3] *See* United States Attorney's Office, Eastern District of Virginia, *Erik Siebert appointed Interim U.S. Attorney for the Eastern District of Virginia* (Jan. 21, 2025), https://perma.cc/SZ2Z-KQ6P.

[4] Order of Appointment, *In the Matter of the Appointment of Erik S. Siebert as United States Attorney* (E.D.V.A. May 9, 2025), https://perma.cc/N2QG-9H6B.

[5] Glenn Thrush, *et al*, *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure from the President*, N.Y. Times (Sept. 19, 2025), https://perma.cc/Q75E-873N.

and indicted me (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED, NOW!!! President DJT."[6]

Less than 48 hours after President Trump's post, Ms. Halligan was sworn in as interim U.S. Attorney for the Eastern District of Virginia.[7] Ms. Halligan was a special assistant to the President and White House official. She had previously worked as an insurance lawyer and personal lawyer for President Trump and lacked prosecutorial experience.[8] The Attorney General purported to appoint Ms. Halligan as interim U.S. Attorney under 28 U.S.C. § 546.[9]

On her fourth day in office, Ms. Halligan sought a grand jury indictment of Mr. Comey—just days before the five-year statute of limitations on Mr. Comey's purported offenses was set to expire. *See* 18 U.S.C. § 3282(a). No other prosecutor from the U.S. Attorney's Office for the Eastern District of Virginia participated in the grand jury presentation.[10] Ms. Halligan presented the grand jury with a three-count indictment. The grand jury returned a "no true bill" on the first count. Yet after staying well past normal court hours, the grand jury returned a true bill on the other two counts by only a slim majority.[11] Only Ms. Halligan signed the indictment.[12]

---

[6] Donald J. Trump (@realDonaldTrump), Truth Social, (Sept. 20, 2025, at 18:44 ET), https://perma.cc/A7RW-2TEC.

[7] Pamela Bondi, Attorney General, *Order No. 6402-2025: Authorizing Lindsey Halligan To Be The Interim United States Attorney For The Eastern District Of Virginia During The Vacancy In That Office* (Sept. 22, 2025) ("Halligan Appointment Sheet"), Exhibit A.

[8] Alan Feuer, *Trump's Pick to Replace Ousted U.S. Attorney Lacks Prosecutorial Experience*, N.Y. Times (Sept. 22, 2025), https://perma.cc/YW66-M3HF; Compl., *Trump v. United States*, No. 22-cv-81294 (S.D. Fl. Aug. 22, 2022), ECF No. 1.

[9] *See* Halligan Appointment Sheet, Exhibit A.

[10] *See* ECF No. 1 at 1–2. The custom in the Eastern District of Virginia is for the prosecutor who presented the case to the Grand Jury to sign the indictment along with the U.S. Attorney. Here, only Ms. Halligan signed. *Id.* at 2. Additionally, Ms. Halligan was the only government attorney who appeared in the indictment return proceeding. *See* Tr. of Return of Grand Jury Indictment Proceedings at 4 (Sept. 25, 2025) ("Grand Jury Transcript"), ECF No. 10.

[11] *See* Grand Jury Transcript at 1-4, 7; Jacob Rosen, et al., *Judge who reviewed James Comey's indictment was confused by prosecutor's handling of case, transcript shows*, CBS News (Sept. 26, 2025), https://perma.cc/R654-4Q45.

[12] ECF No. 1 at 2.

Count One of the indictment charges Mr. Comey with making false statements to Congress, in alleged violation of 18 U.S.C. § 1001(a)(2).  *See* ECF No. 1 at 1.  Count Two charges Mr. Comey with "corruptly endeavor[ing] to influence, obstruct and impede" a Senate Judiciary Committee investigation "by making false and misleading statements before that committee," in alleged violation of 18 U.S.C. § 1505.  ECF No. 1 at 2.

On September 25, President Trump celebrated the indictment of Mr. Comey on social media.  He posted: "JUSTICE IN AMERICA!  One of the worst human beings this Country has ever been exposed to is James Comey, the former Corrupt Head of the FBI.  Today he was indicted by a Grand Jury on two felony counts for various illegal and unlawful acts.  He has been so bad for our Country, for so long, and is now at the beginning of being held responsible for his crimes against our Nation.  MAKE AMERICA GREAT AGAIN!"[13]

President Trump also posted a word of thanks to those in the Department of Justice (DOJ) who had effectuated his wishes: "I'd like to thank Kash Patel, and the outstanding members of the FBI, for their brilliant work on the recent Indictment of the Worst FBI Director in the History of our Country, James 'Dirty Cop' Comey.  The level of enthusiasm by the FBI was incredible, but only caused by the fact that they knew Comey for what he is, and was, a total SLIMEBALL! Again, thank you to the FBI and, specifically, those that worked on this case with U.S. Attorney Lindsey Halligan, and the DOJ.  Thank you for your attention to this matter.  MAKE AMERICA GREAT AGAIN! President DJT."[14]

---

[13]  Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 25, 2025, at 19:24 ET), https://perma.cc/N9T4-2ZPA.

[14]  Donald J. Trump (@realDonaldTrump), Truth Social (Sep. 26, 2025, at 18:40 ET), https://perma.cc/V9AS-9NKB.

## ARGUMENT

The Appointments Clause "is among the significant structural safeguards of the constitutional scheme" of separated powers. *Edmond v. United States*, 520 U.S. 651, 659 (1997). Here, the Attorney General sought to circumvent that safeguard by appointing Ms. Halligan as interim U.S. Attorney in violation of 28 U.S.C. § 546's clear terms. Indeed, Congress limited the Attorney General's interim appointment authority to 120 days to preclude precisely the maneuver here. A contrary interpretation would allow the government to string together sequential 120-day appointments under Section 546 and thereby indefinitely or perpetually evade Congress's default requirement of Senate advice and consent. The text, structure, history, and purpose of Section 546 refute any such result. And because Section 546 implements the Appointments Clause's requirement that a Head of a Department can appoint an inferior officer only "by Law," U.S. Const. Art. II, § 2, cl. 2, the government's violation of Section 546 also flouts the Constitution.

This Court should remedy those violations by dismissing the indictment with prejudice. Because an unlawfully appointed official lacks valid governmental authority, her actions are void *ab initio*. Thus, the indictment here is a nullity and must be dismissed. That dismissal must be with prejudice. The President and Attorney General appointed the President's personal lawyer as interim U.S. Attorney in violation of a clear statutory command so that the interim U.S. Attorney could indict an outspoken critic of the President just days before the relevant statute of limitations was set to expire. Only a dismissal with prejudice is sufficient to address and deter the Executive Branch's willfully unlawful conduct in this case.

## I. MS. HALLIGAN'S APPOINTMENT AS INTERIM UNITED STATES ATTORNEY VIOLATES SECTION 546 AND THE APPOINTMENTS CLAUSE

As explained above, Congress has established "by Law" the manner in which U.S. Attorneys and interim U.S. Attorneys shall be appointed. U.S. Const., Art. II, § 2, cl. 2. It has

provided that "[t]he President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district." 28 U.S.C. § 541(a). And because the importance of the office mandates a mechanism for ensuring that it will function on an interim basis when no Senate-confirmed occupant serves, Congress has created a reticulated scheme for addressing "[v]acancies" in the office of U.S. Attorney. *Id.* § 546.

Ms. Halligan's appointment was not authorized under this framework. She was not appointed by the President and confirmed by the Senate under Section 541. And her appointment as interim U.S. Attorney was not authorized by Section 546. The government has not identified any other source of authority for Ms. Halligan's appointment. Accordingly, her appointment as an inferior officer lacks any statutory basis and thus violates the Appointments Clause.

### A.    Ms. Halligan's Appointment Is Not Authorized By Section 546

Ms. Halligan's appointment is inconsistent with Section 546's text, structure, history, and purpose. That appointment therefore lacks any statutory foundation.

### 1.    Ms. Halligan's appointment is inconsistent with Section 546's text

Statutory interpretation "always" begins "with the text of the statute." *Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023) (citation omitted). Where "[t]he plain meaning of the statutory text" yields a clear answer to the question presented, "it is not necessary to go any further." *Babb v. Wilkie*, 589 U.S. 399, 404 (2020).

That is the case here. The text of Section 546 establishes a clear framework for the appointment of interim U.S. Attorneys: the Attorney General "may appoint" an interim U.S. Attorney; Attorney General appointees may serve for "120 days" following the Attorney General's invocation of her appointment authority; after that period "expires," the "district court for such district may appoint a United States attorney to serve until the vacancy is filled." 28 U.S.C. § 546(a), (c)(2), (d). That framework starts the clock from the time of the Attorney General's initial

appointment of an interim U.S. Attorney and limits the total tenure of the Attorney General's interim appointments to 120 days. That is the only logical reading of the provision: if the Attorney General could make back-to-back sequential appointments of interim U.S. Attorneys, the 120-day period would be rendered meaningless, and the Attorney General could indefinitely evade the alternate procedures that Congress mandated. The text thus precludes an additional appointment by the Attorney General after the expiration of that 120-day period.

Section 546(a) begins by authorizing the Attorney General to "appoint a United States attorney for the district in which the office of United States attorney is vacant." 28 U.S.C. § 546(a). But subsection (c) imposes a durational limit on this means of temporarily filling the office: "*A* person appointed as United States attorney under this section may serve until" the "expiration of 120 days after appointment by the Attorney General under this section." 28 U.S.C. § 546(c)(2) (emphasis added). By using the word "[a]" as an "indefinite article" to describe the time-limited interim U.S. Attorney, Congress referred to "unspecified" persons appointed by the Attorney General—not "particular" ones. *McFadden v. United States*, 576 U.S. 186, 191 (2015) (quoting Webster's New International Dictionary 1 (2d ed. 1954)). Subsection (c) therefore establishes an aggregate 120-day time limit tied to the Attorney General's initial appointment of *any* interim U.S. Attorney. The period does not start anew once the 120-day period expires or if a substitute interim U.S. Attorney is appointed before the 120-day period expires.

That reading is reinforced by Congress's instructions for what happens after the 120-day period elapses. Subsection (d) provides that, "if an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled." 28 U.S.C. § 546(d). It does not state that the Attorney General may appoint another interim U.S. Attorney.

To be sure, subsection (d) uses the phrase "may appoint" rather than "shall appoint" to describe the judicial appointment authority. But "federal statutes that establish procedural entitlements" "regularly use 'may' to confer categorical permission" that cannot be displaced. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-99 (2010). In *Shady Grove*, for instance, the Supreme Court held that Federal Rule of Civil Procedure 23—which states that a class action "'may be maintained' if two conditions are met"—overrode a state procedural rule that purported to preclude certain suits from proceeding as class actions. *Id.* Similarly, here, by using the phrase "may appoint," Congress conferred categorical permission on district courts to appoint interim U.S. Attorneys after the 120-day period expires. And as in *Shady Grove*, that categorical permission precludes any additional appointment by the Attorney General. Were it otherwise, and the Attorney General could string together 120-day appointments, the government would have little incentive to conform to the congressional plan that U.S. Attorneys be appointed through the structural safeguard of presidential nomination and Senate confirmation.

Nonetheless, the Attorney General here purported to appoint a second interim U.S. Attorney, Ms. Halligan, well beyond "the expiration of 120 days after appointment" of "[a] person" "under this section." 28 U.S.C. § 546(c)(2). As explained above, the Attorney General appointed Erik Siebert as interim U.S. Attorney on January 21, 2025. That appointment triggered Section 546(c)(2)'s 120-day clock, which expired on May 21, 2025. At that time, the district court "appoint[ed]" Mr. Siebert as "a United States attorney to serve until the vacancy is filled." *Id.* § 546(d). When Mr. Siebert resigned on September 19, 2025, the district court again had the exclusive authority to appoint an interim U.S. Attorney. But instead of awaiting the district court's selection, the Attorney General purported to appoint Ms. Halligan—even though the 120-day period "after appointment by the Attorney General under this section" had long since expired. *Id.*

§ 546(c)(2).  The plain statutory text forecloses that appointment.

The only way to justify Ms. Halligan's appointment is to interpret Section 546 as allowing the Attorney General to appoint multiple interim U.S. Attorneys who, in the aggregate, will serve more than 120 days.  That interpretation suffers from numerous textual flaws.

First, it inserts words into the statutory text.  Specifically, that interpretation requires reading subsection (c)(2) as if it says "120 days after *that* appointment by the Attorney General," which would have made the 120-day clock "run on a per-appointee basis."  *United States v. Giraud*, No. 24-cr-00768, 2025 WL 2416737, at *10 (D.N.J. Aug. 21, 2025), appeal pending, No. 25-2635 (docketed Aug. 25, 2025).  But Congress did not use such language; instead, it used the unmodified term "appointment"—thus linking the 120-day clock to Attorney General appointments generally, not to any one appointee specifically.

Second, interpreting the statute to allow for 120 days per Attorney General appointee creates superfluity.  *See Corley v. United States*, 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous." (citations omitted)).  Subsection (c) refers to "[a] person appointed as United States attorney under this section" and then subsection (c)(2) connects the 120-day clock to "appointment . . . under this section."  28 U.S.C. § 546(c).  If a per-appointee interpretation were correct, then Congress would not have needed to use the phrase "under this section" in subsection (c)(2); it could have simply used the phrase "after appointment by the Attorney General."  By using the phrase "under this section," Congress "indicate[d] that subsection (c)(2) refers more broadly to *any* appointment 'under this section.'"  *Giraud*, 2025 WL 2416737, at *10 (emphasis in original).

Third, a per-appointee interpretation fails to account for subsection (c)(1).  Subsection (c)(1) provides that an interim U.S. Attorney's appointment ends upon "the qualification of a

United States attorney for such district appointed by the President under section 541," 28 U.S.C. § 546(c)(1)—that is, Senate confirmation of the President's nominee. That provision "is indisputably benchmarked to an event unrelated to any specific person's interim appointment." *Giraud*, 2025 WL 2416737, at *10. It would be odd, then, for Congress to have adopted an appointee-specific provision in the very next subsection without using clear language to that effect.

Finally, a per-appointee interpretation creates an intractable conflict between subsections (c) and (d). Subsection (d) provides for district court appointment "[i]f an appointment expires under subsection (c)(2)." 28 U.S.C. § 546(d). Yet under the Attorney General's reading, the district court's appointment authority would appear to be concurrent with the Attorney General's appointment authority. Thus, after an interim U.S. Attorney serves for 120 days, *both* the Attorney General and the district court could appoint their own interim U.S. Attorney for the same district. In that circumstance, no one would know which of the two interim U.S. Attorneys was properly exercising authority of the office. Courts would then need to decide who was the properly appointed interim U.S. Attorney—without any clear statutory instructions for how to resolve the conflict. Congress could not have intended that profoundly destabilizing regime.

### 2. Statutory structure and history confirm the best reading of the text

"The statutory structure also reinforces" the most natural reading of Section 546's text. *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 381 (2018). The Attorney General's interpretation would contravene the statutory structure by allowing the Executive Branch to indefinitely circumvent both the Senate and the district courts in the context of U.S. Attorney appointments. Because U.S. Attorneys are inferior officers, Congress could have provided for appointment by the President or Attorney General alone. *See* U.S. Const., Art. II, § 2, cl. 2. Instead, Congress has long required that U.S. Attorneys be confirmed by the Senate. Section 541 reflects that default rule of Senate confirmation.

In turn, Section 546 is an exception to that rule that applies only when an "office of United States attorney is vacant." 28 U.S.C. § 546(a). Congress carefully crafted Section 546 so that it would remain a limited exception. Congress allowed the Attorney General to appoint interim U.S. Attorneys for an aggregate period of 120 days. And after that, it shifted appointment authority to the district court. By doing so, Congress "provid[ed] an incentive for the President to exercise his statutory power under 28 U.S.C. § 541" to appoint U.S. Attorneys with the advice and consent of the Senate. *United States v. Sotomayor Vazquez,* 69 F. Supp. 2d 286, 295 (D.P.R. 1999), aff'd, 249 F.3d 1 (1st Cir. 2001).

Under the Attorney General's interpretation, the Executive Branch could circumvent both the district court's role under subsection (d) and Senate confirmation under Section 541. For instance, the Attorney General could appoint a new interim U.S. Attorney every 119th day—thus preventing subsection (c)(2)'s 120-day time limit from ever expiring. That tactic would ensure that the district court's appointment authority under subsection (d) is never triggered. And "[t]aken to the extreme, the President could use this method to staff the United States Attorney's office with individuals of his personal choice for an entire term without seeking the Senate's advice and consent." *Giraud*, 2025 WL 2416737, at *10.

This concern is not merely hypothetical. Here, for instance, the President and Attorney General have attempted to appoint a second interim U.S. Attorney for the Eastern District of Virginia well after the relevant 120-day period has elapsed. If permitted, nothing would stop the President and Attorney General from doing so again with a third, fourth, or fifth interim U.S. Attorney for this district after Ms. Halligan's term ends.

Nor is the government's gambit limited to this case. In several cases throughout the country, the government has sought to end run Congress's framework in Section 541 and 546

13

before being rebuffed by courts. *See Giraud*, 2025 WL 2416737, at *1, *8 (detailing the Executive Branch's perpetuation of "Alina Habba's appointment to act as the United States Attorney for the District of New Jersey through a novel series of legal and personnel moves" and concluding that she "was not lawfully acting as the United States Attorney in any capacity" 120 days after the Attorney General first invoked her power under Section 546(a)); *United States v. Garcia, et al*, No. 25-cr-227, 2025 WL 2784640, at *3 (D. Nev. Sept. 30, 2025) ("The Nevada judges did not have an opportunity to exercise [Section 546(d)] power because, on the 119th day of Ms. Chattah's term, the government purported to switch her appointment to the [Federal Vacancies Reform Act] and its longer term of service."). In fact, when one interim U.S. Attorney was asked whether his term was "up at the end of this month" given subsection (c)(2)'s 120-day limit, he responded that "we've got some tricks up our sleeves."[15] This Court should reject the government's machinations here.

Section 546's history accords with its text and structure. *See United States v. Hansen*, 599 U.S. 762, 775 (2023) ("[s]tatutory history is an important part of … context"). In fact, the history shows that Congress enacted subsection (c)(2)'s 120-day limit and subsection (d)'s district court appointment mechanism to prevent precisely the type of Executive Branch conduct at issue here.

Beginning in 1863, Congress provided for exclusive judicial authority to appoint interim U.S. Attorneys—without any involvement from the Attorney General at all. In that year, Congress authorized "the judge of [the relevant] circuit"—and that judge alone—to fill "a vacancy in the office of . . . district attorney" in that circuit. Act of Mar. 3, 1863, ch. 93, § 2, 12 Stat. 768 (1863). Thirty-five years later, Congress transferred that interim appointment authority to the district courts. *See* Act of June 24, 1898, § 2, 30 Stat. 487 (1898). In 1966, Congress codified district

---

[15] *See* The Glenn Beck Program: *Bill Essayli*, at 44:14 (Jul. 22, 2025), http://bit.ly/4nc6yck.

courts' exclusive appointment role for interim U.S. Attorneys in 28 U.S.C. § 546.  *See* Pub. L. No. 89-554, § 4(c), 80 Stat. 618 (1966).  It was not until 1986 that Congress for the first time gave the Attorney General a role in appointing interim U.S. Attorneys, adopting a version of the statute that mirrors the language as it exists today.  Pub. L. No. 99-646, § 69, 100 Stat. 3616-17 (1986).

Just three days after Congress enacted the 1986 law, the Office of Legal Counsel (OLC) within the DOJ issued a memorandum, authored by then-Deputy Assistant Attorney General Samuel Alito, interpreting the provision in precisely the same manner as Mr. Comey here.  *See* Definition of Vacancy for the Purpose of Interim Appointment of United States Attorneys pursuant to 28 U.S.C. 546, as amended, Office of Legal Counsel (Nov. 13, 1986), https://perma.cc/SD5Q-7CPH.  Specifically, OLC concluded that while a "vacancy exists when the 120-day period expires under the amended section 546 and the President has either not made an appointment or the appointment has not been confirmed," "it *does not follow* that the Attorney General may make another appointment pursuant to 28 U.S.C. 546(a) after the expiration of the 120-day period." *Id.* at 3 (emphasis added).  OLC reasoned that "[t]he statutory plan discloses a Congressional purpose that after the expiration of the 120-day period further interim appointments are to be made by the court rather than by the Attorney General." *Id.*  That "contemporaneous[]" Executive Branch interpretation provides persuasive evidence of statutory meaning.  *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 386 (2024); *see also Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 692 n.1 (4th Cir. 2019) ("Although not binding on courts, OLC opinions reflect the legal position of the executive branch and are generally viewed as providing binding interpretive guidance for executive agencies." (citations omitted)).

In 2006, however, Congress "entirely removed the 120-day limit and the district court's backstopping role, and simply provided that 'a person appointed as United States attorney under

this section may serve until the qualification of a United States Attorney for such district appointed by the President under section 541 of this title.'" *Giraud*, 2025 WL 2416737, at *11 (quoting Pub. L. No. 109-177, Title V, § 502, 120 Stat. 246 (2006)).  That amendment "created a possible loophole that could permit United States Attorneys appointed on an interim basis to serve indefinitely without Senate confirmation."  H.R. Rep. No. 110-58, at 4-5 (2007).  And the Executive Branch swiftly capitalized on that loophole:  By December 2006, the Attorney General began firing Senate-confirmed United States Attorneys and unilaterally replacing them with non-confirmed interim appointees who could serve indefinitely.[16]

"The switch to an unlimited appointment was short lived."  *Giraud*, 2025 WL 2416737, at *11.  In June 2007, Congress enacted a law restoring the pre-2006 regime.  *See* Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-34, § 2, 121 Stat. 224 (2007).  The House Report expressed serious concerns about the Executive Branch "Bypassing the Requirement of Senatorial Advice and Consent," emphasizing "several instances where the Attorney General made successive interim appointments pursuant to section 546 of either the same or different individuals."  *Giraud*, 2025 WL 2416737, at *11 (quoting H.R. Rep. No. 110-58, at 6 (2007)).  And as Members of Congress who voted for the 2007 law recently explained, the "Act reflected

---

[16]  *See, e.g.*, 153 Cong. Rec. S1993-94 (daily ed. Feb. 15, 2007) (statement of Sen. Leahy) ("We learned recently that the Department of Justice has asked several outstanding U.S. attorneys from around the country to resign their positions. . . . We also understand the Attorney General has or is planning to appoint interim replacements for the U.S. attorneys he is removing, raising a potential of avoiding the Senate confirmation process altogether."); *id.* at S1995 (statement of Sen. Schumer) (identifying "concerns that politics was involved in several of these firings"); 153 Cong. Rec. H5554 (daily ed. May 22, 2007) (statement of Rep. Keller) (noting "the dismissal of several U.S. attorneys earlier this year"); *id.* (statement of Rep. Lofgren) (noting "the dismissal of eight, now nine, U.S. attorneys" and their replacement with interim appointees); *id.* at H5556 (statement of Rep. Jackson-Lee) (explaining "that after gaining this increased authority to appoint interim United States Attorneys indefinitely, the administration has exploited the provision to fire United States Attorneys for political reasons").

Congress's considered judgment—rooted in the Constitution's separation of powers framework—that the appointment of U.S. Attorneys must be subject to meaningful checks, including the Senate's advice and consent, except in limited circumstances expressly provided by law." *See* Brief of Bipartisan Current and Former Members of Congress in Support of Neither Party, *United States v. Giraud*, No. 25-2635 (3d Cir. Oct. 6, 2025), ECF No. 40.

By purporting to appoint Ms. Halligan under Section 546, the President and Attorney General have disregarded that considered judgment and sought to reinstate a regime that Congress expressly repudiated. To do so, however, they have adopted an interpretation that sharply departs from the Executive Branch's longstanding interpretation dating back to the original enactment of the provision at issue here. This Court should reject the Executive Branch's novel and unprecedented interpretation as directly contrary to the statutory text, structure, history, and purpose.

### B.    Ms. Halligan's Appointment Also Violates The Appointments Clause

As explained above, the Appointments Clause allows Congress to "by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const., Art. II, § 2, cl. 2. The requirement that Congress participate in the appointment of inferior officers—either through Senate confirmation or through specifying an appointment procedure "by Law"—reflects the Framers' concerns about the Executive Branch's "manipulation of official appointments." *Freytag v. Comm'r*, 501 U.S. 868, 883 (1991) (citations omitted).

Here, Congress vested the appointment of interim U.S. Attorneys "by Law" in a "Head of Department[]"—the Attorney General—as well as in "the Courts of Law"—district courts. In so doing, Congress established a finely tuned statutory scheme for such appointments. *See supra* at 8-9. Because the Attorney General appointed Ms. Halligan in violation of that scheme, Ms.

17

Halligan's appointment as an inferior officer is not authorized "by Law." And the "head of a department has no constitutional prerogative of appointment to offices independently of the legislation of Congress, and by such legislation he must be governed, not only in making appointments, but in all that is incident thereto." *United States v. Perkins*, 116 U.S. 483, 485 (1886). The Attorney General's appointment of Ms. Halligan thus violates not only Section 546, but also the Appointments Clause. *See Trump v. United States*, 603 U.S. 593, 644-45 (2024) (Thomas, J., concurring) (citations omitted); *United States v. Trump*, 740 F. Supp. 3d 1245, 1263 (S.D. Fla. 2024).

## II.   MS. HALLIGAN'S UNLAWFUL APPOINTMENT WARRANTS DISMISSAL OF THE INDICMENT WITH PREJUDICE

Ms. Halligan's unlawful appointment renders her purported official actions void *ab initio*. The indictment against Mr. Comey that she alone secured and signed is thus a nullity and should be dismissed. That dismissal should be with prejudice because any other remedy would not sufficiently address and deter the Executive Branch's willfully unlawful conduct in this case.

### A.   Dismissal Of The Indictment Is The Proper Remedy

Dismissal of the indictment is warranted because Ms. Halligan was not lawfully exercising governmental authority when she secured and signed that indictment. When a court determines that a government actor exercised "power that the actor did not lawfully possess," including because she was not "properly *appointed*," that ruling renders her past actions "void." *Collins v. Yellen*, 594 U.S. 220, 257-58 (2021) (emphasis added); *see id.* at 258 (citing cases). With an improper appointment, the officer at issue cannot "lawfully exercise the statutory power of his office at all in light of the rule that an officer must be properly appointed before he can legally act as an officer." *Id.* at 266 (Thomas, J., concurring). And because "officials cannot wield executive

power except as Article II provides," "[a]ttempts to do so are void." *Id.* at 283 (Gorsuch, J., concurring in part).

In light of these principles, the Supreme Court has invalidated judgments issued or reviewed by an improperly appointed adjudicator. In *Ryder v. United States*, 515 U.S. 177 (1995), for instance, the Supreme Court "reversed" the court-martial conviction of a defendant after he successfully challenged the appointment of the intermediate appellate judges who reviewed his case. *Id.* at 188. Likewise, in *Lucia v. SEC*, 585 U.S. 237 (2018), the Court set aside an agency adjudication "tainted with an appointments violation," making clear that a decision of an improperly appointed official cannot stand. *Id.* at 251.

Similarly, in *United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024), the court applied these principles when dismissing an indictment on Appointments Clause grounds because of a defect in the appointment of the prosecutor who secured the charges. The court concluded that "[b]ecause Special Counsel Smith's exercise of prosecutorial power has not been authorized by law," there was "no way forward aside from dismissal of the Superseding Indictment." *Id.* at 1302. Indeed, the government there did not even "propose an alternative course." *Id.* The court reasoned that "[i]nvalidation follows directly from the government actor's lack of authority to take the challenged action in the first place." *Id.* at 1302-03.

Here, the Court should dismiss the indictment because of Ms. Halligan's unlawful appointment. When Ms. Halligan secured and signed the indictment in this case, she was exercising power that she "did not lawfully possess." *Collins*, 594 U.S. at 258. It was no different than if a private citizen, not representing the Executive Branch, went before the grand jury and purported to authorize its issuance of a charging instrument. Thus, the indictment is "void" and a nullity. *See id.* at 258. It should therefore be dismissed.

Declining to dismiss the indictment would leave Mr. Comey with no remedy for his timely and successful Appointments Clause challenge. The Supreme Court has repeatedly rejected that result. In *Ryder*, the Court held that the *de facto* officer doctrine could not be invoked to uphold a judgment tainted by an Appointments Clause violation because "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to . . . whatever relief may be appropriate if a violation indeed occurred." 515 U.S. at 182-83. The Court recognized that "[a]ny other rule would create a disincentive to raise Appointments Clause challenges." *Id.* at 183. And the Court reiterated that logic in *Lucia*. 585 U.S. at 251 n.5. Accordingly, Mr. Comey is entitled to dismissal of the indictment in light of Ms. Halligan's improper appointment and unlawful attempt to exercise governmental authority.

Even if *Ryder* and *Lucia* did not apply here, dismissal of the indictment would be appropriate under ordinary criminal law principles. The "customary harmless-error inquiry is normally applicable where . . . a court is asked to dismiss an indictment prior to the conclusion of the trial." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988). That is not the case, however, for "fundamental" errors—particularly those "of a constitutional magnitude"—that compromise the "structural protections of the grand jury." *Id.* at 256-57; *see also United States v. Mills*, 995 F.2d 480, 486 (4th Cir. 1993) (noting that indictments can be challenged based on constitutional errors). Such errors "render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Bank of Nova Scotia*, 487 U.S. at 257 (citing *Rose v. Clark*, 478 U.S. 570, 577-78 (1986)). An Appointments Clause violation that means that no proper Executive Branch official has sought or endorsed the prosecution is such a fundamental error. "The structural interests protected by the Appointments Clause are not those of any one branch of Government but of the entire Republic," *Freytag*, 501 U.S. at 880, and the Executive Branch, which "has

exclusive authority and absolute discretion to decide which crimes to investigate and prosecute," *Trump*, 603 U.S at 620 (internal quotations omitted), cannot validly seek an indictment through an improperly appointed prosecutor.

Here, Ms. Halligan's unlawful appointment tainted the structural integrity of the grand jury process. Absent Ms. Halligan's unlawful title, she would not have been able to enter the grand jury room, let alone present and sign an indictment. Indeed, the Federal Rules of Criminal Procedure allow only "attorneys for the government" to be "present while the grand jury is in session," Fed. R. Crim. P. 6(d)(1), and define such attorneys to include only "attorney[s] *authorized by law* to conduct" grand jury proceedings, Fed. R. Crim. P. 1(b)(1)(D) (emphasis added). Those rules implement the longstanding principle "that the proper functioning of our grand jury system depends upon the secrecy of the grand jury proceedings"—a principle that "is 'as important for the protection of the innocent as for the pursuit of the guilty.'" *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983) (citations omitted). By limiting participation to government attorneys "authorized by law," Rules 1 and 6 maintain the secrecy of the grand jury proceeding and reinforce that an unlawfully appointed attorney's presentation to the grand jury undermines the structure of that proceeding. The fundamental error here thus allows a presumption that Mr. Comey was prejudiced, "and any inquiry into harmless error would [require] unguided speculation." *Bank of Nova Scotia*, 487 U.S. at 257.

Yet even under harmless-error analysis, the result would be the same. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1966). An improper interim U.S. Attorney appointment cannot be harmless where the interim U.S. Attorney "was acting alone in conducting the grand jury proceeding." *Giraud*, 2025 WL 2416737, at *29.

That is what happened here.  The record shows that no other prosecutor accompanied Ms. Halligan to the grand jury.  And she alone signed Mr. Comey's indictment.

This case is thus distinct from others involving invalid interim U.S. Attorney appointments where properly serving government lawyers were directly involved in procuring the relevant indictment.  In *Giraud*, for instance, the court declined to dismiss the indictment because "the Government's investigation into [the defendant], which was presented to the grand jury, predated the period during which Ms. Habba was unlawfully serving as the Interim United States Attorney." 2025 WL 2416737, at *29.  Here, by contrast, career and appointed prosecutors found insufficient evidence upon which to indict Mr. Comey and thus did not participate in this case.  *See supra* at 4-5; Mot. to Dismiss for Vindictive and Selection Prosecution at 9-13.  Mr. Comey was charged *only because* Ms. Halligan was unlawfully appointed and then personally secured and signed the indictment acting alone.

### B.  Dismissal Of The Indictment Should Be With Prejudice

A dismissal with prejudice is the only remedy that will vindicate the interests protected by the Appointments Clause and deter the government from using unlawful appointments to effectuate retaliation against perceived political opponents.  In criminal cases, a federal court may use its "supervisory powers" to "implement a remedy" aimed at vindicating "recognized rights" and "deter[ring] illegal conduct."  *United States v. Hasting*, 461 U.S. 499, 505 (1983). For instance, "the supervisory power can be used to dismiss an indictment because of misconduct before the grand jury."  *United States v. Williams*, 504 U.S. 36, 46 (1992) (citing *Bank of Nova Scotia*, 487 U.S. 250).  As several courts of appeals have explained, such a dismissal may be *with* prejudice. *See United States v. Goodson*, 204 F.3d 508, 514 (4th Cir. 2000); *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 254-55 (3d Cir. 2005); *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020).

To determine whether "government misconduct" "merit[s] dismissal with prejudice,"

courts typically consider three factors. They start by asking if "there is '(1) flagrant misbehavior and (2) substantial prejudice.'" *Bundy*, 968 F.3d at 1031. If the answer is yes, they assess whether (3) "any lesser sanction will put the defense at a greater disadvantage than it would have faced had the government" not "violat[ed] . . . a federal constitutional right." *Id.* at 1043. Here, those factors compel a dismissal with prejudice.

To start, the government has flagrantly violated the Appointments Clause to engineer a retaliatory prosecution just days before the statute of limitations expired. President Trump has spent the last eight years publicly attacking Mr. Comey's speech and character and calling for Mr. Comey to be prosecuted. *See* Mot. to Dismiss for Vindictive and Selection Prosecution at 4-7. For instance, after Mr. Comey publicly advocated against President Trump's re-election in 2020, President Trump responded by retweeting attacks calling Mr. Comey "a corrupt piece of garbage," "a disgraced liar & leaker," and a "weasel" who should "be in jail." *Id.* at 7. Numerous other similar examples abound. *See id.* at 4-7.

Upon taking office for a second term in January 2025, President Trump installed his former personal lawyers and advisors as high-level officials in the DOJ, including as Attorney General, Deputy Attorney General, and FBI Director. He then publicly and repeatedly urged those officials to investigate and prosecute his longtime perceived political enemies, including Mr. Comey. *See id.* at 7-8.

But President Trump's efforts to prosecute Mr. Comey initially faced significant obstacles. According to multiple reports, in July 2025, a team of career prosecutors from the U.S. Attorney's Office for the Eastern District of Virginia began an investigation of Mr. Comey, as well as New York Attorney General Letitia James. They ultimately found that no case should be brought against either individual. *See id.* at 9. Undeterred, the Trump Administration reportedly pressured

interim U.S. Attorney Erik Siebert to indict both Mr. Comey and Attorney General James.  *See id.* at 10-11.  But Mr. Siebert reportedly resisted that pressure.  That resistance posed a significant problem for the President because the statute of limitations on Mr. Comey's purported offenses was set to expire on September 30, 2025.  *See* 18 U.S.C. § 3282(a) (five-year statute of limitations).

Accordingly, after Mr. Siebert appeared unwilling to prosecute Mr. Comey, President Trump told reporters in the Oval Office that he wanted Mr. Siebert "out."  *See supra* at 4.  Mr. Siebert resigned on September 19, 2025.  The next day, the President directed his Attorney General to seek "JUSTICE" against Mr. Comey and to unlawfully appoint Ms. Halligan, a White House aide, who would prosecute him.  *See supra* at 4-5.  The Attorney General then immediately did so, willfully disregarding OLC's longstanding interpretation of Section 546 and a recent federal court decision holding that Section 546 does not authorize such appointments.  *See supra* at 5.

In short, the President and Attorney General violated a congressionally mandated appointment procedure so that they could orchestrate the indictment of a perceived political opponent in the waning days of the limitations period.  That is exactly the kind of "executive aggrandizement" that the Appointments Clause was designed to prevent.  *Trump*, 740 F. Supp. 3d at 1260.  And it is exactly the kind of "flagrant misbehavior" that warrants dismissal with prejudice. *Bundy*, 968 F.3d at 1031.

In addition, the second dismissal-with-prejudice factor is satisfied because the Executive Branch's "flagrant misbehavior" also caused "substantial prejudice" to Mr. Comey.  *Bundy*, 968 F.3d at 1031.  As discussed, Ms. Halligan was the sole government lawyer who presented this case to the grand jury and the sole signatory on Mr. Comey's indictment.  *See supra* at 5-6.  Mr. Comey would not have been charged but for her unlawful appointment.

Finally, dismissal with prejudice is warranted because any other remedy would put Mr.

Comey "at a greater disadvantage than [he] would have faced had the government" not violated the Appointments Clause. *Bundy*, 968 F.3d at 1043. In fact, dismissing the indictment without prejudice would *reward* the government for its unlawful installation of Ms. Halligan as interim U.S. Attorney and consequent manipulation of the statute of limitations. As noted, the statute of limitations on Mr. Comey's purported offenses was set to expire just ten days after Ms. Halligan's unlawful appointment. Had the Attorney General not unlawfully appointed Ms. Halligan, there is no reason to believe that the indictment would have been filed within the limitations period. That timing is significant not only because it allowed the government to bring this prosecution, but also because the government will likely argue that the filing of the indictment tolls the limitations period under 18 U.S.C. § 3288. And if this Court were to dismiss *without* prejudice, the government will likely argue that it has six months from the date of dismissal to file a new indictment. *See id.*[17] The government would thus be in a better position than it would have been but for its violation of the Appointments Clause. And Mr. Comey is in a worse position because he faces criminal prosecution, rather than experiencing the repose of an expired limitations period.

In sum, this Court should exercise its "supervisory power" to "deter" the government's "illegal conduct." *Hasting*, 461 U.S. at 505. And it should make clear that the government may not use illegal appointments to manipulate statutes of limitations and retaliate against outspoken critics of the President. The only way to achieve that result is to dismiss the indictment with prejudice.

## **CONCLUSION**

The indictment should be dismissed with prejudice.

---

[17] Mr. Comey disputes that reading of Section 3288. But for present purposes, the important point is that the government can at least argue that Section 3288 allows it to file a new indictment if this case is dismissed without prejudice—thus prolonging this deeply flawed case.

Dated: October 20, 2025

Respectfully submitted,

JAMES B. COMEY, JR.
By Counsel

*/s/   Jessica N. Carmichael*
Jessica N. Carmichael (VA Bar No. 78339)
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, First Floor
Alexandria, VA 22314
Telephone:  (703) 684-7908
Facsimile:  (703) 649-6360
Email:  jessica@carmichaellegal.com

Patrick J. Fitzgerald (*pro hac vice*)
(Mich. Bar No. P86579)
P.O. Box 277
New Buffalo, MI 49177
Telephone:  (312) 758-4454

Rebekah Donaleski (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 479-6000

Ephraim A. McDowell (*pro hac vice* application
pending)
Elias S. Kim (*pro hac vice* application pending)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone:  (202) 842-7800

Michael R. Dreeben (*pro hac vice* application
pending)
600 New Jersey Ave. NW
Washington, DC 20001
Telephone:  (202) 695-2562

*Counsel for Defendant James B. Comey, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 20th day of October, 2025, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/  Jessica N. Carmichael*
Jessica N. Carmichael

*Counsel for Defendant James B. Comey, Jr.*
