**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

THE UNITED STATES OF AMERICA

v.

JAMES B. COMEY JR.,

*Defendant.*

No. 1:25-CR-00272-MSN

**BRIEF OF *AMICI CURIAE* UNIVERSITY PROFESSORS AND SCHOLARS IN
SUPPORT OF DEFENDANT'S MOTION TO DISMISS INDICTMENT BASED ON
VINDICTIVE AND SELECTIVE PROSECUTION**

Maithreyi Ratakonda*
Christine P. Sun*
STATES UNITED DEMOCRACY CENTER
45 Main Street, Suite 320
Brooklyn, NY 11201
(202) 999-9305
mai@statesunited.org
christine@statesunited.org

Marina Eisner*
Samantha Trepel*
STATES UNITED DEMOCRACY CENTER
1101 17th St. NW, Suite 250
Washington, DC 20036
(202) 999-9305
marina@statesunited.org
sam@statesunited.org

Joshua Erlich (VA Bar No. 81298)
THE ERLICH LAW OFFICE, PLLC
1550 Wilson Blvd., Ste. 700
Arlington, VA  22209
Tel: 703-791-9087
Fax: 703-722-8114
jerlich@erlichlawoffice.com

*Pro Hac Vice Application
Forthcoming

*Counsel for Amici Curiae University Professors and Scholars*

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ................................................................................................ iii

**INTEREST OF AMICI CURIAE** ........................................................................................ 1

**INTRODUCTION** ................................................................................................................ 5

**ARGUMENT** ........................................................................................................................ 6

    I.      POLITICIZED PROSECUTIONS ARE CHARACTERISTIC OF COUNTRIES EXHIBITING DEMOCRATIC BACKSLIDING. ................................................. 6

          A.      Hungary ........................................................................................................ 8

          B.      Venezuela .................................................................................................. 10

          C.      Turkey ........................................................................................................ 11

    II.     THIS PROSECUTION BEARS STRIKING PARALLELS TO POLITICIZED PROSECUTIONS IN BACKSLIDING DEMOCRACIES. ................................. 13

    III.    POLITICIZED PROSECUTIONS UNDERMINE THE RULE OF LAW. ......... 17

          A.      Politicized prosecutions chill and deter political opponents, which further aids in the consolidation of power. ......................................................... 17

          B.      Politicized prosecutions erode public trust in government and sow doubt in the fairness of the justice system. ........................................................... 19

          C.      Because political prosecutions appear to take place within the legal system, recognizing them as a step toward authoritarianism can be difficult. .................................................................................................... 21

    IV.    ADDITIONAL POLITICAL PROSECUTIONS HAVE BEEN INITIATED OR THREATENED. ......................................................................................... 22

    V.     JUDICIAL REVIEW IS AN IMPORTANT CHECK AGAINST POLITICIZED PROSECUTIONS. ...................................................................................... 25

**CONCLUSION** ................................................................................................................. **26**

# TABLE OF AUTHORITIES

**Page(s)**

Andrea Guerero, *Ortega Díaz Denuncia Presiones para Acusar a López por Muertes* [*Ortega Díaz Denounces Pressure to Accuse López of Deaths*], La Verdad (Feb. 15, 2018) ........11

Anne Applebaum, *Autocracy, Inc.* (Vintage Books 2025)..........................................18, 19, 21, 22

Bálint Magyar, *Post-Communist Mafia State: The Case of Hungary* (Bálint Bethlenfalvy, Ágnes Simon, Steven Nelson & Kata Paulin trans., 2016) ................................................9, 10, 18

Berk Esen & Sebnem Gumuscu, *How to Fight Turkey's Authoritarian Turn*, 36 J. of Democracy 106 (2025) ......................................................................................................12, 13, 17, 19

Blaise Misztal & Jessica Michek, *HSYK Elections and the Future of Judicial Independence in Turkey*, Bipartisan Policy Center (Dec. 12, 2014)...............................................................12

Brian Schwartz, Richard Rubin & Joel Schectman, *Trump Team Plans IRS Overhaul to Enable Pursuit of Left-Leaning Groups*, The Wall Street Journal (Oct. 15, 2025) ......................24

Caitlin Oprysko, Brendan Bordelon & Yasmin Khorram, *K Street shudders as Trump Demands a Microsoft Exec's Firing*, POLITICO (Sept. 30, 2025)......................................................24

Christina Caron, *Trump Blasts Comey in Barrage of Tweets, Calling Him 'Slippery'*, N.Y. Times (Apr. 15, 2018) ..............................................................................................................14

Çinar Özer, *Secret Witness: How İmamoğlu and Many Others are Incriminated in Turkey*, Turkey Recap (May 13, 2025)...........................................................................................17

Council Implementing Decision (EU) 2022/2506, Measures for the Protection of the Union Budget Against Breaches of the Principles of the Rule of Law in Hungary, 2022 O.J. (L 325) 95 ...................................................................................................................9, 10

Council of Eur., Venice Comm'n, Opinion on CLXIII of 2011 on the Prosecution Service and Act CLXIV of 2011 on the Status of the Prosecutor General, Prosecutors and Other Prosecution Employees and the Prosecution Career of Hungary, CDL-AD(2012)008 (adopted June 15-16, 2012) ...................................................................................................8

Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Just. 199 (Aug. 2013) ...22

David M. Driesen, *The Specter of Dictatorship: Judicial Enabling of Presidential Power* (Stanford Univ. Press 2021) ...........................................................................................12

David M. Driesen, *The Unitary Executive Theory in Comparative Context*, 72 Hastings L.J. 1 (2020) ...........................................................................................................9, 12, 18

Devlin Barrett, *Justice Dept. Official Pushes Prosecutors to Investigate George Soros's Foundation*, N.Y. Times (Sept. 25, 2025) ..........................................................24

*ECtHR Must Understand that Turkey's Gülen Trials are Vindictive, Jurist Says*, Turkish Minute (Jan. 24, 2024) ................................................................................................12

Editorial Board, *The John Bolton Indictment*, Wall Street Journal (Oct. 16, 2025) ....................19

Erica Orden et al., *New York Attorney General Letitia James, a Trump Foe, is Indicted by Trump's DOJ*, POLITICO (Oct. 9, 2025) ..........................................................23

Fabio Angiolillo et al., V-Dem Institute, *Democracy Report 2025: 25 Years of Autocratization – Democracy Trumped?* (Staffan Lindberg ed. 2025) ............................................8

Geoff Bennett & Ali Schmitz, *N.Y. Attorney General Letitia James Indicted on Fraud Charge After Pressure from Trump*, PBS News (Oct. 9, 2025) ....................................23

Glenn Thrush et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sept. 19, 2025) ..............................................16, 17, 23

Glenn Thrush, *Trump Names More Foes He Wants Prosecuted as Bondi and Patel Look On*, N.Y. Times (Oct. 15, 2025) ..........................................................................24

Helen Levy, *The FIDESZ Wins the 2/3 Majority in the Hungarian Parliament*, Foundation Robert Schuman (Apr. 26, 2010) ......................................................................8

Hum. Rts. Found., *The Collapse of the Rule of Law and Human Rights in Turkey: The Ineffectiveness of Domestic Remedies and the Failure of the ECtHR's Response* (Apr. 2019)................................................................................................12

Int'l Comm'n of Jurists, *ICJ Position Paper on the Dismissal of the Attorney General of Venezuela* (Aug. 16, 2017) ..............................................................................11

Int'l Comm'n of Jurists, *No Will for Justice in Venezuela: A Prosecutor's Office that Fosters Impunity* (Apr. 2024) ..........................................................................11, 20, 21

Ivan Pereira, *Trump, Comey Had Years of Turmoil Before Former FBI Director's Indictment*, ABC News (Sept. 26, 2025) ..........................................................................14

János Kornai, *Hungary's U-Turn: Retreating from Democracy*, 26 J. of Democracy 34 (Jul. 2015)......................................................................................................9, 10

Javier Corrales, *Autocracy Rising: How Venezuela Transitioned to Authoritarianism* (Rowman & Littlefield Publishing 2022)................................................................7, 10

Javier Corrales, *Autocratic Legalism in Venezuela*, 26 J. of Democracy 37 (Apr. 2015)...6, 10, 17

Javier Corrales, *Telltale Signs of Democratic Backsliding*, Persuasion (Jan. 28 2022) ................21

Javier Corrales, *Trump Is Using the Legal System Like an Autocrat*, N.Y. Times (Mar. 5, 2020) ...................................................................................................................................22

Jess Bidgood, *Pardons Become the Latest Trump Flex*, N.Y. Times (May 28 2025) .................15

Katherine Faulders, Alexander Mallin & Peter Charalambous, *Prosecutors' Memo to New U.S. Attorney Found No Probable Cause to Charge James Comey: Sources*, ABC News (Sept. 25, 2025)..............................................................................................................16, 17

Kevin Breuninger, *Trump Commutes Prison Sentence of ex-GOP Rep. George Santos*, CNBC (Oct. 17, 2025)......................................................................................................15

Khatia Shamanauri, *Georgian Dream Detains Eight Opposition Figures*, The Jamestown Foundation (Jul. 16, 2025)..........................................................................................18

Kim Lane Scheppele, *Autocratic Legalism*, 85 U. Chi. L. Rev. 545 (2018)..............6, 7, 8, 21, 22

Kim Lane Scheppele, *Restoring Democracy Through International Law*, 39 Am. U. Int'l L. Rev. 587 (2024) .............................................................................................................17

Kristen Welker & Rebecca Shabad, *Trump Accidentally Posted Message Pressuring Pam Bondi to Charge his Enemies, Source Says*, NBC News (Oct. 10, 2025)..............................23, 25

Laura Clancy, Jacob Poushter & Sofia Hernandez Ramones, *How People in Turkey View Societal Conflicts and Institutions in their Country*, Pew Research Center (Oct. 16, 2024) ...................................................................................................................................20

*Luisa Ortega: Venezuela's Chief Prosecutor*, BBC (Aug. 3, 2017) ......................................10, 11

Madeline Halpert, *New York Attorney General Letitia James Criminally Indicted*, BBC (Oct. 9, 2025)......................................................................................................................23

Maggie Haberman, *Trump and Comey: An Escalating Conflict with No Off-Ramp*, N.Y Times (Sept. 29, 2025) .................................................................................................13, 14

*Majority in Turkey Don't Trust Judicial System: Survey*, Turkish Minute (May 27, 2024).........20

Mandy Taheri, *List of Trump's Pardons and Commutations for GOP Lawmakers*, Newsweek (Oct. 18, 2025)......................................................................................................15

Maria Popova, *Politicized Justice in Emerging Democracies: A Study of Courts in Russia and Ukraine* (2012) .........................................................................................................18

Maria Popova, *Putin-Style "Rule of Law" & the Prospects for Change*, 146 Daedalus 64 (2017) .................................................................................................................................7, 19

Medvegy Gábor, *Felmentették Hiszékeny Dezsőt* [*Dezsö Hiszékeny Was Acquitted*] (Jan. 30, 2017)......................................................................................................................10

Memorandum from Dana Remus, Counsel to the President, Regarding Prohibited Contacts with Agencies and Departments (Jul. 21, 2021)........................................................................15

Nagy József, *Hiszékeny Dezső nem Kért Ötmilliót* [*Dezső Hiszékeny Did Not Ask for Five Million*] (Apr. 4, 2016) ........................................................................................................9

*Ortega Díaz en Caso de Leopoldo López: Me Presionó Diosdado Cabella* [*Ortega Diaz in the Case of Leopoldo Lopez: Diosdado Cabella Pressured Me*], El Nacional (Feb. 15, 2018) ....................................................................................................................................11

Ozan Varol, *Stealth Authoritarianism*, 100 Iowa L. Rev. 1673 (2015) ...................................11, 21

Paul Kirby, *Erdogan: Turkey's All-powerful Leader of 20 years*, BBC News (Mar. 24, 2023)..11, 12

Peter Krekó & Zsolt Enyedi, *Explaining Eastern Europe: Orbán's Laboratory of Illiberalism*, 29 J. of Democracy 3 (Jul. 2018) ...............................................................................................8

Press Statement, U.S. Dep't of State (Feb. 18, 2017) ..................................................................11

Press Statement, U.S. Dep't of State, Venezuela: Political Prisoners Should be Released Immediately (Feb. 18, 2017) ...............................................................................................17

Protect Democracy, *White House Communications with the DOJ and FBI* (Mar. 8, 2017)..........15

Steve Levitsky & Lucan A. Way, *Competitive Authoritarianism: Hybrid Regimes After the Cold War* (2010).......................................................................................................................22

Steven Levitsky & Lucan Way, *The New Competitive Authoritarianism*, 31 J. of Democracy 1 (Jan. 2020) ...........................................................................................................................8

Steven Levitsky & Lucan Way, *The Rise of Competitive Authoritarianism*, 13 J. of Democracy 2 (April 2002) ......................................................................................................................7, 8

Susan C. Stokes, *The Backsliders: Why Leaders Undermine Their Own Democracies* (Princeton Univ. Press 2025) ..............................................................................................................26

Tom Ginsburg, *Authoritarian International Law?*, 114 Am. J. of Int'l L. 221 (2020).................21

U.N. Off. of Drugs and Crime & Int'l Ass'n of Prosecutors, *The Status and Role of Prosecutors* (Dec. 2014).......................................................................................................................20

U.S. Dep't of Just., Just. Manual § 1-8.600(A) (Apr. 2022) ....................................................15, 24

U.S. Dep't of State, Turkey (Türkiye) 2022 Human Rights Report (2022)...........................12, 13

*Venezuela Key Opposition Leaders Seized After Poll*, BBC (Aug. 1, 2017) ...............................10

*Viktor Orban's "Bullet Shield" and Long-Time Chief Prosecutor Leaves Post to Secure Job at Constitutional Court,* bne IntelliNews (May 16, 2025) .....................................................9

World Justice Project, *Rule of Law Index 2024* ...........................................................................20

## INTEREST OF AMICI CURIAE[1]

*Amici curiae* are university professors and scholars with decades of experience studying and writing about the rule of law in the United States or other countries, and with substantial expertise in studying democracies that slide into authoritarianism and the rise of autocratic governments. They submit this brief to describe how rising autocratic leaders interfere with the independence of prosecutors' offices to consolidate power, eliminate political opposition, stifle dissent, and exact retribution on the enemies of those in power. *Amici*'s expertise is relevant here, as it illuminates how Mr. Comey's prosecution poses a grave threat to prosecutorial independence and the rule of law in the United States.

- **Javier Corrales** is a professor of political science at Amherst College. His research includes work on democratization and democratic backsliding with a focus on Latin America and the Caribbean. His latest book, *Autocracy Rising*, discusses the transition to authoritarianism in Venezuela since the 2010s.

- **Larry Diamond** is the William L. Clayton Senior Fellow at the Hoover Institution and the Mosbacher Senior Fellow in Global Democracy at the Freeman Spogli Institute for International Studies (FSI) at Stanford University. His research focuses on democratic trends and conditions around the world and on policies and reforms to defend and advance democracy.

- **David M. Driesen** is an emeritus professor of law at Syracuse University College of Law where his areas of academic interest include constitutional law and law and economics.

---

[1] No party's counsel authored this brief in whole or in part; and no person other than *amici* or their counsel made a monetary contribution to this brief's preparation or submission.

His book, *The Spector of Dictatorship: Judicial Enabling of Presidential Power*, analyzes the chief executive's role in the democratic decline of Hungary, Poland, and Turkey.

- **Francis Fukuyama** is a senior fellow at FSI, and a faculty member of FSI's Center on Democracy, Development and the Rule of Law, and has written widely on issues in development and international politics. Earlier in his career, he was a member of the Political Science Department of the RAND Corporation, and a member of the Policy Planning Staff of the U.S. Department of State from 1981 to 1982.

- **Gábor Halmai** is an emeritus professor of the Eötvös Loránd University (ELTE) in Hungary and the European University Institute in Florence, where he served as Chair of Comparative Law between 2016 and 2022. His research interests include the backsliding of liberal democracies within the European Union, with special focus on the development of constitutionalism and human rights in Hungary.

- **Aziz Z. Huq** is a professor of law at the University of Chicago Law School. He is a scholar of U.S. and comparative constitutional law and his recent work includes a focus on democratic backsliding. His award-winning scholarship is published in several books and in leading law, social science, and political science journals.

- **Dr. Rachel Kleinfeld** studies and advises on issues involving troubled democracies and the intersection of democracy and security. Her award-winning book, *Advancing the Rule of Law Abroad*, describes the history of efforts to advance the rule of law and the most effective methods to deepen the rule of law within democratic systems. Earlier in her career, Kleinfeld co-founded and then directed the Truman National Security Project, which works to promote national security and democracy.

- **Steven Levitsky** is a professor at Harvard University, where he is the Director of the David Rockefeller Center for Latin American Studies, a Senior Fellow at the Kettering Foundation, and a Senior Democracy Fellow at the Council on Foreign Relations. His research focuses on democratization and authoritarianism, political parties, and weak and informal institutions, with a focus on Latin America. He has written or edited over a dozen books, including *How Democracies Die*.

- **Maria Popova** is an associate professor at McGill University. Her work explores the rule of law and democracy in Eastern Europe. Her book *Politicized Justice in Emerging Democracies* examines the weaponization of law to manipulate elections and control the media in Russia and Ukraine (1997-2004).

- **Stephen Richer** is the CEO of Republic Affairs, a consulting firm for democracy and the rule of law. He is also a Senior Practice Fellow in American Democracy at the Harvard Kennedy School's Ash Center for Democratic Governance and Innovation.

- **Dalibor Rohac** is a senior fellow at the American Enterprise Institute, where he studies European political and economic trends, U.S.-E.U. relations, and the post-Communist transitions and backsliding of countries in the former Soviet bloc. He is also a research associate at the Wilfried Martens Centre for European Studies in Brussels and previously was affiliated with the Cato Institute's Center for Global Liberty and Prosperity.

- **Susan Stokes** is a professor of political science at the University of Chicago and the Faculty Director of the Chicago Center on Democracy. Her research and teaching interests include democratic theory and how democracy functions in developing societies. Her latest book, *The Backsliders: Why Leaders Undermine Their Own Democracies*,

examines why democracies around the world are under assault by the leaders entrusted to preserve it.

- **Lucan Way** is a professor at the University of Toronto. His research focuses on global patterns of democracy and dictatorship. He has authored or co-authored several books on these topics, including *Revolution and Dictatorship: The Violent Origins of Durable Authoritarianism* and *Competitive Authoritarianism: Hybrid Regimes after the Cold War*.

## INTRODUCTION

We are university professors and scholars who have studied nations around the world experiencing autocratic consolidation and democratic backsliding, or the weakening of an existing democracy's democratic norms, processes, and institutions. Through our research, we recognize that one common way leaders with autocratic tendencies increase their authority is by asserting control over government institutions that have previously been insulated from political influence, including law enforcement and the judiciary. Once they have assumed control over these formerly independent state institutions, they capitalize on that authority by prosecuting political opponents and individuals who attempt to hold the regime accountable for unlawful behavior. Although the methods these leaders use to weaponize the justice system differ, they often involve changing existing laws or norms, degrading or eliminating prosecutorial independence, installing party loyalists while purging career civil servants, and then prosecuting adversaries.

Based only on the evidence available in the public record, the indictment of James B. Comey, Jr. mirrors many of the features of politicized prosecutions in the countries we study: President Trump's public statements demonstrate that he has long viewed Mr. Comey as an adversary; the President violated longstanding norms of prosecutorial independence in directing his Attorney General to bring the instant charges; and it was only after the previous U.S. Attorney departed that the newly-installed U.S. Attorney, formerly a personal attorney to the President, presented the indictment to the grand jury—over the objections of career prosecutors who concluded they lacked evidence to do so.

It is essential to view Mr. Comey's prosecution in the larger context of how politicized prosecutions are used in autocracies and backsliding democracies and the risks that even one

such prosecution poses. As we have seen in the countries we study, the misuse of the justice system to punish political adversaries undermines the rule of law and damages democratic governance. It can intimidate the individual targeted for prosecution and deter others from voicing disagreement with those in power. It is calculated to diminish the power of political opponents and opposition parties, thereby strengthening the autocratic leader. It also erodes public trust in the justice system and saps popular will to participate in politics. Yet because these politicized prosecutions arise within the existing justice system, they may appear to be legitimate exercises of state power.

Recognizing the dangers of such politicized and vindictive prosecutions to the fabric of democracy is vital, however. Vindictive prosecution claims require a court's review to ensure prosecutorial discretion is not abused to retaliate against political opponents. Judicial review of these claims is key to maintaining the rule of law and democratic norms. Here, publicly available evidence demonstrates Mr. Comey was targeted for prosecution based on improper animus, and that other such vindictive prosecutions are already in the works. The Court should not ignore this broader context and the dangerous precedent this prosecution sets and grant Mr. Comey's motion to dismiss the indictment.

## ARGUMENT

## I.  POLITICIZED PROSECUTIONS ARE CHARACTERISTIC OF COUNTRIES EXHIBITING DEMOCRATIC BACKSLIDING.

One key indicator of democratic backsliding is a regime's reliance on "autocratic legalism,"—the use or abuse of the law, or the trappings of law, to consolidate power and attack governmental institutions to diminish their independence and remove checks on the executive.[2]

---

[2] Javier Corrales, *Autocratic Legalism in Venezuela*, 26 J. of Democracy 37, 38 (Apr. 2015); Kim Lane Scheppele, *Autocratic Legalism*, 85 U. Chi. L. Rev. 545, 547-49 (2018). Scholars generally characterize autocracies as systems of government where a ruler or small ruling group has

As a governing leader gains power over previously independent institutions, such as the judiciary, prosecutors, and law enforcement, he is able to direct the force of law at his opponents, detaining, charging, and sometimes convicting them to remove political threats, silence or intimidate dissenting voices, and exact retribution.[3] In this way, by controlling the prosecutor's office, the leader can degrade or eliminate opposition parties, thereby ensuring his and his successors' entrenchment in office. The way in which a government seizes control over prosecutors varies based on the structure and traditions of a country's justice system, but the loss of these institutions' independence and the leader's ensuing abuse of them invariably damages the rule of law.

Below, we discuss examples from three countries that experienced democratic backsliding over the last two and a half decades and are now considered autocracies. In each country, a successful attack on prosecutorial independence enabled a leader to further consolidate power, eliminate political opposition, and degrade democratic choice. Although their methods vary, autocratic legalists often proceed in three steps when consolidating power over their state prosecutorial system: they (1) reduce prosecutorial independence; (2) install loyalists as prosecutors; and (3) target political opponents and those who seek to hold the regime accountable for criminal prosecution. Focusing on these three steps, we discuss the process of prosecutorial agency capture in Hungary, Venezuela, and Turkey.[4] Recognizing the path these

---

captured state institutions, manipulated democratic procedures, and eroded checks and balances so that outcomes are predetermined. A facade of democracy may remain, but rulers are not accountable to the people. *See, e.g.*, Maria Popova, *Putin-Style "Rule of Law" & the Prospects for Change*, 146 Daedalus 64 (2017); Steven Levitsky & Lucan Way, *The Rise of Competitive Authoritarianism*, 13 J. of Democracy 2 (April 2002).

[3] *See* Scheppele, *supra* note 2, at 550; Javier Corrales, *Autocracy Rising: How Venezuela Transitioned to Authoritarianism* 2, 14-15 (Rowman & Littlefield Publishing 2022).

[4] While heads of state seeking to centralize their power typically work to capture the courts and other government agencies simultaneously, we focus narrowly on prosecutorial agencies here, due to the direct relevance to this case. We also note that the countries we discuss below incorporated protections for prosecutorial independence in law; unlike these countries, the

backsliding countries took can contextualize the significance of the politicized prosecution of Mr. Comey, including the need for a close and careful examination of claims of vindictive prosecution, and a strong and independent judiciary to stop such vindictive prosecutions when they occur.

### A.    Hungary

Hungary was a functioning democracy fifteen years ago and is now considered an electoral autocracy.[5] In 2010, Viktor Orbán returned to power and immediately began consolidating control, including by attacking the independence of the Public Prosecutor's Office.[6] Orbán's party, Fidesz, won the two-thirds legislative majority needed to amend the Hungarian constitution and other major laws.[7] With this supermajority in place, the National Assembly installed a Fidesz loyalist as the Prosecutor General[8] and passed a law insulating him from removal, providing him with additional powers, and remaking the Public Prosecutor's Office to allow more centralized control. This law also extended the Prosecutor General's term from six to nine years and provided that the incumbent would remain in office, even after that term expired, until a new candidate received a two-thirds majority in the National Assembly.[9]

---

United States protects federal prosecutorial independence by relying on norms and policies, which are much easier to change.

[5] Fabio Angiolillo et al., V-Dem Institute, *Democracy Report 2025: 25 Years of Autocratization – Democracy Trumped?* 14 (Staffan Lindberg ed. 2025), https://www.v-dem.net/documents/61/v-dem-dr__2025_lowres_v2.pdf. In an "electoral autocracy" there are multiparty elections for the executive, but "insufficient levels of fundamental requisites such as freedom of expression and association, and free and fair elections." *Id.* at 13.

[6] Scheppele, *supra* note 2, at 549-50.

[7] Council of Eur., Venice Comm'n, *Opinion on CLXIII of 2011 on the Prosecution Service and Act CLXIV of 2011 on the Status of the Prosecutor General, Prosecutors and Other Prosecution Employees and the Prosecution Career of Hungary*, CDL-AD(2012)008, ¶ 18 (adopted June 15-16, 2012), https://www.coe.int/en/web/venice-commission/-/cdl-ad-2012-008-e; Steven Levitsky & Lucan Way, *The New Competitive Authoritarianism*, 31 J. of Democracy 1, 54 (Jan. 2020); Helen Levy, *The FIDESZ Wins the 2/3 Majority in the Hungarian Parliament*, Foundation Robert Schuman (Apr. 26, 2010), https://www.robert-schuman.eu/en/monitor/1011.

[8] Peter Krekó & Zsolt Enyedi, *Explaining Eastern Europe: Orbán's Laboratory of Illiberalism*, 29 J. of Democracy 3, 39, 42 (Jul. 2018); Levitsky & Way, *supra* note 2, at 61.

[9] Council of Eur., Venice Comm'n, *supra* note 7, ¶ 14.

With these changes, even if Fidesz were to lose its supermajority, its chosen Prosecutor General would remain in office. Indeed, the National Assembly appointed Fidesz member and Orbán ally Péter Polt to the position in 2010, and he served until 2025, when the legislature appointed a new Fidesz loyalist.[10]

Once Fidesz established control over the Public Prosecutor's Office, the Office began selectively charging political opponents with corruption, often timing the charges to coincide with elections, "to shrink the space available for criticizing and opposing the government."[11] The Office also controls case-related information to maximize political impact, providing information or photographs of the accused to sympathetic media outlets, while simultaneously classifying cases as state secrets to prevent defendants from explaining their side of the case to the public.[12] Although defendants may ultimately be acquitted after trial, or have cases against them dismissed prior to trial, simply by bringing the charges, the prosecution discredits them and their political party and effectively removes them as a political threat during elections. For example, allegations that Dezsö Hiszékeny, then a Budapest deputy mayor and Socialist Party member, was implicated in a bribery scandal became public in July 2014, three months ahead of the municipal election in which he was a candidate.[13] A court acquitted Hiszékeny of the charges

---

[10] *Viktor Orban's "Bullet Shield" and Long-Time Chief Prosecutor Leaves Post to Secure Job at Constitutional Court*, bne IntelliNews (May 16, 2025), https://www.intellinews.com/viktor-orban-s-bullet-shield-and-long-time-chief-prosecutor-leaves-post-to-secure-job-at-constitutional-court-381444/.

[11] David M. Driesen, *The Unitary Executive Theory in Comparative Context*, 72 Hastings L.J. 1, 34, 36 (2020).

[12] Bálint Magyar, *Post-Communist Mafia State: The Case of Hungary* 50-51, 223-24 (Bálint Bethlenfalvy, Ágnes Simon, Steven Nelson & Kata Paulin trans., 2016), https://dsps.ceu.edu/sites/pds.ceu.hu/files/attachment/event/773/magyarpost-communistmafiastatecaseofhungaryfinal2016_1.pdf; *see also* János Kornai, *Hungary's U-Turn: Retreating from Democracy*, 26 J. of Democracy 34, 35-36 (Jul. 2015); Council Implementing Decision (EU) 2022/2506, Measures for the Protection of the Union Budget Against Breaches of the Principles of the Rule of Law in Hungary, 2022 O.J. (L 325) 95 ¶ 12.

[13] Nagy József, *Hiszékeny Dezső nem Kért Ötmilliót* [*Dezsö Hiszékeny Did Not Ask for Five Million*] (Apr. 4, 2016), https://24.hu/belfold/2016/04/21/hiszekeny-dezso-nem-kert-otmilliot/ (translated from Hungarian).

in 2016.[14] At the same time, the Public Prosecutor's Office declines to investigate or prosecute alleged corruption committed by Orbán's political allies.[15]

## B.    Venezuela

Venezuela also exemplifies this pattern. While President Hugo Chávez was in office from 1999 to 2013, he consolidated control over much of the Venezuelan government.[16] After Chávez's death, his successor President Nicolás Maduro faced increased political opposition and mass protests. Maduro leveraged the state institutions Chávez had already captured, including the Public Prosecutor's Office, to stabilize his precarious position.[17] Maduro's party reappointed Luisa Ortega Díaz, long considered a political ally,[18] as Chief Prosecutor[19] and then pressured Ortega to prosecute opposition leaders, including Leopoldo López, a former mayor of a Caracas municipality, as well as Nobel Peace Prize winner María Corina Machado, a member of the National Assembly, and Antonio Ledezma, the mayor of Caracas,[20] who had helped lead the widespread political protests. The government charged López with "inciting violence," based on his written advocacy for political change, accused Machado of conspiracy and treason, and arrested Ledezma for allegedly supporting an attempted coup.[21] The U.S. Department of State, during the first Trump administration, characterized the charges against López as "specious," and

---

[14] *Id.*; Medvegy Gábor, *Felmentették Hiszékeny Dezsőt* [*Dezsö Hiszékeny Was Acquitted*] (Jan. 30, 2017), https://24.hu/belfold/2017/01/30/felmentettek-hiszekeny-dezsot/ (translated from Hungarian).

[15] Kornai, *supra* note 12, at 35-36; 2022 O.J. (L 325) 95, *supra* note 12, ¶ 12; Magyar, *supra* note 12, at 50-51, 223-24.

[16] Corrales, *supra* note 3, at 1-2.

[17] Corrales, *supra* note 3, at 119.

[18] *Luisa Ortega: Venezuela's Chief Prosecutor*, BBC (Aug. 3, 2017), https://www.bbc.com/news/world-latin-america-40812321.

[19] Corrales, *supra* note 3, at 21.

[20] Corrales, *supra* note 2, , at 44-45; *Venezuela Key Opposition Leaders Seized After Poll*, BBC (Aug. 1, 2017), https://www.bbc.com/news/world-latin-america-40787830.

[21] Corrales, *supra* note 2, at 44-45.

described the detained protestors and political opponents as "prisoners of conscience."[22] Years later, Chief Prosecutor Ortega acknowledged that the Maduro government had pressured her to charge López,[23] despite the constitutional guarantees of the independence of her office.[24] By then, Ortega had attempted to reassert the Office of Public Prosecutor's independence by initiating cases and publicly criticizing certain Maduro government initiatives.[25] In retaliation, the National Assembly dismissed Ortega before her appointment expired in violation of the law.[26] Ortega fled to Columbia[27] and Maduro's government replaced her with a close political ally.[28]

### C. Turkey

Turkey provides an even more extreme example of an autocratic leader's abuse of criminal prosecutions to target political opponents. Recep Tayyip Erdoğan became Turkey's Prime Minister in 2003.[29] While Erdoğan initially implemented some democratic reforms,[30] by 2013, he became increasingly autocratic,[31] and after amending the constitution to grant more

---

[22] Press Statement, U.S. Dep't of State (Feb. 18, 2017), https://2017-2021.state.gov/venezuela-political-prisoners-should-be-released-immediately/.

[23] Andrea Guerero, *Ortega Díaz Denuncia Presiones para Acusar a López por Muertes* [*Ortega Díaz Denounces Pressure to Accuse López of Deaths*], La Verdad (Feb. 15, 2018), https://laverdad.com/ortega-diaz-denuncia-presiones-para-acusar-a-lopez-por-muertes15/[https://perma.cc/4SAU-ZG4F]; *Ortega Díaz en Caso de Leopoldo López: Me Presionó Diosdado Cabella* [*Ortega Diaz in the Case of Leopoldo Lopez: Diosdado Cabella Pressured Me*], El Nacional (Feb. 15, 2018), https://www.elnacional.com/2018/02/ortega-diaz-caso-leopoldo-lopez-presiono-diosdado-cabello_223186/.

[24] Int'l Comm'n of Jurists, *No Will for Justice in Venezuela: A Prosecutor's Office that Fosters Impunity* 13 (Apr. 2024), https://www.icj.org/wp-content/uploads/2024/11/No-will-for-Justice-in-Venezuela.-A-Prosecutors-Office-that-fosters-impunity.pdf.

[25] Int'l Comm'n of Jurists, *ICJ Position Paper on the Dismissal of the Attorney General of Venezuela* 1 (Aug. 16, 2017), https://www.icj.org/wp-content/uploads/2017/08/Venezuela-AG-dismissal-Advocacy-Analysis-Brief-2017-ENG.pdf.

[26] *Id.* at 1; *Luisa Ortega: Venezuela's Chief Prosecutor*, BBC (Aug. 3, 2017), https://www.bbc.com/news/world-latin-america-40812321.

[27] Guerero, *supra* note 23.

[28] Int'l Comm'n of Jurists, *supra* note 25, at 1.

[29] Paul Kirby, *Erdogan: Turkey's All-powerful Leader of 20 years*, BBC News (Mar. 24, 2023), https://www.bbc.com/news/world-europe-13746679.

[30] Ozan Varol, *Stealth Authoritarianism*, 100 Iowa L. Rev. 1673, 1715 (2015).

[31] Kirby, *supra* note 29.

power to the presidency, became President in 2014.[32] In 2016, rebel soldiers attempted a coup, nearly capturing Erdoğan.[33] Following the failed coup attempt, Erdoğan assumed even greater authority over the judiciary, law enforcement, and other government institutions,[34] purging close to one third of judges and prosecutors, nearly all of whom were then prosecuted, mainly for alleged membership in a terrorist organization—and replacing them with less experienced loyalists.[35] Erdoğan's government also amended the constitution to allow him to appoint members of the Supreme Board of Judges and Prosecutors ("HSYK"), the board that oversees the appointment, promotion, and discipline of judges and prosecutors.[36]

With the judiciary and prosecutors under Erdoğan's control, he deployed the criminal justice system to neutralize his political rivals and the media. In 2021, for example, Erdoğan's government opened investigations into over 48,000 individuals, including politicians, journalists, and ordinary citizens, for violating a defamation law that criminalizes insulting the president.[37] Between July 2015 and 2021, more than 5,000 opposition lawmakers and party members, largely from the People's Democratic Party, were incarcerated on charges related to political speech and

---

[32] Driesen, *supra* note 11, at 30.

[33] Kirby, *supra* note 29.

[34] Berk Esen & Sebnem Gumuscu, *How to Fight Turkey's Authoritarian Turn*, 36 J. of Democracy 106, 106 (2025).

[35] Hum. Rts. Found., *The Collapse of the Rule of Law and Human Rights in Turkey: The Ineffectiveness of Domestic Remedies and the Failure of the ECtHR's Response* 19 (Apr. 2019), https://hrf.org/latest/the-collapse-of-the-rule-of-law-and-human-rights-in-turkey/; *ECtHR Must Understand that Turkey's Gülen Trials are Vindictive, Jurist Says*, Turkish Minute (Jan. 24, 2024), https://turkishminute.com/2024/01/24/ecthr-must-understand-that-turkey-gulen-trial-are-vindictive-jurist-say/.

[36] Driesen, *supra* note 11, at 31; David M. Driesen, *The Specter of Dictatorship: Judicial Enabling of Presidential Power* 165 (Stanford Univ. Press 2021); *see also* Blaise Misztal & Jessica Michek, *HSYK Elections and the Future of Judicial Independence in Turkey*, Bipartisan Policy Center (Dec. 12, 2014), https://bipartisanpolicy.org/blog/hsyk-elections-and-the-future-of-judicial-independence-in-turkey/ (discussing 2014 legislation that gave the Minister of Justice the ability to make disciplinary determinations and unilaterally issue decrees in HSYK's name, reducing the independence of the judiciary prior to the 2017 amendments).

[37] U.S. Dep't of State, Turkey (Türkiye) 2022 Human Rights Report, at 42 (2022), https://www.state.gov/wp-content/uploads/2023/03/415610_TU%CC%88RKIYE-2022-HUMAN-RIGHTS-REPORT.pdf.

terrorism.[38] Erdoğan's government also prosecuted his highest-profile political opponents. In 2022, for example, the government charged Ekrem İmamoğlu, the opposition Republican People's Party ("CHP") leader and mayor of Istanbul, for insulting public officials. His sentence included both a prison term and a ban on participation in politics, although both the sentence and ban were suspended pending appeal. Then, in 2025, as İmamoğlu was preparing for an early presidential primary as the CHP's frontrunner, he, together with his team of top officials and two CHP mayors, were arrested on charges of corruption and terrorism.[39]

## II.    THIS PROSECUTION BEARS STRIKING PARALLELS TO POLITICIZED PROSECUTIONS IN BACKSLIDING DEMOCRACIES.

This case raises concerning parallels to politicized prosecutions in the countries we have studied. Publicly available evidence shows the instant charges, levied against a perceived adversary, were initiated after the President violated traditional norms protecting the prosecutorial independence of the Justice Department. When the President did not get the results he wanted by pressuring the Attorney General, he installed his former personal lawyer, who had never previously served as a prosecutor, to do the job. The facts closely resemble the pattern autocratizing countries use to consolidate prosecutorial power and remake their criminal justice systems into tools to exert control rather than uphold the rule of law.

First, President Trump has for years made no secret of his animosity toward Mr. Comey and his desire to see him prosecuted.[40] Evidence in the public record suggests that President Trump first became angry at Mr. Comey for refusing to pledge loyalty to the President and for his role in investigating and publicly confirming the existence of the investigation into Russian

---

[38] *Id.* at 21.
[39] Esen & Gumuscu, *supra* note 34, at 106, 109.
[40] Maggie Haberman, *Trump and Comey: An Escalating Conflict with No Off-Ramp*, N.Y Times (Sept. 29, 2025), https://www.nytimes.com/2025/09/29/us/politics/trump-comey-escalating-conflict.html.

interference in U.S. elections, which the President said was a "hoax."[41] The President fired Mr.

Comey in 2017, four years into Mr. Comey's ten-year tenure as FBI Director, after Mr. Comey

publicly confirmed in congressional testimony that the FBI had been investigating suspected

Russian interference during the 2016 election.[42] A month later, after Mr. Comey again testified

before Congress, President Trump described Mr. Comey to reporters as a "leaker and a liar,"[43]

and repeated that accusation in a series of April 2018 tweets, in which he also called Mr. Comey

"weak," an "untruthful slime ball," and "[s]lippery," stating that "he should be prosecuted."[44]

Later, Mr. Comey publicly described President Trump as "not fit to be president . . . on moral

grounds," and endorsed another candidate in the 2024 election.[45] Mr. Comey, like Venezuelan

Chief Prosecutor Ortega, lost his position as a law enforcement officer after demonstrating he

would not surrender the independence of his position or avoid conducting investigations the

President opposed. And like the political opponents Erdoğan and Maduro's governments

investigated for alleged corruption, terrorism, or conspiracy, the President appears to have

singled Mr. Comey out for retribution because of the positions he has taken.

At the same time that the President targeted Mr. Comey, he shielded those he viewed as

loyal to him from further punishment, just as autocratic governments protect their own party

members from prosecution. For example, moments after taking office in January 2025, President

---

[41] *Id*.; Ivan Pereira, *Trump, Comey Had Years of Turmoil Before Former FBI Director's Indictment*, ABC News (Sept. 26, 2025), https://abcnews.go.com/Politics/back-decade-turmoil-trump-comey/story?id=125970714.

[42] Pereira, *supra* note 41.

[43] *Id*.

[44] Donald J. Trump (@realDonaldTrump), X (Apr. 13, 2018, at 8:01am), https://x.com/realDonaldTrump/status/984763579210633216; Donald J. Trump (@realDonaldTrump), X (Apr. 13, 2018, at 8:17am), https://x.com/realDonaldTrump/status/984767560494313472; *see also* Christina Caron, *Trump Blasts Comey in Barrage of Tweets, Calling Him 'Slippery'*, N.Y. Times (Apr. 15, 2018), https://www.nytimes.com/2018/04/15/us/politics/trump-comey-tweets.html.

[45] Pereira, *supra* note 41.

Trump pardoned or commuted the sentences of over 1,500 people convicted of crimes in connection with the January 6, 2021 riot at the U.S. Capitol[46] in support of President Trump. President Trump has also pardoned other former Republican lawmakers, including former Republican congressman Michael Grimm, a Trump supporter who in 2014 pleaded guilty to felony tax evasion.[47] Less than two weeks ago, President Trump commuted the prison sentence of former Republican congressman George Santos, stating that Mr. Santos "had the Courage, Conviction, and Intelligence to ALWAYS VOTE REPUBLICAN!"[48]

In many countries, including the three examples discussed above, prosecutorial independence is established by law, which heads of state change or circumvent to reduce the independence of public prosecutors. Here, while no laws establish prosecutorial independence, the public evidence indicates that President Trump violated longstanding *norms*[49] when he pressured the Attorney General to indict Mr. Comey. Days before the statute of limitations for

---

[46] Mandy Taheri, *List of Trump's Pardons and Commutations for GOP Lawmakers*, Newsweek (Oct. 18, 2025), https://www.newsweek.com/list-of-trumps-pardons-and-commutations-for-gop-lawmakers-10900810.

[47] Jess Bidgood, *Pardons Become the Latest Trump Flex*, N.Y. Times (May 28 2025), https://www.nytimes.com/2025/05/28/us/politics/trump-pardons.html.

[48] Donald J. Trump (@realDonaldTrump), Truth Social (Oct. 17, 2025, at 6:04pm), https://truthsocial.com/@realDonaldTrump/posts/115391767709119144; Kevin Breuninger, *Trump Commutes Prison Sentence of ex-GOP Rep. George Santos*, CNBC (Oct. 17, 2025), https://www.cnbc.com/2025/10/17/trump-george-santos-prison-commutation.html.

[49] *See, e.g.*, U.S. Dep't of Just., Just. Manual § 1-8.600(A) (Apr. 2022), https://www.justice.gov/jm/jm-1-8000-congressional-relations#1-8.600 (establishing policy against "advis[ing] the White House concerning pending or contemplated criminal or civil law enforcement investigations or cases" "to promote and protect the norms of Departmental independence and integrity in making decisions regarding criminal and civil law enforcement"); Memorandum from Dana Remus, Counsel to the President, Regarding Prohibited Contacts with Agencies and Departments 2, 10-12 (Jul. 21, 2021), https://bidenwhitehouse.archives.gov/wp-content/uploads/2021/07/White-House-Policy-for-Contacts-with-Agencies-and-Departments.pdf (noting that "absent rare and exceptional circumstances, White House personnel will not discuss specific pending criminal or affirmative civil investigations or cases with DOJ" and "may never engage in any communication with DOJ" regarding an investigation "with the intent to improperly influence" DOJ); Protect Democracy, *White House Communications with the DOJ and FBI* (Mar. 8, 2017), https://protectdemocracy.org/work/agency-contacts/ (explaining that similar policies have been in place for decades).

the instant charges was set to expire, President Trump publicly posted a message to Attorney General Pam Bondi describing Mr. Comey as "guilty as hell" and declaring that "JUSTICE MUST BE SERVED, NOW!!!"[50] Such a statement violates decades of White House and Justice Department policies designed to protect against improper political interference in charging decisions, or the appearance of such interference, by the White House.[51]

The public record also demonstrates that to achieve his desired outcome, President Trump placed a handpicked loyalist at the helm of the U.S. Attorney's Office for the Eastern District of Virginia. After then-U.S. Attorney and former career prosecutor Erik Siebert reportedly raised concerns about the strength of the charges against Mr. Comey, the President called for his removal.[52] Mr. Siebert resigned, and in his place, President Trump installed Lindsey Halligan, an insurance lawyer and the President's former personal lawyer turned White House aide, who lacked any prior prosecutorial experience.[53] This is similar to practices by autocratic leaders, who commonly install party loyalists as their chief prosecutors to pursue charges against their political opponents.

Finally, reporting suggests that experienced, apolitical career prosecutors in the U.S. Attorney's Office did not believe that sufficient evidence supported the instant charges. Career prosecutors reportedly advised Ms. Halligan that they lacked evidence to prove the proposed charges against Mr. Comey beyond a reasonable doubt, and that they could not even establish the

---

[50] Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, at 6:44pm), https://truthsocial.com/@realDonaldTrump/posts/115239044548033727.
[51] *See supra* note 49.
[52] Glenn Thrush et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sept. 19, 2025), https://www.nytimes.com/2025/09/19/us/politics/erik-siebert-comey-letitia-james.html.
[53] Katherine Faulders, Alexander Mallin & Peter Charalambous, *Prosecutors' Memo to New U.S. Attorney Found No Probable Cause to Charge James Comey: Sources*, ABC News (Sept. 25, 2025), https://abcnews.go.com/US/prosecutors-memo-new-us-attorney-recommended-plans-charge/story?id=125925246.

lower probable cause standard.[54] Nonetheless, Ms. Halligan overruled them and decided to present the charges to the grand jury.[55] Similarly, the charges levied against political opponents of autocratic and backsliding regimes are frequently unsupported, as for example, the charges against former mayor İmamoğlu were based on evidence from "secret" witnesses,[56] and the charges against López were described as "specious"[57] and predicated on the theory that his political writings had "subliminally" incited violence at protests.[58]

## III. POLITICIZED PROSECUTIONS UNDERMINE THE RULE OF LAW.

From our scholarship, we know that even individual politicized prosecutions, such as the one against Mr. Comey, can have outsized effects on the rule of law and adherence to democratic principles. It is thus essential that they be quickly and decisively halted through judicial review based on well-established legal principles.

### A. Politicized prosecutions chill and deter political opponents, which further aids in the consolidation of power.

Politicized prosecutions harass their targets by consuming their time and resources, tarnishing their reputations, and impeding their future opposition efforts.[59] The result is a chilling effect that goes beyond the immediate target, broadly deterring political advocacy and speech by instilling fear in political opponents or those who would seek to uphold the rule of law by holding members of the regime accountable. Even when the charges are false or exaggerated,

---

[54] *Id.*
[55] Thrush et al., *supra* note 52.
[56] Esen & Gumuscu, *supra* note 34, at 109; Çinar Özer, *Secret Witness: How İmamoğlu and Many Others are Incriminated in Turkey*, Turkey Recap (May 13, 2025), https://www.turkeyrecap.com/p/secret-witness-how-imamoglu-and-many.
[57] Press Statement, U.S. Dep't of State, Venezuela: Political Prisoners Should be Released Immediately (Feb. 18, 2017), https://2017-2021.state.gov/venezuela-political-prisoners-should-be-released-immediately/.
[58] Corrales, *supra* note 2, at 44-45.
[59] Kim Lane Scheppele, *Restoring Democracy Through International Law*, 39 Am. U. Int'l L. Rev. 587, 617-18 (2024).

and the prosecution never reaches trial or leads to a dismissal or acquittal, the objective is often achieved, i.e., to expel opposition figures "from the political scene, and/or to discredit and smear the political organization they represent."[60]

The countries discussed above are instructive. As noted, *supra* p. 9, in Hungary, Fidesz's prosecutions of political opponents led to a shrinking of the public sphere available for opposition.[61] Orbán's prosecutors charged opposition politicians with corruption in the lead up to elections with the purpose of influencing the elections.[62] Even though the charges were usually dropped and many of the cases never reached trial or ended in acquittals, the "targeted individual [was] nevertheless successfully discredited" politically, benefitting the autocratic leader and his party.[63]

Venezuela witnessed a similar effect. López, a popular leader of the democratic opposition, was barred from holding office in 2008 as a result of the accusations lodged against him and eventually was forced into exile; in 2017 opposition leader Henrique Capriles was barred from a presidential run based on similar accusations.[64] In Turkey, the thousands of political prosecutions have deterred large parts of society from "mobilizing to back the

---

[60] Magyar, *supra* note 12, at 223-24; *see generally* Maria Popova, *Politicized Justice in Emerging Democracies: A Study of Courts in Russia and Ukraine* (2012), https://doi.org/10.1017/CBO9781139055345.
[61] Driesen, *supra* note 11, at 32-34.
[62] *Id.* at 34; *see also* Khatia Shamanauri, *Georgian Dream Detains Eight Opposition Figures*, The Jamestown Foundation (Jul. 16, 2025), https://jamestown.org/program/georgian-dream-detains-eight-opposition-figures/ (describing the detention of eight prominent opposition figures shortly after the ruling Georgian Dream party returned to power and less than a year after Bidzina Ivanishvili, the founder and leader of Georgian Dream, publicly vowed to bring the opposition "to justice" for what he called their "'treasonous actions'").
[63] Magyar, *supra* note 12, at 224.
[64] Anne Applebaum, *Autocracy, Inc.* 142-44 (Vintage Books 2025).

opposition and protest the regime's authoritarian moves" out of fear they will face a similar result.[65]

In each case, politicized prosecutions weakened political opposition and enabled the autocrats to accrue more power, further entrenching their faction in office.

### B.    Politicized prosecutions erode public trust in government and sow doubt in the fairness of the justice system.

Politicized prosecutions also generate broader disillusionment and distrust with the justice system, and more broadly, the government. This can have long-term effects on the rule of law because "[h]owever fantastical" the politicized allegations may be, they "deepen the natural cynicism that autocracies cultivate in their citizens, reinforcing the public's conviction that all politics is dirty, including opposition politics."[66]

In Turkey, where Erdoğan's government has "systematically subverted democratic institutions" since his rise to power,[67] including through politicized prosecutions, the effect on public distrust of institutions is clear. A 2024 study found that a majority of Turks (56%) think the Turkish court system has negatively influenced the country and more than a quarter (26%)

---

[65] Esen & Gumuscu, *supra* note 34, at 109. The same is true under Vladimir Putin's regime in Russia, where the Kremlin has used the country's "politically pliable judiciary . . . to threaten, jail, or force into exile numerous political opponents: from credible competitors to far-fetched ones, from declared oppositionists to potential ones, from dissidents with high name recognition to the regular citizen protestor." Popova, *supra* note 2, at 69; *cf.* Editorial Board, *The John Bolton Indictment*, Wall Street Journal (Oct. 16, 2025), https://www.wsj.com/opinion/the-john-bolton-indictment-f4e5aab6?st=d5VLBK&reflink=desktopwebshare_permalink (noting that in regards to the prosecution of John Bolton, "[t]he lesson is that if you work for the President, he then sours on you and you criticize him, you are not safe.").
[66] Applebaum, *supra* note 64, at 143.
[67] Esen & Gumuscu, *supra* note 34, at 106.

say its influence is "*very* bad."[68] These views have worsened in the five years since the prior

survey,[69] indicating increasing distrust the longer the autocratic regime remains in power.

The role of the independent prosecutor can be key to upholding principles of fairness and

impartiality in democratic governments, and when this role is compromised, so too is a country's

system of justice and the rule of law.[70] In Venezuela, which ranks last out of the 142 countries

measured by the World Justice Project with respect to adherence to the rule of law through its

criminal justice system,[71] the politically compromised Office of the Prosecutor "has participated

in validating arbitrary arrests conducted by security forces for political reasons, violations of

freedom of expression and other fundamental freedoms, torture and ill-treatment, and

extrajudicial executions."[72] Accordingly, the International Commission of Jurists has for years

---

[68] Laura Clancy, Jacob Poushter & Sofia Hernandez Ramones, *How People in Turkey View Societal Conflicts and Institutions in their Country*, Pew Research Center (Oct. 16, 2024), https://www.pewresearch.org/global/2024/10/16/how-people-in-turkey-view-societal-conflicts-and-institutions-in-their-country/#views-of-institutions (emphasis added).

[69] *Id.* Another recent study found over 67 percent of Turks lack confidence in the judicial system. *Majority in Turkey Don't Trust Judicial System: Survey*, Turkish Minute (May 27, 2024), https://www.turkishminute.com/2024/05/27/majority-turkey-do-not-trust-judicial-system-survey/.

[70] International organizations recognize the importance of independent prosecutors as key components of a fair justice system. The United Nations' Guidelines on the Role of Prosecutors notes, "[s]tates shall ensure that prosecutors are able to perform their functions without intimidation, hindrance, harassment, improper influence or unjustified exposure to civil, penal or other liability." U.N. Off. of Drugs and Crime & Int'l Ass'n of Prosecutors, *The Status and Role of Prosecutors* 7 (Dec. 2014), https://www.unodc.org/documents/justice-and-prison-reform/14-07304_ebook.pdf. The International Association of Prosecutors' Standards of Professional Responsibility and Statement of the Essential Duties and Rights of Prosecutors states that "prosecutorial discretion . . . should be exercised independently and be free from political interference." *Id.*; *see also id.* at 1 ("Prosecutors are the essential agents of the administration of justice, and as such should respect and protect human dignity and uphold human rights, thus contributing to ensuring due process and the smooth functioning of the criminal justice system. Prosecutors also play a key role in protecting society from a culture of impunity and function as gatekeepers to the judiciary." (quoting Report of the Special Rapporteur on the Independence of Judges and Lawyers (A/HRC/20/19), para. 93.)).

[71] World Justice Project, *Rule of Law Index 2024* 177, https://worldjusticeproject.org/rule-of-law-index/downloads/WJPIndex2024.pdf.

[72] Int'l Comm'n of Jurists, *supra* note 24, at 4.

recommended strengthening the independence of the Office "to re-establish the trust of judicial operators and the population in general."[73]

### C. Because political prosecutions appear to take place within the legal system, recognizing them as a step toward authoritarianism can be difficult.

Modern autocracies look different from their predecessors. Today's autocrats can "come to power not with bullets but with laws,"[74] and they tend to function—at least to some extent—within the legal system, in an attempt to legitimize their actions.[75] The "ultimate goal" of these regimes, however, is "to use the legal system to crush resistance and concentrate power."[76] The result is that everyday citizens may be unable to recognize the effects on the rule of law and the damage to democratic principles. That democratic backsliding is often a nonlinear and gradual process only compounds the difficulty of recognizing it.

Politicized prosecutions fit well within this framework. Modern autocrats often "prefer to silence critics without creating corpses."[77] Instead of imprisoning opponents "without [apparent] due process," modern autocrats "prosecute them for violations of the existing criminal laws."[78] Because the prosecutions can be shrouded in legitimacy, recognizing them as a step toward autocracy can be difficult. Even as the number of prosecutions increase, because democratic

---

[73] *Id.* at 43.
[74] Scheppele, *supra* note 2, at 582.
[75] *See* Tom Ginsburg, *Authoritarian International Law?*, 114 Am. J. of Int'l L. 221, 223 (2020) ("Today's authoritarian regimes are increasingly facile in their engagement with international legal norms and institutions, deploying legal arguments with greater acuity, even as they introduce new forms of repression that are legally and technologically sophisticated.").
[76] Javier Corrales, *Telltale Signs of Democratic Backsliding*, Persuasion (Jan. 28 2022), https://www.persuasion.community/p/telltale-signs-of-democratic-backsliding?r=69ca3&utm_campaign=post&utm_medium=web.
[77] Applebaum, *supra* note 64, at 139.
[78] Varol, *supra* note 30, at 1679.

systems appear to remain in place, everyday citizens may ask, "What could have gone so badly wrong when so much looks the same?"[79]

Politicized prosecutions also divert attention from the illegal actions of those in power.[80] In this way, the prosecutions are "a useful tool for illiberal [leaders] because they desperately need the public to turn the attention the other way. By saying that the other side is worse, they can achieve this."[81]

## IV.    ADDITIONAL POLITICAL PROSECUTIONS HAVE BEEN INITIATED OR THREATENED.

Because autocratic legalists cloak their actions in the legitimacy of law and previously trusted institutions, the descent into autocracy can be hard to stop.[82] Yet the ability to recognize the risks posed by politicized prosecutions like this one is vital, especially as they usually foretell a pattern of similar actions to come. Indeed, autocratic legalists tend to pursue many such prosecutions close in time because doing so increases their chilling effect, signals the regime's strength, and exhausts the opposition.[83] This pattern of politicized prosecutions is already becoming visible here: while Mr. Comey may have been the first high profile target of this administration to be indicted, he will not be the last. Just a few weeks ago, on October 9, the U.S. Attorney's Office for the Eastern District of Virginia indicted New York Attorney General Letitia James on one count of bank fraud and one count of false statements to a financial

---

[79] Scheppele, *supra* note 2, at 582.

[80] *See* Applebaum, *supra* note 64, at 142 ("Corruption accusations against dissidents also deflect attention away from the corruption of the ruling party.").

[81] Javier Corrales, *Trump Is Using the Legal System Like an Autocrat*, N.Y. Times (Mar. 5, 2020), https://www.nytimes.com/2020/03/05/opinion/autocratic-legalism-trump.html

[82] *See id.*

[83] *See, e.g.*, Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Just. 199 (Aug. 2013), https://www.jstor.org/stable/10.1086/670398; Steve Levitsky & Lucan A. Way, *Competitive Authoritarianism: Hybrid Regimes After the Cold War* 9 (2010).

institution.[84] Trump has repeatedly criticized Attorney General James in public statements after she successfully brought a civil fraud case against him and other individuals and entities within the Trump Organization.[85] And Trump's September message to Attorney General Bondi demanding prosecution of his political opponents named Ms. James specifically.[86]

Even putting aside these statements from the President, Attorney General James's indictment, like Mr. Comey's, shows other signs of external and improper political pressure. Former U.S. Attorney Erik Siebert, a career prosecutor, had previously concluded that there was not enough evidence to indict Ms. James.[87] But, as noted above, he was reportedly forced out of his job and replaced with interim U.S. Attorney Halligan.[88] Ms. Halligan was the only prosecutor who signed the indictment and the only attorney to present the case to the grand jury—unusually, no career prosecutors joined her.[89]

Federal prosecutions of the President's political opponents may continue beyond Ms. James and Mr. Comey. In his tweet to Attorney General Bondi, President Trump named Adam Schiff, a California senator and the lead impeachment manager in the House of Representatives during Mr. Trump's first impeachment trial,[90] as another target for prosecution. According to

---

[84] Geoff Bennett & Ali Schmitz, *N.Y. Attorney General Letitia James Indicted on Fraud Charge After Pressure from Trump*, PBS News (Oct. 9, 2025), https://www.pbs.org/newshour/show/n-y-attorney-general-letitia-james-indicted-on-fraud-charge-after-pressure-from-trump.

[85] *See, e.g.*, Erica Orden et al., *New York Attorney General Letitia James, a Trump Foe, is Indicted by Trump's DOJ*, POLITICO (Oct. 9, 2025), https://www.politico.com/news/2025/10/09/letitia-james-indictment-trump-00600698 ("Trump, in turn, has called James 'racist,' as well as 'grossly incompetent,' and has made clear that he wants her prosecuted.").

[86] Donald J. Trump (@realDonaldTrump), *supra* note 50.

[87] Thrush et al., *supra* note 52.

[88] Madeline Halpert, *New York Attorney General Letitia James Criminally Indicted*, BBC (Oct. 9, 2025), https://www.bbc.com/news/articles/c4g9n4xj904o.

[89] Orden, *supra note* 85.

[90] Kristen Welker & Rebecca Shabad, *Trump Accidentally Posted Message Pressuring Pam Bondi to Charge his Enemies, Source Says*, NBC News (Oct. 10, 2025), https://www.nbcnews.com/politics/justice-department/trump-accidentally-posted-message-pressuring-pam-bondi-charge-enemies-rcna236830; Donald J. Trump (@realDonaldTrump), *supra* note 50.

media reports, in a recent Oval Office meeting with the Attorney General, Deputy Attorney General Todd Blanche, and FBI Director Kash Patel, Mr. Trump identified others he wanted prosecuted as well: Jack Smith, who brought criminal indictments against President Trump related to efforts to overturn the 2020 elections, Andrew Weissman, who was part of a team investigating the Trump campaign's ties to Russia, and Lisa Monaco, the former Deputy Attorney General under the Biden administration who oversaw investigations relating to Mr. Trump's alleged election interference and mishandling of classified documents.[91]

There are other troubling signs that President Trump intends on targeting his political opponents using the immense prosecutorial power of the federal government. Reporting indicates the administration is seeking to install loyalists at the IRS criminal-investigative division to facilitate the initiation of politically-motivated probes into left-leaning individuals and groups.[92] And a Justice Department directive sent to several U.S. attorney's offices instructed the offices to investigate a group funded by George Soros, a significant donor to the Democratic Party who has often been the object of the President's ire.[93] The directive "suggests department leaders are following orders from the president that specific people or groups be subject to criminal investigation—a major break from decades of past practice meant to insulate the Justice Department from political interference."[94]

---

[91] Glenn Thrush, *Trump Names More Foes He Wants Prosecuted as Bondi and Patel Look On*, N.Y. Times (Oct. 15, 2025), https://www.nytimes.com/2025/10/15/us/politics/trump-bondi-patel-blanche-oval-office.html; Caitlin Oprysko, Brendan Bordelon & Yasmin Khorram, *K Street shudders as Trump Demands a Microsoft Exec's Firing*, POLITICO (Sept. 30, 2025), https://www.politico.com/news/2025/09/30/microsoft-monaco-kstreet-trump-00589058.
[92] Brian Schwartz, Richard Rubin & Joel Schectman, *Trump Team Plans IRS Overhaul to Enable Pursuit of Left-Leaning Groups*, The Wall Street Journal (Oct. 15, 2025), https://www.wsj.com/politics/policy/trump-irs-investigations-left-leaning-groups-democratic-donors-612a095e.
[93] Devlin Barrett, *Justice Dept. Official Pushes Prosecutors to Investigate George Soros's Foundation*, N.Y. Times (Sept. 25, 2025), https://www.nytimes.com/2025/09/25/us/politics/justice-trump-george-soros-foundation.html.
[94] *Id.*; *see also* U.S. Dep't of Just., Just. Manual § 1-8.600(A).

Politicized prosecutions are typical of autocratic countries, not democratic ones. We see a concerning trend of such prosecutions, and the threat of additional ones, in the first nine months of President Trump's second administration.

## V.    JUDICIAL REVIEW IS AN IMPORTANT CHECK AGAINST POLITICIZED PROSECUTIONS.

As discussed in Section III, *supra*, the use of political prosecutions in autocratic and backsliding countries to secure the regime's authority and stifle dissent damages the rule of law and public trust in governmental institutions. This context, together with the continuing pressure from the Trump administration to investigate additional political opponents and individuals who have sought to hold Mr. Trump accountable, is important to consider when determining whether the charges brought against Mr. Comey constitute a vindictive prosecution.

*Amici* understand that a defendant raising a claim of vindictive prosecution must satisfy a heavy burden, as prosecutors are given broad discretion to enforce the law, including discretion to bring charges. While the bar is set high, it is essential that courts dismiss cases that meet that standard. Here, as explained above in Section II, the publicly available evidence strongly suggests that Mr. Comey would not have been prosecuted but for President Trump's perception of him as an enemy and pressure on prosecutors to bring charges.

But the sheer amount of evidence, even just in the public record, that is available in this case may not always be present in cases that nonetheless support legitimate vindictive prosecution claims. For example, there may not always be public social media posts ordering the Attorney General to target specific opponents. Indeed, even here, the President's message to the Attorney General was reportedly intended to be private.[95] And future cases may not involve the firing of career prosecutors and installation of loyalist allies who present indictments days later.

---

[95] Welker & Shabad, *supra* note 90.

25

Those loyalists may already be in office, and they may seek indictments weeks, months, or even years after assuming the role.

The transparent and abusive circumstances in this case are extreme. Future cases may not contain public evidence to this degree yet may still meet the high standard for a vindictive prosecution claim. However, in both such circumstances, the courts must not shy away from dismissing charges as required to protect the integrity of the judicial system and the rule of law. As the growing group of present-day autocracies has amply demonstrated, democracies require both public prosecutors protected from political pressure and a strong and independent judiciary to stand firm and faithfully apply the law,[96] no matter the identity of the parties before it or how they are perceived by those in power.

## CONCLUSION

*Amici* respectfully request that the Court consider the context in which this prosecution was initiated and the danger to the rule of law it poses and grant Defendant's motion to dismiss the indictment.

Dated: October 27, 2025                    Respectfully submitted,

---

[96] *See* Susan C. Stokes, *The Backsliders: Why Leaders Undermine Their Own Democracies* 6 (Princeton Univ. Press 2025) ("If enough judges maintain professional standards in their courtrooms, the leaders' efforts to crack down on opponents or steal elections can be thwarted.").

/s/ Joshua Erlich
Joshua Erlich (VA Bar No. 81298)
THE ERLICH LAW OFFICE, PLLC
1550 Wilson Blvd., Ste. 700
Arlington, VA  22209
Tel: 703-791-9087
Fax: 703-722-8114
jerlich@erlichlawoffice.com

Maithreyi Ratakonda*
Christine P. Sun*
STATES UNITED DEMOCRACY CENTER
45 Main Street, Suite 320
Brooklyn, NY 11201
(202) 999-9305
mai@statesunited.org
christine@statesunited.org

Marina Eisner*
Samantha Trepel*
STATES UNITED DEMOCRACY CENTER
1101 17th St. NW, Suite 250
Washington, DC 20036
(202) 999-9305
marina@statesunited.org
sam@statesunited.org

*Counsel for Amici Curiae University
Professors and Scholars*

*Pro Hac Vice Application Forthcoming*

27

**CERTIFICATE OF SERVICE**

I, Joshua Erlich, hereby certify that on October 27, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Virginia by using the CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

Dated: October 27, 2025                    /s/ Joshua Erlich
                                           Joshua Erlich
                                           *Counsel for* Amici Curiae *University Professors and Scholars*