FILED

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

2025 OCT 23  A 9: 54

UNITED STATES OF AMERICA,

v.

JAMES B. COMEY, JR.,

    Defendant.

Crim. No. 1:25-cr-272-MSN

**BRIEF OF AMICI CURIAE BIPARTISAN CURRENT AND FORMER MEMBERS OF CONGRESS IN SUPPORT OF DEFENDANT'S REQUEST FOR RELIEF**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ............................................................................................................1

INTERESTS OF AMICI ..................................................................................................2

BACKGROUND ..............................................................................................................4

    I.    Ms. Halligan's Appointment as U.S. Attorney ...................................................4

    II.   The Trump Administration's practice of disregarding the Appointments
         Clause and 28 U.S.C. § 546 ..............................................................................7

ARGUMENT ....................................................................................................................9

    I.    The Appointments Clause mandates congressional involvement in
         appointments of Officers of the United States ...................................................9

    II.   U.S. Attorneys are Officers of the United States ............................................11

    III.  Congress has implemented its authority under the Appointments Clause
         in Title 28, Sections 541 and 546 ...................................................................12

    IV.  The Administration's efforts to install Ms. Halligan in office are inconsistent
         with Section 546 and the Appointments Clause ..............................................13

CONCLUSION ...............................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bowsher v. Synar,*
478 U. S. 714 (1986) ..................................................................................................1

*Collins v. United States,*
14 Ct. Cl. 568 (1878) ...............................................................................................11

*Edmond v. United States,*
520 U.S. 651, 658 (1997) ..............................................................................1, 9, 11, 15

*Freytag v. Comm'r,*
501 U.S. 868 (1991) ...................................................................................................1

*Morrison v. Olson,*
487 U.S. 654 (1988) ...............................................................................................9, 10

*N.L.R.B. v. Enter. Leasing Co. Se., LLC,*
722 F.3d 609 (4th Cir. 2013) ......................................................................................1, 2

*N.L.R.B. v. New Vista Nursing & Rehab.,*
719 F.3d 203 (3d Cir. 2013) ....................................................................................10, 11

*N.L.R.B. v. Noel Canning,*
573 U.S. 513 (2014) ...................................................................................................1

*Ryder v. United States,*
515 U.S. 177 (1995) ...................................................................................................1

*United States v. Baker,*
504 F. Supp. 2d 402 (E.D. Ark. 2007) ..........................................................................11

*United States v. Baldwin,*
541 F. Supp. 2d 1184 (D.N.M. 2008) .......................................................................12, 13

*United States v. Gantt,*
194 F.3d 987 (9th Cir. 1999) ......................................................................................11

*United States v. Garcia,*
No. 2:25-cr-00227, 2025 WL 2784640 (D. Nev. Sept. 30, 2025) ...............................8, 14, 15

*United States v. Giraud,*
No. 1:24-cr-00768, 2025 WL 2416737 (D.N.J. Aug. 21, 2025) .................................7, 14, 15

*United States v. Hilario,*
218 F.3d 19 (1st Cir. 2000) ....................................................................................11, 13

*United States v. Sotomayor Vazquez,*
69 F. Supp. 2d 286 (D.P.R. 1999) ........................................................................... 12, 13

### United States Constitution

U.S. Const. art. II, § 2, cl. 2 ...............................................................................*passim*

### Statutes

5 U.S.C. § 3345 et seq. ........................................................................................... 11

28 U.S.C. § 509 et seq. ............................................................................................. 4

28 U.S.C. § 541 ................................................................................................ 2, 12, 13

28 U.S.C. § 541(a) ............................................................................................ 12, 15

28 U.S.C. § 546 ............................................................................................ 2, 12, 13, 14

28 U.S.C. § 546(a) ........................................................................................... 12, 14

28 U.S.C. § 546(b) ................................................................................................ 12

28 U.S.C. § 546(c) ...........................................................................................*passim*

28 U.S.C. § 546(d) ...........................................................................................*passim*

### Other Authorities

Brittny Mejia, *et al, Trump Administration Maneuvers to Keep Essayli as L.A. 's Top Federal Prosecutor, L.A. Times* (July 29, 2025) ................................................................. 8

Devlin Barett, *et al, Grand Jury Indicts Longtime Trump Target, Former F.B.I Director James Comey,* N.Y. Times (Sept. 25, 2025) ......................................................................... 6

Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, 18:44 EST) ...................... 6

Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, 21:50 EST) ...................... 6

The Federalist No. 47 (James Madison) ........................................................................ 1

The Federalist No. 76 (Alexander Hamilton) ................................................................... 1

Evan Perez, *DOJ Gave Trump's Handpicked US Attorney Little Support to Indict Comey. She Did It Anyway*, CNN (Sept. 30, 2025) .......................................................................... 6

Glenn Thrush, *et al, U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure from the President*, N.Y. Times (Sept. 19, 2025) ................................................................. 5

Jeremy Herb, *et al*, *Inside the Seven Tumultuous Days the Led to the Comey Indictment*, CNN (Sept. 28, 2025) ....................................................................................................................6

Max Matza, *Trump's Ex-Lawyer Replaced as Federal Prosecutor by Judges*, BBC (July 22, 2025) ......................................................................................................................................7

Nomination of Erik Siebert for Department of Justice, 119th Congress (2025-2026), PN141-35, 119th Cong. (2025) ...........................................................................................................5

Order of Appointment, *In the Matter of the Appointment of Erik S. Siebert as United States Attorney* (E.D.V.A. May 9, 2025) ....................................................................................5

Salvador Rizzo, *et al*, *Top Virginia Prosecutor Resigns Amid Criticism Over Letitia James Investigation*, Wash. Post (Sept. 20, 2025) ........................................................................5

Senate Committee on the Judiciary, *Durbin Calls On Trump White House To Honor Blue Slip Rule For U.S. Attorneys During Senate Judiciary Committee Executive Business Meeting* (May 15, 2025) .................................................................................................................11

The Associated Press, *U.S. Attorney Resigns Under Pressure from Trump to Charge N.Y. AG Letitia James*, NPR (Sept. 20, 2025) ................................................................................5

United States Attorney's Office, Central District of California, *Bilal A. Essayli Sworn in as United States Attorney, Becoming Chief Federal Prosecutor in Nation's Most-Populous Federal Trial District* (April 2, 2025) .............................................................................................8

United States Attorney's Office, Eastern District of Virginia, *Erik Siebert appointed Interim U.S. Attorney for the Eastern District of Virginia* (Jan. 21, 2025) ............................................4

U.S. Dep't. of Justice, Justice Manual § 9-27.260 (2018) ............................................15

# INTRODUCTION

The Constitution's core, government-structuring provisions "reflect the founding generation's deep conviction that 'checks and balances were the foundation of a structure of government that would protect liberty.'" *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 571 (2014) (Scalia, J., concurring, joined by Roberts, C.J., Thomas, J. and Alito, J.) (quoting *Bowsher v. Synar*, 478 U. S. 714, 722 (1986)).[1]  The Founders believed that "[t]he accumulation of all powers, legislative, executive, and judiciary, in the same hands, . . . may justly be pronounced the very definition of tyranny."  The Federalist No. 47 (James Madison).

In the constitutional scheme of checks and balances, the requirement—found in the Appointments Clause—that the President submit nominations for "principal" and "inferior" officers for the "Advice and Consent of the Senate," U.S. Const. art. II, § 2, cl. 2, plays a crucial role.  *See generally Edmond v. United States*, 520 U.S. 651, 658–666 (1997).  Since the Founding, the Appointments Clause has functioned as a safeguard against presidential overreach.  The Clause creates a "shared responsibility between the President and the Senate" concerning senior executive branch officials, which acts "as a 'check upon a spirit of favoritism in the President,'" and "prevent[s] the appointment of 'unfit characters.'"  *N.L.R.B. v. Enter. Leasing Co. Se., LLC*, 722 F.3d 609, 633 (4th Cir. 2013) (quoting The Federalist No. 76 (Alexander Hamilton)).  "The Clause is a bulwark against one branch aggrandizing its power at the expense of another branch," *Ryder v. United States*, 515 U.S. 177, 182 (1995), and "it is among the significant structural safeguards of the constitutional scheme," *Edmond*, 520 U.S. at 659.  "The structural interests protected by the Appointments Clause are not those of any one branch of Government but of the entire Republic."  *Freytag v. Comm'r*, 501 U.S. 868, 880 (1991).

---

[1] All internal quotation marks, alterations, and citations are omitted from case quotations.

1

Amici respectfully submit that the Administration's appointment of Lindsey Halligan as United States Attorney for the Eastern District of Virginia violates the letter and the spirit of the Appointments Clause and the statutes that implement it. *See* U.S. Const. art. II, § 2, cl. 2; 28 U.S.C. §§ 541, 546. The Administration's appointment of Ms. Halligan—which involved stacking numerous interim appointments under § 546 without obtaining the Senate's advice and consent—appears designed to circumvent the public hearing and accountability that Senate confirmation requires. *See, e.g., Enter. Leasing Co. Se., LLC*, 722 F.3d at 633. Indeed, the publicly reported facts surrounding Ms. Halligan's appointment reflect precisely the sort of dangers that can arise when the advice and consent requirement is disregarded. Amici urge the Court to reject this transparent attempt to sidestep the Appointments Clause with respect to Ms. Halligan and to grant Defendant's request for relief.

## INTERESTS OF AMICI

Amici curiae are a bipartisan group of current and former members of Congress who swore an oath to support the United States Constitution and who are deeply committed to preserving the Constitution's carefully calibrated separation of powers framework. Some of the amici participated in the consideration and passage of the Preserving United States Attorney Independence Act of 2007 (the "Act"), codified in 18 U.S.C. § 546, which restored the 120-day limit on interim appointments of United States Attorneys now codified in § 546(c). The Act reflected Congress's considered judgment—rooted in the Constitution's separation of powers framework—that the appointment of U.S. Attorneys must be subject to meaningful checks, including the Senate's advice and consent, except in limited circumstances expressly provided by law.

In enacting the statutory scheme at issue here, Congress acted pursuant to its explicit constitutional prerogative to "by Law vest the Appointment of" inferior officers "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. These provisions reflect the balance struck by the Framers between executive branch flexibility and legislative branch oversight, ensuring that a critical law enforcement position is filled without undue delay while preserving the Senate's essential role in confirming those who serve beyond a short interim period.

Amici have a strong interest in ensuring that federal courts interpret the statutory framework governing the appointment of United States Attorneys in a manner faithful to this constitutional design and Congress's original intent in passing these critical appointment provisions. The Administration's recent actions to impermissibly stack successive interim appointments under § 546 without obtaining the Senate's advice and consent implicates the very separation of powers concerns Congress sought to address when it enacted the current version of § 546 in 2007. Amici submit this brief to provide the Court with the legislative and constitutional context in which the relevant statutory scheme was enacted, and to underscore the structural principles at stake in the proper application of these provisions.

The current and former members of Congress in support of this brief are:

- Barbara Comstock, Representative of the 10th Congressional District of Virginia from 2015 to 2019 (R).

- Mickey Edwards, Representative of the 5th Congressional District of Oklahoma from 1977 to 1993 (R).

- Wayne Gilchrest, Representative of the 1st Congressional District of Maryland from 1991 to 2009 (R).

- Jim Greenwood, Representative of the 8th Congressional District of Pennsylvania from 1993 to 2005 (R).

- Stephen Lynch, Representative of the 9th Congressional District of Massachusetts from 2001 to 2013, and the 8th Congressional District of Massachusetts from 2013 to the present (D).

- Frank Pallone, Representative of the 3rd Congressional District of New Jersey from 1988 to 1993, and the 6th Congressional District of New Jersey from 1993 to the present (D).

- Tom Petri, Representative of the 6th Congressional District of Wisconsin from 1979 to 2015 (R).

- Christopher Shays, Representative of the 4th Congressional District of Connecticut from 1987 to 2009 (R).

- David Trott, Representative of the 11th Congressional District of Michigan from 2015 to 2019 (R).

- Nydia Velázquez, Representative of the 12th Congressional District of New York from 1993 to 2013, and the 7th Congressional District of New York from 2013 to the present (D).

## BACKGROUND

### I.    Ms. Halligan's Appointment as U.S. Attorney

On January 21, 2025, the day after President Trump was inaugurated as president, the Attorney General appointed Erik S. Siebert as Interim U.S. Attorney for the Eastern District of Virginia.[2] Mr. Siebert was an experienced prosecutor who had served in the office since 2010 and had received numerous awards related to his service.[3] The duration of Mr. Siebert's interim appointment was limited by statute to 120 days and was set to expire on May 21, 2025. *See* § 546(c)(2). On May 6, 2025, the Trump Administration transmitted his nomination to the

---

[2] *See* United States Attorney's Office, Eastern District of Virginia, *Erik Siebert appointed Interim U.S. Attorney for the Eastern District of Virginia* (Jan. 21, 2025), https://www.justice.gov/usao-edva/pr/erik-siebert-appointed-interim-us-attorney-eastern-district-virginia.

[3] *See id.*

Senate.[4]  Three days later, with the 120-day deadline on Mr. Siebert's interim appointment approaching and Mr. Siebert's nomination in the Senate still pending, judges in the Eastern District of Virginia exercised their authority under § 546(d) and unanimously appointed him to the position of U.S. Attorney for the Eastern District of Virginia.[5]  His appointment by the district court became effective on May 21, 2025, the day his interim appointment expired.  *Id.*

On September 19, 2025, Mr. Siebert reportedly informed colleagues that he had resigned his position.[6]  His resignation came hours after President Trump told reporters in the Oval Office that he intended to fire Mr. Siebert and that he "want[ed] him out" of the office.[7]  According to news reports, President Trump's comments came on the heels of Mr. Siebert informing senior Justice Department officials that he did not intend to seek indictments against two individuals that President Trump perceived as political adversaries, Letitia James and Defendant James Comey.[8]

The following day, September 20, 2025, President Trump posted (and later withdrew) a Truth Social message to Attorney General Pam Bondi complaining that "[n]othing is being

---

[4] Nomination of Erik Siebert for Department of Justice, 119th Congress (2025-2026), PN141-35, 119th Cong. (2025), https://www.congress.gov/nomination/119th-congress/141/35.

[5] *See* Order of Appointment, *In the Matter of the Appointment of Erik S. Siebert as United States Attorney* (E.D.V.A. May 9, 2025), https://www.vaed.uscourts.gov/sites/vaed/files/Order%20of%20Appointment.pdf.

[6] The Associated Press, *U.S. Attorney Resigns Under Pressure from Trump to Charge N.Y. AG Letitia James*, NPR (Sept. 20, 2025), https://www.npr.org/2025/09/20/nx-s1-5547837/us-attorney-virginia-resigns-letitia-james-probe.

[7] Glenn Thrush, *et al*, *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure from the President*, N.Y. Times (Sept. 19, 2025), https://www.nytimes.com/2025/09/19/us/politics/erik-siebert-comey-letitia-james.html.

[8] Salvador Rizzo, *et al*, *Top Virginia Prosecutor Resigns Amid Criticism Over Letitia James Investigation*, Wash. Post (Sept. 20, 2025), https://www.washingtonpost.com/national-security/2025/09/19/trump-letitia-james-erik-siebert-virginia/.

done" with respect to the indictment of James Comey and other political adversaries.[9]  He then announced on Truth Social the appointment of Lindsey Halligan as U.S. Attorney for the Eastern District of Virginia.[10]  Ms. Halligan had no prosecutorial experience but had previously served as President's Trump's personal lawyer.[11]  Two days later, the Attorney General formally appointed Ms. Halligan as interim United States Attorney, citing 28 U.S.C. § 546 as the source of legal authority for the appointment.  (*See* Dkt. No. 59-1.)  Several days later, on September 25, 2025, Ms. Halligan presented and secured an indictment against Mr. Comey related to statements Mr. Comey made to Congress in 2020.  (*See* Dkt. No. 1.)  The grand jury voted to indict Mr. Comey with respect to only two out of three charges Ms. Halligan had sought.[12]  Ms. Halligan was the only prosecutor to present the case to the grand jury and was the only prosecutor to sign the indictment.[13]  On October 20, 2025, Mr. Comey moved to dismiss the indictment in part on the grounds that Ms. Halligan was not lawfully serving as U.S. Attorney at the time she presented and secured the indictment.  (*See* Dkt. No. 60.)

---

[9] Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, 18:44 EST), https://truthsocial.com/@realDonaldTrump/posts/115239044548033727.

[10] Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, 21:50 EST), https://truthsocial.com/@realDonaldTrump/posts/115239776714791650.

[11] Jeremy Herb, *et al*, *Inside the Seven Tumultuous Days the Led to the Comey Indictment*, CNN (Sept. 28, 2025), https://www.cnn.com/2025/09/26/politics/james-comey-indictment-trump-prosecution.

[12] Devlin Barett, *et al*, *Grand Jury Indicts Longtime Trump Target, Former F.B.I Director James Comey*, N.Y. Times (Sept. 25, 2025), https://www.nytimes.com/2025/09/25/us/politics/james-comey-indicted.html.

[13] Evan Perez, *DOJ Gave Trump's Handpicked US Attorney Little Support to Indict Comey. She Did It Anyway*, CNN (Sept. 30, 2025), https://www.cnn.com/2025/09/30/politics/lindsey-halligan-trump-attorney-comey-indictment; *see also* Dkt. No. 1.

## II.    The Trump Administration's practice of disregarding the Appointments Clause and 28 U.S.C. § 546

In the last three months, courts have found that at least two other U.S. Attorneys appointed by the Trump Administration were unlawfully appointed and a challenge to the legality of a third U.S. Attorney's appointment is currently pending.  As is the case with Ms. Halligan's appointment, these appointments raise serious statutory and constitutional problems and appear designed to avoid the Constitution's advice and consent requirement.  They include:

*Alina Habba (District of New Jersey)*.  On March 28, 2025, Attorney General Pam Bondi appointed Ms. Habba as interim U.S. Attorney for the District of New Jersey.  *See United States v. Giraud*, No. 1:24-cr-00768, 2025 WL 2416737, at *2 (D.N.J. Aug. 21, 2025).  Like Ms. Halligan, Ms. Habba had no experience as a prosecutor at the time of her appointment but had previously served as Mr. Trump's personal lawyer.[14]  As the 120-day limit on Ms. Habba's interim appointment approached, District of New Jersey judges appointed Ms. Habba's deputy to serve as U.S. Attorney.  *Id.*  However, in response, the Trump Administration undertook a multi-step scheme to keep Ms. Habba in office beyond the statutorily authorized period.  The Administration fired the individual appointed by the court and attempted to elevate Ms. Habba to the role of Acting U.S. Attorney under the Federal Vacancies Reform Act, even though Ms. Habba was not eligible to be elevated under the statute.  *Id.* at *3–4, 19.  On August 21, 2025, a district court found the Administration's "multi-step maneuver" unlawful, *see id.* at *1, 8, and the matter is now before the U.S. Court of Appeals for the Third Circuit, *see United States v. Giraud, et al.*, Nos. 25-2635 & 25-2636 (3d Cir., docketed Aug. 25, 2025).

---

[14] Max Matza, *Trump's Ex-Lawyer Replaced as Federal Prosecutor by Judges*, BBC (July 22, 2025), https://www.bbc.com/news/articles/cj9vm03yye4o.

*Sigal Chattah (District of Nevada)*. On March 28, 2025, Attorney General Pam Bondi appointed Sigal Chattah as interim U.S. Attorney for the District of Nevada. *See United States v. Garcia*, No. 2:25-cr-00227, 2025 WL 2784640, at *1 (D. Nev. Sept. 30, 2025). As was the case with Ms. Habba, the Administration undertook a multi-step maneuver to keep Ms. Chattah in office beyond the 120 days permitted by statute. The Administration had Ms. Chattah resign her position as interim U.S. Attorney on the day before her interim appointment expired and then attempted to elevate her to the role of Acting U.S. Attorney under the Federal Vacancies Reform Act, even though Ms. Chattah was not eligible to be elevated under the statute. *Garcia*, 2025 WL 2784640, at *1–2, 11. A district court found the scheme illegal, explaining that the law does not permit the executive branch to simply "choose whomever it want[s], whenever it want[s], and fill [a U.S. Attorney] vacancy." *See id.* at *9, 14. The matter is now before the U.S. Court of Appeals for the Ninth Circuit. *See United States v. Garcia*, No. 25-6229 (9th Cir., docketed Oct. 3, 2025).

*Bilal Essayli (Central District of California)*. On April 2, 2025, Attorney General Bondi appointed Bilal Essayli as interim U.S. Attorney for the Central District of California.[15] As the 120-day limit on Mr. Essayli's interim appointment neared, public reports indicated that the judges in the district declined to exercise their authority under § 546(d) to appoint him to the position.[16] When asked in an interview whether his term might end soon, Mr. Essayli told the

---

[15] *See* United States Attorney's Office, Central District of California, *Bilal A. Essayli Sworn in as United States Attorney, Becoming Chief Federal Prosecutor in Nation's Most-Populous Federal Trial District* (April 2, 2025), https://www.justice.gov/usao-cdca/pr/bilal-essayli-sworn-united-states-attorney-becoming-chief-federal-prosecutor-nations.

[16] *See* Brittny Mejia, *et al*, *Trump Administration Maneuvers to Keep Essayli as L.A.'s Top Federal Prosecutor*, L.A. Times (July 29, 2025), https://www.latimes.com/california/story/2025-07-29/trump-essayli-us-attorney-los-angeles.

political host Glenn Beck that "[w]e've got some tricks up our sleeves."[17]  On July 29, 2025—

the day before Mr. Essayli's interim appointment expired—the Administration had Mr. Essayli

resign his position as interim U.S. Attorney and then attempted to elevate him to the role of

Acting U.S. Attorney under the Federal Vacancies Reform Act.  *See United States v. Ramirez*,

No. 5:25-cr-00264 (C.D. Cal.) (Dkt. No. 8-1).  Several defendants in the district moved to

dismiss their indictments on the grounds that Mr. Essayli is not lawfully serving in the role of

U.S. Attorney.  *See, e.g., id.* (Dkt. No. 8).  The motions are fully briefed and awaiting a decision

by the district court.

## ARGUMENT

I.    **The Appointments Clause mandates congressional involvement in appointments
      of Officers of the United States**

The Appointments Clause provides that:

> [The President] shall nominate, and by and with the Advice and
> Consent of the Senate, shall appoint Ambassadors, other public
> Ministers and Consuls, Judges of the supreme Court, and all other
> Officers of the United States, whose Appointments are not herein
> otherwise provided for, and which shall be established by Law: but
> the Congress may by Law vest the Appointment of such inferior
> Officers, as they think proper, in the President alone, in the Courts
> of Law, or in the Heads of Departments.

U.S. Const., art. II, § 2, cl. 2; *see also Edmond*, 520 U.S. 658–59.  The Clause contemplates two

kinds of officers: "principal" and "inferior" officers.  *See Morrison v. Olson*, 487 U.S. 654, 670–

71 (1988).  Although the line between the two categories "is far from clear," *id.* at 671, the

Supreme Court has explained that, in general, "inferior" officers are those "whose work is

directed and supervised at some level by others who were appointed by Presidential nomination

with the advice and consent of the Senate," *Edmond*, 520 U.S. at 663.  Factors relevant to this

---

[17] *See id.*

determination include whether the official in question is "subject to removal by a higher

Executive Branch official," "empowered . . . to perform only certain, limited duties," and

"limited in jurisdiction." *Morrison*, 487 U.S. at 671–72. The Clause makes clear that, for

"principal" and "inferior" officers alike, "the *default* manner of appointment" is Presidential

nomination followed by Senate confirmation. *Edmond*, 520 U.S. at 660 (emphasis added).

 The Framers, with their extraordinary foresight, tempered the advice and consent

requirement with a certain amount of flexibility in the appointment of inferior officers. *See id.*

The final provision in the Appointments Clause—known as the "Excepting Clause"—authorizes

Congress to "by Law vest the Appointment of such inferior Officers . . . in the President alone, in

the Courts of Law, or in the Heads of Departments." *Id.* The "obvious purpose" of this

flexibility "is administrative convenience," which the Framers "deemed to outweigh the benefits

of the more cumbersome" advice and consent process that applies without exception to principal

officers. *See id.* Still, the Framers ensured that Congress would play a role in appointments of

inferior officers by requiring that Congress provide for such appointments "by Law." U.S.

Const., art. II, § 2, cl. 2.

 The role of the Appointments Clause as the "primary, or general, method of

appointment" is confirmed by the scope of the Recess Appointments Clause found in Article II,

section 2, clause 3. *N.L.R.B. v. New Vista Nursing & Rehab.*, 719 F.3d 203, 228 (3d Cir. 2013).

The Appointments Clause "lacks any limitation on when this power is operative—the president

*always* has the power to fill vacancies through nomination and the advice and consent of the

Senate"—which "stands in contrast to the power given to the president in the Recess

Appointments Clause, which explicitly allows him to fill vacancies unilaterally only during the

Recess of the Senate." *Id.* Read together, these clauses "reveal a constitutional preference for

divided power over the appointments process, which is deviated from only in specified situations." *Id.*

## II.    U.S. Attorneys are Officers of the United States

"United States Attorneys are clearly 'officers' of the United States under the Appointments Clause," *United States v. Baker*, 504 F. Supp. 2d 402, 414 (E.D. Ark. 2007), and to amici's knowledge, every court to have considered the issue has held that U.S. Attorneys are "inferior" officers under the Appointments Clause. *See, e.g., United States v. Hilario*, 218 F.3d 19, 25–26 (1st Cir. 2000) ("United States Attorneys are inferior officers."); *United States v. Gantt*, 194 F.3d 987, 999–1000 (9th Cir. 1999) (same), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008). This is not to suggest that U.S. Attorneys are "inferior" "in the sense of petty or unimportant," *Collins v. United States*, 14 Ct. Cl. 568, 574 (1878), but rather that their "work is directed and supervised at some level by others who are" principal officers, "appointed by Presidential nomination with the advice and consent of the Senate," *Edmond*, 520 U.S. at 663. As the First Circuit noted in *Hilario*, "Congress has ceded to the Attorney General plenary authority over United States Attorneys," and "[t]hey are subject to much closer supervision by superiors than" the officers held to be "inferior" by the Supreme Court in *Edmond*. 218 F.3d at 25.

Accordingly, U.S. Attorneys are subject to the constitution's "default" requirement of Presidential nomination and Senate confirmation. *Edmond*, 520 U.S. at 658–60.[18] Congress has

---

[18] During President Trump's first term as President, he nominated 85 U.S. Attorneys and all were moved through the Senate Judiciary Committee and confirmed by the Senate. *See* U.S. Senate Committee on the Judiciary, *Durbin Calls On Trump White House To Honor Blue Slip Rule For U.S. Attorneys During Senate Judiciary Committee Executive Business Meeting* (May 15, 2025), https://www.judiciary.senate.gov/press/dem/releases/durbin-calls-on-trump-white-house-to-honor-blue-slip-rule-for-us-attorneys-during-senate-judiciary-committee-executive-business-meeting.

exercised its authority under the Appointments Clause by enacting a statutory scheme applicable

to the appointment of interim and acting U.S. Attorneys, *see* 5 U.S.C. §§ 3345–3349c; 28 U.S.C.

§§ 541, 546, but it has so far declined to exercise its authority under the Appointments Clause to

delegate final appointment authority for U.S. Attorneys to the President, the judiciary, or to the

Attorney General, *see* U.S. Const., art. II, § 2, cl. 2. In case of a vacancy, the Attorney General

may make an interim appointment for 120 days, but thereafter the United States Attorney either

must be confirmed by the Senate or empowered by the court.

### III. Congress has implemented its authority under the Appointments Clause in Title 28, Sections 541 and 546

Congress has exercised its constitutional authority to provide for the appointment of U.S.

Attorneys "by Law." U.S. Const., art. II, § 2, cl. 2. Section 541(a) of Title 28 confirms the

"default" rule under the Clause: "The President shall appoint, by and with the advice and consent

of the Senate, a United States attorney for each judicial district." 28 U.S.C. § 541(a). When

vacancies arise, § 546(a) authorizes the Attorney General to appoint an interim U.S. Attorney,

but the appointment power is "limited in candidacy and scope." *See United States v. Baldwin*,

541 F. Supp. 2d 1184, 1191 (D.N.M. 2008). Specifically, the statute prohibits the Attorney

General from appointing anyone to whom "the Senate refused to give advice and consent," *see*

§ 546(b), and the aggregate duration of interim appointments is limited to 120 days, *see*

§ 546(c)(2). If 120 days expire and no nominee for the position has obtained the Senate's

approval, § 546(d) vests authority to appoint an interim U.S. Attorney in the federal courts. *See*

*generally United States v. Sotomayor Vazquez*, 69 F. Supp. 2d 286, 295 (D.P.R. 1999), *aff'd*, 249

F.3d 1 (1st Cir. 2001) (discussing Appointments Clause and history of U.S. Attorney

appointments); *Hilario*, 218 F.3d at 26 ("Congress chose to place the appointing power vis-à-vis

interim United States Attorneys partially in the judiciary."). The 120-day limit established by §

546(c)(2)—and the absence of any such limit in § 546(d)—is plainly "deliberate, rather than serendipitous, especially in view of the contrast between adjacent sections of a single statute." *Hilario*, 218 F.3d at 23.

The provisions enacted in § 546 reinforce and implement the allocation of constitutional authority described in the Appointments Clause. The appointment powers under § 546 "are permissive, and the President, with the advice and consent of the Senate, at all times retains the power to essentially veto" the interim U.S. Attorney—whether appointed by the district court or the Attorney General—"and appoint someone of his choosing." *Baldwin*, 541 F. Supp. 2d at 1210. They also "ensure[] that a crucial Executive office is not permitted to be vacant while at the same time providing an incentive for the President to exercise his statutory power under 28 U.S.C. § 541" and his constitutional power under the Appointments Clause. *Sotomayor Vazquez*, 69 F. Supp. 2d at 295.

## IV.  The Administration's efforts to install Ms. Halligan in office are inconsistent with Section 546 and the Appointments Clause

The Administration's attempt to install Ms. Halligan as interim U.S. Attorney circumvents the accountability envisioned by the Founders and is inconsistent with § 546 and the Appointments Clause. The law does not permit the executive branch to stack successive interim appointments under § 546 beyond the statutorily authorized period without the advice and consent of the Senate, as the Administration attempted to do when it appointed Ms. Halligan as interim U.S. Attorney.

The text, context and statutory history all confirm that § 546 only authorizes the Attorney General to appoint individuals as U.S. Attorneys on an interim basis for an *aggregate* total of 120 days. This is apparent from the text of § 546(c)(2), which provides that the 120-day clock is "benchmarked only to 'appointment by the Attorney General under this section,'" not to a

13

*particular person's* appointment under the provision. *See Giraud*, 2025 WL 2416737, at *10. (*See also* Def. Mot. Dismiss, Dkt. No. 60, at 8–12.) The statutory structure and history of § 546 confirm this understanding of the text. Specifically, Congress enacted § 546(c)(2) after a short-lived period during which there were no temporal limits on the duration of interim U.S. Attorney appointments, and Congress's decision to re-insert the 120-day limit in 2007 "is strong evidence that Congress did not intend to permit that limit to be circumvented by repeat appointments." *See Giraud*, 2025 WL 2416737, at *11. Indeed, the House Report on the draft 2007 bill identified as a primary concern "Bypassing the Requirement of Senatorial Advice and Consent," which included "several instances where the Attorney General made successive interim appointments pursuant to section 546 of either the same or different individuals." *See id.* (quoting H.R. Rep. No. 110-58, at 6 (2007)). (*See also* Def. Mot. Dismiss, Dkt. No. 60, at 12–17.)

As a result, when the Trump Administration appointed Mr. Siebert as interim U.S. Attorney under § 546(a) on January 21, 2025, it triggered the 120-day clock in § 546(c)(2). When that clock expired on May 21, 2025, the Administration lacked authority to appoint another interim U.S. Attorney under the provision, and only the district court was authorized at that point to appoint an interim U.S. Attorney under § 546(d). *See Giraud*, 2025 WL 2416737, at *10, *12 ("[T]he Attorney General is vested with 120 *total* days to appoint an Interim United States Attorney from the date that she first invokes section 546(a)"; "Congress provided next steps for keeping the United States Attorney's office filled when the 120-day clock runs out: section 546(d) permits the district court to step in and make an appointment") (emphasis added). The Administration's subsequent appointment of Ms. Halligan on September 22 as interim U.S. Attorney under § 546(a) was therefore unlawful and she is not lawfully serving in the position today, nor was she at the time she secured Mr. Comey's indictment. *See Garcia*, 2025 WL

2784640, at \*18 (a U.S. attorney that is not lawfully appointed is "not validly serving" in the position and "her involvement in [] cases [is] unlawful").

The Administration's attempt to stack successive interim appointments under § 546(a) beyond the statutorily authorized period is an attempt to nullify the limitations that Congress established in the exercise of its authority under the Appointments Clause. To endorse these efforts would effectively allow the president "to staff the United States Attorney's office with individuals of his personal choice for an entire term without seeking the Senate's advice and consent." *Giraud*, 2025 WL 2416737, at \*10. This "would eviscerate the divided-powers framework" that the Appointments Clause requires. *New Vista Nursing & Rehab.*, 719 F.3d at 230. Just as the Recess Appointments Clause must not be construed to "swallow the rule of the Appointments Clause," *id.*, the statutory scheme that effectuates Congress's constitutional authority under the Appointments Clause should not be construed to eliminate the Senate's essential role in providing advice and consent.

The extraordinary circumstances presented in this case reflect the dangers that the Constitution's drafters and members of Congress recognized when they carefully placed and preserved limits on the executive branch's authority to appoint U.S. Attorneys. Federal prosecutors wield enormous power and make critical decisions about whether, when, and against whom to bring criminal charges. *See* U.S. Dep't. of Justice, Justice Manual § 9-27.260 (2018) (instructing that prosecutors "may never" be influenced by political considerations). Amici submit that the Court should reject the administration's effort to bypass the constitutional constraint on this authority imposed by the Appointments Clause. To do otherwise would undermine one of the "significant structural safeguards" of our constitutional scheme. *See Edmond*, 520 U.S. at 659.

15

## CONCLUSION

Amici respectfully submit that the Court should reject the Administration's attempt to sidestep the Appointments Clause with respect to Ms. Halligan and grant Defendant's request for relief.

Respectfully submitted,

October 27, 2025

/s/ Scott G. Brooks

Scott G. Brooks (VSB No. 87345)
LEVY FIRESTONE MUSE LLP
900 17th Street NW, Suite 605
Washington, D.C. 20006
Telephone: (202) 845-3215
sbrooks@levyfirestone.com

Carey R. Dunne (*pro hac vice forthcoming*)
FREE AND FAIR LITIGATION GROUP, INC.
266 W. 37th St., 20th Floor
New York, NY 10018
Telephone: (646) 434-8604
carey@freeandfair.org

*Counsel for Amici Curiae*

16