IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Case No.: 1:25-CR-00272-MSN |
| | ) | |
| James B. Comey, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## JAMES B. COMEY JR.'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISCLOSE GRAND JURY PROCEEDINGS

James B. Comey, Jr., by and through undersigned counsel, and pursuant to Federal Rule of Criminal Procedure 6(e), moves this Court to order the disclosure of the transcript and audio recordings of the grand jury proceedings. The indictment at issue—which facially misstates Mr. Comey's testimony—was sought by an inexperienced prosecutor and returned after business hours with a meager 14 votes after an earlier no true bill. Those facts, in combination with signs of other potential misconduct, indicate that a ground may exist to dismiss the indictment. Accordingly, disclosure of the grand jury proceedings is warranted.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

       A.     President Trump Pressures Prosecutors to Indict Mr. Comey ................. 2

       B.     President Trump's Hand-Picked Interim U.S. Attorney Indicts Mr. Comey in a Highly Unusual Proceeding .................................................... 5

       C.     The Indictment Is Facially Flawed ........................................................... 7

ARGUMENT ..................................................................................................................... 9

    I.     THE GOVERNMENT'S CONSTITUTIONAL VIOLATIONS WARRANT DISCLOSURE OF THE GRAND JURY MATERIALS .............. 12

    II.    THE RISK THAT THE GOVERNMENT MISREPRESENTED MATERIAL ISSUES OF FACT AND LAW WARRANTS DISCLOSURE OF THE GRAND JURY MATERIALS ................................... 14

       A.     Disclosure of the Grand Jury Materials Could Establish that the Government Misstated Essential Elements of Both Counts ................... 14

       B.     The Inherently Suspect Procedures That Led to the Indictment Reinforce the Need for Review of the Grand Jury Materials ................. 16

    III.   THE POTENTIAL INVASION OF MR. COMEY'S ATTORNEY-CLIENT PRIVILEGE WARRANTS DISCLOSURE OF THE GRAND JURY MATERIALS .......................................................................................... 18

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Nova Scotia v. United States*,
    487 U.S. 250 (1988)................................................................10, 11, 17

*Bronston v. United States*,
    409 U.S. 352 (1973)................................................................14

*Russell v. United States*,
    369 U.S. 749 (1962)................................................................16

*Trump v. United States*,
    No. 22-cv-81294 (S.D. Fl. Aug. 22, 2022)................................5

*United States v. Abcasis*,
    785 F. Supp. 1113 (E.D.N.Y. 1992)........................................10

*United States v. Breslin*,
    916 F. Supp. 438 (E.D. Pa. 1996)...........................................16

*United States v. Loc Tien Nguyen*,
    314 F. Supp. 2d 612 (E.D. Va. 2004)..............................10, 12, 14, 16

*United States v. Mechanik*,
    475 U.S. 66 (1986)................................................................13

*United States v. Mosby*,
    143 F.4th 264 (4th Cir. 2025)................................................14

*United States v. Naegele*,
    474 F. Supp. 2d 9 (D.D.C. 2007)...........................................10

*United States v. Peralta*,
    763 F. Supp. 14 (S.D.N.Y. 1991)..........................................14

*United States v. Sanders*,
    211 F.3d 711 (2d Cir. 2000)..................................................13

*United States v. Sells Eng'g, Inc.*,
    463 U.S. 418 (1983)................................................................10

*United States v. Stevens*,
    771 F. Supp. 2d 556 (D. Md. 2011).................................14, 15, 17

*United States v. Williams*,
    504 U.S. 36 (1992)................................................................10, 13

# TABLE OF AUTHORITIES

(continued)

Page(s)

**Statutes and Rules**

18 U.S.C.
§ 1001(a)(2) .................................................................................................7, 15
§ 1505 ...............................................................................................................8
§ 3282 ..........................................................................................................2, 6

28 U.S.C.
§ 546 ............................................................................................................5, 12
§ 546(a) .............................................................................................................5
§ 546(c)(2) .......................................................................................................5
§ 546(d) .............................................................................................................5

Fed. R. Crim. P.
1(b)(1) .......................................................................................................11, 13
6(d)(1) .......................................................................................................11, 13
6(e)(3)(E)(ii) .............................................................................1, 10, 12, 19

**Miscellaneous Sources**

John H. Durham, Rep. on Matters Related to Intel. Activities & Investigations
Arising Out of the 2016 Presidential Campaigns (May 12, 2023) ...........................................3

Katherine Faulders, et al., *Ex-Special Counsel John Durham undercut case
against James Comey in interview with prosecutors: Sources*, ABC News
(Oct. 6, 2025) ....................................................................................................................3

Katherine Faulders, et al., *More Turmoil at Virginia US attorney's office following
Comey indictment: 2 top prosecutors fired, sources say*, ABC News (Oct. 2,
2025) ..................................................................................................................................4

Alan Feuer, *Trump's Pick to Replace Ousted U.S. Attorney Lacks Prosecutorial
Experience*, N.Y. Times (Sept. 24, 2025) ......................................................................5

Jeremy Herb, et al., *Inside the seven tumultuous days that led to the James Comey
Indictment*, CNN (Sept. 28, 2025) ..................................................................................3

Carol Leonnig, et al. *How Trump's new U.S. attorney got Comey indicted - by
herself*, MSNBC, (Sept. 26, 2025) ..................................................................................6

Memorandum on Closing Arctic Haze Investigation at -057 (Sept. 8, 2017), in
Declassified FBI Materials Produced to the House Judiciary Committee,
https://perma.cc/HZN7-B5QN...........................................................................................2

## TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Oversight of the Crossfire Hurricane Investigation: Day 3*, *Hearing Before the U.S. Senate Committee on the Judiciary*, 116th Cong. (Sept. 30, 2020) ...................................8

Jacob Rosen, et al., *Judge who reviewed James Comey's indictment was confused by prosecutor's handling of case, transcript shows*, CBS News (Sept. 26, 2025) ......................................................................................................................7

Brooke Singman, *FBI Launches Criminal Investigation of John Brennan, James Comey: DOJ Sources*, FOX News (July 8, 2025) ......................................................2

Glenn Thrush, et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sept. 19, 2025)..........................................2, 4

Glenn Thrush, et al., *Inside the Trump Administration's Push to Prosecute James Comey*, N.Y. Times (Sept. 27, 2025) ...........................................................3

## INTRODUCTION

The record in this case raises a significant risk that irregularities in the grand jury process may have influenced the grand jury to return an indictment. Thus, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), defendant James B. Comey, Jr., respectfully requests that the Court direct the government to disclose the transcripts and audio recordings of all proceedings before the grand jury in this case. Although proceedings before the grand jury are typically entitled to a presumption of regularity, the abundant irregularities surrounding the return of the indictment in this case overcome that presumption and warrant disclosure of the grand jury record.

Those irregularities may create a basis for dismissing the indictment. As Mr. Comey has explained in two motions to dismiss, the indictment arises from multiple constitutional violations. Those violations warrant dismissal regardless of any grand jury misconduct, but they also support a reasonable inference of irregularities before the grand jury. Additionally, the circumstances surrounding the return of the indictment in this case indicate that the government may have misstated key factual and legal issues to the grand jury. Despite the absence of any lawful basis for her appointment as interim U.S. Attorney, Lindsay Halligan—a former insurance lawyer who lacks any prosecutorial experience—presented this case to the grand jury alone. She secured an indictment only after a highly unusual procedure, which included keeping the grand jury in court well past normal business hours. What is more, the agent who served as a witness in the proceedings may have been exposed to Mr. Comey's privileged communications with his attorneys and thus may have conveyed that information to the grand jury. Each of those irregularities provides an independent basis for the Court to permit the defense to review the record of the grand jury proceedings in this case.

1

## STATEMENT OF FACTS

### A.    President Trump Pressures Prosecutors to Indict Mr. Comey

After years of publicly criticizing Mr. Comey's speech and character, President Trump orchestrated Mr. Comey's indictment mere days before the statute of limitations expired. *See* 18 U.S.C. § 3282(a) (five-year statute of limitations).  As detailed in Mr. Comey's Motion to Dismiss the Indictment Based on Vindictive and Selective Prosecution, *see* ECF No. 59, beginning in or around July 2025, special agents of the Federal Bureau of Investigation (FBI) and a team of career prosecutors from the U.S. Attorney's Office for the Eastern District of Virginia (EDVA) began investigating Mr. Comey.  *See* Brooke Singman, *FBI Launches Criminal Investigation of John Brennan, James Comey: DOJ Sources*, FOX News (July 8, 2025), https://perma.cc/J25X-C85P; Glenn Thrush, et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sept. 19, 2025), https://perma.cc/Q75E-873N.

The subject of that investigation overlapped with conduct that the FBI and Department of Justice (DOJ) had previously investigated at length before concluding that the evidence and the law did not support criminal charges.  In August 2017, the DOJ and the FBI initiated "Arctic Haze," an investigation into whether Mr. Comey had illegally disclosed classified information to the news media through Daniel Richman, a Columbia Law School professor and former FBI Special Government Employee.  *See* Memorandum on Closing Arctic Haze Investigation at -057 (Sept. 8, 2017), in Declassified FBI Materials Produced to the House Judiciary Committee, https://perma.cc/HZN7-B5QN.  The government ultimately concluded that there was not "sufficient evidence to criminally charge any person, including Comey or Richman." *Id.* at -065.

Additionally, in March 2019, Attorney General William Barr appointed John Durham as Special Counsel to review the FBI's and DOJ's handling of investigations into alleged

2

connections between President Trump's 2016 campaign and the Russian government during Mr. Comey's tenure as FBI Director.  *See* John H. Durham, Rep. on Matters Related to Intel. Activities & Investigations Arising Out of the 2016 Presidential Campaigns (May 12, 2023), https://perma.cc/AB9S-BUFE.  As part of the investigation, Special Counsel Durham scrutinized whether the FBI had mishandled the Crossfire Hurricane investigation.  *See id.* at 46-68. Although the final "Durham Report" offered critiques of the FBI's investigative standards, it did not find that Mr. Comey or any other senior FBI personnel violated any federal criminal statutes. *See id.* at 17-19.

In September 2025, the team of EDVA career prosecutors interviewed Mr. Richman, but he was "not helpful" in their efforts to build a case.  Glenn Thrush, et al., *Inside the Trump Administration's Push to Prosecute James Comey*, N.Y. Times (Sept. 27, 2025), https://perma.cc/6MFG-8D3U.  The government also reportedly interviewed Special Counsel Durham, who stated that his investigation had not uncovered evidence supporting charges against Mr. Comey.  *See* Katherine Faulders, et al., *Ex-Special Counsel John Durham undercut case against James Comey in interview with prosecutors: Sources*, ABC News (Oct. 6, 2025), https://perma.cc/EJ4Z-D66B.  Multiple reports also stated that the career prosecutors ultimately concluded that no case should be brought against Mr. Comey, including because the evidence did not establish probable cause to believe he committed a crime.[1]  *See id.*; Thrush, et al., *Inside the Trump Administration's Push to Prosecute James Comey*, *supra*; Jeremy Herb, et al., *Inside the seven tumultuous days that led to the James Comey Indictment*, CNN (Sept. 28, 2025), https://perma.cc/4VP7-86ZV.

---

[1] As discussed in the defense's prior motion to dismiss and *infra*, these reports are corroborated by the absence of any career prosecutor from the September 25, 2025 grand jury presentation that resulted in the indictment charging Mr. Comey in this case, as well as the continued prosecution of this matter, which is handled by prosecutors from a different state and district.

In response, the Trump Administration reportedly pressured interim U.S. Attorney Erik Siebert to indict Mr. Comey, among others.  *See* Thrush, et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, *supra*.  President Trump had nominated Mr. Siebert to the permanent post of U.S. Attorney, and Mr. Siebert had been unanimously appointed to continue as interim U.S. Attorney by the judges in this district and therefore supervised the career EDVA prosecutors investigating this case.  But when Mr. Siebert appeared unwilling to follow President Trump's instructions, President Trump told reporters in the Oval Office that he wanted Mr. Siebert "out."  *Id.*  Mr. Siebert resigned on September 19, 2025.  *Id.* The DOJ then demoted First Assistant U.S. Attorney Maya Song (she was later fired on September 26).  *See* Katherine Faulders, et al., *More Turmoil at Virginia US attorney's office following Comey indictment: 2 top prosecutors fired, sources say*, ABC News (Oct. 2, 2025), https://perma.cc/R2HW-V5Y9.

The next day, President Trump publicly posted a statement on social media explicitly pressing the Attorney General to prosecute Mr. Comey, New York Attorney General Leticia James, and Senator Adam Schiff.  The post read as follows:

> "Pam: I have reviewed over 30 statements and posts saying that, essentially, "same old story as last time, all talk, no action. Nothing is being done. What about Comey, Adam "Shifty" Schiff, Leticia??? They're all guilty as hell, but nothing is going to be done." Then we almost put in a Democrat supported U.S. Attorney, in Virginia, with a really bad Republican past. A Woke RINO, who was never going to do his job. That's why two of the worst Dem Senators PUSHED him so hard. He even lied to the media and said he quit, and that we had no case. No, I fired him, and there is a GREAT CASE, and many lawyers, and legal pundits, say so. Lindsey Halligan is a really good lawyer, and likes you, a lot. We can't delay any longer, it's killing our reputation and credibility. They impeached me twice, and indicted me (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED, NOW!!! President DJT."

Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, at 18:44 ET), https://perma.cc/A7RW-2TEC.

Less than 48 hours after President Trump's post, Lindsey Halligan was purportedly sworn in as interim U.S. Attorney for this District.  *See* Exhibit A to Mot. to Dismiss Indictment Based on Vindictive & Selective Prosecution, ECF No. 59-1.  Ms. Halligan was a special assistant to the President and White House official.  *See* Alan Feuer, *Trump's Pick to Replace Ousted U.S. Attorney Lacks Prosecutorial Experience*, N.Y. Times (Sept. 24, 2025), https://perma.cc/YW66-M3HF.  She had previously worked as an insurance lawyer and personal lawyer for President Trump and had no prosecutorial experience.  *See id.*; Compl., *Trump v. United States*, No. 22-cv-81294 (S.D. Fl. Aug. 22, 2022), ECF No. 1.

The Attorney General purported to appoint Ms. Halligan pursuant to 28 U.S.C. § 546, which provides that "the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant," but specifies that "[a] person appointed" through that mechanism may not serve beyond "the expiration of 120 days after appointment by the Attorney General under this section."  28 U.S.C. § 546(a), (c)(2); *see* Halligan Appointment Sheet, Exhibit A.  Section 546 further states that "[i]f an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled."  28 U.S.C. § 546(d).  Because Mr. Siebert had previously been appointed under Section 546(a) and more than 120 days had elapsed since that appointment, the Attorney General lacked authority to appoint Ms. Halligan under Section 546.[2]

## B.    President Trump's Hand-Picked Interim U.S. Attorney Indicts Mr. Comey in a Highly Unusual Proceeding

On her fourth day in office, September 25, 2025, Ms. Halligan sought a grand jury indictment of Mr. Comey—just days before the five-year statute of limitations on Mr. Comey's

---

[2] In a previously filed motion, Mr. Comey has separately argued that the indictment should be dismissed because it was secured and signed by an unlawfully appointed official.  *See* Mot. to Dismiss Indictment Based on Unlawful Appointment, ECF No. 60.

purported offense was set to expire.  *See* 18 U.S.C. § 3282.  No other prosecutor from the U.S.

Attorney's Office for EDVA participated in the grand jury presentation.[3]  *See* Tr. of Return of

Grand Jury Indictment Proceedings at 4 (Sept. 25, 2025) ("Grand Jury Transcript"), ECF No. 10;

*see also* Carol Leonnig, et al. *How Trump's new U.S. attorney got Comey indicted – by herself*,

MSNBC, (Sept. 26, 2025), https://perma.cc/R886-ADRW.

Ms. Halligan appears to have called one of the lead FBI case agents as a witness.  *See*

ECF No. 7.  The same day the agent testified in the grand jury, he alerted the FBI Office of the

General Counsel "███████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████" involving Mr. Comey and his attorneys.  ECF No. 89-5 at

2088 (Ex. E).  The FBI Office of the General Counsel (OGC) subsequently informed the agent

that ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ in this case.  *Id.*[4]  Despite his apparent awareness of

his potential exposure to privileged material, the agent nevertheless apparently served as a

witness presenting evidence to the grand jury in this case.

Based on evidence presented through that agent, Ms. Halligan first presented the grand

jury with a three-count indictment.  The grand jury returned a "no true bill" on that indictment.

---

[3] The custom in this District is for the prosecutor who presented the case to the Grand Jury to sign the indictment along with the U.S. Attorney.  Here, only Ms. Halligan signed.  ECF No. 1 at 2.

[4] The government designated discovery containing some of the information in these sentences as Protected Materials under the Protective Order in this case.  Although the defense sees no reason why this information cannot be made public, out of an abundance of caution, the defense is redacting these sentences from public filing in the first instance.

*See* Grand Jury Transcript at 4-6. Rather than leaving and reconvening on a later date, however, the grand jury remained well past normal court hours. *See id.* at 1, 7. At 6:47 p.m., the grand jury returned a true bill on a new two-count indictment by only a two-vote margin. *See id.* at 1-4, 7; Jacob Rosen, et al., *Judge who reviewed James Comey's indictment was confused by prosecutor's handling of case, transcript shows*, CBS News (Sept. 26, 2025), https://perma.cc/R654-4Q45. Ms. Halligan's inexperience was apparent during the return proceeding, as she expressed confusion about the indictment paperwork, including by signing both the three-count indictment and the two-count indictment. *See* Grand Jury Transcript at 4-5.

### C. The Indictment Is Facially Flawed

Count One of the indictment charges Mr. Comey with making false statements to Congress, in alleged violation of 18 U.S.C. § 1001(a)(2). *See* ECF No. 1 at 1. The indictment alleges that on or about September 30, 2020, Mr. Comey "falsely stat[ed] to a U.S. Senator during a Senate Judiciary Committee hearing that he . . . had not 'authorized someone else at the FBI to be an anonymous source in news reports' regarding an FBI investigation concerning [Hillary Clinton.'" *Id.* The indictment further alleges that Mr. Comey's "statement was false, because, as [Mr. Comey] then and there knew, he in fact had authorized [Daniel Richman] to serve as an anonymous source in news reports regarding an FBI investigation concerning [Hillary Clinton]." *Id.*[5] Count Two charges Mr. Comey with "corruptly endeavor[ing] to influence, obstruct and impede" a Senate Judiciary Committee investigation on or about the same date "by making false and misleading statements before that committee," in alleged violation of 18 U.S.C. § 1505. *Id.* at 2.

The indictment focuses on testimony that Mr. Comey gave in response to questioning by

---

[5] On October 15, 2025, the government confirmed to the defense that PERSON 1 refers to Hillary Clinton and PERSON 3 refers to Daniel Richman.

Senator Ted Cruz at a Senate Judiciary Committee hearing on the Crossfire Hurricane investigation. *See Oversight of the Crossfire Hurricane Investigation: Day 3*, *Hearing Before the U.S. Senate Committee on the Judiciary*, 116th Cong. (Sept. 30, 2020), http://bit.ly/4o2ekHb. During that hearing, Senator Cruz described how, during 2017 testimony before the Senate Judiciary Committee, Mr. Comey had denied "ever authoriz[ing] someone else at the FBI to be an anonymous source in news reports about the Trump investigation or the Clinton Administration." *See* Exhibit A to Mot. to Dismiss Indictment Based on Fundamental Ambiguity & Literal Truth ("Oversight Hearing Video Clip"); Exhibit C to Mot. to Dismiss Indictment Based on Vindictive & Selective Prosecution, ECF No. 59-3 at 11 ("Oversight Hearing Transcript").[6]   Senator Cruz then incorrectly asserted to Mr. Comey that Andrew McCabe, who previously served as Mr. Comey's Deputy Director of the FBI, "publicly and repeatedly stated that he leaked information to The Wall Street Journal and that you were directly aware of it, and that you directly authorized it." *See* Oversight Hearing Video Clip.

Senator Cruz asked Mr. Comey "[w]ho's telling the truth?"  Mr. Comey responded: "I can only speak to my testimony," and "I stand by what, the testimony you summarized that I gave in May of 2017." *Id.*  Senator Cruz followed up by asking: "So, your testimony is you've never authorized anyone to leak.  And Mr. McCabe when if he says contrary is not telling the truth, is that correct?" *Id.*  In response, Mr. Comey stated: "Again, I'm not going to characterize Andy's testimony, but mine is the same today." *Id.*

The indictment misstates the exchange between Senator Cruz and Mr. Comey.  Senator Cruz asked Mr. Comey to affirm or deny prior testimony that he authorized "someone else at the

---

[6] For the rest of this brief, references to the exchange between Mr. Cruz and Mr. Comey cite to the Oversight Hearing Video Clip, which provides the most accurate depiction of the exchange. But the Oversight Hearing Transcript is a useful reference as well.

FBI to be an anonymous source in news reports about . . . the Clinton *administration*." *Id.* (emphasis added). But Senator Grassley's original questioning in 2017 spoke of the "Clinton *investigation*." *See* ECF No. 59-2 at 5 (Ex. B) (emphasis added). The indictment nonetheless mischaracterizes Mr. Comey as stating that he "had not 'authorized someone else at the FBI to be an anonymous source in news reports' *regarding an FBI investigation concerning PERSON 1*," ECF No. 1 at 1 (emphasis added). Thus, the indictment replaces Senator Cruz's reference to the "Clinton administration" with a reference to "PERSON 1" (Hillary Clinton) and misleadingly attributes statements to Mr. Comey that he did not in fact make during his September 30, 2020, testimony.

Further, the indictment omits Senator Cruz's words that explicitly narrow the focus of his questions to Mr. McCabe and misleadingly implies that the questioning related to Mr. Richman. In fact, Mr. Comey's September 2020 exchange with Senator Cruz made no reference whatsoever to Mr. Richman, who ultimately appears in the indictment as PERSON 3. Instead, the context of the exchange confirms that Senator Cruz was asking about leaks by Mr. McCabe—indeed, Senator Cruz asked Mr. Comey whether he or Mr. McCabe was "telling the truth." In other words, the indictment presents an inaccurate description of the testimony at the heart of this case.[7]

## ARGUMENT

Under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), a court may order the disclosure of grand jury materials "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P.

---

[7] In a concurrently filed motion, Mr. Comey also moves to dismiss Count One both because Senator Cruz's questions were too ambiguous to support a false-statements charge and because Mr. Comey's responses to those questions were literally true. *See* Mot. to Dismiss Indictment Based on Fundamental Ambiguity & Literal Truth. The motion seeks to dismiss Count Two for similar reasons. *Id.*

6(e)(3)(E)(ii).  That rule strikes a balance between two competing principles of criminal law. The first is that courts have the authority to "dismiss an indictment because of misconduct before the grand jury." *United States v. Williams*, 504 U.S. 36, 46 (1992) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988)).  That authority would be meaningless if defendants were unable to access grand jury materials and inform the court about potential misconduct.  At the same time, "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983) (citations omitted).  For that reason, courts must exercise caution when determining whether to order the disclosure of grand jury materials.

After balancing the relevant interests, courts may order disclosure under Rule 6(e)(3)(E)(ii) when defendants "establish[] that particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004) (citing *United States v. Abcasis*, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992)) (internal quotation marks omitted).  That standard prevents "fishing expedition[s] to search for grand jury wrongdoing and abuse when there are no grounds to believe that any wrongdoing or abuse has occurred." *Id.*  But it also recognizes a consensus among district courts that disclosure is appropriate when a defendant demonstrates a "particularized need" for grand jury materials. *United States v. Naegele*, 474 F. Supp. 2d 9, 10 (D.D.C. 2007) (citing cases).

This case presents multiple "particularized and factually based grounds" that warrant disclosure of grand jury materials.

*First*, as Mr. Comey has explained in earlier motions, the indictment should be dismissed because it arises from real and substantial improper conduct that supports a reasonable inference

of irregularities before the grand jury—indeed, irregularities so severe and pervasive that they likely prejudiced the grand jurors' narrow decision to indict or at least gave rise to "grave doubt that its decision was free from [improper] influence." *Bank of Nova Scotia*, 487 U.S. at 256 (internal quotation marks omitted). *See* Mot. to Dismiss Indictment Based on Vindictive & Selective Prosecution, ECF No. 59; Mot. to Dismiss Indictment Based on Unlawful Appointment, ECF No. 60. More specifically, the train of events that led to this indictment involved public and prominent evidence that (1) it was driven by improper animus and (2) the prosecutor responsible for the case, because of her improper appointment, never should have been in the grand jury at all. *See* Fed. R. Crim. P. 6(d)(1) (listing persons permitted to be present in the grand jury and not including persons who do not qualify an as attorney for the government); Fed. R. Crim. P. 1(b)(1) (defining "Attorney for the government").

*Second*, given the highly irregular procedure that led to the indictment, there is a significant risk that the government misrepresented key issues of fact and law to the grand jury. Indeed, as explained further in Mr. Comey's concurrently filed Motion for a Bill of Particulars, the indictment itself fails to allege specifics necessary for Mr. Comey to understand and defend against the charges.

*Third*, the record suggests that an FBI agent who testified before the grand jury was potentially tainted by privileged communications between Mr. Comey and his attorneys, one of whom was likely Mr. Richman, yet the agent still proceeded to testify in front of the grand jury. There is thus a serious concern that the grand jury may have improperly relied on privileged information.

Each of these grounds independently warrants the disclosure of grand jury materials under Rule 6(e)(3)(E)(ii) to allow the defense to show that irregularities warrant dismissal of the

indictment. Accordingly, the Court should permit the defense to inspect the transcript of all testimony before the grand jury as well as any audio recording and transcript of all colloquies between counsel and the grand jury in this case.

## I.    THE GOVERNMENT'S CONSTITUTIONAL VIOLATIONS WARRANT DISCLOSURE OF THE GRAND JURY MATERIALS

Mr. Comey has filed two motions to dismiss the indictment based on the government's constitutional violations in this case. One of those motions argues that the government has singled out Mr. Comey for prosecution because of his protected speech and because of President Trump's personal animus toward Mr. Comey. *See* Mot. to Dismiss Indictment Based on Vindictive & Selective Prosecution, ECF No. 59. Such a vindictive and selective prosecution violates the First Amendment, Due Process Clause, and equal protection principles. *See generally id.* The other motion, which has been transferred to U.S. District Judge Cameron McGowan Currie, argues that the indictment is fatally flawed because it results directly from a paradigmatic violation of the Appointments Clause and the statute authorizing appointments of interim U.S. Attorneys, 28 U.S.C. § 546. *See* Mot. to Dismiss Indictment Based on Unlawful Appointment, ECF No. 60.

Although those motions must be decided on their own merits, the circumstances described in both motions raise a strong possibility that there were "irregularities in the grand jury proceedings" that would provide a "basis for dismissal of the indictment." *Nguyen*, 314 F. Supp. 2d at 616 (citations omitted). Indeed, Judge Currie has already ordered the government to produce for *in camera* review "all documents relating to the indictment signer's participation in the grand jury proceedings, along with complete grand jury transcripts." ECF No. 95. Mr. Comey has argued that if Ms. Halligan alone secured and signed the indictment, dismissal would be required because she was unlawfully appointed. *See* Mot. to Dismiss Indictment Based on

Unlawful Appointment at 18-25, ECF No. 60. And if she was unlawfully appointed, Ms. Halligan's appearance before the grand jury violated Federal Rule of Criminal Procedure 6(d)(1). *Id.* at 20-21; *see* Fed. R. Crim. P. 6(d)(1); Fed. R. Crim. P. 1(b)(1)(D). Rule 6(d)(1)—which permits only attorneys "authorized by law" to conduct grand jury proceedings—is one of the "few, clear rules which were carefully drafted and approved by th[e Supreme] Court and by Congress to ensure the integrity of the grand jury's functions," *Williams*, 504 U.S. at 46 (quoting *United States v. Mechanik*, 475 U.S. 66, 74 (1986) (O'Connor, J., concurring in the judgment)), the violation of which can support the Court's exercise of "supervisory power" to dismiss an indictment, *id.*, upon a proper showing of prejudice.

For similar reasons, disclosure of the grand jury materials is reasonably calculated to provide additional support for Mr. Comey's argument that he would not have been prosecuted but for President Trump's animus toward Mr. Comey, including because of his protected speech. *See generally* Mot. to Dismiss Indictment Based on Vindictive & Selective Prosecution, ECF No. 59. Objective evidence establishes that the President harbors such animus—he has spent the last eight years publicly attacking Mr. Comey's speech and character and calling for Mr. Comey to be prosecuted. *See id.* at 4-8. The record also shows that President Trump "prevailed upon [Ms. Halligan] to bring the charges . . . such that [she] could be considered a 'stalking horse.'" *See id.* at 21-22 (citing *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000)). In turn, the government's manipulation of the prosecutorial process, including its repudiation of the views of every career prosecutor who assessed the case, makes clear that Mr. Comey would not have been prosecuted but for President Trump's animus. *Id.* at 22-26.

Although dismissal of the indictment is warranted on the record as it stands, disclosure of the grand jury materials would bolster Mr. Comey's arguments. Having served as his personal

attorney and as a White House Official, Ms. Halligan has a close, longstanding relationship with President Trump.  *Id.* at 11-12.  And even though Ms. Halligan lacks prosecutorial experience, President Trump appointed her for the specific purpose of bringing this prosecution against Mr. Comey and other perceived political opponents.  *Id.* at 23-24.  Accordingly, there is a substantial risk that during her presentation to the grand jury, Ms. Halligan made statements that would support Mr. Comey's motion to dismiss.  Such "irregularities in the grand jury proceedings" would "create a basis for dismissal of the indictment" and thus warrant disclosure of the grand jury materials.  *Nguyen*, 314 F. Supp. at 616 (citations omitted).

## II.    THE RISK THAT THE GOVERNMENT MISREPRESENTED MATERIAL ISSUES OF FACT AND LAW WARRANTS DISCLOSURE OF THE GRAND JURY MATERIALS

The current record also reveals a significant risk that the government misstated key aspects of the charged offenses during its presentation to the grand jury.  And "where a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts 'grave doubt that the decision to indict was free from the substantial influence' of the erroneous instruction."  *United States v. Stevens*, 771 F. Supp. 2d 556, 566-67 (D. Md. 2011) (citing *United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991)).  Accordingly, if the grand jury materials show that Ms. Halligan seriously misstated the applicable law and facts, the materials would provide an additional "basis for dismissal of the indictment."  *Nguyen*, 314 F. Supp. at 616 (citation omitted).

### A.    Disclosure of the Grand Jury Materials Could Establish that the Government Misstated Essential Elements of Both Counts

As explained in Mr. Comey's concurrently filed Motion to Dismiss the Indictment Based on Fundamental Ambiguity and Literal Truth, the Court should dismiss Count One because it rests on fundamentally ambiguous questions.  The Supreme Court has made clear that "[p]recise

questioning is imperative as a predicate for" a violation of a false-statement statute like Section 1001(a)(2). *See Bronston v. United States*, 409 U.S. 352, 362 (1973) (applying that principle in the context of a perjury prosecution). Accordingly, an "answer to a fundamentally ambiguous question may not, as a matter of law, form the basis for a false statement." *United States v. Mosby*, 143 F.4th 264, 276 (4th Cir. 2025) (citation omitted). Here, the line of questioning that prompted Mr. Comey's allegedly false statements was fundamentally ambiguous because it included confusing compound phrases, alternated between broad and narrow questions, and was riddled with misstated facts.

Despite the basic principle that Section 1001(a)(2) requires the government to prove specific, false answers to specific, precise questions, the indictment does not identify the questions that form the basis for the charge. *See* ECF No. 1 at 1. Nor does it specify which of Mr. Comey's statements is allegedly false. *Id.*

Given that Count One rests on fundamentally ambiguous questions and that the indictment conspicuously omits those questions, there is a significant risk that the government did not explain to the grand jury that it was required to identify specific questions to support Count One. Failure to explain that requirement would constitute a "serious[] misstate[ment] [of] the applicable law" and thus would supply an independent reason to dismiss the indictment. *Stevens*, 771 F. Supp. 2d at 566-67. Indeed, the grand jury's decision to return an indictment by only a two-vote margin shows that any presentation of additional law or facts that was favorable for Mr. Comey likely would have led them not to return an indictment.[8]

---

[8] The same legal flaws would require dismissal of Count Two to the extent it rests on the same fundamentally ambiguous statements. Disclosure of the grand jury materials is also required to ensure that the government does not seek to try Mr. Comey for alleged false or misleading statements that differ from those on which the grand jury was asked to indict. *See Russell v. United States*, 369 U.S. 749, 765 (1962).

15

**B.      The Inherently Suspect Procedures That Led to the Indictment Reinforce the Need for Review of the Grand Jury Materials**

The highly irregular procedures that led to the indictment increase the risk that the government misstated key legal and factual issues to the grand jury.  As a general matter, the departure of a career prosecutor who reportedly determined that there was no probable cause to charge Mr. Comey, the subsequent installation of a White House official with no prosecutorial experience, and the resulting return of an error-ridden indictment by themselves support a finding that "inherently suspect procedures were used before the grand jury."  *Nguyen*, 314 F. Supp. at 616.  The details of the grand jury proceeding that are currently in the public record reinforce that conclusion.

All available information regarding Ms. Halligan's first-ever grand jury presentation smacks of irregularity.  It is virtually unheard of for a brand-new prosecutor to make her first grand jury presentation alone, without the supervision and guidance of an experienced prosecutor to ensure the absence of factual and legal errors.  Nevertheless, Ms. Halligan entered the grand jury alone to present a proposed indictment charging Mr. Comey in three counts.  That first attempt apparently failed, resulting in a "no true bill" vote by the grand jury.  *See* Grand Jury Transcript at 3-6.

Undeterred by her initial failure, Ms. Halligan did not excuse the grand jury for the day. Instead, the grand jury remained at the courthouse into the evening hours to vote on a second indictment that was ultimately returned at 6:47 p.m.  *See id.* at 1, 7.  That highly unusual decision could have sent the message that the grand jurors would not be permitted to leave unless and until they returned a true bill.  And if Ms. Halligan used words to suggest that message, it would further support dismissing the indictment.  *See United States v. Breslin*, 916 F. Supp. 438, 442 (E.D. Pa. 1996) (dismissing indictment for prosecutorial misconduct where prosecutor, among

other things, made "frequent suggestions to the jury that his assigned time was short").  Even if Ms. Halligan did not expressly deliver that message, the coercive and rushed process that Ms. Halligan employed provides further reason to believe that the grand jury might have been provided with a materially incorrect factual or legal presentation to induce it to indict.

It is also evident from the current record that Ms. Halligan's inexperience affected the grand jury proceedings.  She erroneously signed the first indictment she presented—for which the grand jury failed to return a true bill—and then created confusion by presenting two signed indictments to the presiding magistrate.  *See* Grand Jury Transcript at 3-5.  Her own apparent confusion during the return proceeding supports the inference, combined with the procedural errors in the return process and the factual errors in the indictment, that she failed to give basic instructions to the grand jury and to accurately answer their questions.  Although such inexperience alone would not ordinarily satisfy the defense's burden for unsealing grand jury materials, that inexperience must be viewed alongside Ms. Halligan's likely motive to obtain an indictment to satisfy the President's demands, the inaccuracies in the indictment, and the determination of every career prosecutor to consider the case that charges were not warranted.

Taken together, the circumstances surrounding the return of this indictment establish sufficient reason to infer the possibility of prejudicial irregularities to justify disclosure of the materials.  That is the type of misconduct that would support dismissal.  *See Stevens*, 771 F. Supp. 2d at 566-67.  Because "there is grave doubt" whether the grand jury's "decision was free from" the "substantial influence" of that misconduct, the facts here clear the bar for disclosure of grand jury material.  *Bank of Nova Scotia*, 487 U.S. at 251.

III.    **THE POTENTIAL INVASION OF MR. COMEY'S ATTORNEY-CLIENT PRIVILEGE WARRANTS DISCLOSURE OF THE GRAND JURY MATERIALS**

Based on a review of the discovery materials produced by the government, it appears that the FBI Special Agent who testified before the grand jury may have been tainted by information covered by the attorney-client privilege. As noted above, the agent's name appears on the indictment return sheet and criminal case cover sheet, ECF No. 7, which in this District typically reflects the name of the agent witness who testifies before the grand jury. The agent's role as a witness raises serious concerns about the misuse of privileged information in the grand jury. The same day the agent apparently testified before the grand jury, he alerted OGC that "████████

█████████████████████████████████████████████████████████

█████████████████████████████████████" ECF No. 89-5 at 2088 (Ex. E). That information apparently related to certain attorneys for Mr. Comey, including Mr. Richman. *See id*. Nevertheless, the agent testified before the grand jury that same day, and given the content of the resulting indictment, it is clear that his testimony must have referenced Mr. Comey's interactions and communications with Mr. Richman. This created a high risk that privileged information was presented to the grand jury by a tainted case agent.

Indeed, OGC's subsequent guidance on September 29, 2025 confirmed as much. OGC directed that any member of the team "████████████████████████████████████

██████████████████████████████████████████████. ECF No. 89-5 at 2088 (Ex. E). The natural corollary of this guidance would be to similarly preclude any potentially exposed team members from presenting evidence to the grand jury. If OGC was concerned that mere participation ██████████████████████████████ might taint subsequent process, it follows that a tainted agent's testimony before the grand jury would present a similar if not greater risk of tainting the presentation of evidence with privileged

18

information.  Because it appears the agent nevertheless testified before the grand jury on September 25, 2025, there is reason to believe that his testimony may have been tainted by privileged information he reviewed between Mr. Comey and his attorneys, including Mr. Richman.

Thus, disclosure of the grand jury materials is warranted so that the defense can determine whether the government is using privileged information to build its case.  If it is, the defense will argue that the Court should take appropriate remedial steps to prevent use of potentially privileged information.

## **CONCLUSION**

For the foregoing reasons, the Court should permit the defense to examine the transcript and audio recordings of the grand jury proceedings in this case, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii).

Dated: October 30, 2025

Respectfully submitted,


JAMES B. COMEY, JR.
By Counsel

*/s/  Jessica N. Carmichael*
Jessica N. Carmichael (VA Bar No. 78339)
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, First Floor
Alexandria, VA 22314
Telephone:  (703) 684-7908
Facsimile:  (703) 649-6360
Email:  jessica@carmichaellegal.com

Patrick J. Fitzgerald (*pro hac vice*)
(Mich. Bar No. P86579)
P.O. Box 277
New Buffalo, MI 49177
Telephone:  (312) 758-4454

Rebekah Donaleski (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 479-6000

Ephraim A. McDowell (*pro hac vice*)
Elias S. Kim (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone:  (202) 842-7800

Michael R. Dreeben (*pro hac vice*)
600 New Jersey Ave. NW
Washington, DC 20001
Telephone:  (202) 695-2562

*Counsel for Defendant James B. Comey, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 30th day of October, 2025, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/  *Jessica N. Carmichael*
Jessica N. Carmichael

*Counsel for Defendant James B. Comey, Jr.*