IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 1:25-CR-272 |
| JAMES B. COMEY, JR. | |
| *Defendant.* | |
| | |
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 2:25-CR-122 |
| LETITIA A. JAMES, | |
| *Defendant.* | |

**UNITED STATES' CONSOLIDATED RESPONSE IN OPPOSITION TO THE MOTIONS
TO DISMISS CHALLENGING THE U.S. ATTORNEY'S APPOINTMENT**

The United States files this opposition to the motions by Defendants James B. Comey, Jr. and Letitia A. James to dismiss their respective indictments (No. 25-cr-272, ECF No. 60; No. 25-cr-122, ECF No. 22) on the theory that interim U.S. Attorney Lindsey Halligan was improperly appointed. Because Defendants' arguments overlap substantially, and this Court has consolidated the motions for argument, the government files this consolidated response to both motions. The government will respond separately to Comey's motion to dismiss his indictment on vindictive- and selective-prosecution grounds (No. 25-cr-272, ECF No. 59), which remains pending before Judge Nachmanoff.

# TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Background ................................................................................................................... 3

Argument ..................................................................................................................... 5

I.    Ms. Halligan is validly serving as interim U.S. Attorney under 28 U.S.C. § 546 ................. 5

    A.    Ms. Halligan's appointment complies with the plain text of Section 546(a) ................. 5

    B.    Section 546(c)(2)'s time limit applies on a per-appointment basis and does not impliedly foreclose additional interim appointments ........................................ 6

    C.    Section 546(d)'s authorization of court-appointed U.S. Attorneys does not impliedly displace the Attorney General's parallel authority in Section 546(a) .......................... 13

II.    Neither dismissal nor an injunction are appropriate remedies ............................................. 19

    A.    Whatever her status as U.S. Attorney, Ms. Halligan validly obtained and signed the indictment as an attorney for the government .............................................. 19

    B.    Any defect in Ms. Halligan's authority does not invalidate the indictments ................ 21

    C.    The Attorney General has ratified the indictments, curing any defect .......................... 27

    D.    At minimum, any dismissal should be without prejudice .......................................... 28

    E.    James' other remedial requests should be rejected .................................................. 29

Conclusion ................................................................................................................... 30

## INTRODUCTION

Although Defendants frame their arguments in constitutional terms, all agree that U.S. Attorneys are inferior officers whose appointment the Constitution permits Congress to vest "by Law" in a "Head[] of Department[]" like the Attorney General.  U.S. Const. art. II, § 2, cl. 2; *see* Comey Mot. 2; James Mot. 4.  All further agree that Congress, in 28 U.S.C. § 546, did in fact vest the Attorney General with the power to appoint U.S. Attorneys for at least 120 days.  *See* Comey Mot. 3, 8, 13, 17; James Mot. 5.  The sole question is whether Section 546 authorized the Attorney General to appoint interim U.S. Attorney Lindsey Halligan in the circumstances here: where a previous interim U.S. Attorney vacated office after serving 120 days and being reappointed by the district court.  Section 546's text supplies a straightforward answer: yes.

Under Section 546(a), "[e]xcept as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant."  By its plain terms, that power is subject to one and only one exception: subsection (b), which bars appointing individuals to whom the Senate refused advice and consent.  All agree that the office of U.S. Attorney for this district was vacant when Ms. Halligan was appointed.  And no one claims that Subsection (b) applies since the Senate has not yet acted on Ms. Halligan's nomination.  Because Section 546(a)'s plain text is satisfied, Ms. Halligan's appointment is valid.

Defendants claim that other portions of Section 546 *impliedly* prevent the Attorney General from appointing an interim U.S. Attorney 120 days after her *first* interim appointment.  But Section 546 says no such thing.  Section 546(c)(2) permits "[a] person appointed" under Section 546 to serve until "the expiration of 120 days after appointment by the Attorney General under this section."  Thus, each appointment under Section 546(a) may not exceed 120 days.  The Attorney General must revisit her choice periodically, consistent with the nature of interim appointments.

1

Defendants instead read Section 546(c)(2) to impose an *aggregate* 120-day limit as if an appointment expired "120 days after *the initial* appointment by the Attorney General." But that is not the statute Congress wrote.

Defendants also invoke Section 546(d), which provides that, after "an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled." By its terms, that provision offers a parallel track to Attorney General appointments under Section 546(a), ensuring that the office of U.S. Attorney is promptly filled. Defendants, however, read Section 546(d) as if it said that "*only* the district court may appoint a United States attorney" after 120 days. But again, Congress made a different choice, and Defendants seek to rewrite the statute based on misplaced policy concerns.

Even were Ms. Halligan's appointment invalid, the motions to dismiss should be denied. While Defendants challenge Ms. Halligan's appointment as interim *U.S. Attorney*, the actions they challenge do not hinge on her validly holding that particular office. Any government attorney can present a case to a grand jury or sign an indictment, and the Attorney General plainly possessed and exercised the authority to make Ms. Halligan a government attorney, as the Attorney General has now confirmed. *See* Ex. A. Moreover, any defect in Ms. Halligan's role does not taint the indictments themselves: She at least was a de facto officer, and any error was harmless since the Attorney General indisputably could have appointed her in a different capacity to obtain the indictments. In all events, the government has endorsed the prosecutions, and the Attorney General has personally ratified the indictments to obviate any question as to their validity. *Id.* At minimum, any dismissal should be without prejudice to permit the government to seek new indictments now that the Attorney General has cured any arguable flaw in Ms. Halligan's authority to prosecute.

# BACKGROUND

*Legal Background.* "Investigative and prosecutorial decision making is the special province of the Executive Branch, and the Constitution vests the entirety of the executive power in the President, Art. II, § 1." *Trump v. United States*, 603 U.S. 593, 620 (2024) (citation and quotation marks omitted). The Attorney General, "as head of the Justice Department, acts as the President's 'chief law enforcement officer.'" *Id.*; *see* 28 U.S.C. § 503. And U.S. Attorneys, appointed for each federal judicial district, act as "the chief federal law enforcement official[s] for the judicial district[s] [they] serve." *Nadler v. Mann*, 951 F.2d 301, 305 (11th Cir. 1992); *see* 28 U.S.C. § 547.

Congress has provided for the appointment of U.S. Attorneys for four-year terms by the President with the advice and consent of the Senate. 28 U.S.C. § 541(a)-(b). But because U.S. Attorneys are "inferior officer[s]" subject to the control of the Attorney General and, ultimately, the President, *Myers v. United States*, 272 U.S. 52, 159 (1926), Congress may also by law vest the power to appoint U.S. Attorneys in "the President alone, in the Courts of Law, or in the Heads of Departments," like the Attorney General. U.S. Const. art. II, § 2, cl. 2. In the absence of a Senate-confirmed U.S. Attorney, Congress has authorized numerous fallback means for the duties of that office to be exercised. The Federal Vacancies Reform Act (FVRA), for instance, allows certain individuals to temporarily perform the duties of offices requiring Senate confirmation (like U.S. Attorney). *See* 5 U.S.C. § 3345. In addition, Congress has vested the Attorney General with "[a]ll functions" of Department of Justice officers and employees, including U.S. Attorneys, plus the general authority to conduct and supervise litigation on behalf of the United States, 28 U.S.C. §§ 509, 516-519, and allowed the Attorney General to delegate those powers to any Department of Justice officer or employee, *id.* § 510. The Attorney General may appoint attorneys to "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings … , which United

States attorneys are authorized by law to conduct." *Id.* § 515(a). The Attorney General may "retain[]" "special assistant[s]" or "special attorney[s]." *Id.* § 515(b). And she may appoint "officials … to detect and prosecute crimes against the United States." *Id.* § 533(1).

Congress also has authorized the appointment of U.S. Attorneys on an interim basis under 28 U.S.C. § 546. Section 546(a) supplies the topline grant of authority: "Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant." Section 546(b) provides a single exception: "The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent." Section 546(c) provides a time limit on an interim appointment: "A person appointed as United States attorney under this section may serve until the earlier of—(1) the qualification of a United States attorney for such district appointed by the President under section 541 of this title," *i.e.*, Senate confirmation of a U.S. Attorney, "or (2) the expiration of 120 days after appointment by the Attorney General under this section." And Section 546(d) provides yet another fallback option, ensuring that when the Attorney General fails to act, there will be *someone* to exercise the powers of U.S. Attorney: "If an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled." Regardless of how she was appointed, "[e]ach United States attorney is subject to removal by the President." *Id.* § 541(c); *see In re Sealed Case*, 838 F.2d 476, 521 (D.C. Cir. 1988) (R.B. Ginsburg, J., dissenting) ("Under § 546, of course, the executive branch is free to replace the interim U.S. Attorney at any time.").

***Factual Background.*** On January 20, 2025, the incumbent U.S. Attorney for the Eastern District of Virginia resigned. The next day, the Acting Attorney General appointed Erik Siebert as interim U.S. Attorney under Section 546(a). Mr. Siebert's initial appointment expired 120 days

later, on May 21, 2025, *see* 28 U.S.C. § 546(c)(2), and the judges of the Eastern District reappointed him under Section 546(d).

On September 19, 2025, Mr. Siebert vacated the office of U.S. Attorney. The next day, the President announced his intention to nominate Lindsey Halligan as U.S. Attorney with the Senate's advice and consent under 28 U.S.C. § 541(a).[1] To lead the office in the interim, on September 22, the Attorney General named Ms. Halligan as interim U.S. Attorney under Section 546(a). The Senate received Ms. Halligan's nomination on September 30.[2]

After Ms. Halligan's appointment as interim U.S. Attorney, on September 25, 2025, a grand jury in the Eastern District returned a two-count indictment charging Comey with making false statements to Congress, in violation of 18 U.S.C. § 1001(a)(2), and obstructing a congressional proceeding, in violation of 18 U.S.C. § 1505. No. 25-cr-272, ECF No. 1. On October 9, a grand jury returned an indictment charging James with bank fraud, in violation of 18 U.S.C. § 1344, and making false statements to a financial institution, in violation of 18 U.S.C. § 1014. No. 25-cr-122, ECF No. 1. For each indictment, the only government attorney who signed was Ms. Halligan.

## ARGUMENT

### I.    Ms. Halligan Is Validly Serving as Interim U.S. Attorney Under 28 U.S.C. § 546

#### A.    Ms. Halligan's appointment complies with the plain text of Section 546(a)

Section 546(a) states: "Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant." Subsection (b), in turn, prohibits the Attorney General from appointing someone "whose appointment by the President to that office the Senate refused to give advice and consent." Those

---

[1] Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025), https://truthsocial .com/@realDonaldTrump/posts/115239776714791650.

[2] *PN559 – Lindsey Robyn Michelle Halligan – Department of Justice*, Congress.gov (last visited Nov. 3, 2025), https://congress.gov/nomination/119th-congress/559.

criteria are plainly met here: The "office of United States attorney" for the Eastern District became vacant upon Mr. Siebert's September 19 departure. And the Senate has not refused advice and consent to Ms. Halligan—her nomination remains pending. The Attorney General therefore lawfully appointed Ms. Halligan as interim U.S. Attorney under Section 546 and the Appointments Clause, and the motions to dismiss should be denied. These cases are that simple.

Defendants, however, contend that Sections 546(c) and (d) together implicitly "limit[] the total tenure of the Attorney General's interim appointment to 120 days," after which only court-appointed interim U.S. Attorneys are allowed. Comey Mot. 9; *see* James Mot. 6. But Section 546 imposes only one exception to the Attorney General's appointment authority: Section 546(b)'s bar on appointees to whom the Senate has refused advice and consent. Because "Congress provide[d] exceptions in a statute," courts do not "have authority to create others." *United States v. Johnson*, 529 U.S. 53, 58 (2000).

**B.    Section 546(c)(2)'s time limit applies on a per-appointment basis and does not impliedly foreclose additional interim appointments**

1.    Defendants principally rely on Section 546(c), which states that "[a] person appointed as United States attorney under this section may serve until" the qualification of a Senate-confirmed U.S. Attorney or "the expiration of 120 days after appointment by the Attorney General under this section." Ms. Halligan's appointment fully complies with that provision: She is "[a] person appointed as United States attorney under this section." The Senate has not yet confirmed her or any other nominee as U.S. Attorney. And Ms. Halligan has not yet served "120 days after appointment by the Attorney General under this section." Nothing in the text explicitly or implicitly precludes the Attorney General from making additional appointments under Section 546(a) after 120 days if a new vacancy arises. Again, Subsection (a) identifies only one exception to the Attorney General's appointment authority: Subsection (b), not Subsection (c).

6

If anything, Section 546(c) expressly contemplates that the Attorney General may make multiple interim appointments by referring to "*A* person appointed as United States attorney under this section" rather than "*The* person" appointed.  Defendants recognize as much (Comey Mot. 9; James Mot. 6) but claim that the Attorney General must cram multiple appointments into a single 120-day period.  But the far more natural reading is that each "appointment" triggers its own 120-day clock:  Each "person appointed" may serve until "120 days after appointment."  That reading does not render the 120-day time limit "meaningless," as Comey asserts (at 9).  The Attorney General must revisit her interim appointments every 120 days.  They do not automatically renew. That process provides political accountability, ensuring that an appointee without Senate confirmation cannot serve indefinitely without frequent, personal review by the Attorney General.  At the same time, Congress did not hamstring the Attorney General with an artificial, one-time-only appointment window.

That reading also tracks the ordinary presumption that, "when a statute provides for an appointee to serve a term of years, the specified time of service begins with the appointment."  23 Op. O.L.C. 123, 123 (1999); *see* Floyd R. Mechem, *A Treatise on the Law of Public Offices and Officers* § 386, at 254 (1890); 16 Op. Att'y Gen. 656 (1880).  For example, if a Senate-confirmed U.S. Attorney resigns before the end of his four-year term, 28 U.S.C. § 541(b), a new Senate-confirmed U.S. Attorney is entitled to his own four-year term, not the remaining days of his predecessor's term.  Likewise, each new interim appointment triggers a new 120-day clock under Section 546(c)(2), avoiding the instability of artificially limited appointments in the waning days of the initial 120-day period.

Recent Fourth Circuit precedent supports the same conclusion.  In *Salomon-Guillen v. Garland*, 123 F.4th 709 (4th Cir. 2024), the circuit addressed a regulation authorizing the appointment

of "temporary Board [of Immigration Appeals] members for terms not to exceed six months." *Id.* at 716 (quoting 8 C.F.R. § 1003.1(a)(4) (2022)). An alien challenged the Attorney General's reappointment of a temporary Board member to four successive six-month terms. *Id.* The court rejected that challenge, recognizing that the regulation's "language doesn't restrict the power to appoint the same person to multiple consecutive terms," so successive terms are permissible. *Id.* at 717. As the Eighth Circuit added in rejecting a similar argument, implying a limitation on successive appointments "would be inconsistent with the Attorney General's broad power to make appointments and delegate duties to his subordinates." *Rivera v. Garland*, 108 F.4th 600, 606 (8th Cir. 2024). Likewise, nothing in Section 546(c)'s text limits the Attorney General's authority to make successive interim U.S. Attorney appointments, meaning that the Attorney General's ordinary, broad authority to appoint subordinates and delegate her prosecutorial powers applies.

2.      Defendants' contrary approach (Comey Mot. 8-9; James Mot. 6-7) reads Section 546(c)(2) as if it said that an interim appointment lasts until "the expiration of 120 days after *the initial* appointment by the Attorney General under this section." That reading violates the basic interpretive rule that courts may not "add words … to the statute Congress enacted." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). Section 546(c)(2)'s clock on interim service by "[a] person appointed" runs from "appointment," not "the initial appointment" of someone else. Defendants' more specific justifications for their 120-days-and-done approach are equally untenable:

*First*, Defendants claim (Comey Mot. 11; James Mot. 8) that, had Congress wanted each appointment to last up to 120 days, Congress would have made appointments expire "120 days after *that* appointment" or "after *his or her* appointment" rather than "120 days after appointment." But the "appointment" to which Congress naturally referred in Subsection (c)(2) is the same "appointment" that Congress has been discussing throughout Section 546. Subsection (a) allows the

8

Attorney General to "*appoint* a United States Attorney," who is referred to again in Subsection (c) as "A person *appointed*." Congress presumptively uses terms (even with variations) "in one consistent sense" in "neighboring provisions." *HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 389 (2021). The unadorned word "appointment" logically refers to the appointment of the "person *appointed*." That inference is particularly apt here given that all agree (Comey Mot. 9; James Mot. 6) that the Attorney General may appoint multiple interim U.S. Attorneys, so the reader must infer *which* "appointment" Congress was referring to. In context, the obvious referent is the appointment of the "person appointed" that Congress has been discussing, not the initial appointment of someone *else*.

*Second*, Comey contends (at 11) that the government's reading renders superfluous the phrase "under this statute" in Subsection (c)(2)'s tying of the 120-day clock to "appointment by the Attorney General under this section." But "under this statute" serves at least two functions: To begin, it draws a contrast with Subsection (c)(1)'s discussion of someone "appointed by the President under section 541 of this title," reorienting the reader that Subsection (c)(2) is discussing an Attorney General appointment under Section 546. Furthermore, it clarifies that the 120-day limit governs appointments only under Section 546, not the many other authorities for individuals to perform the duties of U.S. Attorneys temporarily. *See supra* pp. 3-4. In any event, Comey's reading adds no additional meaning to "under this section." He reads "after appointment by the Attorney General" to mean "after *the initial* appointment by the Attorney General." Reading Congress's subsequent inclusion of "under this section" to "refer[] more broadly to *any* appointment 'under this section,'" Comey Mot. 11, does not support emending the statute in the way Defendants ask.

*Third*, Comey asserts (at 11-12) that the limit in Subsection (c)(1)—that an interim U.S. Attorney may not serve once the Senate confirms the President's nominee under Section 541—is

not "appointee-specific," so (c)(2) should not be read as "appointee-specific" absent "clear lan-
guage to that effect." But Subsection (c)(2) is perfectly clear: It uses "appointment" to refer to
the "person appointed as United States attorney under this section." Regardless, Subsection (c)(1)
does not address a specific appointee because it sets out a condition that does not turn on the status
of any interim appointment. Once the Senate confirms a U.S. Attorney, the interim officeholder is
out, regardless of how long she served or who appointed her. Subsection (c)(2), by contrast, ad-
dresses when an interim appointment expires and thus logically turns on the "appointment" at
issue.

3.    Defendants' reading also contradicts Section 546's statutory history. As Defendants
recognize (Comey Mot. 15-16; James Mot. 9), between 1986 and 2006, Section 546 was identical
to the current version. Pub. L. No. 99-646, § 69, 100 Stat. 3592, 3616-17 (1986). During that
period, the government repeatedly used successive 120-day appointments for interim U.S. Attor-
neys. In 1987, the Attorney General reappointed an interim U.S. Attorney after the initial 120-day
clock had run—an appointment that was challenged in court and upheld. *In re Grand Jury Pro-
ceedings*, 671 F. Supp. 5, 6-7 (D. Mass. 1987). The Congressional Research Service reports that,
"between January 1993 and March 9, 2006, at least eight U.S. Attorney vacancies—three under
the Clinton Administration and five under the Bush Administration—were filled through succes-
sive 120-day appointments by the Attorney General under the provisions of 28 U.S.C. § 546."
Henry B. Hogue, Cong. Rsch. Serv., RS21412, *Temporarily Filling Presidentially Appointed,
Senate-Confirmed Positions* 6 n.23 (Jan. 25, 2008). In debating later amendments to Section 546,
Senator Kyl identified two pre-2006 instances when interim U.S. Attorneys served three or even
four successive 120-day terms. 153 Cong. Rec. S3250 (daily ed. Mar. 19, 2007). As far as the
government is aware, the only district court to consider the practice contemporaneously approved

it, *In re Grand Jury*, 671 F. Supp. at 7, and until the current Administration, no court questioned it, *see United States v. Giraud*, 2025 WL 2416737, at *9 (D.N.J. Aug. 21, 2025).

In 2006, Congress amended Section 546 to eliminate the district court's appointment power and permit the Attorney General's appointee to serve indefinitely. Pub. L. No. 109-177, § 502, 120 Stat. 192, 246 (2006). But following controversy over the Bush Administration's firings of U.S. Attorneys, in 2007, Congress restored the previous language—language that was still well understood to authorize successive appointments. Pub. L. No. 110-34, § 2, 121 Stat. 224, 224 (2007). Where "Congress has chosen to maintain the relevant provisions"—and, here, affirmatively reenacted them—against "decades" of executive-branch practice, Congress should be understood to have implicitly ratified that practice. *Wash. All. of Tech. Workers v. DHS*, 50 F.4th 164, 190 (D.C. Cir. 2022); *see Salomon-Guillen*, 123 F.4th at 718 (relying on "agency practice" of successive Board of Immigration Appeals appointments).

Citing legislative history, Defendants assert (Comey Mot. 16-17; James Mot. 9) that the purpose of the 2007 amendment was to prevent successive interim appointments. "But legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018). And Defendants' legislative history reflects the proverbial "looking over a crowd and picking out your friends." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). While some members certainly wanted to prohibit successive appointments, Senator Kyl correctly pointed out that, "because [the bill] reinstates the exact language that existed before the statute was amended in 2006[,] the Attorney General could make consecutive 120-day appointments of interim U.S. attorneys." 153 Cong. Rec. S3250. Congress was thus "aware that even upon a return to the previous version of section 546," the Attorney General could rely "on preexisting legal rationales" to make "successive interim appointments." *Restoring Checks and Balances in the Confirmation Process of*

*United States Attorneys: Hearing Before the Subcomm. on Comm'l & Admin. Law of the H. Comm. on the Judiciary*, 110th Cong. 132 (2007) (statement of T.J. Halstead, Cong. Rsch. Serv.). And the Senate rejected an amendment that would have repealed the Attorney General's interim appointment authority altogether. 153 Cong. Rec. S3227, S3302. If Congress had intended to block successive appointments in 2007, as Defendants claim, returning to the former text that had long been understood to authorize such appointments would have been a bizarre way of doing so.

Instead, the 2007 amendment means what it says: The Attorney General can no longer make a single indefinite appointment under Section 546 as she could under the 2006 version; she must revisit her choice every 120 days. And courts may once again appoint interim U.S. Attorneys as a backstop. That amendment marks a significant change from the *2006* version. *Contra* James Mot. 9-10. But in reenacting the pre-2006 text, Congress presumptively ratified the Executive's longstanding use of successive 120-day appointments under *that* version of the statute.

Defendants also place (Comey Mot. 15; James Mot. 10-11) significant weight on a 1986 memorandum by then-Deputy Assistant Attorney General Alito identifying a purported "Congressional purpose that after the expiration of the 120-day period further interim appointments are to be made by the court." Memorandum from Samuel A. Alito, Jr., Deputy Ass't Att'y Gen., to William P. Tyson, Director, Exec. Office for U.S. Att'ys 3 (Nov. 13, 1986) (Alito Mem.). But consistent with the era in which it was written, the extent of the memorandum's analysis is a citation of a single House floor statement. *Id.*; *see Brnovich v. DNC*, 594 U.S. 647, 667 (2021) (Alito, J.) (declining to follow the approach of a 1986 case that "jumped right" to legislative history rather than "start[ing] with a careful consideration of the text"). And the cited statement does not even suggest that the Attorney General cannot make multiple appointments that total over 120 days; the congressman merely said that once an interim appointment "*expires*, the district court appoints a

United States Attorney," *i.e.*, the government cannot let one 120-day appointment lapse, but multiple, shorter appointments may be allowed.  132 Cong. Rec. H11294 (daily ed. Oct. 17, 1986) (emphasis added).  In any event, the memorandum left open whether the Attorney General could make an additional appointment if the district court failed to act, Alito Mem. 4, refuting Comey's claim (at 15) that the memorandum took "precisely the same" approach he takes here.  And subsequent Department of Justice practice rebuts any suggestion that the Attorney General is limited to a single 120-day period, with the first of many successive interim appointments made less than 10 months after the memorandum issued.  *In re Grand Jury Proceedings*, 671 F. Supp. at 6.

### C.    Section 546(d)'s authorization of court-appointed U.S. Attorneys does not impliedly displace the Attorney General's parallel authority in Section 546(a)

1.    Defendants also divine (Comey Mot. 9-10; James Mot. 7-8) their implied limitation from Section 546(d), which provides that, "[i]f an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled."  Here, Mr. Siebert's initial appointment expired on May 21, and the judges of the Eastern District appointed him to a new, indefinite term subject to presidential removal.  Yet Mr. Siebert then vacated his office on September 19, and nothing in Subsection (d) explicitly or implicitly limited the Attorney General's authority to appoint an interim U.S. Attorney under Subsection (a) to fill the vacancy.  Again, the only limitation in Subsection (a) is that it applies "[e]xcept as provided in subsection (b)."  Defendants' reading impermissibly treats Subsection (d) as an additional, unstated restriction.  *See supra* p. 6.

Section 546(d)'s text further refutes Defendants' reading.  Subsection (d) says that "the district court for such district may appoint a United States attorney" once a 120-day appointment has expired, not that "*only* the district court … may appoint."  Subsection (d) thus provides a parallel grant of authority; it does not displace Subsection (a).  Comey claims otherwise (at 10)

based on *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), a case about whether the Federal Rules of Civil Procedure displaced a state-law class-action limit. But when it comes to the federal government's powers, it is common for Congress to grant "parallel authority." *United States v. Gaubert*, 499 U.S. 315, 329 (1991) (parallel regulatory authority for banking agencies); *e.g.*, 15 U.S.C. § 18a(b)(2) (authorizing both the Federal Trade Commission and the Department of Justice to review mergers under the Clayton Act).

Parallel tracks are especially common in the *appointments* context to ensure the continuity of government and provide the Executive Branch with flexibility to implement its priorities with its preferred personnel. For example, 28 U.S.C. § 508(b) allows the Attorney General to designate certain subordinates to serve as Acting Attorney General during a future vacancy, while the FVRA authorizes the President to select different people to temporarily perform Senate-confirmed offices, including Attorney General. 5 U.S.C. § 3345(a)(2), (3). Those two authorities, the Fourth Circuit has held, are "alternative[s]," not "mutually exclusive." *United States v. Smith*, 962 F.3d 755, 763 n.1 (4th Cir. 2020); *see* 42 Op. O.L.C. 182 (2018). Likewise, Defendants accept that the Attorney General may make at least 120 days' worth of interim U.S. Attorney appointments even though the FVRA says that "the first assistant … *shall* perform the functions and duties of the office temporarily" during a vacancy. 5 U.S.C. § 3345(a)(1) (emphasis added); *see Giraud*, 2025 WL 2416737, at *6 (agreeing that the FVRA and Section 546(a) are "alternative[s]"). Sections 546(a) and (d) similarly provide parallel authority to ensure that the office of U.S. Attorney does not stay vacant if the Attorney General neglects to make a successive appointment. As Comey recognizes (at 8), "the importance of the office mandates a mechanism for ensuring that it will function on an interim basis when no Senate-confirmed occupant serves." *See* James Mot. 5 (similar).

Nor are Defendants correct (Comey Mot. 12; James Mot. 8) that "concurrent" authorities would produce "an intractable conflict" or "thorny separation-of-powers questions." If both the Attorney General and the court attempt to make an appointment, the President can remove the court's appointee to ensure that the Attorney General's choice prevails. 28 U.S.C. § 541(c). The same would be true if the Attorney General attempted to designate one successor under 28 U.S.C. § 508(b) and the President preferred someone else under the FVRA. "Under our Constitution, the 'executive Power'—all of it—is 'vested in a President.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020). To the extent there is a dispute over whether a district court or the President should decide who gets to wield executive power, the Constitution provides a clear answer: the President. In any event, no such conflict exists here. The district court did not appoint anyone in the days following Mr. Siebert's departure.

2.      At bottom, Defendants' arguments sound in policy, not text: If "the Attorney General could string together 120-day appointments," they claim, "the Executive Branch could circumvent both the district court's role under subsection (d) and Senate confirmation under Section 541." Comey Mot. 10, 13; *see* James Mot. 10. But "even the most formidable policy arguments cannot overcome a clear statutory directive." *BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230, 245 (2021) (cleaned up). And Defendants' concerns ring hollow given that the government previously let the district court make an appointment, has now submitted Ms. Halligan for Senate confirmation, and secured Senate confirmation of 16 U.S. Attorneys mere weeks ago.[3]

Defendants' policy argument also assumes the conclusion that Subsection (d) seeks to make the court, not the Attorney General, the sole appointer of interim U.S. Attorneys after 120 days.

---

[3] U.S. S. Comm. on the Judiciary, *Confirmed Nominations*, https://www.judiciary.senate.gov/nominations/confirmed (16 U.S. Attorneys confirmed on October 7, 2025).

Instead, as explained above, Subsection (d) simply offers a failsafe should the Attorney General not make an appointment. Regardless, Defendants' own reading does not guarantee district-court appointments, since if the government uses the FVRA instead of Section 546(a), the district court's authority is never triggered. Likewise, because Subsection (d) is triggered only when "an *appointment* expires under subsection (c)(2)," the district court cannot appoint if the Attorney General's appointee vacates office *before* expiration of the appointment after 120 days. And even the Alito memorandum on which Defendants rely contemplates that the Attorney General might make successive appointments if the district court fails to act, Alito Mem. 4—a conclusion that makes sense lest a slow-moving district court stymie prosecutorial power. Permitting the Attorney General to appoint an additional interim U.S. Attorney is not "circumvent[ing]" or "sidelin[ing]" anyone (Comey Mot. 13; James Mot. 10), but allowing the statute's parallel authorities to work.

Defendants' concerns over bypassing Senate confirmation are particularly puzzling given that, even on their reading, *court*-appointed interim U.S. Attorneys can serve indefinitely. *E.g.*, *United States v. Hilario*, 218 F.3d 19, 21 (1st Cir. 2000) (court-appointed U.S. Attorney served over six years). Historically district courts have overwhelmingly reappointed the Attorney General's choice, as happened with Mr. Siebert and multiple other U.S. Attorneys in the Fourth Circuit this year.[4] In practice, Defendants would frequently allow the President's pick to serve an entire four-year term or longer without Senate confirmation or even periodic reassessment.

There is a reason, however, that lengthy interim appointments are the exception, not the rule. In addition to obviating the need to revisit an appointment every 120 days, the imprimatur

---

[4] *See, e.g.*, W.D.N.C., U.S. Att'y's Office, *United States Attorney Russ Ferguson* (Aug. 4, 2025), https://www.justice.gov/usao-wdnc/staff-profile/united-states-attorney; Press Release, D. Md., U.S. Att'y's Office, *Court Appoints Hayes U.S. Attorney for the District of Maryland* (June 25, 2025), https://www.justice.gov/usao-md/pr/court-appoints-hayes-us-attorney-district-maryland; Order, *In re Appointment of Bryan P. Stirling*, No. 3:25-mc-626 (D.S.C. Aug. 19, 2025).

of Senate confirmation offers tangible benefits, telling courts and litigants that the U.S. Attorney has the backing of two branches of government and will presumptively lead the office for four years with a direct line of accountability to the President. *See* 28 U.S.C. § 541(b). The Executive has little incentive to forgo those benefits across the board, which is why presidential appointment and Senate confirmation remain the norm, even though the FVRA allows the Executive to fill vacancies with acting appointees for far longer than 120 days. *See* 5 U.S.C. § 3346 (general 210-day limit on acting designations, with lengthy extensions if nominations are made). And again, the claim that the government engaged in a "gambit" (Comey Mot. 13) to avoid the district court and Senate makes no sense here where the government let the district court make an appointment, allowed him to serve for four months, and submitted Ms. Halligan for Senate approval.

3.    To the extent Section 546 is ambiguous, constitutional avoidance favors the government's reading. *See FCC v. Fox Television Stations,* 556 U.S. 502, 516 (2009) ("[A]mbiguous statutory language [should] be construed to avoid serious constitutional doubts."). There are few functions more "quintessentially executive" than the "[i]nvestigation and prosecution of crimes." *Trump*, 603 U.S. at 620. Article II therefore requires that the President have "*complete* control over investigation and prosecution of violations of the law," including over the prosecutors who carry out those duties. *Morrison v. Olson*, 487 U.S. 654, 710 (1988) (Scalia, J., dissenting). Conversely, Article III requires courts to "carefully abstain from exercising any power that is not strictly judicial in its character, and which is not clearly confided to it by the Constitution." *Muskrat v. United States*, 219 U.S. 346, 355 (1911); *see* U.S. Const. art. III, § 1. Congress may permit "Courts of Law" to appoint some inferior officers. U.S. Const. art. II, § 2, cl. 2. But Congress may not do so in a way that "is incongruous with the appointers' judicial duties or unduly interferes with the proper functioning of the Executive Branch." *Hilario*, 218 F.3d at 26.

17

Defendants' position steers into that constitutional concern by allowing Article III courts to control the appointment of a paradigmatic executive official *even over the President's objection*. On Defendants' view, once the 120-day clock has run on the Attorney General's initial appointment, only the district court can appoint an interim U.S. Attorney until there is a Senate-confirmed replacement. The President, of course, remains free to remove whomever the court selects. 28 U.S.C. § 541(c). But that arrangement raises the possibility that the court could continue making appointments unacceptable to the President, and the President could continue removing those appointees until the court picks someone to his satisfaction. That regime is far more "profoundly destabilizing" (Comey Mot. 12) than one in which the Attorney General and district court make simultaneous picks and the Attorney General's pick prevails. Courts ordinarily strive to avoid, not embrace such "interbranch conflict," which raises "significant separation of powers issues." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 866, 868 (2020).

This case illustrates the danger: Presumably because the previous interim U.S. Attorney was appointed by the judges of the Eastern District, those judges *sua sponte* transferred the present motions to this Court. Other courts have felt compelled to transfer similar cases challenging U.S. Attorney appointments.[5] Courts should avoid an interpretation that would routinely put themselves in the uncomfortable position of being the subjects, not the arbiters, of cases or controversies. Instead, consistent with the Appointments Clause and the separation of powers, Congress gave district courts only a narrow, yet important, role in ensuring the efficient and continuous exercise of federal authority when the political branches fail to act.

---

[5] *E.g.*, *United States v. Garcia*, 2025 WL 2784640, at *2 (D. Nev. Sept. 30, 2025) (entire District of Nevada recused and transferred motions to Arizona after defendants challenged acting U.S. Attorney's appointment); *Giraud*, 2025 WL 2416737, at *4 (Chief Judge of Third Circuit had to specially designate out-of-district judge to adjudicate acting U.S. Attorney's appointment after District of New Jersey judges attempted an interim appointment that the President disapproved).

## II.    Neither Dismissal Nor an Injunction Are Appropriate Remedies

Even were Ms. Halligan's appointment invalid, dismissal, especially with prejudice, would not be an appropriate remedy for what is at most a procedural misstep in how the Attorney General phrased the appointment. James' request for prospective relief should also be denied now that the Attorney General has reappointed Ms. Halligan under other, unchallenged authorities.

### A.    Whatever her status as U.S. Attorney, Ms. Halligan validly obtained and signed the indictment as an attorney for the government

Defendants' motions evince a fundamental mismatch between their asserted violation and their request for dismissal. While Defendants assail Ms. Halligan's purportedly "unlawful title," their indictments in no way depend on that title. Comey Mot. 21; *see* James Mot. 1. "[N]o federal rule exists which demands that a U.S. Attorney sign every indictment." *United States v. Kouri-Perez*, 47 F. Supp. 2d 164, 166 (D.P.R. 1999); *accord United States v. Gantt*, 194 F.3d 987, 998 (9th Cir. 1999), *overruled on other grounds by United States v. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc). Instead, an indictment need only be signed by an "attorney for the government." Fed. R. Crim. P. 7(c)(1). Likewise, "attorneys for the government" may conduct grand-jury proceedings. Fed. R. Crim. P. 6(d)(1). In many districts, Assistant U.S. Attorneys therefore routinely sign indictments and any vacancy or defect in the U.S. Attorney's appointment does not affect their power to do so. *See United States v. Baldwin*, 541 F. Supp. 2d 1184, 1196 (D.N.M. 2008). That is because "their ability to act does not hinge on the authority of the local United States Attorney, but derives from the Attorney General's plenary power over litigation to which the United States is a party." *Hilario*, 218 F.3d at 22; *see* 28 U.S.C. §§ 516, 518(b), 519.

Likewise, any flaw in Ms. Halligan's appointment as interim U.S. Attorney does not affect her ability to exercise *the Attorney General*'s prosecutorial power. Whatever her title, Ms. Halligan is still an "attorney for the government" authorized to conduct grand-jury proceedings and sign

indictments, just as she is an "attorney for the government" bound by the grand-jury secrecy rule, Fed. R. Crim. P. 6(e)(2)(B)(vi), protected by the government's attorney-client privilege, and entitled to a federal paycheck (after the shutdown). The Federal Rules define an "Attorney for the government" to include not just a "United States attorney" or Assistant U.S. Attorney, but any "authorized assistant" to the Attorney General or "any other attorney authorized by law to conduct proceedings under these rules as a prosecutor." Fed. R. Crim. P. 1(b)(1). "[S]pecial attorneys, operating under letters of authorization" from the Attorney General, may therefore conduct grand-jury proceedings and sign indictments, even if the "letter of authorization contained no express grant of authority to sign indictments." *Little v. United States*, 524 F.2d 335, 336 (8th Cir. 1975).

The Attorney General has broad power "to appoint subordinate officers to assist [her] in the discharge of [her] duties." *United States v. Nixon*, 418 U.S. 683, 694 (1974). Specifically, she may "specially appoint[]" attorneys to "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings …, which United States attorneys are authorized by law to conduct." 28 U.S.C. § 515. She may appoint "attorneys to assist United States attorneys when the public interest so requires." *Id.* § 543(a). She may make "provisions as [s]he considers appropriate" to authorize "any other officer, employee, or agency of the Department of Justice" to perform "any function of the Attorney General." *Id.* § 510; *see id.* § 509. And she may appoint "officials … to detect and prosecute crimes against the United States." *Id.* § 533(1). Individually and collectively, those authorities amply authorize Ms. Halligan to conduct these prosecutions as an "authorized assistant" to the Attorney General or an "attorney authorized by law to conduct proceedings under [the Federal] rules as a prosecutor." Fed. R. Crim. P. 1(b)(1); *see United States v. Ramirez*, 2025 WL 3019248, at *18-*19 (C.D. Cal. Oct. 28, 2025) (holding that Acting U.S. Attorney was improperly appointed but could supervise the office via other delegated authorities).

To be sure, Ms. Halligan's original appointment cited only Section 546, consistent with the government's view that the Attorney General is not limited to a single 120-day window to appoint interim U.S. Attorneys. But an agency need not cite the specific statutory provision on which it relies when making a decision. *See Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248 (1964). And courts ordinarily interpret legal texts to avoid rendering them invalid. Antonin Scalia & Bryan A. Garner, *Reading Law* 66 (2012). There is no question that the Attorney General *intended* to vest Ms. Halligan with the powers of U.S. Attorney and thus with the powers of a government attorney authorized to conduct criminal litigation—a fact that the Attorney General has confirmed by ratifying Ms. Halligan's appointment under her other authorities. *See* Ex. A. Ms. Halligan's original appointment should not be read as a nullity given the Attorney General's broad power to appoint prosecutors and delegate authority.

## B.    Any defect in Ms. Halligan's authority does not invalidate the indictments

Even if Ms. Halligan lacked the authority to obtain and sign indictments, the indictments are still valid for three independent reasons.

*First*, the Fourth Circuit has long "held that the signature of the prosecuting attorney is no part of the indictment and is necessary only as evidence of the authenticity of the document." *Wheatley v. United States*, 159 F.2d 599, 600 (4th Cir. 1946). Accordingly, "the improper signing of an indictment is not such a defect as would invalidate the instrument." *Id.* at 601. It is a mere "technical deficienc[y] that [is] not necessarily fatal to the indictment." *United States v. Irorere*, 228 F.3d 816, 830-31 (7th Cir. 2000); *accord United States v. Morse*, 613 F.3d 787, 793 (8th Cir. 2010) ("The signatures on the indictment, however, are a formality, and even the lack of signatures would not render an indictment invalid."); Charles Alan Wright et al., *Federal Practice and Procedure* § 124 (5th ed. Westlaw Sept. 2025 update) (observing that "courts have not rigorously enforced" the signature requirement); *see United States v. Suescun*, 237 F.3d 1284, 1287 (11th Cir.

2001) ("An appointment of a United States Attorney that is not made as provided by the Appointments Clause does not affect the Government's power to prosecute.").

"[M]ultiple courts have" therefore "held that an indictment is not invalid if the prosecutor was not licensed to practice if other evidence indicates that the government endorsed the prosecution." *United States v. Kelley*, 404 F. Supp. 3d 447, 452 (D. Mass. 2019) (collecting cases), *aff'd*, 989 F.3d 67 (1st Cir. 2021). For example, where the only government attorney to present evidence to the grand jury and sign the indictment was suspended from the practice of law, a court held that "the indictment was valid" because other government lawyers "agreed with the grand jury that the indictment should issue," as evidenced by their signatures on later filings. *Id.* at 453.[6]

Those cases confirm the validity of these indictments. There is no question as to "the indictment's authenticity" or "the government's agreement with the grand jury's return of it." *Kelley*, 989 F.3d at 70. Other federal prosecutors with unchallenged appointments have signed subsequent filings, and the Attorney General has personally ratified both indictments. Ex. A.[7] That readily distinguishes cases like *United States v. Providence Journal Co.*, 485 U.S. 693 (1988) (cited at James Mot. 13), where *no* authorized official approved of the challenged action. *See id.* at 698-99 (dismissing certiorari petition filed by special prosecutor that the Solicitor General had affirmatively *disapproved*); *see Kelley*, 989 F.3d at 71 (distinguishing *Providence Journal*).

*Second*, even were a government attorney's signature necessary and even were Ms. Halligan not a government attorney at the time, her actions would be entitled to "de facto validity."

_____

[6] *United States v. Durham*, 941 F.2d 886 (9th Cir. 1991) (discussed at James Mot. 14), does not hold otherwise. There, the Ninth Circuit stated that a defect in the appointment of the only prosecutor to present the case to the grand jury would raise a "question" as to whether he was properly supervised. *Id.* at 892. But the court expressly recognized that an invalid appointment of the sole prosecutor "alone would not be sufficient to upset the conviction." *Id.*

[7] That also forecloses James' contention (at 14 n.14) based on anonymous news reports that the government does not approve of her prosecution.

*Buckley v. Valeo*, 424 U.S. 1, 142 (1976). "The *de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 180 (1995). That doctrine "springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question." *Id.* That doctrine has such deep roots in Anglo-American law that early American courts considered it "too well settled to be discussed." *People ex rel. Bush v. Collins*, 7 Johns. 549, 552 (N.Y. Sup. Ct. 1811) (Kent, C.J.). Even if the Attorney General failed to properly appoint Ms. Halligan as "an officer *de jure*," she was acting under color of official title and her past actions are "valid and binding." *Phillips v. Payne*, 92 U.S. 130, 132 (1876).

Defendants try to bootstrap their claimed violation of Section 546 into a violation of the Appointments Clause, citing Supreme Court cases declining to apply the de facto officer doctrine to certain Appointments Clause claims. According to Defendants (Comey Mot. 17-18; James Mot. 11-12), any appointment not made in compliance with Section 546 is not authorized "by Law" and thus automatically violates the Appointments Clause. But not every action "in excess of … statutory authority is *ipso facto* in violation of the Constitution." *Dalton v. Specter*, 511 U.S. 462, 472 (1994). As the Supreme Court observed in *Ryder*, "a mere matter of statutory construction" does not rise to an Appointments Clause violation. 515 U.S. at 181 (quoting *McDowell v. United States*, 159 U.S. 596, 598 (1895)). *Ryder* therefore distinguished the constitutional claim there—that an inferior officer had not been appointed by the President, a court of law, or department head—from a claim that a judge had been appointed to temporarily fill a vacancy in violation of a statute. *Id.* at 181-82. Yet on Defendants' theory, *every* statutory violation would become a constitutional violation since any appointment in violation of a statute would not be authorized "by Law."

Regardless, the de facto officer doctrine equally applies to claims asserting the "unconstitutionality of the mode by which the party was appointed or elected to a legally existing office." *Norton v. Shelby County*, 118 U.S. 425, 444 (1886). Defendants' cases do not hold otherwise. In *Ryder*, 515 U.S. at 182-83, and *Lucia v. SEC*, 585 U.S. 237, 251-52 (2018) (discussed at Comey Mot. 19-20; James Mot. 15), the Court invalidated the past acts of *adjudicators* under the Appointments Clause. In that context, only a limited number of decisions will be on direct review at any time, so "there is not the sort of grave disruption or inequity involved in awarding retrospective relief." *Ryder*, 515 U.S. at 185. Extending that narrow exception to *non*-adjudicators, like prosecutors, who make countless decisions every day that can go well beyond individual cases, would risk just the sort of "chaos" the de facto officer doctrine is designed to avoid. *Id.* at 180.

Defendants' other cases are even further afield. Defendants invoke (Comey Mot. 18-19; James Mot. 15) a passage in *Collins v. Yellen*, 594 U.S. 220, 257-58 (2021), discussing when an officer's actions might be "void." But the cited passage merely described how the challengers characterized certain cases in the course of *distinguishing* those cases and *rejecting* their argument. *See id.* That discussion cannot plausibly be construed as having abrogated sub silentio the centuries-old de facto officer doctrine, and the Supreme Court has made clear that its prior precedents remain binding on lower courts despite any arguable tension with more recent decisions. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) (Lower courts "should follow the case which directly controls, leaving to th[e Supreme] Court the prerogative of overruling its own decisions."). Comey also cites (at 19) the district-court decision in *United States v. Trump*, 740 F. Supp. 3d 1245, 1304 (S.D. Fla. 2024), which declined to apply the de facto officer doctrine and dismissed an indictment against President Trump on the ground that the special counsel's appointment was unlawful. But the court there found that appointment unconstitutional and

24

irremediable because there was no "statutorily created office to fill in the first place" and, the court held, the de facto officer doctrine cannot apply when "there is no office to fill." *Id.* (quoting *Norton*, 118 U.S. at 441). Even on its own terms, that reasoning has no application here, where the office of U.S. Attorney plainly exists; the question is just whether Ms. Halligan properly filled it.

*Third*, any error in Defendants' indictments was harmless given the grand jury's independent decision to indict. The grand jury "is a constitutional fixture in its own right" that "act[s] independently of [the] prosecuting attorney," *United States v. Williams*, 504 U.S. 36, 47, 49 (1992) (cleaned up), and "gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime," *Kaley v. United States*, 571 U.S. 320, 328 (2014). Historically, "the grand jury was competent to act solely on its own volition," even without a prosecutor. *Hale v. Henkel*, 201 U.S. 43, 60 (1906). "An indictment returned by a legally constituted and unbiased grand jury" is thus "enough to call for trial of the charge on the merits." *Costello v. United States,* 350 U.S. 359, 363 (1956). Failures by the Executive Branch—even prosecutorial misconduct before the grand jury—provide a court "no authority to dismiss the indictment … absent a finding that [the defendant] w[as] prejudiced by such misconduct." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988). That rule applies to defects in U.S. Attorney appointments: The "remedy would not be the dismissal of [the] indictment" unless the appointment affects "basic constitutional rights." *United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71 (D.P.R. 2000), *aff'd sub nom. United States v. Valdez-Santana*, 279 F.3d 143 (1st Cir. 2002); *accord Franklin v. United States*, 2011 WL 1675035, at *5 (M.D.N.C. May 3, 2011) (applying harmless-error review to claim that prosecutor was not an "attorney[] for the government").

In this context, prejudice requires that "the government's misdeeds substantially influenced the grand jury's decision to indict" or that "there is grave doubt that the decision to indict was free

from the substantial influence of such violations." *United States v. Derrick*, 163 F.3d 799, 807-08 (4th Cir. 1998). Defendants cannot make that showing. Given the Attorney General's expansive power to appoint attorneys and delegate the Department of Justice's powers, there is no question that, as she has now made explicit, the Attorney General could have authorized Ms. Halligan to conduct grand-jury proceedings and sign indictments, even without an interim U.S. Attorney for the Eastern District, by appointing her as a special attorney. *Supra* pp. 20-21. The Attorney General could have also hired Ms. Halligan as an Assistant U.S. Attorney, 28 U.S.C. § 542(a), making her an indisputable "[a]ttorney for the government" under Rule 1(b)(1)(B).

Defendants' basic claim therefore amounts to at most a paperwork error: that the Attorney General should have cited a different provision of Title 28 in appointing Ms. Halligan instead of adhering to the Department's longstanding view that Section 546(a) authorizes successive interim U.S. Attorneys. Absent her appointment under Section 546(a), Ms. Halligan would not have been excluded from the grand-jury room, as Comey claims (at 21). She would have simply had a different title. That kind of technical difference cannot establish the "grave doubt" required to take the extraordinary step of impugning a grand jury's decision to indict. *Derrick*, 163 F.3d at 808.

Defendants seek (Comey Mot. 21; James Mot. 15) to avoid harmless-error review altogether, insisting that this case falls into the rare exception for cases "in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair." *Bank of Nova Scotia*, 487 U.S. at 257. But that exception is exceedingly narrow and is "exemplified," *id.*, by a case finding structural error where "blacks had been systematically excluded" from the grand jury. *Vasquez v. Hillery*, 474 U.S. 254, 256 (1986); *see also Ballard v. United States*, 329 U.S. 187, 193-94 (1946) (intentional exclusion of all women from grand juries). That precedent reflects "the special problem of racial discrimination"—a problem "so pernicious"

that no showing of prejudice is required. *United States v. Mechanik*, 475 U.S. 66, 70 n.1 (1986). "[T]hese considerations have little force outside the context of racial discrimination in the composition of the grand jury." *Id.* Any defect in Ms. Halligan's job title is not remotely comparable to the wholesale exclusion of minorities from the grand jury.

### C.    The Attorney General has ratified the indictments, curing any defect

In any event, the Attorney General—in whom Congress has vested all powers of the Department of Justice, 28 U.S.C. § 509—has personally ratified Defendants' indictments. *See* Ex. A. When an officer allegedly appointed in violation of the Appointments Clause takes a challenged action, "subsequent ratification" by an official with the power to authorize that action "cur[es] any Appointments Clause defects that may have existed when [the document] was initially signed." *Wille v. Lutnick*, 2025 WL 3039191, at *6 (4th Cir. Oct. 31, 2025). Here, the Attorney General plainly could have authorized any Department of Justice officer or employee to obtain and sign the indictments, 28 U.S.C. § 510, exercising the powers of a U.S. Attorney, *id.* § 509; *see id.* § 547, or her personal authority to "conduct and argue any case in a court of the United States, in which the United States is interested, *id.* § 518(a). The Attorney General's ratification therefore cures any flaw in both indictments from Ms. Halligan's appointment.

Comey may respond that a ratifying principal must have been able to take that action "at the time the ratification was made," *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994), and the statute of limitations for his offenses (but not James') expired before the Attorney General's October 31 ratification order. But when a timely filed indictment is "dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment." 18 U.S.C. § 3288. Because the Attorney General could personally obtain a new indictment using that grace period, she may ratify Comey's existing indictment.

Comey previews (at 25 n.17) that he disputes Section 3288's applicability but does not say why. By its text, Section 3288 applies when an indictment is dismissed for "*any* reason," which obviously includes a defective appointment. Section 3288 bars refiling only where the original indictment was untimely or was dismissed for "some other reason that would bar a new prosecution." That language prevents the refiling of an indictment that was "not capable of being cured." *United States v. Clawson*, 104 F.3d 250, 252 (9th Cir. 1996). But where "a valid indictment could have been brought in a timely fashion; the six-month grace period merely allows the government to do what it had a right to do in the first place." *Id.* Here, Comey does not dispute that a validly appointed federal prosecutor—be that a U.S. Attorney, an Assistant U.S. Attorney, a Special Attorney, or the Attorney General herself—could have lawfully obtained this indictment. Section 3288's tolling rule would therefore govern any dismissal.

### D.    At minimum, any dismissal should be without prejudice

James does not request dismissal with prejudice (and thus forfeits any such request). The maximum relief to which she could possibly be entitled is dismissal *without* prejudice—a remedy that would allow Ms. Halligan (or another government attorney) to seek a new indictment now that the Attorney General has ratified the appointment under other, unchallenged authorities.

For his part, Comey seeks the "harsh remedy" of dismissal with prejudice. *United States v. Goodson*, 204 F.3d 508, 514 (4th Cir. 2000). But as he recognizes (at 22-23), that sanction is reserved for "flagrant misbehavior" causing "substantial prejudice" where no "lesser sanction" will do. Comey cannot make that showing as to Ms. Halligan's appointment. Instead, he rehashes (at 23-25) his vindictive- and selective-prosecution claims—claims that are the subject of a *different* motion before Judge Nachmanoff, over which this Court lacks jurisdiction. But if Judge Nachmanoff accepts those allegations and grants that motion, this Court would have no need to

adjudicate *this* motion.  The Court should therefore proceed on the assumption that Comey's vindictive- and selective-prosecution claims fail (or defer this motion until Judge Nachmanoff rules).

Zeroing in on the actual claim here—that the Attorney General could not lawfully invoke Section 546(a) to appoint Ms. Halligan—Comey comes nowhere close to showing "flagrant misbehavior," "substantial prejudice," or the unavailability of a "lesser sanction."  The Attorney General's invocation of Section 546(a) rather than her many other appointment authorities is not "flagrant misconduct" akin to repeated *Brady* violations.  *Cf. United States v. Bundy*, 968 F.3d 1019, 1029, 1037 (9th Cir. 2020).  As explained above, Comey suffered no prejudice, much less substantial prejudice, from Ms. Halligan's title when she entered the grand-jury room.  And contrary to his assertion (at 25), the counterfactual where the Attorney General did not, in his words, "unlawfully appoint[] Ms. Halligan" is not a world where the government would have let the limitations period run.  Instead, the Attorney General would have cited a different authority that would have unquestionably authorized Ms. Halligan to obtain the exact same indictment at the exact same time.  If the Court deems the indictment invalid, any dismissal should be without prejudice to permit the government to swiftly seek reindictment under 18 U.S.C. § 3288.

### E.    James' other remedial requests should be rejected

James, but not Comey, requests (at 16-17) an injunction against Ms. Halligan "acting as interim U.S. Attorney."  To the extent she requests relief beyond the confines of this case, that request is plainly improper.  Equitable remedies like injunctions  must be "party[] specific."  *Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025).  James has no standing to seek an injunction against Ms. Halligan's participation in *other cases.*  James' request is also improper to the extent that she seeks an injunction—a remedy that "will not be appropriate" "[i]n almost all federal criminal prosecutions."  *United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016).

James may seek to *disqualify* Ms. Halligan from acting as U.S. Attorney in this case. That remedy, while "drastic," is at least potentially available "in limited circumstances." *United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003). But James' request has been overtaken by events. The Attorney General has ratified Ms. Halligan's appointment as Special Attorney with the authority to conduct criminal litigation in this district. Ex. A. Because Ms. Halligan now has the indisputable authority to proceed with this prosecution, prospective relief would be inappropriate.

## CONCLUSION

For the foregoing reasons, the motions to dismiss should be denied.

<div style="margin-left:40%">

Respectfully submitted,

Lindsey Halligan
United States Attorney

/s/ Henry C. Whitaker_____
Henry C. Whitaker (Fla. Bar #1031175)
Counselor to the Attorney General
950 Pennsylvania Ave. NW Rm. 5134
Washington, D.C. 20530
Tel: (202) 445-8942
henry.whitaker@usdoj.gov

</div>

Roger A. Keller, Jr. (Mo. Bar #42541)                N. Tyler Lemons (N.C. Bar #46199)
Assistant United States Attorney                     Gabriel J. Diaz (N.C. Bar #49159)
101 West Main Street, Suite 8000                     Assistant United States Attorneys
Norfolk, VA 23510                                    2100 Jamieson Avenue
Tel.: (757) 441-6331                                 Alexandria, VA 22314
Fax: (757) 441-6689                                  Tel: (703) 299-3700
roger.keller@usdoj.gov                               tyler.lemons@usdoj.gov
                                                     gabriel.diaz@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2025, I electronically filed the foregoing with the Clerk using the CM/ECF system, which will send a notification of filing to all counsel of record.

<div style="margin-left:40%">

/s/ Henry C. Whitaker_____
Henry C. Whitaker
Counselor to the Attorney General

</div>