IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| United States of America, | ) |
| | ) |
| v. | ) Case No.: 1:25-CR-00272-MSN-WEF |
| | ) |
| James B. Comey, Jr., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## JAMES B. COMEY JR.'S RESPONSE TO COURT'S NOVEMBER 7, 2025 ORDER

James B. Comey, Jr., by and through undersigned counsel, moves for the entry of an order, consistent with the Court's November 5, 2025 Order, disclosing the grand jury materials in this matter. *See* ECF Nos. 164; 167. Disclosure is warranted under Rule 6(e)(3)(E)(ii) based on the particularized and factually based grounds for disclosure the Court adduced at the hearing. The government should be ordered to disclose the grand jury materials forthwith.[1]

## ARGUMENT

This Court ordered the disclosure of grand jury materials after conducting a thorough hearing and making factual findings of the defense's particularized needs for these materials in the context of serious, unanswered questions concerning the improper use of materials obtained pursuant to the prior warrants and questions of taint. ECF No. 161. Disclosure is justified under Rule 6(e)(3)(E)(ii) based on this Court's "particularized and factually based" findings on the record, and this Court should issue an order consistent with those reasons. *See United States v.*

---

[1] The defense respectfully requests an expedited ruling on this matter to allow the defense to comply with other motion deadlines, particularly the November 19, 2025 motion deadline ordered by this Court, and in order to prepare for trial, which is less than two months away. In particular, the defense expects that comparing the materials provided to the grand jury with those obtained by the government will be time-intensive given the volume of different sets of data produced by the government.

*Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004) (citing *United States v. Abcasis*, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992)); ECF No. 110 at 9-12. "The Supreme Court has held that grand jury secrecy could be 'lifted discretely and limitedly' in cases of 'particularized need,'" i.e., "to avoid a possible injustice" where "the need for disclosure is greater than the need for continued secrecy." *Gallop v. United States*, 2012 WL 13081725, at *9 (E.D. Va. Jan. 9, 2012) ("The decision whether to order the disclosure of grand jury testimony is within the court's discretion.") (citing *United States v. Foggo*, 595 F. Supp. 2d. 672, 674 (E.D. Va. 2009)).

Disclosure is appropriate because "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). "[I]rregularities in the grand jury proceedings" would provide a "basis for dismissal of the indictment." *Nguyen*, 314 F. Supp. at 616 (citations omitted). *See* ECF No. 110 at 14.

The defense needs access to the grand jury materials to determine whether, as it believes happened here, tainted and improperly obtained materials were presented to the grand jury, among other irregularities that could give rise to a basis for dismissal of the indictment. This is especially so in a case in which the indictment was returned immediately following a no true bill and the indictment was obtained by only 14 votes. In such a case, an irregularity in the grand jury could easily raise "'grave doubt' that the decision to indict was free from the substantial influence of such violation[]." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988).[2]

---

[2] Concerns about taint arising from the improper use of potentially privileged and unconstitutionally-obtained materials are heightened because of the government's continued use of the materials obtained pursuant to the warrants and grand jury transcripts. On October 31, 2025, the Attorney General purported to ratify the indictment based on her review of the grand jury proceedings. ECF No. 137-1 at 2-3. If that review entailed further improper use of privileged or unconstitutionally-obtained materials insofar as they were presented to the grand jury, it casts further doubt on the propriety of the government's conduct of this case. The government produced the grand jury materials on November 5, 2025 to Judge Currie for *in camera* review, and thus could quickly produce the same materials to the defense. *See* ECF No. 158.

On October 29, 2025, Judge Nachmanoff appointed this Court "to preside over all proceedings related to the potential review of privileged materials in this case in accordance with the guidance provided in *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019), *as amended* (Oct. 31, 2019) and directed [him] to promptly schedule a hearing to address these matters." ECF No. 102 at 2-3. The appointment order recognized that "briefing on the government's proposed filter protocol raises several legal questions that must be resolved before any protocol is authorized," expressly identifying, among others, whether "the lead case agents or prosecution team in this case have been exposed to privileged materials" and "what the proper procedures are, if any, for review of the materials at issue." *Id.* at 2. In particular, the defense challenged the government's reliance on stale warrants, obtained in a long-closed criminal investigation, that authorized seizure of materials related to separate offenses. ECF No. 89 at 2-5, 9-11; *see also* ECF No. 167 at 1-2. In addition, the defense noted that there already appeared to have been a privilege taint, and that agents had been exposed to Mr. Comey's attorney-client privileged materials prior to going to the grand jury in this matter. ECF No. 89 at 6-7.[3] The government did not answer any of the questions posed by the defense related to whether, how, and when it had accessed materials obtained pursuant to the those warrants in its briefing. *See generally* ECF No. 135.

Based on that briefing, Judge Nachmanoff's order vested broad authority in this Court to, as relevant here, (1) adjudicate whether any review could take place, and (2) determine what, if any, process was required, consistent with the Fourth Circuit's instruction that "the magistrate judge (or an appointed special master)—rather than the Filter Team—must perform the privilege

---

[3] The defense also moved for disclosure of the grand jury materials based on, among other things, the disclosure of potentially tainted materials to the grand jury. ECF No. 106 at 18-19.

review of the seized materials" and must convene "adversarial proceedings" before any protocol authorizing review is put in place. ECF No. 102 at 1-2; ECF No. 167 (finding that the Court's order "fell within the matter referred to him by this Court"); *see also Alderman v. United States*, 394 U.S. 165, 184 (1969) ("Adversary proceedings will not magically eliminate all error, but they will substantially reduce its incidence by guarding against the possibility that the trial judge, through lack of time or unfamiliarity with the information contained in and suggested by the materials, will be unable to provide the scrutiny that the Fourth Amendment…demands").

To that effect, this Court held an approximately one-hour hearing on November 5, 2025, to consider issues directly bearing on whether any review of the seized materials could proceed, including privilege, taint, and the government's proposed filter protocol. ECF No. 165, Transcript of November 5, 2025, Hearing ("Tr.") 3.

This Court first asked several questions of the government. The government did not know the number of warrants at issue, *id.* at 8; whether Mr. Comey was involved in the filter review, *id.* at 9-10; whether an agent in September 2025 had reviewed materials that had or had not been filtered for privilege by Mr. Richman's counsel, *id.* at 12-14; whether the prosecutors in the prior investigation knew that Mr. Richman represented Mr. Comey even though the warrants so stated, *id.*; *see also id.* at 20-21; whether the prior investigators had conducted a responsiveness review, *id.* at 19; and otherwise struggled to directly answer the Court's questions about the review of the materials obtained pursuant to the prior warrants. *Id.* at 8-20. Ultimately, in response to the Court's questioning, the government confirmed that it was not aware of any attempts to "identify any privilege or any documents or any communications over which Mr. Comey wants to assert a privilege." *Id.* at 16. The government also confirmed, in response to the Court's questioning, that it had not turned over the materials obtained pursuant to the warrants to the defense. *Id.* at 17-18.

With respect to the government's September 2025 search of materials obtained pursuant to these warrants, the defense noted that affidavits provided by the government indicated that FBI agents accessed what appeared to be returns filtered for Mr. Richman's privileges that included both responsive and non-responsive documents, which was plainly violative of the Fourth Amendment. *Id.* at 20.  However, the defense explained that serious questions remained about the government's unlawful review of these materials, and whether the government had actually "paused" its review in September 2025 after the taint related to Mr. Comey's privileges occurred—particularly given the fact that the government had published materials obtained pursuant to these warrants as exhibits to a November 3, 2025 filing, and, based on discovery, had shown these materials to the grand jury. *Id.* at 20-23.  The defense noted that it was "gravely concerned" with the government's conduct, based on what appeared to be "an unconstitutional search in September," the questions that remained about "what they have [and] what they have access to," and the fact that the government was "continuing to make use of Arctic Haze materials without giving [the defense] an opportunity to participate in the filter review or even know what they have." *Id.* at 22-23.

In response, this Court stated that "[w]e're going to fix that, and we're going to fix that today," and asked the defense what information it needed to file motions challenging the "original search" and "the continued use" of materials obtained pursuant to the warrants at issue. *Id.* at 23.  In relevant part, the defense noted that it needed to know: "[w]hat does the government have now?  What did they access and provide to the grand jury?  What did they provide to the public in their filing?  Where did they get those materials?" *Id.* at 24.

This Court found that in order to enable both parties to "have an opportunity to fully explore and litigate the issue, . . . to ensure a fair trial, a fulsome discovery process, and a thorough motions

5

practice," it was necessary for everyone to "have a full understanding of what happened, what was done so that these issues can be properly litigated and fleshed out." *Id.* at 25; *see United States v. James Daniel Good Real Property, et al.*, 510 U.S. 43, 55 (1993) ("Fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights.") (citation omitted). The Court noted that the information requested by the defense was "entirely reasonable" given the "highly unusual" posture of the case, which was "indict first, investigate second, [which] creates procedural challenges and substantive challenges." Tr. at 25-26. Specifically, the Court found that the defense is "entitled to know with great specificity how these warrants were executed, how the information was separated, how the information was used, up to and including how the information was used in the grand jury proceedings." *Id.* at 26. The Court also recognized that trial was less than two months away, and that the necessary timeline of the defense reviewing the materials the government had failed to produce at the same time as it was required to evaluate and file responsive motions seemed "fundamentally unfair to the defense." *Id.* at 25.

Based upon a finding that "the defense needs that [information] in order to marry up the information that they have or the information that they will get to how it was used," the Court ordered "the government to disclose to the defense all grand jury materials, not just the testimony of the agent, but anything that was said during the course of the grand jury. How the grand jury was instructed, any presentation to the grand jury, any questions that were asked of either the agent or the United States Attorney, all of that is to be disclosed." *Id.* at 26-27. The government did not object. Instead, the prosecutor stated: "I understand the Court's order. I'm going to make sure the government complies with it." *Id.* at 27-28.

6

This Court subsequently entered a written order denying the government's motion for implementation of a filter protocol and compelling production of seized materials[4] and the grand jury materials, together with restrictions on further government review. ECF No. 161 at 1-3. The Court directed the government, "no later than 5:00 p.m. on Thursday, November 6, 2025," to "file on the docket, under seal, all documents relating to the September 25, 2025 grand jury proceedings, including complete audio recordings and transcripts reflecting (i) all testimony presented to the grand jury and (ii) any statements made by any prosecutor, law enforcement officer, or witness to the grand jury, or in the presence of the grand jury." ECF 161 at 2.[5] These orders track the Court's bench ruling and the government's on-the-record assent. Tr. at 25-29. These are particularized facts justifying release under Rule 6(e)(3)(E)(ii).

---

[4] On November 6, 2025, the government produced various copies of what appear to be the raw returns for the search warrants at issue, unscoped for responsiveness and filtered for Mr. Richman's privileges. But the government provided incorrect passwords to large subsets of those materials. The defense engaged a vendor who worked throughout the weekend to load and process those materials; the government provided the correct passwords on November 9, 2025.

[5] The Order also required the government to provide, in writing, by the same deadline: "Confirmation of whether the Government has divided the materials searched pursuant to the four 2019 and 2020 warrants at issue into materials that are responsive and non-responsive to those warrants, and, if so, a detailed explanation of the methodology used to make that determination; A detailed explanation of whether, and for what period of time, the Government has preserved any materials identified as non-responsive to the four search warrants; A description identifying which materials have been identified as responsive, if any; and A description identifying which materials have previously been designated as privileged." ECF No. 161 at 1-2.

Despite certifying on November 6 that it had complied with the Court's Order, ECF No. 163, the government did not provide this information until the evening of November 9, 2025, in response to a defense inquiry. The government told the defense that it "does not know" whether there are responsive sets for the first, third, and fourth warrants, or whether it has produced those to the defense, and said that in that regard, "we are still pulling prior emails" and the "agent reviewed the filtered material through relativity but there appears to be a loss of data that we are currently trying to restore."

7

In sum, this Court's findings are concrete and fact-specific, directly addressing the defense's particularized needs to review the grand jury materials, including assessing the extent of taint and whether grounds exist to dismiss the indictment due to matters before the grand jury. The government's inability to answer basic questions about warrant execution, data segregation and grand jury presentations supports disclosure and provides ample basis to depart from the presumption of regularity. The need for disclosure here outweighs grand jury secrecy, as it is necessary to adjudicate whether taint or constitutional violations infected the proceedings. *See Foggo*, 595 F. Supp. 2d at 679 (allowing disclosure in part because "most of the factors favoring secrecy" not present where "[t]he grand jury has already finished its work"). As detailed above, there are "particularized and factually based grounds" justifying disclosure and these are "extraordinary circumstances." *United States v. Harris*, 2007 WL 1724298, at *5 (N.D.W.V. June 14, 2007).

## **CONCLUSION**

For the foregoing reasons, the government should be ordered to comply with the Court's order forthwith.

Dated: November 10, 2025

Respectfully submitted,

JAMES B. COMEY, JR.
By Counsel

*/s/   Jessica N. Carmichael*
Jessica N. Carmichael (VA Bar No. 78339)
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, First Floor
Alexandria, VA 22314
Telephone:  (703) 684-7908
Facsimile:  (703) 649-6360
Email:  jessica@carmichaellegal.com

Patrick J. Fitzgerald (*pro hac vice*)
(Mich. Bar No. P86579)
P.O. Box 277
New Buffalo, MI 49177
Telephone:  (312) 758-4454

Rebekah Donaleski (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 479-6000

Ephraim A. McDowell (*pro hac vice*)
Elias S. Kim (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone:  (202) 842-7800

Michael R. Dreeben (*pro hac vice*)
600 New Jersey Ave. NW
Washington, DC 20001
Telephone:  (202) 695-2562

*Counsel for Defendant James B. Comey, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 10th day of November, 2025, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/  Jessica N. Carmichael
Jessica N. Carmichael

*Counsel for Defendant James B. Comey, Jr.*
