IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Case No.: 1:25-CR-00272-MSN |
| | ) | |
| James B. Comey, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**JAMES B. COMEY, JR.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT BASED ON VINDICTIVE AND SELECTIVE PROSECUTION**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 3

I.    PRESIDENT TRUMP'S PERSONAL ANIMUS TOWARD MR. COMEY CAUSED THIS VINDICTIVE PROSECUTION ................................. 3

    A.    President Trump's Vindictive Motive Can and Should Be Imputed to the Prosecutor Who Secured the Indictment .......................................... 3

    B.    Overwhelming Evidence Establishes the President's Vindictive Motive .............................................................................................. 7

    C.    The Record Establishes that Mr. Comey Would Not Have Been Prosecuted but for the President's Animus .............................................. 18

II.    THE GOVERNMENT SELECTIVELY PROSECUTED MR. COMEY BECAUSE THE PRESIDENT PERCEIVES HIM AS A POLITICAL ADVERSARY ................................................................................. 22

    A.    The Evidence Shows Direct Admissions of Animus .............................. 23

    B.    The Evidence Shows Discriminatory Effect and Discriminatory Purpose .......................................................................................... 23

III.    THE PROPER REMEDY IS DISMISSAL WITH PREJUDICE ...................... 26

CONCLUSION .................................................................................................. 26

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Barbour v. Garland*,
105 F.4th 579 (4th Cir. 2024) ................................................................15

*Blackledge v. Perry*,
417 U.S. 21 (1974) ..........................................................................16, 22

*Bragan v. Poindexter*,
249 F.3d 476 (6th Cir. 2001) ................................................................18

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ............................................................................17

*Engquist v. Or. Dep't of Agric.*,
553 U.S. 591 (2008) ............................................................................23

*Graves v. United States*,
150 U.S. 118 (1893) ............................................................................21

*Hartman v. Moore*,
547 U.S. 250 (2006) ........................................................................17, 23

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024) ........................................................................16, 17

*North Carolina v. Pearce*,
395 U.S. 711 (1969) ............................................................................16

*Trump v. United States*,
603 U.S. 593 (2024) ..............................................................................6

*United States v. Abrego*,
No. 25-cr-00115, 2025 WL 3002840 (M.D. Tenn. Oct. 27, 2025) ..........................6, 7, 20, 21

*United States v. Adams*,
870 F.2d 1140 (6th Cir. 1989) ..............................................................3, 6

*United States v. Armstrong*,
517 U.S. 456 (1996) ......................................................................2, 23, 25

*United States v. Ball*,
18 F.4th 445 (4th Cir. 2021) ................................................................18

*United States v. Biden*,
729 F. Supp. 3d 410 (D. Del. 2024) ........................................................20

*United States v. Cooper*,
617 F. App'x 249 (4th Cir. 2015) ..............................................................5

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*United States v. Dickerson,*
  975 F.2d 1245 (7th Cir. 1992) ..................................................................4, 5

*United States v. Gallegos-Curiel,*
  681 F.2d 1164 (9th Cir. 1982) ......................................................................18

*United States v. Gilbert,*
  266 F.3d 1180 (9th Cir. 2001) ........................................................................5

*United States v. Gill,*
  979 F.2d 856 (9th Cir. 1992) ..........................................................................3

*United States v. Gomez-Lopez,*
  62 F.3d 304 (9th Cir. 1995) ............................................................................6

*United States v. Goodwin,*
  457 U.S. 368 (1982)........................................................................2, 17, 18

*United States v. Hastings,*
  126 F.3d 310 (4th Cir. 1997) ....................................................................4, 25

*United States v. Jarrett,*
  447 F.3d 520 (7th Cir. 2006) ........................................................................18

*United States v. Lazzaro,*
  No. 21-cv-0173, 2022 WL 17417970 (D. Minn. Oct. 12, 2022)...........................18

*United States v. Meyer,*
  810 F.2d 1242 (D.C. Cir. 1987) ......................................................................4

*United States v. Monsoor,*
  77 F.3d 1031 (7th Cir. 1996) ..........................................................................3

*United States v. Moore,*
  543 F.3d 891 (7th Cir. 2008) ........................................................................23

*United States v. P.H.E., Inc.,*
  965 F.2d 848 (10th Cir. 1992) ..................................................................3, 19

*United States v. Sanders,*
  211 F.3d 711 (2d Cir. 2020)....................................................................3, 5, 18

*United States v. Spears,*
  159 F.3d 1081 (7th Cir. 1998) ........................................................................5

*United States v. Stanchich,*
  550 F.2d 1294 (2d Cir. 1977)........................................................................17

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*United States v. Venable*,
  666 F.3d 893 (4th Cir. 2012) ...................................................24

*United States v. Villa*,
  70 F.4th 704 (4th Cir. 2023) ...................................................18

*United States v. Walker*,
  514 Supp. 294 (E.D. La. 1981) ...................................................16

*United States v. Wilson*,
  262 F.3d 305 (4th Cir. 2001) ...................................2, 3, 5, 7, 16, 18, 22

*United States v. Wilson*,
  639 F.2d 500 (9th Cir. 1981) ...................................................18

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) ...................................................25

*Wade v. United States*,
  504 U.S. 181 (1992) ...................................................23

*Watts v. United States*,
  394 U.S. 705 (1969) ...................................................23

**Constitution**

U.S. Const.
  Art. II, § 2, cl. 2 ...................................................24
  Amend. I ...................................................1, 10, 17, 18

**Miscellaneous**

Devlin Barrett, et al., *U.S. Attorney Was Forced Out After Clashes Over How to Handle Russia Inquiry*, N.Y. Times (Oct. 14, 2025) ...................................................20

*Former FBI Director Comey Agrees to Testify in Open Session at Senate Intel Committee*, U.S. Senate Select Committee on Intelligence (May 19, 2017) ...................................................10

David Johnston, et al., *Inquiry on Clinton Official Ends With Accusations of Cover-Up*, N.Y. Times (Jan. 19, 2006) ...................................................24

Anthony Marro, *Helms, EX-C.I.A. CHIEF, PLEADS NO CONTEST TO 2 MISDEMEANORS*, N.Y. Times (Nov. 1, 1977) ...................................................24

Memorandum on Closing Arctic Haze Investigation, in Declassified FBI Materials Produced to the House Judiciary Committee ...................................................12

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Robert S. Mueller, III, *Report on the Investigation into Russian Interference in the 2016 Presidential Election Vol. II*, U.S. Dep't of Justice (Mar. 2019)....................................9

*Open Hearing with Former FBI Director James Comey Before the S. Comm. on Intelligence*, 115th Cong., 1st. Sess. (June 8, 2017) .................................................9

Anthony Ripley, *Kleindienst Admits Misdemeanor Guilty*, N.Y. Times (May 17, 1974)..................................................................24

Michael S. Schmidt, *Comey Memo Says Trump Asked Him to End Flynn Investigation*, N.Y. Times (May 16, 2017) ...............................................9

Michael S. Schmidt, *Trump Wanted I.R.S. Investigations of Foes, Top Aide Says*, N.Y. Times (Nov. 13, 2022) .............................................14

## <u>INTRODUCTION</u>

The indictment in this case is unique in American history: it is the product of a yearslong campaign by the President of the United States to punish a citizen for protected speech. Mr. Comey has exercised his right to engage in public discourse critical of the President through social-media posts, press statements, legislative testimony, and the publication of his book. In response, the President has launched a storm of personal attacks against Mr. Comey, laced with invective and fueled by animosity. These attacks include scattershot demands to prosecute Mr. Comey for surmised offenses—based on a shifting set of conclusory accusations expressed in fact-free tweets. The President's calls for prosecution do not rest on evidence, investigation, or recommendations. Rather, they express pure vengeful animus to punish a perceived political adversary. And the President managed to achieve his retaliatory goal only by installing a White House aide as U.S. Attorney to do what no career prosecutor was willing to do: indict Mr. Comey days before the statute of limitations expired. This prosecution violates the Due Process Clause, the First Amendment, and equal protection principles. The Court should dismiss with prejudice.

The government's defense of the indictment rests on two shaky pillars. First, it argues (ECF No. 138 at 23, 26, 40) that President Trump's repeated calls to prosecute Mr. Comey establish a legitimate prosecutorial motive: to punish Mr. Comey for crimes. That contention has matters exactly backwards. The President's calls to prosecute Mr. Comey stem from his unconstitutional animus; they are not a magical cloak that renders his animus invisible. The record reveals that President Trump's calls to prosecute directly respond to Mr. Comey's public critiques. They rest on no facts, investigation, or recommendations of agents or prosecutors; instead, they contradict those sources. And the attacks began shortly after Mr. Comey entered the public sphere in 2017 as a potential, then actual, high-profile critic—long before the 2020

Senate Judiciary hearing at the heart of the alleged offenses in this case. The government cannot explain how a call to prosecute Mr. Comey *before* the charged conduct occurred reveals a legitimate prosecutorial motive for *this* prosecution. *See id.* at 28. The record, therefore, refutes the government's claims that the President's demand for vindictive charges serves as proof of his legitimate prosecutorial motive.

Second, the government denies that the President's vindictive motive caused the indictment, instead maintaining that only the United States Attorney's motive counts and that it is "pure speculation" that she did not act independently. ECF No. 138 at 20-23. But the record leaves no doubt that "but for" the President's "animus," this prosecution never would have been brought. *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). Contrary to the government's arguments, objective facts establish causation: experienced prosecutors declined prosecution in 2021; no career prosecutor signed the indictment in 2025; abundant reporting (which the government has never denied) confirms that no career prosecutor was willing to bring the case; the President nevertheless publicly demanded prosecution; and at the last minute, he installed a White House aide with no prosecutorial experience to deliver the desired result.

This record amply meets the Fourth Circuit's two-part test for an unconstitutional vindictive prosecution: "genuine animus" that is the "but for" cause of an indictment. *Id.* And the same record and the existence of similarly situated government officials *not* prosecuted establishes an unconstitutional selective prosecution. Thus, the record as it stands justifies dismissal. But at the very least, the "reasonable likelihood of vindictiveness," *United States v. Goodwin*, 457 U.S. 368, 373 (1982), and the defense presentation of "some evidence tending to show the existence of the essential elements of" impermissible selection, *United States v.*

*Armstrong*, 517 U.S. 456, 469 (1996), justifies discovery—and a hearing at which the government must present "objective evidence justifying its conduct." *Wilson*, 262 F.3d at 315.

## ARGUMENT

## I.    PRESIDENT TRUMP'S PERSONAL ANIMUS TOWARD MR. COMEY CAUSED THIS VINDICTIVE PROSECUTION

President Trump's attacks on Mr. Comey in response to his protected speech culminated in his installation of a White House aide as United States Attorney to indict Mr. Comey for alleged conduct that career officials had found insufficient to warrant prosecution.  A voluminous record of public statements demonstrates President Trump's desire to punish Mr. Comey for his protected speech and establishes a causal link between that desire and this prosecution.  These facts provide "objective evidence" that the President has "genuine animus toward" Mr. Comey and that Mr. Comey "would not have been prosecuted but for that animus." *Wilson*, 262 F.3d at 314-15.  The government's contrary arguments—that only the United States Attorney's motive can be considered and that the President's calls for prosecution show a legitimate motive—are legally and factually flawed.

### A.    President Trump's Vindictive Motive Can and Should Be Imputed to the Prosecutor Who Secured the Indictment

The government argues (ECF No. 138 at 20-23) that the Court may examine only Ms. Halligan's personal motives.  But it is well established that a defendant may demonstrate that "the prosecutor acted with genuine animus toward the defendant," *Wilson*, 262 F.3d at 314, by showing either that the prosecutor herself "harbored genuine animus toward the defendant" *or* that the prosecutor "was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse.'" *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2020); *see United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir. 1996); *United States v. Gill*, 979 F.2d 856 (9th Cir. 1992); *United States v. P.H.E., Inc.*, 965 F.2d 848, 858-60

3

(10th Cir. 1992); *United States v. Adams*, 870 F.2d 1140, 1145-46 (6th Cir. 1989). The government's request to focus only on the motives of the prosecutor who presented the indictment conflicts with "[t]he Supreme Court's decisions concerning vindictive prosecution," which "have focused on the conduct of the government as a whole, rather than on the conduct or retributive sentiments of a single prosecutor." *United States v. Meyer*, 810 F.2d 1242, 1248 (D.C. Cir. 1987). And the government's proposed rule would mean that a supervising official could achieve a vindictive prosecution by laundering his animus through subordinates. That would be a roadmap for evasion of elemental due process principles.

The government nevertheless suggests (ECF No. 138 at 20-21) that the Fourth Circuit has "categorically rejected" the imputed-animus theory. That suggestion relies on a fundamental misreading of *United States v. Hastings*, 126 F.3d 310 (4th Cir. 1997). In *Hastings*, the court determined that the alleged political animus of IRS investigators could not be imputed to the prosecutors who eventually brought the case. *See id.* at 314. But the court did not hold that a stalking-horse theory of vindictiveness was unavailable as a matter of law—it merely concluded that the specific facts presented did not support imputation because no evidence indicated that the investigators had influenced the prosecutors. *Id.* If the Fourth Circuit had "categorically rejected" the imputed-animus theory, that analysis would have been unnecessary.

To determine whether another person's animus can be imputed to a prosecutor, the Court must analyze the specific facts of the case. The President's course of conduct against Mr. Comey makes the case for imputation clear—and the government does not attempt to explain why the facts of this case do not support imputation. Instead, it cites cases (ECF No. 138 at 20-22) in which courts rejected efforts to impute the animus of investigators, local prosecutors, or other individuals with "no control over federal prosecutors" to the prosecutors who secured the

indictments.  *United States v. Dickerson*, 975 F.2d 1245, 1251 (7th Cir. 1992) (declining to impute alleged animus of FBI agents and state police officers); *see United States v. Spears*, 159 F.3d 1081, 1087 (7th Cir. 1998) (declining to impute alleged animus of a state prosecutor and investigators from the Bureau of Alcohol, Tobacco, and Firearms); *United States v. Gilbert*, 266 F.3d 1180, 1187 (9th Cir. 2001) (declining to impute alleged animus of IRS investigators); *United States v. Cooper*, 617 F. App'x 249, 251 (4th Cir. 2015) (per curiam) (declining to impute alleged animus of local law enforcement).  Those cases are readily distinguishable from this one, where the animus springs from the head of the Executive Branch who has supervisory authority over all federal prosecutors and who exercised that power in this case.

The government's extensive reliance on the Fourth Circuit's decision in *Wilson* underscores the distance between the government's authorities and the facts of this case.  ECF No. 138 at 21-22.  In *Wilson*, the court declined to impute the alleged animus of the U.S. Attorney for the District of South Carolina to the U.S. Attorney for the Eastern District of North Carolina.  *See* 262 F.3d at 309, 316-17.  The court explained that it saw nothing "to suggest that the U.S. Attorney in North Carolina was required to act on the request [of the South Carolina U.S. Attorney] or felt any compunction to act for any reason other than the duty to prosecute cases in the public interest."  *Id.* at 316.

The facts here are worlds apart from *Wilson*.  Most fundamentally, this case involves an individual with "control over federal prosecutors," *Dickerson*, 975 F.2d at 1251—the President of the United States.  In contrast to the alleged instigators in the government's cited authorities, when the person with animus occupies a position of authority or has influence over the prosecutor, it is easy to see how a prosecutor can be "prevailed upon" to bring an indictment. *Sanders*, 211 F.3d at 717.  As another district court recently explained, "[t]he motivations of the

people who place the file on the prosecutor's desk are highly relevant when considering a motion to dismiss for vindictive prosecution." *United States v. Abrego*, No. 25-cr-00115, 2025 WL 3002840, at *1 (M.D. Tenn. Oct. 27, 2025) (citing *Adams*, 870 F.2d at 1146). And the government itself acknowledges that when an individual harboring animus "displace[s]" the prosecutor as "'the ultimate decision-maker'" in bringing a prosecution, that individual's animus can be imputed to the prosecutor. *See* ECF No. 138 at 20 (citing *United States v. Gomez-Lopez*, 62 F.3d 304, 306 (9th Cir. 1995)).

Imputation of President Trump's vindictive motive to Ms. Halligan is particularly warranted because the President has "exclusive authority over the investigative and prosecutorial functions of the Justice Department and its officials." *Trump v. United States*, 603 U.S. 593, 621 (2024). As the government itself describes, U.S. Attorneys are subordinate aides to the President, "help[ing the President] discharge" his "responsibility" to prosecute crimes. ECF No. 138 at 17. And President Trump's authority is not merely formal or abstract: he has exercised an unprecedented and extraordinary degree of control over the DOJ, installing his personal allies to key positions and inserting himself into prosecutorial decisions that, in previous Administrations, would have been left to the DOJ's independent judgment. *See* ECF No. 59 at 8-11.

Not only does President Trump have the ultimate power to cause a prosecution, but the sequence of events that led to Mr. Comey's prosecution leaves no doubt that he exercised that power here. After forcing out the incumbent United States Attorney, Erik Siebert, because of his reticence to bring this and other cases against the President's perceived political enemies, the President posted on social media a message to the Attorney General excoriating her for failing to prosecute those enemies—including Mr. Comey—and directing that "JUSTICE MUST BE SERVED NOW." *See id.* at 10-11. In the same message, he praised Ms. Halligan's legal ability,

6

and, within 48 hours, Ms. Halligan was appointed and four days later went to the grand jury to indict Mr. Comey. *See id.* at 11-12. One does not need to connect these dots: they form an unmistakable arrow from the President's bow to Mr. Comey as the target. If "[t]he motivations of the people who place the *file* on the prosecutor's desk are highly relevant when considering a motion to dismiss for vindictive prosecution," *Abrego*, 2025 WL 3002840, at *1 (emphasis added), the motivations of the President who installed the *prosecutor* as U.S. Attorney after publicly calling for Mr. Comey's prosecution are compelling proof of his role in engineering the indictment. The basis for imputation here is clear.[1]

## B.  Overwhelming Evidence Establishes the President's Vindictive Motive

In mine-run vindictive-prosecution cases, defendants ask courts to infer a government actor's animus from stray statements or coincidences of timing. Here, by contrast, no guesswork is necessary—the President has vented his fury in dozens of public attacks on Mr. Comey's character, accompanied by fervent calls for his prosecution. Viewed as a whole, those statements are "direct evidence" of the President's "vindictive motive." No reader of these statements can doubt that the President harbors "genuine animus toward" Mr. Comey. *Wilson*, 262 F.3d at 315. And the source of the President's animus arises from Mr. Comey's protected speech. The *result* of that animus is the President's stated desire to punish Mr. Comey through prosecution. The realization of that desire forms the basis for Mr. Comey's motion.

---

[1] The government attempts to rebut the direct evidence that President Trump ordered the prosecution by pointing to his response to a question in a television interview on November 2, 2025—*after* the return of the indictment—about whether he "instruct[ed] the Department of Justice" to go after Mr. Comey; the President answered: "No, and not in any way, shape or form." ECF No. 138 at 22. Even assuming that the President did not instruct Ms. Halligan to indict in so many words, subordinates have understood from time out of mind that directions from a ruler need not take the form of literal instructions. *See Becket* (1964 film) ("Will no one rid me of this meddlesome priest?"). And here, the President's explicit message to the Attorney General on September 20, 2025, provides direct, unvarnished, and objective evidence of his direction to prosecute. ECF No. 59 at 11.

The government, however, would treat the President's calls for Mr. Comey's prosecution as conclusive proof of a legitimate prosecutorial motive.  In doing so, the government ignores the entire context and sequence of the President's actions and constructs a perfectly circular argument.  An official with improper animus *always* calls for prosecution: the desire to punish is the expression of animus.  If the call to prosecute rendered the underlying vindictive animus irrelevant, the protection against vindictive prosecutions would be illusory.

1.  The government's primary argument (ECF No. 138 at 26, 28, 29) is that the President could not have had a vindictive motive because he had a "legitimate prosecutorial motive."  For support, the government selectively cites the President's statements that Mr. Comey committed "crimes," "lie[d] under oath to Senator G," "leaked information and laundered it through a professor at Columbia Law School," and is "guilty as hell."  *See* Exhibit A at 2, 6, 9 ("Appendix").[2]  According to the government, the existence of those statements (none of which mentions the 2020 testimony at issue here) means that the Court can gloss over the President's numerous vitriolic attacks against Mr. Comey, including those aimed at Mr. Comey's protected speech.

President Trump's vindictive motive and its expression in demands for prosecution is apparent from the entire course of communications—not just the government's favored quotes. His calls to prosecute Mr. Comey followed a consistent pattern: almost all of them came directly after Mr. Comey publicly criticized President Trump or otherwise spoke out about his time as FBI Director.  In the immediate wake of firing Mr. Comey, President Trump's remarks were measured.  On May 10, 2017, President Trump posted on Twitter that "James Comey will be replaced by someone who will do a far better job, bringing back the spirit and prestige of the

---

[2] Exhibit A is an Appendix that lists all the social media posts and news reports referenced in this brief, with links and citations.

FBI." *See* Appendix at 1. But soon after Mr. Comey's firing, multiple legislators from across the political spectrum called for open congressional testimony from Mr. Comey, as well as an independent investigation and a special counsel.[3] It became apparent that Mr. Comey would soon tell his story in public and those statements would pose a serious threat to the President.[4] So on May 12, 2017, the President began a campaign to intimidate Mr. Comey to deter him from speaking out, tweeting: "James Comey better hope that there are no 'tapes' of our conversations before he starts leaking to the press!" Appendix at 1.

President Trump's tweet set off a chain reaction that ignited far more animosity in the President. On May 15, 2017, Mr. Comey saw the President's tweet and decided to inform the public about the President's request that the FBI drop an investigation of the President's then-recently fired National Security Advisor, Michael Flynn. *See* Intel Hearing, *supra* n.4. Mr. Comey had memorialized that encounter and asked Professor Daniel Richman to tell the New York Times about the unclassified memo describing the meeting, which resulted in a front-page New York Times article on May 16, 2017. *See id.*; Michael S. Schmidt, *Comey Memo Says Trump Asked Him to End Flynn Investigation*, N.Y. Times (May 16, 2017), https://perma.cc/39RL-6TKJ. On May 19, 2017, in the uproar that followed, the Senate

---

[3] On the day of the firing, Senator Ron Wyden, a member of the Senate Intelligence Committee, tweeted that Mr. Comey "should be immediately called to testify in an open hearing about the status of Russia/Trump investigation at the time he was fired." Appendix at 1. Many other members of Congress called for similar inquiries, making Mr. Comey's entry into public debate inevitable. *See id.*

[4] *See* Robert S. Mueller, III, *Report on the Investigation into Russian Interference in the 2016 Presidential Election Vol. II*, U.S. Dep't of Justice, at 27-28, 33-36, 38-41, 57-60 (Mar. 2019) ("Mueller Report") (recounting Mr. Comey's mounting concern about the impropriety of the President's actions), https://perma.cc/W3DH-PLS3. The President's concerns were well founded: Mr. Comey's June 8, 2017 testimony provided many details about his troubling interactions with the President. *Open Hearing with Former FBI Director James Comey Before the S. Comm. on Intelligence*, 115th Cong., 1st. Sess. (June 8, 2017) ("Intel Hearing"), https://perma.cc/UG4P-K2ZJ.

Intelligence Committee announced that Mr. Comey would testify before the Committee about his dismissal and the investigation into Russian interference with the 2016 election. *Former FBI Director Comey Agrees to Testify in Open Session at Senate Intel Committee*, U.S. Senate Select Committee on Intelligence (May 19, 2017), https://perma.cc/HC5K-KYUV.

That announcement was followed on May 31, 2017, by the first of the President's allusions to "false or misleading" testimony by Mr. Comey. The government suggests that this tweet shows that the President's prosecutorial motive arose from Mr. Comey's May 3, 2017 Senate Judiciary Committee testimony and that he voiced it *before* Mr. Comey entered into public debate. ECF No. 138 at 28. The tweet shows nothing of the kind.

To begin, the tweet does not reflect the President's opinion about Mr. Comey, nor does it refer to Mr. Comey's May 3 testimony as the government misleadingly implies. Instead, the tweet quotes a report based on a conversation on Fox and Friends describing a letter written by former Trump campaign advisor Carter Page stating Page's view of Mr. Comey's March 20, 2017 testimony about links between the Trump campaign and the Russia government.[5] This tweet can hardly qualify as expressing the President's legitimate prosecutorial motive—as opposed to relaying hearsay from a television program with no factual basis. In fact, it is the type of unfounded accusation that displays animus rather than a genuine interest in justice. And despite the government's reliance on it as preceding Mr. Comey's public statements, the tweet came after the news broke about Mr. Comey's imminent testimony, *i.e.*, after the President knew

---

[5] The tweet (issued in two parts) says: "So now it is reported that the Democrats who have excoriated Carter Page about Russia, don't want him to testify. He blows away their...." "...case against him & now wants to clear his name by showing 'the false or misleading testimony by James Comey, John Brennan...' Witch Hunt!" Appendix at 1. The tweet was issued thirty minutes after Fox and Friends broke the same story. *Id.* And Mr. Comey had testified publicly before the House Intelligence Committee on March 20, 2017, to confirm the Trump-campaign and Russian-interference investigation. *See* Mueller Report, *supra* n.4 at 52-53.

that Mr. Comey intended to exercise his First Amendment rights to speak publicly about Mr. Trump's conduct in office. The President's preemptive effort to discredit Mr. Comey reflects his animus triggered by Mr. Comey's anticipated protected speech.

Finally, and most damaging to the government's theory of the President's longstanding prosecutorial motive to bring this case, the tweet has nothing to do with this prosecution: it was issued years before the testimony that forms the basis for the charges against Mr. Comey.

2. The ensuing events reveal a pattern of Mr. Comey speaking publicly and the President going on the attack. On June 8, 2017, in his testimony before the Senate Intelligence Committee, Mr. Comey characterized his conversation with the President about Mr. Flynn as "a very disturbing thing" and explained that he had prepared his memo because he was concerned that the President "might lie about the nature of our meeting"; in an exchange with Senator Susan Collins, he confirmed that he had provided the memo to Mr. Richman to share with the New York Times. *See* Intel Hearing, *supra* n.4. Almost immediately after the hearing, the President attacked Mr. Comey. On June 9, 2017, the President accused Mr. Comey of making "so many false statements and lies" and called him a "leaker." Appendix at 1. And throughout July 2017, the President repeatedly accused Mr. Comey of "illegal" "leak[s]" and referred without evidence or explanation to the "many" "Comey crimes." *Id.* at 1-2.

These events confirm that the President reacted to Mr. Comey's public speech with personal attacks, laced with insults and fact-free accusations *after* Mr. Comey spoke out against President Trump—both by providing his memo to the New York Times and by testifying before the Senate Intelligence Committee. Undermining the government's suggestion that these presidential statements evidenced a "legitimate prosecutorial motive," President Trump's accusations were not based on any evaluation of facts and law. No Department of Justice or FBI

investigation supported the President's accusations. Indeed, it was not until August 2017 that the DOJ and the FBI initiated the "Arctic Haze" investigation into whether Mr. Comey and Mr. Richman had improperly disclosed classified information or made false statements. *See* Memorandum on Closing Arctic Haze Investigation, in Declassified FBI Materials Produced to the House Judiciary Committee, at -057 ("Arctic Haze Memo"), https://perma.cc/HZN7-B5QN. And contrary to the President's unreasoned accusations of criminal conduct, the Arctic Haze investigators unequivocally concluded, after a thorough factual inquiry, that the government did not have "sufficient evidence to criminally charge any person, including Comey or Richman, with making false statements or with the substantive offenses under investigation." *Id.* at -065.

3. After the June 2017 Senate hearing, Mr. Comey briefly withdrew from public life and the President took a brief hiatus from attacking him. But in Spring 2018, Mr. Comey published *A Higher Loyalty*—a book that described Mr. Comey's tenure as FBI Director and compared President Trump to a Mafia boss. Around the same time, Attorney General Jeff Sessions fired Deputy Director of the FBI Andrew McCabe. Those events—and Mr. Comey's speech related to them—spurred the President to resume his attacks against Mr. Comey[6]:

- On March 17, 2018, the day after Mr. McCabe's firing, the President tweeted that it was a "great day for Democracy" and added: "Sanctimonious James Comey was his boss and made McCabe look like a choirboy."

- The same day, Mr. Comey posted a tweet addressing the President's comment: "Mr. President, the American people will hear my story very soon. And they can judge for themselves who is honorable and who is not."

- On March 18, 2018, *A Higher Loyalty* reached number one on Amazon's best-seller list, a full month ahead of its April 17 publication date.

  - That morning, President Trump revived his line of attack from the previous summer, this time accusing Mr. Comey of lying to Senator Grassley at the May 2017 FBI oversight hearing: "Wow, watch Comey lie under oath to Senator G

---

[6] The citations for the statements in this list are on pages 2-5 of the Appendix.

when asked 'have you ever been an anonymous source...or known someone else
to be an anonymous source...?' He said strongly 'never, no.' He lied as shown
clearly on @foxandfriends"—referring to a show that compared Mr. Comey's
testimony to statements by Mr. McCabe.

- On April 12, 2018, Michiko Kakutani published a review of *A Higher Loyalty* in the New
  York Times, calling it "absorbing" and noting Mr. Comey's description of the President
  as "'unethical, and untethered to truth and institutional values.'"

  - The next day, the President exploded on Twitter: "James Comey is a proven
    LEAKER & LIAR. Virtually everyone in Washington thought he should be fired
    for the terrible job he did-until he was, in fact, fired. He leaked CLASSIFIED
    information, for which he should be prosecuted. He lied to Congress under
    OATH. He is a weak and" "untruthful slime ball who was, as time has proven, a
    terrible Director of the FBI. His handling of the Crooked Hillary Clinton case, and
    the events surrounding it, will go down as one of the worst 'botch jobs' of history.
    It was my great honor to fire James Comey!"

  - The President then unleashed a torrent of vitriol against Mr. Comey, calling him a
    "thie[f]," a "lowlife[]," a "Slimeball," "Slippery," and "not smart."

- On the evening of April 15, 2018, ABC News released portions of an interview with Mr.
  Comey in which he compared President Trump to a New York mafia boss, calling him
  "unethical" and "morally unfit to be President." Mr. Comey added that President Trump
  is "[a] person who sees moral equivalence in Charlottesville, who talks about and treats
  women like they're pieces of meat, who lies constantly about matters big and small."

  - The next morning, President Trump tweeted that Mr. Comey had "committed
    many crimes," including that he "lied in Congress to Senator G."

- On April 17, 2018, *A Higher Loyalty* was released, and Mr. Comey appeared on Good
  Morning America. Mr. Comey stated that President Trump "doesn't know or doesn't
  care what the rule of law looks like." He also criticized President Trump's pardon of
  Scooter Libby, calling it an "attack on the rule of law."

  - On April 20, 2018, the President reacted by tweeting: "So General Michael
    Flynn's life can be totally destroyed while Shadey [sic] James Comey can Leak
    and Lie and make lots of money from a third rate book (that should never have
    been written). Is that really the way life in America is supposed to work? I don't
    think so!"

     o  A week later, the President once again claimed that Mr. Comey "illegally leaked CLASSIFIED INFORMATION" and called Mr. Comey "either very sick or very dumb."[7]

If this sequence were not enough to show the President's vindictive motive as the driving force behind his accusations (and it is), there is more: General John F. Kelly, President Trump's Chief of Staff from July 2017 through December 2018, has publicly stated that around the time that *A Higher Loyalty* was released, President Trump discussed using the FBI, DOJ, and Internal Revenue Service (IRS) to investigate Mr. Comey and other vocal critics for "writing bad things about" President Trump. Michael S. Schmidt, *Trump Wanted I.R.S. Investigations of Foes, Top Aide Says*, N.Y. Times (Nov. 13, 2022), https://perma.cc/G2FL-7HCQ. According to General Kelly, the President also explored stripping security clearances from Mr. Comey and other critics because he did not "want them making money." *Id.*

    4. From Spring 2018 on, Mr. Comey periodically made public statements criticizing President Trump, who almost invariably responded with insults and calls for prosecution[8]:

- At the end of July 2018, Mr. Comey posted several tweets criticizing President Trump for appearing with Vladimir Putin.

     o  On August 1, 2018, President Trump called Mr. Comey "Disgraceful." Less than two weeks later, the President referred to Mr. Comey as a "clown[]" and a "loser[]."

- On August 15, 2018, Mr. Comey criticized President Trump's decision to revoke John Brennan's security clearance, stating that "American voters must not shrug off or be distracted from the terrible behaviors of this president, who lies to the American people

---

[7] No evidence supported the President's assertion that Mr. Comey leaked classified information, and the President's indifference to facts further confirms that his accusations reflected animus, not "legitimate prosecutorial motive." *See* ECF No. 55 at 4-6 (explaining that "there was no 'leaking'" of classified information to the press by either Mr. Comey or his counsel" as was confirmed in the August 2019 Department of Justice (DOJ) Inspector General Report). The FBI and DOJ Arctic Haze investigation similarly found no basis for charging Mr. Comey for "false statements or with the substantive offenses under investigation." Arctic Haze Memo at -065.

[8] The citations for the statements in this list are on pages 5-8 of the Appendix.

every day, encourages racism, is a misogynist, and always puts his own interests above those of the United States of America."

    o   Several days later, the President suggested that Robert Mueller should "look in" Mr. Comey's "direction."

- In the weeks leading up to the midterm election, Mr. Comey tweeted: "The United States should be a shining light for the world, modeling a democracy that values truth, respects free press, protects human rights, and stands against murderers, oppression, and bigotry. Trump … [is] dimming that light."

    o   Shortly after the election, the President reiterated his claim that Mr. Mueller should investigate Mr. Comey but noted that "Robert Mueller and Leakin' Lyin' James Comey are Best Friends, just one of many Mueller Conflicts of Interest."

- In April 2020, Mr. Comey authored a Washington Post op-ed criticizing President Trump's leadership with respect to the COVID-19 pandemic.

    o   That month, President Trump retweeted attacks calling Mr. Comey "a corrupt piece of garbage," "filth," and a "weasel" who should "be in jail."

- Two months before the 2020 presidential election, Mr. Comey authored a Washington Post op-ed maintaining that "if Trump-style justice becomes our tradition, nobody is safe" and urging election of "a president who will reflect the core values of honesty and decency that are the lifeblood of our nation and its institutions."

    o   In response, President Trump tweeted that Mr. Comey "is a disgraced lier [sic] & leaker."

- Mr. Comey publicly warned in Spring 2024 that a second Trump term would have "serious" implications "for the Justice Department and the FBI, because Trump is coming for those institutions."

    o   Two days later, then-candidate Trump responded by calling Mr. Comey a corrupt liar who had perpetrated "[h]orrors."

In sum, almost every time that Mr. Comey entered the public square to criticize the President, the President has responded with insults and calls for prosecution.

5. Viewing the record as a whole, the President's calls to prosecute Mr. Comey do not evidence a legitimate prosecutorial motive—they are the expression of the President's vindictive motive. When a government actor calls for the prosecution of an individual directly after the

individual has exercised a constitutional right, the most natural conclusion is that the call to prosecute is vindictive. *See Barbour v. Garland*, 105 F.4th 579, 591 (4th Cir. 2024) (explaining that close "temporal proximity" between a "protected activity" and an "adverse action" can establish "retaliatory animus"). That is especially true when the call to prosecute is coupled with vitriolic language that displays "genuine animus" toward the individual. *See Wilson*, 262 F.3d at 314-15. Here, the record shows that time after time, President Trump called for Mr. Comey's prosecution directly after Mr. Comey engaged in protected speech that criticized President Trump. And in each instance, the call to prosecute was expressed through demeaning language that displayed genuine animus toward Mr. Comey.

The government argues (ECF No. 138 at 26-27) that the record contains no "direct evidence" of President Trump's vindictive motive because President Trump never expressly admitted that he wanted Mr. Comey prosecuted for vindictive reasons triggered by Mr. Comey's speech. But the foundational vindictive-prosecution cases establish that courts can draw reasonable inferences from objective facts. Indeed, the presumptions of vindictiveness announced in *North Carolina v. Pearce*, 395 U.S. 711 (1969), and *Blackledge v. Perry*, 417 U.S. 21 (1974), arose from inferences about a prosecutor's likely motive when he increases charges after a successful appeal or institutes felony charges after a defendant appealed a misdemeanor conviction. And in cases of apparent retaliation for protected speech, the question is always whether the government has engaged in "conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024).[9]

---

[9] The government also argues that a vindictive-prosecution claim may not be based purely on allegations of "personal spite or ill will." ECF No. 138 at 23-24 (citing *United States v. Walker*, 514 Supp. 294, 311 (E.D. La. 1981)). But the government does not explain how a personal

The chronology of the President's accusations also reveals his determination to vent his animus against Mr. Comey through a vindictive prosecution. Many of the President's calls for prosecution came well before the 2020 conduct for which Mr. Comey has been indicted. The President's pre-2020 assertion that Mr. Comey committed "crimes" cannot possibly establish that the President had a legitimate motive to prosecute Mr. Comey for conduct that had not yet occurred. To the contrary, those statements show that President Trump "had made up his mind to" prosecute Mr. Comey "'well before' receiving" any evidence of the testimony cited in the indictment. *Dep't of Com. v. New York*, 588 U.S. 752, 782-83 (2019). The Court's review of presidential motive may be "deferential," but the Court is "'not required to exhibit a naiveté from which ordinary citizens are free.'" *Id.* at 785 (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.)). President Trump's statement that Mr. Comey "is a weak and . . . untruthful slime ball" who "should be prosecuted" does not establish that he had a legitimate motive to prosecute Mr. Comey for conduct that occurred years later. To the contrary, it supports the conclusion that President Trump had a preconceived aim of prosecuting Mr. Comey—regardless of whether the facts and the law justified that prosecution.

6. Finally, the government's suggestion (ECF No. 138 at 24-25) that a vindictive-prosecution argument cannot be based on the exercise of First Amendment rights lacks support in precedent or principle. A prosecution brought to "punish[]" an individual "for exercising a protected statutory or constitutional right" is "a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372 (1982). Nothing in that rule suggests that certain constitutional rights are less worthy of protection than others. On the contrary, the Supreme

---

vendetta can serve as the legitimate government interest that due process demands. *See infra* at n.13. And the Fourth Circuit has described "genuine animus" as a permissible basis for a vindictive-prosecution claim. *Wilson*, 262 F.3d at 314.

Court has made clear that "government officials" may not "subject[] an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *see also Vullo*, 602 U.S. at 189. Accordingly, a defendant may raise a vindictive prosecution claim when a prosecution was brought to "deter[] [the defendant's] exercise of his First Amendment rights." *Bragan v. Poindexter*, 249 F.3d 476, 483 (6th Cir. 2001).[10]

### C. The Record Establishes that Mr. Comey Would Not Have Been Prosecuted but for the President's Animus

Objective evidence shows that the prosecution against Mr. Comey would not have been brought "but for" the President's "animus." *Wilson*, 262 F.3d at 314. The government's argument against causation is legally and factually wrong.

The government contends (ECF No. 138 at 27-28) that the prosecution must have been brought "solely" to punish Mr. Comey for exercising his First Amendment rights, contrasting a "sole cause" with a "but-for" cause. That argument relies exclusively on the use of the word "solely" in two footnotes in *Goodwin*. *See* 457 U.S. at 379 nn. 11 and 12. But the Fourth Circuit has repeatedly interpreted *Goodwin*'s use of "solely" to mean "but-for" cause. *Wilson*, 262 F.3d at 314; *see also United States v. Ball*, 18 F.4th 445, 454 (4th Cir. 2021); *United States v. Villa*, 70 F.4th 704, 710 (4th Cir. 2023). Other circuits likewise equate *Goodwin*'s use of "solely" to mean "but-for" causation. *See United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168-69 (9th Cir. 1982); *United States v. Sanders*, 211 F.3d 711, 716-17 (2d Cir. 2000); *United States v. Jarrett*, 447 F.3d 520, 524-25 (7th Cir. 2006).

---

[10] The government's reliance on *United States v. Lazzaro*, No. 21-cv-0173, 2022 WL 17417970 (D. Minn. Oct. 12, 2022), an out-of-circuit district court case, does not suggest otherwise. The authority on which it relied—*United States v. Wilson*, 639 F.2d 500 (9th Cir. 1981)—equated vindictive prosecution and selective prosecution for purposes of allowing an immediate appeal from a pretrial ruling; it did not analyze whether they had the same elements or cast doubt on a vindictiveness theory based on First Amendment rights. *Id.* at 502.

The record here establishes that the government would not have brought the current prosecution—which accuses Mr. Comey of lying to Congress about authorizing Mr. Richman to serve as an anonymous source, ECF No. 1 at 1—but for President Trump's animus. The but-for causation standard in a vindictive-prosecution case is a "pragmatic" one, "directed to determining how the decision to prosecute was actually made" without "permit[ting] vindictiveness to be hidden behind procedural cosmetics." *P.H.E.*, 965 F.2d at 859. Here, before President Trump directed DOJ to indict, government investigators and career prosecutors had repeatedly found insufficient evidence to bring charges against Mr. Comey for his conduct and statements related to Mr. Richman.

Significantly, the Arctic Haze investigation—which began and ended during President Trump's first term—concluded that there was not "sufficient evidence to criminally charge any person, including Comey or Richman, with making false statements or with the substantive offenses under investigation." Arctic Haze Memo at -065. And recent reporting indicates that career prosecutors from the U.S. Attorney's Office for the Eastern District of Virginia— including interim U.S. Attorney Erik Siebert—similarly declined to charge Mr. Comey. *See* ECF No. 59 at 10-11. Only after President Trump intervened, expressing that he wanted Mr. Siebert "out" and publicly calling on the Attorney General and Ms. Halligan to bring charges against Mr. Comey, was a prosecution brought. *See id.* That sequence of events reveals that Mr. Comey would not have been indicted but for President Trump's insistence that he be charged regardless of what the evidence showed or what career prosecutors recommended.

The government suggests (ECF No. 138 at 19) that the Court should categorically disregard news reports that career prosecutors declined to prosecute as speculative. But the record includes the public and declassified FBI declination memo in the Arctic Haze

investigation, which is anything but speculative. Beyond that, no rule requires the Court to close its eyes to the consistent, corroborated, and credible reporting about the origins of this prosecution.[11] The detailed reports of career prosecutors' objections are bolstered by objective corroborating facts: a pattern of career-prosecutor firings, Ms. Halligan's unusual solo appearance in the grand jury, and the absence of career prosecutors from this district at every later stage. If the press reports are untrue, why has the government not denied them?[12]

The government's approach here stands in stark contrast to its approach in *United States v. Abrego*, where it has made herculean efforts to try to support its claims of an independent prosecutorial decision-making process. In that case, the government provided an affidavit signed by Acting U.S. Attorney Rob McGuire and four prosecutors from a DOJ task force who assisted with the investigation. The affidavit provided a "detailed summary of the reopening of the investigation" into Mr. Abrego and an offer for Mr. McGuire to testify "to answer questions from the Court and defense counsel under oath" and to be "subject to cross-examination under oath regarding . . . whether he was directed to prosecute [Mr. Abrego] by sources from within or outside of DOJ, including from the White House." Opp. to Mot. to Compel at 4-5 & 5 n.1, *United States v. Abrego*, 25-cr-00115 (Oct. 22, 2025), ECF No. 178. The government also acknowledged that the Acting United States Attorney "drafted a prosecution memorandum summarizing the evidence and the decision to charge, and [Assistant United States Attorney Ben

---

[11] The government (ECF No. 138 at 31) cites *United States v. Biden*, 729 F. Supp. 3d 410 (D. Del. 2024), to dismiss the value of reporting relying on anonymous sources. But in *Biden*, the court merely concluded that, on the facts before it, "the unsupported statement of a contradicted anonymous source" in a single news report could not "suffice as 'clear evidence' of" discriminatory intent. *Id.* at 423. By contrast, the news reports cited by Mr. Comey are consistent with each other and corroborated by the objective facts.

[12] Those reports are further corroborated by the firings and resignations of career prosecutors in the Western District of Virginia, where another investigation related to Mr. Comey is ongoing. Devlin Barrett, et al., *U.S. Attorney Was Forced Out After Clashes Over How to Handle Russia Inquiry*, N.Y. Times (Oct. 14, 2025), https://perma.cc/Q999-9FWE.

Schrader] drafted a memorandum detailing his reasons that he (Mr. Schrader) would decline to charge the case." *Id.* at 7. The government voiced "no objection to the Court's issuing a subpoena to Mr. Schrader if necessary" for the defense to call him as a witness. *Id.* In addition, the government filed a supplemental affidavit from Mr. McGuire in which he "ma[de] clear that he never had any communication, whether orally or in writing, about the inception or the progress of the investigation with the Attorney General, the Deputy Attorney General, [or] anyone at the White House." *Id.* at 5. The Court can and should draw a negative inference from the government's apparent unwillingness to make any similar representations or offers to testify here. *See Graves v. United States*, 150 U.S. 118, 121 (1893) ("[I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.").

The government's silence is particularly striking because, despite its extended (ECF No. 138 at 4-11, 14-15) description of events that purportedly form the basis for the indictment here, it does not attempt to explain how its narrative supports its theories. On the contrary, the narrative undercuts its case. For instance, while Count One of the indictment alleges that Mr. Comey authorized Mr. Richman to serve as an "anonymous source" about the "Clinton investigation" while he was "at the FBI," ECF No. 1 at 1, most of the communications the government cites occurred long after Mr. Richman *left* the FBI in February 2017—and none provides support for Mr. Richman being a source of information (as opposed to an explainer of public facts) and none so much as mentions Mr. Richman being anonymous. ECF No. 138-6. It is therefore unsurprising that every career prosecutor to touch this case reportedly declined charges. The government's own narrative thus provides further evidence that this case would

never have been charged but for the President's animus.

Ultimately, the government's primary causation argument (ECF No. 138 at 27-28) is the same as its primary vindictive-motive argument—that President Trump's numerous personal attacks on Mr. Comey reflect a "legitimate prosecutorial motive" that caused the prosecution. Far from establishing a legitimate prosecutorial motive, President Trump's repeated attacks on Mr. Comey and calls for his prosecution are the very evidence establishing that Mr. Comey's prosecution was vindictively motivated. *See supra* Part I.B. The same evidence, coupled with the objective facts above, establishes the causation element in a vindictive-prosecution claim.

*       *       *

If the Court does not find actual vindictiveness and a due process violation on this record, it should order discovery and conduct a hearing. At a bare minimum, the "circumstances" here "'pose a realistic likelihood of vindictiveness,'" such that vindictiveness should be presumed and the burden shifted to the government "to present objective evidence justifying its conduct." *Wilson*, 262 F.3d at 314-15 (quoting *Blackledge*, 417 U.S. at 27). The circumstances here—a protracted pattern of vitriolic attacks against a perceived political enemy and unfounded accusations of criminality in direct response to protected speech; refusals to prosecute by a string of career attorneys; and an indictment following on the heels of the installation of an inexperienced prosecutor and ally of the President—warrant at least a presumption of vindictiveness. Accordingly, if it does not dismiss outright, the Court should direct discovery and hear evidence on the government's response.

## II.    THE GOVERNMENT SELECTIVELY PROSECUTED MR. COMEY BECAUSE THE PRESIDENT PERCEIVES HIM AS A POLITICAL ADVERSARY

The record here also establishes that the government singled Mr. Comey out for prosecution in violation of equal protection principles.

## A.    The Evidence Shows Direct Admissions of Animus

The government does not deny that a direct admission of discriminatory purpose can show both discriminatory effect and discriminatory intent.  Instead, it contests (ECF No. 138 at 31) that President Trump directly admitted a discriminatory purpose.  The record establishes otherwise.  The President embarked on a prolonged series of attacks on Mr. Comey; his attacks responded to Mr. Comey's public speech; he levied charges of criminality without facts; and he capped his pattern of invective with his explicit September 20th call to prosecute.  While the government views (*id.* at 30-32) each link in this chain in isolation, a fundamental principle of interpretation is that words take meaning from their context.  *E.g. Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam).  Here, the context for the September 20th post includes the entire course of President Trump's past statements about Mr. Comey and their impetus in his protected speech.  And the same animus-based course of conduct establishes a class-of-one equal protection claim.  ECF No. 59 at 27.[13]

## B.    The Evidence Shows Discriminatory Effect and Discriminatory Purpose

The record here also establishes "clear evidence" that similarly situated individuals to Mr. Comey were not prosecuted and that the decision to prosecute Mr. Comey reflected discriminatory purpose. *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996).

---

[13] The government cites *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), and *United States v. Moore*, 543 F.3d 891 (7th Cir. 2008), to argue that a class-of-one equal protection claim based on animus is a "poor fit in the prosecutorial discretion context."  ECF No. 138 at 33 n.24.  But *Engquist* rejected such animus-based claims in the public employment context, not the prosecutorial context.  And in *Wade v. United States*, 504 U.S. 181 (1992), the Court had previously held that a defendant "would be entitled to relief [under the Due Process Clause] if the prosecutor's refusal to move" for a lower sentence "was not rationally related to any legitimate Government end."  *Id.* at 186.  Even the government does not claim punishing a person because of personal animus is a legitimate government end.  And *Moore* ultimately declined to reconcile two lines of its class-of-one precedents because the defendant's claim failed under either.  543 F.3d at 899.

1.  The government argues (ECF No. 138 at 34-36) that Mr. Comey is not similarly situated to the four senior Administration officials not prosecuted for lying to Congress because Mr. Comey allegedly lied about in-office conduct and they allegedly lied about pre-office conduct.  But the government fails to explain why that is a "legitimate prosecutorial factor[]" that justifies selective prosecution.  *United States v. Venable*, 666 F.3d 893, 900-01 (4th Cir. 2012). The government has the same compelling interest in punishing lies to the Senate to obtain government office as it does to protect Congress against alleged lies about official acts while occupying office.   Indeed, the Constitution's Appointments Clause reflects the surpassing importance of Senate consent to the installation of principal officers.  *See* U.S. Const. Art. II, § 2, cl. 2.   And the government fails to note that one of Mr. Sessions's false statements about connections between President Trump's 2016 campaign and Russia came *after* he was confirmed as Attorney General at an October 2017 oversight hearing before the Senate Judiciary Committee.  See ECF No. 59 at 31.  Thus, while serving as Attorney General, Mr. Sessions allegedly made false statements to the Senate Judiciary Committee about a matter his Department was investigating.

The government lists (ECF No. 138 at 35) officers who were prosecuted for making false statements about their official conduct, but equally prominent are individuals who were prosecuted for misleading Congress or investigators about official *or* unofficial conduct during their confirmation processes.  *See, e.g.*, Anthony Ripley, *Kleindienst Admits Misdemeanor Guilty*, N.Y. Times (May 17, 1974) (Attorney General Richard Kleindienst), https://perma.cc/49HX-URX5; Anthony Marro, *Helms, EX-C.I.A. CHIEF, PLEADS NO CONTEST TO 2 MISDEMEANORS*, N.Y. Times (Nov. 1, 1977) (Ambassador to Iran Richard Helms), https://perma.cc/9FM7-4ZX3; David Johnston, et al., *Inquiry on Clinton Official Ends*

*With Accusations of Cover-Up*, N.Y. Times (Jan. 19, 2006) (HUD Secretary Henry Cisneros), https://perma.cc/KPN2-NG59. The government's selectivity against Mr. Comey is clear.

2. As to the evidence of discriminatory purpose, the government does not dispute that Mr. Sessions, Mr. Pruitt, Mr. Price, and Mr. Mnuchin are the President's political allies and that Mr. Comey is the President's perceived political opponent. Instead, the government repeats its argument (ECF No. 138 at 37) that President Trump cannot have prosecuted Mr. Comey because of invidious animus because his tweets display a legitimate prosecutorial motive. For all the reasons discussed, that argument disregards logic and would eviscerate the law.

The government erroneously argues (ECF No. 138 at 38) that *United States v. Hastings*, *supra*, is "instructive" on what it takes to overcome the presumption of regularity. In *Hastings*, the defendant's theory that "the case was motivated by unconstitutional animus because he is a Republican" rested entirely on a single IRS investigator's criminal referral file, which simply noted the defendant's political affiliation. 126 F.3d at 314. The Fourth Circuit explained that this single note was not enough to establish animus, at least on the part of the prosecutor. *See id.* at 314-15. That single note from a line investigator pales in comparison to the voluminous record of President Trump's statements disparaging Mr. Comey in response to his protected speech and calling for his prosecution.

Finally, the government suggests (ECF No. 138 at 38-39) that *Armstrong* overruled the many cases establishing that unusual prosecutorial procedures are evidence of a bad-faith and invidious motive. *See* ECF. No. 59 at 35. But those cases simply apply a well-established principle that applies to all equal protection cases: "Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977). The aberrant

procedures that led to this indictment, after the President's protracted campaign against Mr. Comey, paint an unmistakable picture: Mr. Comey is being singled out for punishment because of the President's discriminatory purpose.

## III.    THE PROPER REMEDY IS DISMISSAL WITH PREJUDICE

The government has no sound basis for resisting dismissal with prejudice. The government principally contests whether Mr. Comey suffered prejudice from the flagrant misconduct that resulted in his prosecution. But its arguments simply repackage its causation arguments. For example, the government claims (ECF No. 138 at 41) that Mr. Comey was not prejudiced because there is no evidence that he "'would not have been indicted' absent the President's" intervention. As explained, the sequence of events and objective evidence removes any doubt that, but for President Trump's vitriol and accompanying calls to prosecute, Mr. Comey never would have been charged. *See supra* Part I.C.

The government's only other argument against dismissal with prejudice depends on upending one of the most basic and fundamental premises of our criminal justice system: the presumption of innocence. The government asserts (ECF No. 138 at 42) that dismissal with prejudice would "thwart[] the public's interest in the enforcement of its criminal law" because it would allow Mr. Comey "to escape accountability for lying to and obstructing Congress." But the assumption that Mr. Comey must be guilty—before any public airing or testing of its evidence—disregards bedrock principles underlying our system of justice. The government's unfounded assumptions of guilt cannot excuse its egregious constitutional violations.

## <u>CONCLUSION</u>

For the foregoing reasons, the indictment should be dismissed with prejudice. Alternatively, the Court should order discovery and conduct a hearing on vindictive and selective prosecution.

26

Dated: November 10, 2025

Respectfully submitted,

JAMES B. COMEY, JR.
By Counsel

*/s/  Jessica N. Carmichael*
Jessica N. Carmichael (VA Bar No. 78339)
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, First Floor
Alexandria, VA 22314
Telephone: (703) 684-7908
Facsimile: (703) 649-6360
Email: jessica@carmichaellegal.com

Patrick J. Fitzgerald (*pro hac vice*)
(Mich. Bar No. P86579)
P.O. Box 277
New Buffalo, MI 49177
Telephone: (312) 758-4454

Rebekah Donaleski (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6000

Ephraim A. McDowell (*pro hac vice*)
Elias S. Kim (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800

Michael R. Dreeben (*pro hac vice*)
600 New Jersey Ave. NW
Washington, DC 20001
Telephone: (202) 695-2562

*Counsel for Defendant James B. Comey, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 10th day of November, 2025, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/   *Jessica N. Carmichael*
Jessica N. Carmichael

*Counsel for Defendant James B. Comey, Jr.*