IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>v.<br><br>JAMES B. COMEY, JR.,<br><br>*Defendant*. | CRIMINAL NO. 1:25-CR-272-MSN |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR BILL OF PARTICULARS**

Defendant James B. Comey, Jr. requests that the Court order the Government provide him a bill of particulars, alleging that the "indictment . . . sheds no light on the alleged factual basis for the conduct at the heart of Count One," and that it "provides no information about what statements, or conduct, underlie Count Two." *See* Dkt. 107 ("Def. Mem.") at 1. Despite being provided substantial discovery, he nevertheless requests that he be provided detailed disclosure of the government's evidence, strategy, and legal theories in advance of trial. *See id.* at 3–4.

Contrary to defendant's request, a bill of particulars is not to be utilized as a discovery device. Given that the indictment provides defendant with the essential facts constituting the offenses with which he is charged, the Court should not require the Government to disclose the manner in which it will attempt to prove the charges, the precise manner in which the Government intends to prove that the crimes charged were committed, or to provide the defendant a preview of the Government's evidence or legal theories.

I.   **BACKGROUND**

> **A. The FBI's Midyear Exam investigation and Defendant's July 2016 statement in which he recommended that the Department of Justice decline prosecution.**

As detailed in the Government's response to the defendant's motion to dismiss the indictment based on allegedly vindictive or selective prosecution, the defendant served as Director of the FBI between September 2013 and May 2017.  *See* Dkt. 138 at 2.

Beginning in 2015, the FBI conducted an investigation—known as Midyear Exam—regarding whether former Secretary of State Hillary Clinton had committed certain federal crimes while using a private email server to conduct official government business.  *See id.* at 2.

By the spring of 2016, the defendant and FBI investigators determined that "evidence to support a criminal prosecution of Clinton was lacking."  *See id.* at 2 (cleaned up).  The defendant eventually decided to make an independent announcement (while consciously concealing his intention to do so from DOJ leadership) concerning the government's decision to decline to prosecute Clinton. *See id.* at 2–3.

In early July 2016, the defendant made a public statement—without the approval of the DOJ—in which he "criticized Clinton and her senior aides as extremely careless in their handling of classified information" and in which he stated that the FBI was recommending that the DOJ decline to prosecute Clinton.  *See id.* at 3.

> **B. Defendant's October 2016 letter to Congress and his subsequent use of Daniel Richman to shape media coverage regarding the Midyear Exam investigation.**

In September 2016, during an unrelated investigation, the FBI's New York Field Office discovered thousands of emails potentially relevant to the Midyear Exam investigation.  *See id.* at 4; *see also* Dkt. 138-1 at vii (June 2018 Department of Justice Office of Inspector General Report executive summary).

As a result, in late October 2016, the defendant sent a letter to the chairmen and ranking members of numerous Congressional committees regarding the newly discovered information and its potential relevance to the Midyear Exam investigation. *See* Dkt. 138 at 4; *see also* Dkt. 138-2. In that letter, the defendant stated, among other things, that the FBI would "take appropriate investigative steps designed to allow investigators to review these emails to determine whether they contain[ed] classified information, as well as to assess [the emails'] importance to [the FBI's] investigation." *See* Dkt. 138-2. Almost immediately after sending the above-described letter, the defendant appears to have begun coordinating with Daniel Richman, a Columbia Law School professor who also served as an FBI Special Government Employee since 2015, to respond to resulting media coverage.

On the same day that defendant sent his letter to Congress, he was already coordinating with Richman on the coverage. Richman emailed the defendant: "Wittes and I are spending a lot of time saying your letter means exactly and only what it says. 'Cause we, you know, speak English[.]" Defendant replies, using Gmail, with sensitive non-public investigative details:

> You are both right. And he nailed the position I found myself in. The team comes to me yesterday and says there are over 600,000 email on Weiser's computer and they include 10 years of Huma Abeddin's emails, including emails with HRC and that metadata shows are from the "missing"blackberry domain used for the first months of Secretary Clinin's tenure at state. Appears Huma didn't know all her stuff was backing up to his computer. Imagine what I would have done to my institution if I didn't do both of those things. Not a hard call although I hate having to do it.

Gov. Ex. 1 (Misspellings and grammatical errors appear in original).

Following this email exchange, and two days after the defendant sent the letter to Congress, Richman emailed the defendant, stating that he had been asked by *The New York Times*' "op ed page" to "write something on [the defendant's] letter." *See* Dkt. 138-5. Richman stated that he was "not inclined to do so," but that he would if the defendant thought "it [would] help things to

3

explain that [the defendant] owed cong absolute candor and that [the defendant's] credibility w cong [would] be particularly important in the coming years of threatened cong investigations." *See id.* The defendant responded that there was "[n]o need," that doing so "would [be] shouting into the wind," that they would "figure it out," and that his "decision [would] be one a president elect Clinton [would] be very grateful for (although that wasn't why [he] did it)." *See id.*

Nevertheless, mere days later, and apparently displeased with certain media coverage regarding his letter, the defendant tacitly instructed Richman to further explain his reasoning for sending the letter to a reporter at *The New York Times*. The defendant wrote:

> When I read the times coverage involving [Reporter 1], I am left with the sense that they don't understand the significance of my having spoke about the case in July. It changes the entire analysis. *Perhaps you can make him smarter.*
>
> Let's imagine the Times had a policy against writing new articles close to elections if the articles might influence the election. Consistent with that policy they would avoid writing this week if sources told them that the FBI was looking at Huma Abedin's emails.
>
> But let's imagine that they wrote a very high profile piece in July that sources lead them to now conclude was materially inaccurate. Would they correct it or stay silent because they have a policy to avoid action near elections?
>
> I suspect they would quickly conclude that either course is an "action" and the choices are either reporting or concealing but there is no longer a "neutral" option because of the reporting in July. I also suspect they would resolve very quickly to choose the action of disclosing because to remain silent is to actively mislead, which has a wide range of very bad consequences.
>
> *Why is this so hard for them to grasp?* All the stuff about how we were allegedly careful not to take actions on cases involving other allegations about which we have never spoken is irrelevant. I love our practice of being inactive near elections. But inactivity was not an option here. The choices were act to reveal or act to conceal.

*See* Dkt. 138-6 (emphasis added).

Richman responded the next day, stating that "[t]his was precisely the case" he had "made to them," that he had "thought they understood," and that he had been "quite wrong." *See id.*

4

Richman noted that he had gone "further and said mindless allegiance to the policy (and recognition that more evidence could come in) would have counseled silence in july to let hrc twist in the wind." *See id.* Richman subsequently emailed the defendant to state that he had "[j]ust got the point home to" the reporter at *The New York Times*, and that he "[p]robably was rougher than" the defendant "would have been." *See id.*

The same day, apparently following Richman's communication with *The New York Times*, the defendant emailed Richman a link to a *New York Times* piece regarding the defendant's purported choices in late October 2016 regarding the Clinton email investigation. *See* Dkt. 138-7. The defendant entitled his email "Pretty good," and wrote: "*Someone showed some logic. I would paint the cons more darkly but not bad.*" *See id.* (emphasis added). Richman responded: "See I *can* teach." *See id.* The defendant replied: "*Well done my friend. Who knew this would. E so uh fun.*" *See id.* (emphasis added).

### C. The defendant in May 2017 denied in Senate testimony having authorized anyone at the FBI to be an anonymous source in news reports, and in September 2020 he reaffirmed that testimony.

Despite the defendant's above-described November 2016 instruction to Richman—and his subsequent expression of approval regarding Richman's provision of information to the media concerning the Clinton email investigation—the defendant testified as follows in early May 2017 during an oversight hearing conducted by the Senate Judiciary Committee.

> SENATOR GRASSLEY: Director Comey, have you ever been an anonymous source in news reports about matters relating to the Trump investigation [the FBI's Crossfire Hurricane investigation] or the Clinton investigation?
>
> COMEY: Never.
>
> SENATOR GRASSLEY: Question two on relatively related, have you ever *authorized someone else at the FBI to be an anonymous source in news reports about the Trump investigation or the Clinton investigation*?

>COMEY:  No.

*See* Dkt. 138 at 9 & n.6 (emphasis added; "Senator" added).

In September 2020, during another hearing conducted by the Senate Judiciary Committee, the defendant—after swearing an oath before his testimony to tell "the truth, the whole truth, and nothing but the truth"—reaffirmed his May 2017 testimony as follows to Senator Cruz.[1]

>SENATOR CRUZ:  All right.  Let's shift to another topic.  On May 3, 2017 in this committee, Chairman Grassley asked you point blank 'have you ever been an anonymous source in news reports about matters relating to the Trump investigation or the Clinton investigation?'  You responded under oath 'never.'  He then asked you 'have you ever authorized someone else at the FBI to be an anonymous source in news reports about the Trump investigation or the Clinton administration.'  You responded again under oath, 'no.'
>
>Now, as you know, Mr. McCabe, who works for you, has publicly and repeatedly stated that he leaked information to The Wall Street Journal and that you were directly aware of it and that you directly authorized it.  Now, what Mr. McCabe is saying and *what you testified to this committee cannot both be true*; one or the other is false.  *Who's telling the truth*?
>
>COMEY:  I can only speak to my testimony.  *I stand by what, the testimony you summarized that I gave in May of 2017*.
>
>SENATOR CRUZ:  So, your testimony is *you've never authorized anyone to leak*.  And Mr. McCabe if he says contrary is not telling the truth, is that correct?
>
>COMEY:  Again, I'm not going to characterize [McCabe's] testimony, but *mine is the same today*.

---

[1] *See, e.g.*, Forbes Breaking News, *Watch The Senate Hearing In Which The DOJ Says James Comey Lied To Congress And Has Thus Charged Him*, https://www.youtube.com/watch?v=rTU3t1lnCao (last visited Nov. 10, 2025) (showing that oath was administered by Senator Graham beginning at 18:31).

*See* Dkt. 138 at 11–12 & n.9 (emphases added; "Senator" added); *see also* Def. Motion to Dismiss at 18, Dkt. 105 (acknowledging that Senator Cruz asked defendant to "*affirm or deny* prior testimony" (emphasis added)).[2]

During the same September 30, 2020 hearing, the defendant was asked by Senator Graham whether he remembered being "getting" or being "taught" of "a[n] investigatory lead from the intelligence community" regarding "U.S. presidential candidate Hillary Clinton's approval of a plan concerning U.S. presidential candidate Donald Trump and Russian hackers hampering U.S. elections as a means of distracting the public from her use of a private email server," *i.e.*, the conduct that the FBI investigated during the Midyear Exam investigation. *See* Dkt. 138-14 at 1. The defendant replied that that information "d[idn't] ring any bells with [him]." *See id.* He similarly informed Senator Hawley that he did not "remember" receiving the investigatory referral, or "anything described" therein. *See id.* at 5. The government has nevertheless determined that the defendant's handwritten notes appear to show that he was informed in September 2016 regarding an "HRC plan to tie Trump." *See* Dkt. 138 at 14–15; *see also* Dkt. 138-13.

**D. The indictment.**

On September 25, 2025, a federal grand jury returned a two-count indictment charging the defendant with violations of 18 U.S.C. § 1001(a)(2) and 18 U.S.C. § 1505 based on his September 2020 Congressional testimony. *See* Indictment, Dkt. 1.

Count One of the Indictment charges the defendant with falsely stating on or about September 30, 2020 to a U.S. Senator—*i.e.*, Senator Cruz—that he had not authorized Richman to be an anonymous source in news reports regarding the Clinton email investigation, all in violation

---

[2] The Government's response in opposition to the Defendant's motion to dismiss erroneously omitted the word "the" before the words "Clinton investigation" in quoting Senator Cruz. *See* Dkt. 138 at 11.

7

of 18 U.S.C. § 1001(a)(2). *See id.* Count Two of the indictment charges the defendant with having corruptly endeavored on or about September 30, 2020 to influence, obstruct, and impede the due and proper exercise of the power of inquiry under which an investigation was being held by the Senate Judiciary Committee by making false and misleading statements before that committee, all in violation of 18 U.S.C. § 1505.

### E. Discovery provided to the defense to date.

The defense has made discovery requests of voluminous materials. To date, the government has provided broad discovery to the defense (Bates 1–32936) which includes electronic data, investigative summaries, emails, previous hearing transcripts, and witness interviews. The discovery produced, which is more fulsome than required at this stage, sets forth the identity of witnesses and their statements. The government has also provided significant classified discovery to the defense.

## II.   ARGUMENT

### A. The Federal Rules of Criminal Procedure require that an indictment be a plain, concise, and definite written statement of the essential facts of the offense charged.

The Federal Rules of Criminal Procedure provide that an indictment "must be a plain, concise, and definite written statement of the *essential facts* constituting the offense charged." Fed. R. Crim. P. 7(c)(1) (emphasis added).

"An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002) (cleaned up); *see also, e.g.*, *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Wicks*, 187 F.3d 426, 427 (4th Cir. 1999)

(noting that such an "indictment meets the guarantees of the Fifth and Sixth Amendments"); *United States v. Smith*, 44 F.3d 1259, 1263–64 (4th Cir. 1995).

"Usually an indictment is sufficient if it alleges an offense in the words of the statute, as long as the words used in the indictment fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence." *Brandon*, 298 F.3d at 310 (cleaned up); *see also Smith*, 44 F.3d at 1263 (noting that "[t]he allegations of an offense are generally sufficient if stated in the words of the statute itself"). "However, simply parroting the language of the statute in the indictment is insufficient. When the words of a statute are used to describe the offense generally, they must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *See Brandon*, 298 F.3d at 310 (cleaned up).

Nevertheless, it is plain that an indictment need not "enumerate every possible legal and factual theory of [a defendant's] guilt." *United States v. Am. Waste Fibers Co.*, 809 F.2d 1044, 1047 (4th Cir. 1987).

> **B. A defend bill of particulars should not be used as a discovery device and a court should not grant a bill of particulars so as to require the government to disclose to the defense its legal strategy, a preview of its evidence, or its legal theories.**

"A bill of particulars is appropriate when an indictment fails to (1) provide adequate information to allow a defendant to understand the charges, and (2) avoid unfair surprise." *United States v. Currie*, 2011 WL 1527014, at *1 (D. Md. Apr. 20, 2011). "[A] bill of particulars is generally only required where the charges in an indictment are so general that they do not advise the defendant of the specific acts of which he is accused," and "a defendant is not entitled to a bill of particulars as a matter of right." *See id.*; *see also, e.g.*, *United States v. Brown*, 2011 WL 6046370, at *4 (E.D.N.C. Dec. 5, 2011). "[T]he decision to grant a bill of particulars rests within the sound discretion of the trial court." *Currie*, 2011 WL 1527014, at *1.

Consequently, it is clear that a "bill of particulars is not a discovery device," *United States v. Willock*, 696 F. Supp. 2d 536, 540 (D. Md. 2010), and a "bill of particulars is not to be used to provide detailed disclosure of the government's evidence in advance of trial." *United States v. Auto. Med. Labs, Inc.*, 770 F.2d 399, 405 (4th Cir. 1985) (emphasis added). "The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant[] committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. McComber*, 2021 WL 5760731, at *6 (D. Md. Dec. 3, 2021) (cleaned up).

Instead, "[a] defendant is only entitled to know those central facts which will enable him to conduct his own investigation of the transactions that resulted in the charges against him." *United States v. Sykes*, 2016 WL 8291220, at *37 (E.D.N.C. Aug. 22, 2016) (cleaned up) (memorandum and recommendation), *memorandum and recommendation adopted*, 2016 WL 6882839 (E.D.N.C. Nov. 22, 2016). "Stated differently, a defendant is not entitled to compel the government to describe in detail the manner in which the crime was committed, thereby forcing the prosecution to fix irrevocably the parameters of its case in advance of trial." *See Sykes*, 2016 WL 8291220, at *37 (cleaned up).

Thus, the "Government is not required to reveal its legal strategy or to go into matters of detail or to lay out its entire case or to state its legal conclusions," *United States v. Lewis*, 1990 WL 11111, at *2 (W.D.N.C. Feb. 5, 1990), since "a defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case." *United States v. Chen*, 2011 WL 332713, at *7 (N.D. Cal. Jan. 29, 2011) (cleaned up). "The ultimate test must be whether the information sought is *necessary*, not whether it is helpful." *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (emphasis added).

### C. The government's provision of substantial discovery counsels against granting a motion for a bill of particulars.

Courts are to be "especially reluctant to direct the filing of a bill of particulars when the government has provided the defendant with extensive pre-trial discovery." *United States v. McComber*, 2021 WL 5760731, at *7 (D. Md. Dec. 3, 2021) (cleaned up). If "the indictment—and information provided by the Government through full discovery—is sufficient to enable a defendant to obtain necessary information about the nature of the charges against [him], so that [he] may prepare for trial, a bill of particulars is unnecessary." *United States v. Mosby*, 2022 WL 1120073, at *3 (D. Md. Apr. 14, 2022); *see also, e.g.*, *United States v. Blanchard*, 542 F.3d 1133, 1140 (7th Cir. 2008); *United States v. Amend*, 791 F.2d 1120, 1125 (4th Cir. 1986) (noting that bill of particulars was unnecessary when counsel "prior to trial . . . obtained all necessary information from the government's files"); *United States v. Schembari*, 484 F.2d 931, 935 (4th Cir. 1973); *United States v. Currie*, 2011 WL 1527014, at *1 (D. Md. Apr. 20, 2011) (declining to grant motion for bill of particulars in part because defendants were provided "with extensive discovery that supplement[ed] the allegations in the indictment").

Consequently, "where an indictment is legally sufficient, detailed discovery may obviate the need for a bill of particulars," and "when considering whether to grant a defendant's motion for a bill of particulars, it is appropriate for [a] court to inquire about the information that has already been provided by the government during discovery." *McComber*, 2021 WL 5760731, at *7; *see also, e.g.*, *United States v. Hernandez*, 330 F.3d 964, 975 (7th Cir. 2003).[3]

---

[3] "Nevertheless, the government's production of discovery is not determinative. In other words, the production of discovery does not necessarily obviate the need for a bill of particulars." *United States v. Blair*, 2021 WL 424411, at *4 (D. Md. Feb. 5, 2021).

> **D. The defendant's motion should be denied, as he has been advised of the specific crimes of which he has been accused, because he is not entitled to a preview of the government's legal theory or trial strategy, and because he has been provided substantial discovery.**

The defendant requests—in twelve separate, particularized demands—that the government be required to disclose in exacting detail the manner in which the two crimes charged in the indictment were committed. *See* Def. Mem. at 3–4. But since that type of detailed disclosure of the government's evidence is emphatically not the purpose of a bill of particulars, his motion should be denied.

> **i. The indictment is more than sufficient to advise the defendant of the acts of which he is accused.**

Both counts of the indictment are more than sufficiently clear to permit defendant to "prepare for trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction in bar of another prosecution for the same offense," *United States v. Schembari*, 484 F.2d 931, 934–35 (4th Cir. 1973), since the indictment plainly describes the "central facts" underlying both charges, *United States v. Sykes*, 2016 WL 8291220, at *37 (E.D.N.C. Aug. 22, 2016) (cleaned up) (memorandum and recommendation), *memorandum and recommendation adopted*, 2016 WL 6882839 (E.D.N.C. Nov. 22, 2016), as well as the "elements of the offense[s] charged." *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002) (cleaned up).

The defendant nevertheless claims that he is entitled to a bill of particulars as to Count One because that count allegedly "fails to provide any detail regarding the factual basis for its claim that Mr. Comey knowingly authorized Mr. Richman to be an anonymous source in news reports regarding the Clinton investigation, including (a) when and how Mr. Comey provided such authorization; (b) what Mr. Comey authorized Mr. Richman to speak to news reporters about; and (c) which news reports included anonymous information from Mr. Richman." Def. Mem. at 6.

But defendant's concise summary of Count One aptly *demonstrates* why he is not entitled to a bill of particulars as to that count. Count One of the indictment charges the defendant with falsely stating on or about September 30, 2020 to a U.S. Senator—*i.e.*, Senator Cruz—that he had not authorized Richman to be an anonymous source in news reports regarding the Clinton email investigation, all in violation of 18 U.S.C. § 1001(a)(2). That straightforward charge does not, contrary to the defendant's claims, require the Government to identify every occasion on which defendant authorized Richman to act as an anonymous source regarding the Clinton investigation, every reporter or media organization with which Richman communicated, or the form of every such communication. *See* Def. Mem. at 3; *see also id.* at 6–8. That is so because a "bill of particulars is not to be used to provide detailed disclosure of the government's evidence in advance of trial," *United States v. Auto. Med. Labs, Inc.*, 770 F.2d 399, 405 (4th Cir. 1985), or to require the government to "disclos[e] the manner in which it will attempt to prove the charges, the precise manner in which the defendant[] committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. McComber*, 2021 WL 5760731, at *6 (D. Md. Dec. 3, 2021) (cleaned up). Since that is precisely what defendant has requested as to Count One, his motion for a bill of particulars should be denied as to that count.

Defendant's motion fares no better as to Count Two of the indictment, which charges him with having corruptly endeavored on or about September 30, 2020, to influence, obstruct, and impede the due and proper exercise of the power of inquiry under which an investigation was being held by the Senate Judiciary Committee by making false and misleading statements before that committee, all in violation of 18 U.S.C. § 1505.

Defendant claims that despite being provided "voluminous discovery," he does not "know the substance of the charges asserted by the government," *see* Def. Mem. at 10, given that he

13

testified during a multi-hour hearing in which numerous topics were covered. *See id.* at 9. But, as provided in discovery and via the indictment, the government intends to seek the admission of evidence at trial on this count regarding the defendant's statements to senators during the September 30, 2020, committee hearing. For instance, the defendant's statements to Senators Grassley and Cruz regarding his use of Richman as an anonymous source concerning the Clinton email investigation and his statements to Senators Graham and Hawley regarding his alleged lack of memory concerning the so-called Clinton plan to "tie Trump" to Russia. *See* Dkt. 138-13. That fact, combined with the discovery that has been provided, more than sufficient for defendant's pretrial preparation as to Count Two, since defendant is "not entitled to compel the government to describe in detail the manner in which the crime was committed, thereby forcing the prosecution to fix irrevocably the parameters of its case in advance of trial." *United States v. Sykes*, 2016 WL 8291220, at *37 (E.D.N.C. Aug. 22, 2016) (cleaned up) (memorandum and recommendation).

> ii. **The defendant's request for a bill of particulars impermissibly seeks to compel the provision of extreme detail regarding the Government's case.**

Even if the Court were to determine that the government should provide a bill of particulars in some form, the defendant's request for a bill of particulars inappropriately seeks to compel the Government to provide inordinate detail regarding "the precise manner in which the defendant[] committed the crimes charged." *United States v. McComber*, 2021 WL 5760731, at *6 (D. Md. Dec. 3, 2021) (cleaned up); *see also* Def. Mem. at 3–4.

A "bill of particulars is not a discovery device," *United States v. Willock*, 696 F. Supp. 2d 536, 540 (D. Md. 2010), but, nevertheless, the defendant requests that the government be compelled to provide detailed responses to his twelve-point itemized list of questions regarding "the manner in which [the government] will attempt to prove the charges" and "the precise manner in which the defendant[] committed the crimes charged." *McComber*, 2021 WL 5760731, at *6

14

(cleaned up); *see also* Def. Mem. at 3–4.  That is wholly inappropriate, since a motion for a bill of particulars cannot be utilized to obtain "extremely detailed evidence," *United States v. Chen*, 2011 WL 332713, at *7 (N.D. Cal. Jan. 29, 2011), or a "preview of the Government's evidence or legal theories." *See McComber*, 2021 WL 5760731, at *6 (cleaned up).

The Court should consequently deny defendant's request "to compel the government to describe in detail the manner in which the crime was committed, thereby forcing the prosecution to fix irrevocably the parameters of its case in advance of trial." *See United States v. Sykes*, 2016 WL 8291220, at *37 (E.D.N.C. Aug. 22, 2016) (memorandum and recommendation) (cleaned up), *memorandum and recommendation adopted*, 2016 WL 6882839 (E.D.N.C. Nov. 22, 2016).

### iii. The Government has produced substantial discovery, and that counsels against granting defendant's motion.

Finally, the significant discovery provided to the defendant strongly militates against the government being required to provide the defendant a bill of particulars, whether in the form requested by the defendant or otherwise.  As indicated above, the government has provided broad discovery to the defense which includes electronic data, investigative summaries, emails, previous hearing transcripts, and witness interviews.  The discovery produced, which is more fulsome than required at this stage, sets forth the identity of witnesses and their statements.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the defendant's motion for a bill of particulars be denied.

Respectfully submitted this 13th day of November, 2025.

Lindsey Halligan
United States Attorney

_____/S/_____
Gabriel J. Diaz

                Assistant United States Attorney
                North Carolina Bar No. 49159
                N. Tyler Lemons
                Assistant United States Attorney
                North Carolina Bar No. 46199
                2100 Jamieson Avenue
                Alexandria, VA 22314
                Tel: (703) 299-3700
                gabriel.diaz@usdoj.gov
                tyler.lemons@usdoj.gov

## CERTIFICATE OF SERVICE

This is to certify that I have this 13th day of November, 2025, the government served a copy of the foregoing upon the defendant by CM/ECF to:

Jessica Nicole Carmichael
Counsel for Defendant

Patrick Joseph Fitzgerald
Counsel for Defendant

Rebekah Donaleski
Counsel for Defendant

Respectfully submitted,

/S/
Gabriel J. Diaz
Assistant United States Attorney
North Carolina Bar No. 49159
N. Tyler Lemons
Assistant United States Attorney
North Carolina Bar No. 46199
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703) 299-3700
gabriel.diaz@usdoj.gov
tyler.lemons@usdoj.gov