IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

United States of America,            )
                                     )
            v.                       )        Case No.: 1:25-CR-00272-MSN
                                     )
James B. Comey, Jr.,                 )
                                     )
            Defendant.               )
_____)

**JAMES B. COMEY JR.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
DISCLOSURE OF GRAND JURY PROCEEDINGS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ...................................................................................................... 2

    I.       THE GOVERNMENT'S RESPONSES LACK MERIT ...................................... 2

            A.     The Government Misstated Key Issues of Law, and the Facial
Deficiencies in the Indictment, as well as the Unusual Procedures
Leading Up to its Return, Create a Particularized Basis for
Believing the Government Misstated Others .............................................. 2

            B.     The Government's Presentation of Evidence to the Grand Jury
Reinforces the Other Irregularities and May Warrant Dismissal of
the Indictment .......................................................................................... 4

    II.      THE GOVERNMENT'S RECENT CONCESSIONS REGARDING
COUNT TWO AND ITS CONDUCT BEFORE THE GRAND JURY
REVEAL SIGNIFICANT IRREGULARITIES THAT MAY RESULT IN
DISMISSAL ......................................................................................... 7

            A.     Background Regarding Count Two .......................................................... 7

            B.     The Government's Recent Concessions Provide Further Bases to
Disclose the Grand Jury Proceedings .................................................... 12

CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Nova Scotia v. United States*,
    487 U.S. 250 (1988) ..................................................................................................5

*United States v. Jefferson*,
    546 F.3d 300 (4th Cir. 2008) ....................................................................................5

*United States v. Loc Tien Nguyen*,
    314 F. Supp. 2d 612 (E.D. Va. 2004) .......................................................................5

*United States v. Randall*,
    171 F.3d 195 (4th Cir. 1999) ..................................................................................14

*United States v. Rice*,
    90 F. App'x 921 (6th Cir. 2004) ............................................................................5, 6

*United States v. Simmons*,
    11 F.4th 239 (4th Cir. 2021) ..................................................................................14

**Constitution, Statutes, and Rules**

U.S. Const.:
    Amend. IV ..................................................................................................................4
    Amend. V ........................................................................................................2, 5, 12

18 U.S.C. § 1001(a) ........................................................................................................2, 10

Fed. R. Crim. P. 6(e)(1) ........................................................................................................3

Fed. R. Crim. P. 6(e)(3)(E)(ii) ..............................................................................................1

Fed. R. Crim. P. 6(f) ...........................................................................................................12

Fed. R. Crim. P. 12 .............................................................................................................14

**Miscellaneous**

Dmitri Alperovitch, *Bears in the Midst: Intrusion into the Democratic National Committee*, CrowdStrike Blog (June 14, 2016) ..................................................................8

James B. Comey, Director of the Federal Bureau of Investigation, Statement on the Investigation of Secretary Hillary Clinton's Use of a Personal E-Mail System (July 5, 2016) .........................................................................................................8

Michael Crowly & Tyler Pager, *Trump urges Russia to hack Clinton's email*, Politico (July 27, 2016).................................................................................................8

Jeremy Diamond & Stephen Collinson, *Democrats accuse Trump of disloyalty over Clinton emails*, CNN (July 28, 2018) ................................................................8

Justice Manual § 9-11.233 ...........................................................................................6

Katherine Faulders, et al., *Ex-special counsel John Durham undercut case against James Comey in interview with prosecutors: Sources*, ABC News (Oct. 6, 2025) ...........................................................................................................................11

Katherine Faulders, et al., *Prosecutors' memo to new US attorney found no probable cause to charge James Comey: Sources* (Sept. 25, 2025).......................12

Ellen Nakashima, *Russian government hackers penetrated DNC, stole opposition research on Trump*, Wash. Post (June 14, 2016) ........................................................8

*Oversight of the Crossfire Hurricane Investigation: Day 3, Hearing Before the U.S. Senate Committee on the Judiciary*, 116th Cong. (Sept. 30, 2020) ..................9

Letter from John Ratcliffe, Dir. Nat. Intel., to Sen. Lindsey Graham (Sept, 29, 2020) ........................................................................................................................8, 9

Charlie Savage & Adam Goldman, *'Clinton Plan' Emails Were Likely Made by Russian Spies, Declassified Report Shows*, N.Y. Times (July 31, 2025) .................9

Rachel Witkin, *Hillary Clinton Suggests Alleged Russian Hacking is Designed to Help Trump*, NBC News (Sep. 6, 2016) ..........................................................................8

# INTRODUCTION

The government's misconduct in its quest to indict Mr. Comey shocks the conscience. The government conducted a warrantless search of privileged materials that no reasonable agent or prosecutor would conduct. It used those materials to present this case to the grand jury, and in so doing it magnified its violation of Mr. Comey's rights. It misstated basic principles of constitutional law to influence the grand jury. And it appears not to have presented any of the significant exculpatory evidence in this case. What is more, the government has now conceded that it did not even present the operative indictment to the grand jury, meaning no indictment was returned before the statute of limitations expired.[1] And adding to the irremediable flaws permeating this process, the Attorney General, twice, ratified the defective purported indictment through a post-hoc review that is legally incapable of rescuing this case. The record contains multiple particularized, factual bases to conclude that grounds may exist to dismiss the indictment based on the government's misconduct before the grand jury and overcome the presumption of grand jury secrecy. Pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), disclosure of the grand jury proceedings is warranted.[2]

---

[1] The absence of a valid charging instrument will be the basis of a forthcoming motion to dismiss.

[2] As the Court is aware, Mr. Comey will file his response to the government's appeal of Magistrate Judge Fitzpatrick's order for the government to disclose the grand jury proceedings on Friday, November 21, 2025. This reply brief responds to the government's arguments in opposition to the motion (ECF No. 184) to disclose the grand jury proceedings and highlights additional irregularities that have surfaced further warranting disclosure. Mr. Comey's response to the government's appeal of Magistrate Judge Fitzpatrick's order will explain why Judge Fitzpatrick's ruling is well supported by fact and law warranting affirmation and address the government's opposition to that ruling. These litigation streams present two related, but separate, avenues to order the government to produce the grand jury proceedings.

## ARGUMENT

### I.   THE GOVERNMENT'S RESPONSES LACK MERIT

#### A.   The Government Misstated Key Issues of Law, and the Facial Deficiencies in the Indictment, as well as the Unusual Procedures Leading Up to its Return, Create a Particularized Basis for Believing the Government Misstated Others

Contrary to the government's argument (ECF No. 184 at 8-9) that any assertions about Ms. Halligan's misstatements of law rely on speculation, there is a particularized basis for believing that Ms. Halligan misstated key issues of law to the grand jury.  At the outset, Ms. Halligan made at least two statements to the grand jurors that "on their face appear to be fundamental misstatements of the law that could compromise the integrity of the grand jury process."  ECF No. 191 at 15-16 (highlighting Ms. Halligan's misstatements regarding Mr. Comey's Fifth Amendment rights and her inappropriate references to additional evidence the government would present at trial).  In addition to Ms. Halligan's misstatements of fundamental criminal law principles, two sets of facts collectively raise a significant possibility that Ms. Halligan misstated material issues of law related to the particular charges at issue.  ECF No. 106 at 14-17.

First, although the government cannot prove a violation of 18 U.S.C. § 1001(a)(2) unless it proves that Mr. Comey provided knowingly false responses to specific questions, Count One rests on questions that are, at minimum, ambiguous, as the government itself admits.[3]  That feature of the indictment raises the risk that Ms. Halligan did not explain the requirement to the

---

[3] Mr. Comey maintains that the questions are fundamentally ambiguous and, as a matter of law, cannot sustain this prosecution.  But even on the government's reading, the compound questions and misstatements create ambiguity.  The grand jurors should have been informed that ambiguity creates the risk that the government cannot validly charge a violation of Section 1001 so that they could make an informed decision.

grand jury that a Section 1001 charge cannot rest on fundamentally ambiguous questions. *See id.* at 15; *see generally* ECF No. 105.

Second, the rushed and aberrant procedures leading up to the indictment create a risk that Ms. Halligan made additional prejudicial errors before the grand jury: The U.S. Attorney who determined that the government should not pursue criminal charges against Mr. Comey was forced out of office because of his judgment.  Four days after her purported appointment, and with a direction from the President to proceed with haste, Ms. Halligan presented this case to the grand jury alone despite her lack of prosecutorial experience.  According to Ms. Halligan's declaration regarding her grand jury conduct, ECF No. 188-1, the grand jury's deliberations in this case (approximately 2 hours and 12 minutes) were longer than the presentation itself (approximately 2 hours and 10 minutes).  These prolonged deliberations over a relatively discreet set of charges and the closeness of the vote confirm the risk that grand jurors were misled about the law governing the task set before them.  Finally, the grand jury failed to return a true bill on the presented indictment, ECF No. 3, and the government admitted to this Court on November 19, 2025, that it failed to present the second indictment to the grand jury for a vote, *see* ECF No. 207.[4]

The government errs by addressing some of those facts separately.  The government argues that the indictment is not deficient because it "tracks the statutory language."  ECF No. 184 at 9.  And it suggests that the grand jury stayed late into the night simply because it was "engaged in a thoughtful, thorough, deliberative process."  *Id.* at 10-11.  But these arguments

---

[4] On November 20, the government filed a notice purporting to correct the record and asserting that, according to the transcript of the grand jury return proceeding, the two-count indictment was presented to the grand jury.  ECF No. 206.  That notice contradicts numerous other representations to this Court.  The cited exchange in the grand jury proceeding does not support the government's new account and to the extent the two-count indictment was presented to the grand jury, there is no record of that presentment.  *Contra* Fed. R. Crim. P. 6(e)(1).

disregard the cumulative effect of the irregularities. Viewed as a whole, the full set of facts—each of which is unusual in isolation—raises the possibility that "suspect procedures were used before the grand jury." *See* ECF No. 106 at 16 (citing *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004)). To that argument, the government has no response. And the recent revelations that Ms. Halligan *did* make legal errors in her presentation that prejudiced Mr. Comey and provide bases to dismiss the indictment confirm that Mr. Comey has shown a particularized basis for disclosure of the proceedings.

### B. The Government's Presentation of Evidence to the Grand Jury Reinforces the Other Irregularities and May Warrant Dismissal of the Indictment

Access to the grand jury materials is also warranted because there is a particularized reason to believe that the introduction of unconstitutional or privileged evidence before the grand jury—among the many other procedural irregularities—gives rise to a basis to dismiss the indictment. *See* ECF No. 89 at 2-7, ECF No. 171; *see also* ECF Nos. 165, 180 (transcripts of proceedings before Magistrate Judge Fitzpatrick). In its opposition to the instant motion, the government argues that Mr. Comey has offered only "vague and unsubstantial allegations of irregularity," which "do not show a particularized need for disclosure." ECF No. 184 at 6 (citations omitted). Magistrate Judge Fitzpatrick rejected that argument in favor of reviewing the grand jury materials *in camera* with the help of *ex parte* guidance from Mr. Comey. *See* ECF No. 180 at 3-6. Now, he has concluded that facts *do* establish a reasonable basis for Mr. Comey to challenge whether the government's conduct in 2019 and 2020 and now in 2025 may have violated the Fourth Amendment and whether that unconstitutional conduct prejudiced Mr. Comey given the "centrality" of the resulting materials to the government's grand jury presentation. ECF 191 at 20-21. Similarly, Magistrate Judge Fitzpatrick has concluded that facts establish a reasonable basis for Mr. Comey to challenge whether the government used

4

privileged material, directly or indirectly, in its grand jury presentation in light of their likely insufficient steps to avoid the collection and review of those materials and their use of a potentially tainted agent as the testifying witness before the grand jury. *Id*. at 21-22. The Court here should similarly review the materials as part of the government's appeal and dismiss the government's deflection.

To be sure, "a facially valid indictment is not subject to dismissal simply because the grand jury may have considered improper evidence, or because it was presented with information or evidence that may contravene a constitutional privilege." *United States v. Jefferson*, 546 F.3d 300, 312 (4th Cir. 2008).[5] But there is a difference between "the mere fact that evidence . . . is unreliable," and violations of Mr. Comey's rights that "substantially influenced" the grand jury's decision to indict. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988). In circumstances where the violation or violations "did substantially influence the decision, or if there is grave doubt that the decision to indict was free from such substantial influence," dismissal may be warranted. *Id.* at 263. Indeed, an indictment can be dismissed as a result of grand jury misconduct before the grand jury if "the government misconduct is widespread or extraordinarily serious." *United States v. Rice*, 90 F. App'x 921, 926 (6th Cir. 2004).

Here, the materials produced by the government in response to Magistrate Judge Fitzpatrick's orders reflect that, in September 2025, the government accessed Mr. Richman's

---

[5] Crucially, this indictment is not facially valid, as it misstated the testimony at the heart of this case, *see* ECF No. 59 at 14-16, and, as noted, it is not even an "indictment" returned by the grand jury in accordance with the Fifth Amendment and the Federal Rules of Criminal Procedure. But even if the Court were to find the purported indictment facially valid, there is sufficient objective evidence to raise "grave doubt" that prosecutorial misconduct including the introduction of unconstitutional and privileged evidence prejudiced Mr. Comey. Thus, even if the Court finds that the indictment is facially valid, Mr. Comey is still entitled to disclosure of grand jury materials because of the particularized basis he has shown to pursue a claim under *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988).

materials, unfiltered for responsiveness or privilege, in preparation for grand jury in this matter, even though they did not have a warrant that authorized such a search. Agents knowingly reviewed and printed out dozens of pages of privileged communications between Mr. Comey and his lawyers and appear to have presented at least certain of those privileged communications to the grand jury in this matter. This misconduct is both "widespread [and] extraordinarily serious." *Id.* While it appears that this misconduct did prejudice Mr. Comey, it would be impossible to determine the extent of the government's misconduct and prejudice to Mr. Comey absent the defense's access to the grand jury materials given its unique understanding of both Mr. Comey's expectations of privacy and attorney-client privilege.

Equally concerning is what Ms. Halligan appears *not* to have presented to the grand jury. While she need not have presented all exculpatory evidence in her possession to the grand jury, she had an obligation not to mislead the grand jury through an improperly selective presentation of the evidence or to use a summary witness in a way that would discourage grand jurors from evaluating the underlying evidence. *Cf. Rice*, 90 F. App'x at 921. Indeed, it "is the policy of the Department of Justice . . . that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person." Justice Manual § 9-11.233.

Based on the government's discovery to date, there appears to be numerous pieces of highly exculpatory evidence that—given its tendency to undermine the existence of probable cause—Ms. Halligan likely did not present to the grand jury, and without which the grand jury would have been left with a deeply misleading picture of the case. This exculpatory evidence includes, for instance, Mr. Richman's multiple statements in government interviews denying that

Mr. Comey ever authorized him to serve as an anonymous source about the Clinton investigation while employed with the FBI; Mr. Richman's FBI Special Government Employee (SGE) paperwork indicating that he, in fact, was technically no longer an SGE as of June 30, 2016 (prior to the publication of *any* of the articles the government has relied on); and, as detailed at length below, the government's lack of *any* evidence that Mr. Comey received a document he claimed he did not recall—a statement the government now alleges was "false and misleading." ECF No. 1.

## II.  THE GOVERNMENT'S RECENT CONCESSIONS REGARDING COUNT TWO AND ITS CONDUCT BEFORE THE GRAND JURY REVEAL SIGNIFICANT IRREGULARITIES THAT MAY RESULT IN DISMISSAL

The irregularities described above alone warrant disclosure of the grand jury materials. But since Mr. Comey filed his motion, additional irregularities have emerged that reinforce the case for disclosure.  In just the last week, the government has disclosed that to prove its obstruction charge in Count Two, it intends to rely only on Mr. Comey's statements to Senator Cruz at the 2020 Senate Judiciary hearing—the basis for Count One—as well as his statements at the same hearing that he did not recall receiving a certain counterintelligence operational lead ("CIOL") in 2016.  But the grand jury determined that those latter statements were not false when it returned a no true bill rejecting an indictment that contained that count.  The government has also conceded that Ms. Halligan never presented the operative indictment to the grand jury for a vote after the grand jury no billed the original indictment.  These particularized facts further support a finding that the grand jury proceeding contained irregularities that could lead to dismissal of the indictment.

### A.    Background Regarding Count Two

Understanding the significance of the government's concession regarding Count Two requires additional background regarding the 2016 CIOL.  We describe the complex chain of

7

events surrounding the CIOL as a predicate for demonstrating the likelihood that, to the extent that grand jurors even considered the CIOL issue in connection with current Count Two, there is a strong likelihood that they were misled about it.

On June 14, 2016, the media reported that Russian government hackers had compromised the computer systems of the Democratic National Committee ("DNC") after having access to those computers for more than a year.[6]  On July 5, Mr. Comey publicly announced the close of the "Midyear Exam" investigation into Hillary Clinton's handling of classified materials involving a private email server without criminal charges.[7]  On July 27, then-candidate Trump publicly called for Russia to hack into U.S. information systems and to release more stolen emails from Ms. Clinton's private email server.[8]  The Clinton campaign repeatedly and publicly criticized Trump for his apparent embrace of Russian interference in the 2016 election.[9]

In late July 2016, U.S. intelligence agencies "obtained insight into Russian intelligence analysis alleging that U.S. Presidential candidate Hillary Clinton had approved a campaign plan to stir up a scandal against U.S. Presidential candidate Donald Trump by tying him to Putin and the Russians' hacking of the Democratic National Committee."  Letter from John Ratcliffe, Dir. Nat. Intel., to Sen. Lindsey Graham (Sept, 29, 2020) ("Ratcliffe Letter"), https://perma.cc/LB3H-

---

[6] *See* Ellen Nakashima, *Russian government hackers penetrated DNC, stole opposition research on Trump*, Wash. Post (June 14, 2016), https://perma.cc/K922-4Z7T; Dmitri Alperovitch, *Bears in the Midst: Intrusion into the Democratic National Committee*, CrowdStrike Blog (June 14, 2016) (last updated June 5, 2020), https://perma.cc/EQB9-9AW4.

[7] James B. Comey, Director of the Federal Bureau of Investigation, Statement on the Investigation of Secretary Hillary Clinton's Use of a Personal E-Mail System (July 5, 2016), https://bit.ly/483H9fp.

[8] Michael Crowly & Tyler Pager, *Trump urges Russia to hack Clinton's email*, Politico (July 27, 2016), https://bit.ly/4oRgMR7; Jeremy Diamond & Stephen Collinson, *Democrats accuse Trump of disloyalty over Clinton emails*, CNN (July 28, 2018), https://bit.ly/48cFd4p.

[9] Rachel Witkin, *Hillary Clinton Suggests Alleged Russian Hacking is Designed to Help Trump*, NBC News (Sep. 6, 2016), https://perma.cc/LR2L-DK87.

BCDN.  However, it was not clear to those intelligence agencies whether this information was accurate or exaggerated.  *Id.*[10]

On September 7, 2016, this information was sent to the Federal Bureau of Investigation (FBI) via a CIOL regarding "U.S. Presidential candidate Hillary Clinton's approval of a plan concerning U.S. Presidential candidate Donald Trump and Russian hackers hampering U.S. elections as a means of distracting the public from her use of a private mail server."  *Id*.

On September 30, 2020, Mr. Comey testified before the Senate Judiciary Committee about the Crossfire Hurricane counterintelligence investigation into alleged links between President Trump's 2016 campaign and the Russian government.  *See Oversight of the Crossfire Hurricane Investigation: Day 3*, *Hearing Before the U.S. Senate Committee on the Judiciary*, 116th Cong. (Sept. 30, 2020), http://bit.ly/4o2ekHb.  The night before, he was sent a copy of the Ratcliffe Letter, described above, which purported to summarize the September 7, 2016 CIOL in one sentence.  Mr. Comey was not provided an opportunity to review the September 7, 2016 CIOL at issue prior to his testimony.  The next day at the hearing, Senator Lindsey Graham questioned Mr. Comey about his alleged receipt of the CIOL, and asked:

> SEN GRAHAM:  So do you recall getting an inquiry from the CI -- excuse me, the intelligence community in September of 2016 about a concern that the Clinton campaign was going to create a scandal regarding Trump and Russia?
>
> MR. COMEY:  I do not.
>
> SEN GRAHAM:  You don't remember getting a [sic] investigatory lead from the intelligence community? Hang on a second. Let me find my document here. September the 7th, 2016, the U.S. intelligence officials forwarded an investigative referral of FBI -- to FBI Director James

---

[10] Indeed, it appears this information was created by Russian intelligence, and did not accurately reflect particular emails.  *See* Charlie Savage & Adam Goldman, *'Clinton Plan' Emails Were Likely Made by Russian Spies, Declassified Report Shows*, N.Y. Times (July 31, 2025), https://perma.cc/F8AF-TLAF.

> Comey and direct -- Assistant Director of Counterintelligence Peter Strzok regarding U.S. presidential candidate Hillary Clinton's approval of a plan concerning U.S. presidential candidate Donald Trump and Russian hackers hampering U.S. elections as a means of distracting the public from her use of a private email server. You don't remember getting that or being taught -- that -- that (inaudible)...

> MR. COMEY:    (inaudible) -- it doesn't ring any bells with me.

ECF No. 138-14 at 1. When Mr. Comey said that Senator Graham's question did not "ring any bells," the Senator incorrectly asserted that Mr. Comey had received "this inquiry from the intelligence community." *Id.* Mr. Comey later explained to Senator Graham, "I've read Mr. Ratcliffe's letter, which frankly I have trouble understanding." *Id*. at 3.

Later in the same hearing, Senator Hawley and Mr. Comey engaged in the following exchange:

> SEN HAWLEY:    If I could, Mr. Chairman just one last thing I want to follow up on, the letter to Chairman Graham from John Ratcliffe, which I know you've seen Mr. Comey as you mentioned it earlier. Mr. Ratcliffe says "On 7th September 2016, U.S. intelligence officials forwarded an investigative referral to FBI Director James Comey regarding U.S. presidential candidate Hillary Clinton's approval of a plan concerning Donald Trump and Russian hackers as a means of distracting the public from her use of a private mail server," end quote. Did you open an investigation?

> MR. COMEY:    I don't know what that refers to. I said earlier that does not ring any bells with me when I read that.

> SEN HAWLEY:    You did not receive any investigative referral of this nature?

> MR. COMEY:    I don't remember it. I don't remember receiving anything that is described in that letter.

*Id*. at 5.

Almost five years later, on September 25, 2025, the government sought to return the original indictment in this case, which included three counts. ECF No. 3. Count One of that indictment charged Mr. Comey with violating 18 U.S.C. § 1001(a), alleging that he lied to

Congress when he stated that the September 2016 CIOL did not "ring any bells." *Id.* at 2. The proposed Count One misstated his prior testimony, changing his testimony from a statement that he did not remember that particular CIOL to alleged testimony that he did not remember "being taught" about the underlying topic. *Id.* The grand jury returned a no true bill, rejecting the indictment containing that count. *Id.* at 1.

There is no evidence whatsoever that Mr. Comey received the CIOL at issue, much less that he reviewed it. The materials in discovery make clear that every day, numerous CIOLs come to the FBI addressed to the Director—from a variety of federal agencies in a variety of formats—and are routed to employees other than the Director. Because the Midyear Exam investigation had been closed for more than two months, there is no reason to believe that any CIOL related to Ms. Clinton would have been sent to Mr. Comey (and the government has produced no proof that it was). There is no electronic trail showing that Mr. Comey received the CIOL at issue. There is no paper trail showing that he received it. And there is no witness who says that Mr. Comey either received it or discussed it with him. Full stop.

This total lack of evidence is extremely troubling in light of credible press reporting that not only does a declination memorandum exist in this case,[11] but it made clear that with respect to the CIOL in particular, a prior investigation found that Mr. Comey's statement could not support a false-statement charge because there was insufficient evidence Mr. Comey had ever seen the CIOL.[12] Ms. Halligan was also reported to have been advised by career prosecutors in

---

[11] The government's refusal to answer basic questions about the existence of this declination memorandum and decision to hide behind a flimsy claim of privilege to stonewall the Court's inquiries, *see* ECF No. 207, should be taken as confirmation that such a memorandum exists. *See* ECF No. 174 at 21.

[12] Katherine Faulders, et al., *Ex-special counsel John Durham undercut case against James Comey in interview with prosecutors: Sources*, ABC News (Oct. 6, 2025), https://perma.cc/M2JC-CQGQ.

that declination memorandum that "seeking the charges would violate DOJ policy, raise serious ethics issues, and risk being rejected by the grand jury." *Id.*[13]

This is but one example of why there is a particularized need for defense counsel, familiar with discovery and the facts, to review these materials.  Mr. Comey is entitled to learn what Ms. Halligan said in order to try to convince a grand jury that Mr. Comey remembered a communication for which there is no evidence he received.  And if the purported prosecutor presented misleading evidence on a charge—and/or omitted material exculpatory facts on the same point—after being clearly told that there was insufficient evidence on that point, that would be quintessential proof of misconduct before the grand jury justifying dismissal of the putative indictment in the circumstances of this case.

**B.    The Government's Recent Concessions Provide Further Bases to Disclose the Grand Jury Proceedings**

The government's new revelations in the last week regarding its conduct before the grand jury and its intentions regarding charged Count Two are particularized facts that further support a finding of irregularities in the grand jury proceedings.

*First*, the government's concession that it never presented the operative indictment in this case to the grand jury for a vote is a death knell for the government's case, let alone sufficient reason to order disclosure of the grand jury proceedings.  As will be detailed in both Mr. Comey's motion to dismiss and his opposition to the government's appeal of Magistrate Judge Fitzpatrick's order, failure to present the operative indictment violates both the constitutional requirement that no "person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury," U.S. Const. Amend. V, and the legal requirement that a "grand jury may indict only if at least 12 jurors concur," Fed. R. Crim. P. 6(f).

---

[13] Katherine Faulders, et al., *Prosecutors' memo to new US attorney found no probable cause to charge James Comey: Sources* (Sept. 25, 2025), https://perma.cc/8KT5-LHAG.

*Second*, these irregularities are accentuated by the government's recent concession that it intends to rely on the CIOL testimony to prove charged Count Two. This disclosure and the resulting tension in the grand jury's no-billed indictment and claimed agreement with respect to Counts One and Two in the current indictment further crystalize the concerns regarding the government's grand jury conduct and how those concerns impacted the indictment and this case.[14] Once the grand jury found no probable cause that Mr. Comey's statements regarding the September 2016 CIOL were false, that finding would naturally bear on whether the grand jury would have relied on those statements to find Mr. Comey obstructed Congress with "false and misleading" statements. For that reason, it is likely the grand jury only found probable cause as to Count Two based on the one false statement they apparently true billed. Regardless, with no legal instructions from an authorized, experienced government attorney to grapple with this nuance after the no billed indictment, and no opportunity for the grand jury to even consider and vote upon the revised indictment, how Ms. Halligan *initially* instructed the grand jury as to the obstruction count is critical and will determine whether either of the potential two legs for Count Two remains.

Depending on how Ms. Halligan instructed the grand jury, the charged Count One conduct may be the *only* leg Count Two stands on. Mr. Comey has moved to dismiss charged Count One because it rests on literally true answers to fundamentally ambiguous questions and has moved to dismiss Count Two to the extent it relies on the same exchange as Count One. ECF No. 105. If the Court sustains those motions, it would end this case, because the government cannot constructively amend the indictment by obtaining a conviction at trial on

---

[14] The inappropriateness of the government's reliance on no-billed conduct at trial and the limitations on its Count Two theory that Mr. Comey's statements were "false and misleading" after the grand jury's clear rejection of that allegation will be the subject of future motions *in limine*, to the extent this case proceeds.

broader grounds than those the grand jury considered. *See United States v. Simmons*, 11 F.4th 239, 268-69 (4th Cir. 2021); *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999) (only the grand jury may broaden or alter the charges in the indictment). And should the Court grant Mr. Comey's motion to dismiss Count One based on fundamental ambiguity and literal truth, Count Two would likely also fail given its reliance on the same legally flawed exchange.

Even if Ms. Halligan's presentation to the grand jury indicates that Count Two would still have one leg remaining—the no-billed statements—*how* Ms. Halligan discussed those statements and the legal contours of Count Two would inform whether Count Two can still state an offense under Federal Rule of Criminal Procedure 12. At the outset, there is evidence Ms. Halligan misrepresented to the grand jury Mr. Comey's statements to Senators Graham and Hawley as having never "been taught" about the subject of the CIOL. *See* ECF No. 3 at 2. That is factually inaccurate and any such error may have influenced not only how the grand jury assessed the false-statement charge, but also how the grand jury may have used that evidence to assess Count Two. Moreover, the grand jury's rejection of the false-statement count in original Count One indicates that it did not find probable cause that Mr. Comey knowingly made a false statement. So the government may be limited to arguing in Count Two that Mr. Comey's failure to recall receiving the CIOL was misleading (but not false), to avoid tension with the grand jury's finding as to the no-billed count. *See Simmons*, 11 F.4th at 268-69; *Randall*, 171 F.3d at 203. If so, the defense may have grounds to dismiss Count Two as failing to state an offense as required under Rule 12. In the specific context here—failure to recall a document the government cannot prove the defendant ever received—that statement can only be corruptly misleading if it is false. Put differently, truthfully stating one does not recall something *cannot* be misleading. Whether Count Two is so fatally flawed stems directly from how Ms. Halligan presented the case to the

grand jury.  The litany of errors that have surfaced just in the last week warrants close inspection of her conduct that initiated this case.

## **CONCLUSION**

For the foregoing reasons, the government should be ordered to disclose to Mr. Comey the grand jury proceedings in this case.

Dated: November 20, 2025          Respectfully submitted,


JAMES B. COMEY, JR.
By Counsel

*/s/  Jessica N. Carmichael*
Jessica N. Carmichael (VA Bar No. 78339)
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, First Floor
Alexandria, VA 22314
Telephone:  (703) 684-7908
Facsimile:  (703) 649-6360
Email:  jessica@carmichaellegal.com

Patrick J. Fitzgerald (*pro hac vice*)
(Mich. Bar No. P86579)
P.O. Box 277
New Buffalo, MI 49177
Telephone:  (312) 758-4454

Rebekah Donaleski (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 479-6000

Ephraim A. McDowell (*pro hac vice*)
Elias S. Kim (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone:  (202) 842-7800

Michael R. Dreeben (*pro hac vice*)
600 New Jersey Ave. NW
Washington, DC 20001
Telephone:  (202) 695-2562

*Counsel for Defendant James B. Comey, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 20th day of November, 2025, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/  *Jessica N. Carmichael*
Jessica N. Carmichael

*Counsel for Defendant James B. Comey, Jr.*