IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Case No.: 1:25-CR-00272-MSN |
| | ) | |
| James B. Comey, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## JAMES B. COMEY, JR.'S RESPONSE TO THE GOVERNMENT'S OBJECTION TO JUDGE FITZPATRICK'S ORDER TO DISCLOSE GRAND JURY MATERIALS

James B. Comey, Jr., by and through undersigned counsel, respectfully files this response to the government's objection to Judge Fitzpatrick's order and opinion requiring the government to disclose grand jury materials to Mr. Comey.  ECF Nos. 195, 193.  Judge Fitzpatrick's 24-page, thoroughly reasoned opinion based on his own review of the grand jury materials, along with the parties' briefing and oral argument, is neither clearly erroneous nor contrary to law.  ECF No. 191.  This Court should deny the government's appeal and direct the disclosure of grand jury materials to the defense.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................ 1

          A.    The Government's Filter Protocol Motion ................................................ 1

          B.    Judge Fitzpatrick's In Camera Review of the Grand Jury Proceedings ............................................................................................ 1

          C.    Judge Fitzpatrick's Order and the Government's Appeal......................... 2

ARGUMENT .................................................................................................................. 3

    I.     JUDGE FITZPATRICK'S ORDER WAS NEITHER CLEARLY ERRONEOUS NOR CONTRARY TO LAW.................................................. 3

          A.    A Court May Order Disclosure of Grand Jury Materials if it Finds Irregularities Indicating that Prosecutors May Have Committed Misconduct that Prejudiced the Defendant ................................ 3

          B.    Judge Fitzpatrick's Extensive Findings Demonstrate that the Government May Have Committed Misconduct that Prejudiced Mr. Comey ........................................................................................... 5

    II.    THE GOVERNMENT IDENTIFIES NO BASIS TO SET ASIDE JUDGE FITZPATRICK'S ORDER .................................................................. 9

          A.    The Government's Fourth Amendment Arguments Lack Merit ............. 10

          B.    The Government's Arguments Regarding Attorney-Client Privilege Lack Merit ............................................................................ 13

          C.    The Government's Arguments Regarding Ms. Halligan's Misstatements of Law Underscore Why Disclosure of the Grand Jury Materials Is Necessary ...................................................... 15

          D.    The Government's Statements Regarding Judge Fitzpatrick's Ethical Obligations Are Outrageous ...................................... 18

CONCLUSION................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Attard Indus. v. United States Fire Ins. Co.*,
No. 10-cv-121, 2010 WL 3069799 (E.D. Va. Aug. 5, 2010) ...................................................3

*Bank of Nova Scotia v. United States*,
487 U.S. 250 (1988).........................................................................................4, 6, 7, 10, 16

*Belue v. Leventhal*,
640 F.3d 567 (4th Cir. 2011) ..........................................................................................18

*Cooper v. United States*,
247 F. 45 (4th Cir. 1917) .............................................................................................7, 16

*DeMassa v. Nunez*,
770 F.2d 1505 (9th Cir. 1985) ...........................................................................................12

*Doe v. Broderick*,
225 F.3d 440 (4th Cir. 2000) ..........................................................................................12

*In re Grand Jury Subpoena*,
341 F.3d 331 (4th Cir. 2003) .........................................................................................6, 13

*Griffin v. California*,
380 U.S. 609 (1965)...................................................................................................7, 16

*Liteky v. United States*,
510 U.S. 540 (1994)......................................................................................................18

*Rakas v. Illinois*,
439 U.S. 128 (1978)......................................................................................................12

*SageWater, LLC v. Hossfeld*,
No. 23-cv-00770, 2024 WL 4520646 (E.D. Va. Oct. 17, 2024)..............................................3

*United States v. Abcasis*,
785 F. Supp. 1113 (E.D.N.Y. 1992) ....................................................................................3

*United States v. Bazar*,
No. 15-cr-499, 2015 WL 6396011 (S.D. Ca. Oct. 21, 2025)................................................11

*United States v. Breslin*,
916 F. Supp. 438 (E.D. Pa. 1996) ....................................................................................4, 9

*United States v. Bundy*,
968 F.3d 1019 (9th Cir. 2020) .....................................................................................10, 13

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*United States v. Castellanos*,
    716 F.3d 828 (4th Cir. 2013) .................................................................11

*United States v. Goodson*,
    204 F.3d 508 (4th Cir. 2000) ...................................................................4

*United States v. Hattrup*,
    763 F.2d 376 (9th Cir.1985) ....................................................................4

*United States v. Johnson*,
    No. 17-cr-10129, 2019 WL 917175 (D. Mass. Feb. 25, 2019).............................11

*United States v. Loc Tien Nguyen*,
    314 F. Supp. 2d 612 (E.D. Va. 2004) ...........................................3, 4, 19

*United States v. Mendoza-Acevedo*,
    950 F.2d 1 (1st Cir. 1991)........................................................................16

*United States v. Peralta*,
    763 F. Supp. 14 (S.D.N.Y. 1991) .......................................................7, 17

*United States v. Rice*,
    90 F. App'x 921 (6th Cir. 2004) ..........................................................4, 9

*United States v. Stevens*,
    771 F. Supp. 2d 556 (D. Md. 2011) .....................................................7, 17

*United States v. Williams*,
    504 U.S. 36 (1992).................................................................................4

*United States v. Zelaya-Veliz*,
    94 F.4th 321 (4th Cir. 2024) ...................................................................6

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)...............................................................................13

**Constitution, Statutes, and Rules**

U.S. Const. Amend. V ...................................................................................8

18 U.S.C.
    § 641.....................................................................................................5
    § 793.....................................................................................................5

28 U.S.C. § 455...........................................................................................18

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Fed. R. Crim. P. 6(e)(3)(E)(ii) ...................................................................................3, 8, 9, 12, 15

Fed. R. Crim. P. 59(a) ...........................................................................................................2, 3

**Miscellaneous**

Handbook for Grand Jurors Serving in the United States District Courts, U.S.
    District Court for the Eastern District of Virginia ...............................................................7, 16

**INTRODUCTION**

Magistrate Judge Fitzpatrick issued a carefully reasoned, thorough opinion holding that particularized grounds exist to justify disclosure of the grand jury materials based on four different categories of government misconduct before the grand jury that may have prejudiced Mr. Comey. *See* ECF No. 191 at 21-22. The government now complains that "what began as the government's request for a filter protocol has morphed into a dispute regarding the defense's right to access grand jury materials." ECF No. 200 at 5. That is because the government's own pervasive misconduct has now been laid bare, only as a result of questions asked by the Court and the defense. In essence, the government wants to let the house burn down simply because they were not expecting the fire department to show up. The government's arguments lack merit, and there is no basis to find that Judge Fitzpatrick's opinion was contrary to law or clearly erroneous. The Court should deny the government's appeal and order the disclosure of the grand jury materials.

**BACKGROUND**

A.    **The Government's Filter Protocol Motion**

This Court is familiar with the disputes surrounding the filter protocol. *See* ECF Nos. 38, 54, 58, 71, 102, 104, 132, 135, 160, 161, 165. On October 29, 2025, the Court appointed Judge Fitzpatrick "to preside over all proceedings related to the potential review of privileged materials in this case" and stated that "the government's proposed filter protocol raises several legal questions that must be resolved before any protocol is authorized." ECF No. 102 at 2.

B.    **Judge Fitzpatrick's *In Camera* Review of the Grand Jury Proceedings**

On November 10, 2025, the parties filed briefs addressing the disclosure of grand jury materials. ECF Nos. 171, 172. In its brief, the government proposed that Judge Fitzpatrick review the grand jury materials *in camera* to aid his analysis. ECF No. 172 at 10-12. The same

day, Judge Fitzpatrick held a telephonic hearing during which he granted the government's request to provide the grand jury materials to the Court for review.  ECF No. 177.

Pursuant to Judge Fitzpatrick's order during the hearing, the defense filed an *ex parte* sealed submission to guide Judge Fitzpatrick's review, which was supplemented with evidence that the government had produced to the defendant, such as the privileged communications the government's agents printed out and used in September 2025 after their warrantless search of the materials seized from Daniel Richman.

### C.    Judge Fitzpatrick's Order and the Government's Appeal

After oral argument, briefing, and *in camera* review of grand jury materials, on November 17, 2025, Judge Fitzpatrick found that disclosure of the grand jury materials was warranted in a detailed memorandum opinion that provided the particularized and factually based grounds supporting disclosure.  ECF No. 191 at 3.  Judge Fitzpatrick accordingly ordered "that, by 3:00 p.m. on November 17, 2025, the Clerk of Court shall make available to the defense all grand jury materials filed on the docket under seal by the government" and that "the government shall, no later than 5:00 p.m. on November 17, 2025, produce to the defense the complete audio recording of the grand jury proceedings."  ECF No. 193.

Minutes before the Clerk was scheduled to disclose the docketed grand jury materials, the government filed an emergency motion to stay the magistrate judge's order to allow the government to file objections pursuant to Fed. R. Crim. P. 59(a).  ECF No. 195.  The defense filed a response to the government's stay motion and, in the alternative, requested an expedited two-day briefing schedule.  ECF No. 196.  This Court granted the government's motion in part, staying Judge Fitzpatrick's order pending the resolution of any objections filed by the government.  ECF No. 197.  The Court ordered the government to file any objections to Judge Fitzpatrick's Order by 5:00 p.m. on November 19, 2025, and the defense to file any response by

5:00 p.m. on November 21, 2025. ECF No. 197. On November 19, 2025, the government filed its objection. ECF No. 200.

## ARGUMENT

This Court may "modify or set aside" Judge Fitzpatrick's order only if it determines that the order "is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a). "A magistrate judge's order is clearly erroneous only when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *SageWater, LLC v. Hossfeld*, No. 23-cv-00770, 2024 WL 4520646, at *1 (E.D. Va. Oct. 17, 2024) (Nachmanoff, J.) (citing *Attard Indus. v. United States Fire Ins. Co.*, No. 10-cv-121, 2010 WL 3069799, at *1 (E.D. Va. Aug. 5, 2010) (citations omitted)). An order "is contrary to law when the order 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Id.*

Judge Fitzpatrick's order directing the government to disclose the grand jury materials was neither clearly erroneous nor contrary to law because—after a thorough review of the record—he found that "particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004) (citing *United States v. Abcasis*, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992)) (internal quotation marks omitted). The government's contrary arguments lack merit.

## I.    JUDGE FITZPATRICK'S ORDER WAS NEITHER CLEARLY ERRONEOUS NOR CONTRARY TO LAW

### A.    A Court May Order Disclosure of Grand Jury Materials if it Finds Irregularities Indicating that Prosecutors May Have Committed Misconduct that Prejudiced the Defendant

As Judge Fitzpatrick explained, Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) "permits a court to authorize disclosure [of grand jury materials] 'at a time, in a manner, and

subject to any other conditions that it directs . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.'" ECF No. 191 at 3-4. That rule authorizes disclosure when a defendant "establish[es] that particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." *Nguyen*, 314 F. Supp. 2d at 616 (citation omitted).

In turn, a court may dismiss an indictment when it finds that there was "prosecutorial misconduct and demonstrable prejudice or substantial threat thereof." *United States v. Goodson*, 204 F.3d 508, 515 (4th Cir. 2000) (citing *United States v. Hattrup*, 763 F.2d 376, 378 (9th Cir.1985) (Kennedy, J.)); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 264 (1988) (Scalia, J., concurring) ("I agree that every United States court has an inherent supervisory authority over the proceedings conducted before it, which assuredly includes the power to decline to proceed on the basis of an indictment obtained in violation of the law."). Although prosecutorial misconduct warranting dismissal of an indictment often involves the violation of a specific law or rule, courts have also found prejudice and dismissed indictments based on the "cumulative effect of . . . many instances of misconduct." *United States v. Breslin*, 916 F. Supp. 438, 446 (E.D. Pa. 1996); *see also United States v. Williams*, 504 U.S. 36, 46 (1992) (courts have the authority to "dismiss an indictment because of misconduct before the grand jury"); *United States v. Rice*, 90 F. App'x 921, 926 (6th Cir. 2004) (indictment could be dismissed because of grand jury misconduct when "the government misconduct is widespread or extraordinarily serious") (citation modified). Additionally, in certain circumstances, courts may presume prejudice when the misconduct at issue affects "the structural protections of the grand jury." *Bank of Nova Scotia*, 487 U.S. at 257.

4

Accordingly, a court may order disclosure of grand jury materials when it makes a particularized finding that there were irregularities in the grand jury proceedings indicating that prosecutors may have committed misconduct that prejudiced the defendant. That potential prejudice may arise from a single act of misconduct or from the cumulative effect of multiple instances of misconduct.

**B.    Judge Fitzpatrick's Extensive Findings Demonstrate that the Government May Have Committed Misconduct that Prejudiced Mr. Comey**

Under that standard, Judge Fitzpatrick's order requiring disclosure of the grand jury materials was neither clearly erroneous nor contrary to law. After a careful review of the record, Judge Fitzpatrick made eleven particularized factual findings about the pervasive irregularities in the grand jury proceedings. *See* ECF No. 191 at 20-22. And as he explained throughout his opinion, those irregularities indicate that the government may have committed at least four kinds of misconduct that prejudiced Mr. Comey.

*First*, Judge Fitzpatrick found that the government's use of communications between Mr. Richman and Mr. Comey may have constituted misconduct that violates the Fourth Amendment. The government originally obtained those communications pursuant to 2019 and 2020 warrants that authorized it—as part of the Arctic Haze investigation—to search Mr. Richman's computer, iCloud, iPhone, iPad, and Columbia email accounts for evidence of potential violations of 18 U.S.C. § 641 and 18 U.S.C. § 793. *Id.* at 20. Judge Fitzpatrick found that the government's retention and use of those materials "establish a reasonable basis for the defense" to challenge the government's conduct as a "willful or reckless" violation of the Fourth Amendment. *See id.* at 20-21. That finding was correct because the Fourth Amendment prohibits the government from retaining and using materials it seized pursuant to a years-old warrant from a closed investigation, where those materials were not reviewed or segregated for responsiveness per the

5

terms of the warrants. *United States v. Zelaya-Veliz*, 94 F.4th 321, 338 (4th Cir. 2024) (explaining that district courts "retain[] the authority to determine that prolonged retention of non-responsive data by the government violated the Fourth Amendment").

Judge Fitzpatrick also found that "given the centrality of these materials to the government's presentation," "the facts provide a reasonable basis for the defense to show that they were prejudiced by the government's use of the Richman materials in the grand jury." ECF No. 191 at 21; *see id.* at 14 (explaining "that the materials seized from the Richman Warrants were the cornerstone of the government's grand jury presentation"). That finding was correct because misconduct is prejudicial if it "substantially influenced the grand jury's decision to indict." *Bank of Nova Scotia*, 487 U.S. at 256 (citation omitted).

*Second*, Judge Fitzpatrick found that—independent of any potential Fourth Amendment violation—the government's use of communications between Mr. Richman and Mr. Comey may have constituted misconduct because they were potentially protected by the attorney-client privilege. Specifically, he found that "the facts establish a reasonable basis for the defense to challenge whether privileged information was used, directly or indirectly, by the government to prepare and present its grand jury presentation." ECF No. 191 at 21. That finding was correct because Mr. Richman was Mr. Comey's attorney at the time of the communications, and the Federal Rules of Evidence—as well as fundamental principles of criminal law—prohibit the government from relying on evidence protected by the attorney-client privilege. *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003) ("When the attorney-client privilege applies, it affords confidential communications between lawyer and client complete protection from disclosure." (citation omitted)). And as discussed, Judge Fitzpatrick correctly found that the presentation of those communications to the grand jury may have been prejudicial because they

were central to the government's case.  *See* ECF No 191 at 14, 21; *Bank of Nova Scotia*, 487 U.S. at 256.

*Third*, Judge Fitzpatrick found that the government may have committed misconduct because "the prosecutor made statements to the grand jurors that could reasonably form the basis for the defense to challenge whether the grand jury proceedings were infected with constitutional error."  ECF No. 191 at 22; *see id.* at 15 (finding that Ms. Halligan "suggest[ed] to the grand jury that Mr. Comey does not have a Fifth Amendment right not to testify at trial"); *id.* at 16 (finding that Ms. Halligan "clearly suggested to the grand jury that they did not have to rely only on the record before them to determine probable cause").  That finding was correct because, "where a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts 'grave doubt that the decision to indict was free from the substantial influence' of the erroneous instruction."  *United States v. Stevens*, 771 F. Supp. 2d 556, 5667 (D. Md. 2011) (citing *United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991)).  Judge Fitzpatrick correctly determined that Ms. Halligan's suggestion about Mr. Comey's right to testify on its face may have been a misstatement of law because the Fifth Amendment guarantees defendants the right not to testify.  *See Griffin v. California*, 380 U.S. 609, 615 (1965).  And he correctly determined that Ms. Halligan's suggestions about the future availability of evidence at trial may have been a misstatement of law because "[o]nly the evidence presented to the grand jury in the grand jury room may be considered in determining whether to vote an indictment."  Handbook for Grand Jurors Serving in the United States District Courts, U.S. District Court for the Eastern District of Virginia, at 7; *see also Cooper v. United States*, 247 F. 45, 47 (4th Cir. 1917) (explaining that under the Fifth Amendment, an "indictment

can only be found upon the testimony of a competent and material witness or witnesses, who must be sworn and examined before the grand jury").

Judge Fitzpatrick also found that those misstatements may have substantially influenced the grand jury. *See* ECF No. 191 at 15-16. That finding was correct because they could have led the grand jury to believe that the government's case was stronger than it is—either because it thought the government could shift the burden to Mr. Comey to prove his innocence (thereby necessitating his taking the stand), *id.* at 15, or because it thought that it was allowed to find probable cause based on evidence not yet produced, *id.* at 16.

*Fourth*, Judge Fitzpatrick found that the government may have committed misconduct because "the grand jury transcript and recording likely do not reflect the full proceedings." ECF No. 191 at 22. He explained that "although it is clear that a second indictment was prepared and presented to the grand jury (ECF 3), the transcript and audio recording of the proceedings do not reflect any further communications after the grand jury began deliberating on the first indictment." *Id.* Subsequent developments have demonstrated that this irregularity could lead to dismissal. As further explained below and in Mr. Comey's contemporaneously filed Motion to Dismiss Indictment Based on Violation of the Fifth Amendment, the government never presented the operative two-count indictment to the grand jury. Its failure to do so warrants dismissal because "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V.

Judge Fitzpatrick concluded that even if none of those irregularities individually justified the disclosure of the grand jury materials, they "[c]ollectively . . . establish that 'ground[s] may exist to dismiss the indictment because of a matter that occurred before the grand jury.'" ECF No. 191 at 22 (citing Rule 6(e)(3)(E)(ii)). In other words, he correctly recognized that a court

may use its supervisory authority to determine that the "cumulative effect of . . . many instances of misconduct" warrants dismissal of an indictment. *Breslin*, 916 F. Supp. at 446; *Rice*, 90 F. App'x at 926.

In sum, Judge Fitzpatrick conducted a thorough review of the record and determined— pursuant to binding precedent—that the government may have committed misconduct that prejudiced the defendant. Accordingly, there is no basis for this Court to determine that Judge Fitzpatrick's order was clearly erroneous or contrary to law.

## II.    THE GOVERNMENT IDENTIFIES NO BASIS TO SET ASIDE JUDGE FITZPATRICK'S ORDER

The government raises objections to Judge Fitzpatrick's findings regarding its potential violations of the Fourth Amendment, its potential violations of the attorney-client privilege, and Ms. Halligan's potential misstatements of law. Several flaws pervade them all. Most importantly, the government fails entirely to address Judge Fitzpatrick's finding that the government's acts of potential misconduct *collectively* justify disclosure of the grand jury materials. Instead, the government addresses each act in isolation, explaining why it does not justify disclosure on its own. But as discussed, courts have the authority to order disclosure based on the cumulative effects of acts that might not independently warrant disclosure. *See supra* at 4. The government's failure to engage with that principle alone defeats the government's objections. Additionally, at various points, the government argues that Judge Fitzpatrick's order must be set aside because he failed to explain why the current record justifies dismissal. Those arguments misconstrue the legal standard—all Judge Fitzpatrick had to do was find that there is evidence of potential misconduct that *may* justify dismissal. *See* Fed. R. Crim. P. 6(e)(3)(E)(ii).

In any event, each of the government's objections lacks merit on its own terms. And the government's baseless accusation that Judge Fitzpatrick somehow violated judicial ethics by issuing a decision the government does not like is both unseemly and improper.

### A.    The Government's Fourth Amendment Arguments Lack Merit

The government does not dispute that its retention of Mr. Richman's materials potentially violated the Fourth Amendment. Nor does it dispute that its use of those communications "substantially influenced the grand jury's decision to indict." *Bank of Nova Scotia*, 487 U.S. at 256.

Instead, the government's primary argument (ECF No. 200 at 10-12) is that a "violation of the Fourth Amendment is not a basis for dismissal of an indictment." That argument, however, relies exclusively on cases in which courts have held that the exclusionary rule does not apply to grand jury proceedings. Accordingly, while those cases may be relevant to any potential suppression motions, they have little—if any—bearing on whether a flagrant violation of the Fourth Amendment before the grand jury can ever justify dismissal of an indictment. On the contrary, the Supreme Court has suggested that any constitutional or statutory violation rising to the level of "prosecutorial misconduct" may justify dismissal when it has a "substantial influence" on the grand jury's decision to indict. *Bank of Nova Scotia*, 487 U.S. at 254-57.

The government lacks support for its proposed categorical rule. Indeed, lower courts have held that a constitutional violation that may not normally require dismissal of an indictment—such as a *Brady* violation—may justify dismissal when the government "willfully" or "recklessly" commits such a violation in the course of obtaining an indictment. *United States v. Bundy*, 968 F.3d 1019, 1031, 1039, 1045 (9th Cir. 2020) (affirming dismissal of indictment based on several willful *Brady* violations); *see id.* at 1038 ("'[R]eckless disregard for the prosecution's constitutional obligations' is sufficient to give rise to flagrant misconduct."

(citation omitted)).[1] The government provides no principled reason why the same rule would not apply to Fourth Amendment violations. And as Judge Fitzpatrick found, "the nature and circumstances surrounding the government's potential violations of the Fourth Amendment and court orders establish a reasonable basis to question whether the government's conduct was willful or in reckless disregard of the law." ECF No. 191 at 21. Nothing more is required to justify disclosure of the grand jury materials.

The government also errs in arguing (ECF No. 200 at 12-14) that Mr. Comey would lack standing to challenge the government's use of his communications with Mr. Richman. Based on unpublished district court opinions from other Circuits, the government contends "that a third party—like the defendant—cannot vicariously challenge the propriety of the Government's execution of a search warrant on an email (or other online) account belonging to another." *Id.* at 13 (citing *United States v. Johnson*, No. 17-cr-10129, 2019 WL 917175, at *6-7 (D. Mass. Feb. 25, 2019); *United States v. Bazar*, No. 15-cr-499, 2015 WL 6396011, at *1 (S.D. Ca. Oct. 21, 2025)). But the Fourth Circuit has made clear that a defendant has Fourth Amendment "standing" to "seek[] to exclude the evidence obtained during" a search or seizure that "violated the[ir] Fourth Amendment rights," including when they had a "reasonable expectation of privacy" in "property that is held by another." *United States v. Castellanos*, 716 F.3d 828, 832 n.3, 833-34 (4th Cir. 2013).

Although it is unnecessary for this Court to resolve Mr. Comey's standing at this stage—again, disclosure is warranted if the government's misconduct *may* justify dismissal—Mr. Comey had a reasonable expectation of privacy in the attorney-client communications stored on

---

[1] As set forth in Mr. Comey's Reply Memorandum in Support of Motion for Disclosure of Grand Jury Proceedings, there is substantial reason to believe that such a *Brady* violation occurred here. *See* ECF No. 208 at 6-7.

Mr. Richman's materials. An individual has a Fourth Amendment reasonable expectation of privacy if he has both a "genuine subjective expectation of privacy in his records" and there is an objective "societal understanding" that the expectation of privacy is "legitimate." *Doe v. Broderick*, 225 F.3d 440, 450 (4th Cir. 2000). Mr. Comey plainly had an expectation of privacy in his communications with his lawyer, which was clear from the face of the communications the government agents reviewed and printed in September 2025, ECF No. 172-2 at 2,[2] as set forth in the *ex parte* submission the defense submitted to Judge Fitzpatrick. Moreover, the government was aware of this privileged relationship and the date it began, as set forth in the warrants at issue. *See* ECF No. 191 at 7. In turn, courts have recognized the societal "understanding" that "an attorney's clients have a legitimate expectation of privacy in their client files," based on protections under "federal and state statutes, in codes of professional responsibility, under common law, and in the United States Constitution." *DeMassa v. Nunez*, 770 F.2d 1505, 1506-08 (9th Cir. 1985) (citing *Rakas v. Illinois*, 439 U.S. 128, 144 n.12 (1978)). Thus, at the very least, the record and the law support Judge Fitzpatrick's conclusion that there is a "reasonable basis" for Mr. Comey to raise a Fourth Amendment challenge. ECF No. 191 at 20-21.

Finally, the government's conclusory assertion that Fourth Amendment violations "are no basis for ordering disclosure, because they were not 'a matter that occurred before the grand jury,'" ECF No. 200 at 10 (citing Fed. R. Crim. P. 6(e)(3)(E)(ii)), defies logic. Under that theory, misconduct involving the presentation of evidence could *never* serve as the basis for dismissing an indictment, as evidence is always collected and prepared outside the grand jury room. For instance, under the government's theory, it could completely fabricate evidence and

---

[2] For that reason, the government's assertion (ECF No. 200 at 13 n.15) that "sworn evidence, in the form of affidavit or testimony" is required to establish Fourth Amendment standing is perplexing. Regardless, Mr. Comey is under no obligation to establish standing at this stage.

present it to the grand jury with no consequence.  No case or other authority requires that absurd result.

**B.      The Government's Arguments Regarding Attorney-Client Privilege Lack Merit**

The government's arguments regarding its potential violations of the attorney-client privilege largely mirror its flawed Fourth Amendment arguments.  To start, the government asserts (ECF No. 200 at 15-16) that the use of privileged information at a grand jury proceeding can never justify dismissal of the indictment.  For support, the government simply points to Judge Fitzpatrick's statement "that 'the grand jury's consideration of evidence obtained in violation of the attorney-client privilege, *on its own*, does not constitute grounds for dismissal of an indictment.'"  *Id.* at 15 (citing ECF No. 191 at 18 (citation omitted)) (emphasis added).

But that assertion ignores relevant case law and Judge Fitzpatrick's particularized factual findings.  As discussed, the "willful" or "reckless" violation of a fundamental right can justify the dismissal of an indictment, even if a violation of that right would not typically justify dismissal.  *See Bundy*, 968 F.3d at 1045.  There is no question that the attorney-client privilege is such a right—when it applies, "it affords confidential communications between lawyer and client complete protection from disclosure."  *In re Grand Jury Subpoena*, 341 F.3d at 335; *see also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.").  Here, Judge Fitzpatrick found that "the nature and circumstances surrounding the disclosure of potentially privileged information establish a reasonable basis to question whether the government's conduct was willful or in reckless disregard of the law."  ECF No. 191 at 21-22.  Judge Fitzpatrick found it particularly significant that Agent-3—the sole witness to appear before the grand jury—was advised by the FBI's Office of General Counsel that he had been exposed to

Mr. Comey's privileged information and nevertheless testified. *Id.* at 13, 22. The government provides no reason to disturb that finding or Judge Fitzpatrick's resulting conclusion that—in combination with the government's other misconduct—its willful violation of the attorney-client privilege may serve as a basis for dismissing the indictment.[3]

Contrary to the government's suggestion (ECF No. 200 at 16-17), Judge Fitzpatrick had ample basis to find that Mr. Richman and Mr. Comey had an attorney-client relationship. Again, the government's own evidence establishes that such a relationship existed. *See* ECF No. 172-2 at 2. The record also contains the government's affidavits to the Arctic Haze warrant applications, each of which state: "on or about May 9-10, 2017, RICHMAN was retained by Comey as his personal lawyer." ECF No. 71 at 3-4, *id.* Ex. A at -5726; *id.* Ex. B at -26439; *id.* Ex. C at -26325; *id.* Ex. D at -26388. Both parties have also cited the Department of Justice Office of Inspector General (OIG) Report which states, many times (*e.g.*, at 2 and 13), that Mr. Richman "was one of Comey's attorneys." *See* ECF No. 54 at 2 n.2, (government citing the report, which it later introduced into evidence at ECF No. 138-11.); ECF No. 138 at 9 n.7 (noting that "The defendant 'told the OIG that the day after his removal, or very shortly thereafter, he retained attorneys Patrick Fitzgerald, David Kelley, and Daniel Richman to provide advice and counsel in connection with [his] termination as FBI Director and any post-termination legal issues that might arise.'").

Even if the government has its own view of the contours of Mr. Comey's privileged relationship with Mr. Richman, that does not give the government license to rummage through privileged materials unchecked with no involvement of the privilege-holder, Mr. Comey. ECF No. 200 at 17-18. Judge Fitzpatrick correctly held that Mr. Comey, as the privilege holder, is the

---

[3] The government's sole statement addressing that finding is a conclusory assertion that it "does not concede that" Agent-3 is "subject to disqualification." ECF No. 200 at 16 n.18.

only one who may waive that privilege, and the government's decision not to involve him in the prior review or in its warrantless search of Mr. Richman's materials in September 2025 supports a "reasonable basis to question whether the government's" conduct with respect to privilege was "reckless." ECF No. 191 at 8, 12, 21-22.

Accordingly, there is no basis for this Court to conclude that Judge Fitzpatrick's findings regarding the government's potential violation of the attorney-client privilege were clearly erroneous or contrary to law.[4]  And as discussed, the government does not even attempt to address Judge Fitzpatrick's findings regarding the cumulative effect of these potential violations and the government's other misconduct.

### C.    The Government's Arguments Regarding Ms. Halligan's Misstatements of Law Underscore Why Disclosure of the Grand Jury Materials Is Necessary

The government barely disputes that if Judge Fitzpatrick's characterization of Ms. Halligan's statements is correct, then those statements could justify dismissal.  Although it asserts (ECF No. 200 at 19) that "they would still fall far short of the demanding standard required for disclosure under Rule 6(e)," it makes no attempt to explain why that is so.

That is for good reason.  As quoted in the sealed version of Judge Fitzpatrick's order, Ms. Halligan stated to the grand jury: ███████████████████████████████████████

████████████████████████████████████████████████████

██████████████████  ECF No. 192 at 15.  Judge Fitzpatrick observed that Ms. Halligan provided this statement in response to "challenging questions from grand jurors" and that it suggested Mr. Comey does not have a Fifth Amendment right to refrain from testifying.  *Id.* at

---

[4] As with its Fourth Amendment arguments, the government argues that a violation of the attorney-client privilege cannot serve as a basis to disclose grand jury proceedings "because any errors concerning the filter protocol were not 'a matter that occurred before the grand jury.'" Fed. R. Crim. P. 6(e)(3)(E)(ii).  ECF No. 200 at 14.  That argument fails for the reasons described above. *See supra* at 12.

15-16.  Not only would that have been a fundamental misstatement of law, *see Griffin*, 380 U.S. at 615, it would have significantly prejudiced Mr. Comey by allowing the grand jury to think the government could shift the burden to Mr. Comey to prove his innocence, thereby resolving doubts grand jurors had about the government's case, ECF No. 192 at 15-16.

Ms. Halligan's statement also embodied another fundamental misconception about the government's burden: The jury's role is never to determine innocence—the only question is not guilty or guilty, and the government must carry its burden of proof.  Accordingly, her use of the phrase ██████████████ further conveyed a skewed sense of the issues at stake in this case and deepened the misconceptions she gave the grand jury about the respective burdens of the government and Mr. Comey.  *See United States v. Mendoza-Acevedo*, 950 F.2d 1, 4 (1st Cir. 1991) ("[W]ithin our criminal justice system, we think the difference between 'not guilty' and 'innocent' is more than semantics."  (citation omitted)).

Judge Fitzpatrick also found that Ms. Halligan suggested that the grand jurors could find probable cause based on the government's representations that it would produce "more evidence," and potentially "better evidence," in the future.  ECF No. 191 at 16.  Not only would that have been a fundamental misstatement of law, *see* Handbook for Grand Jurors Serving in the United States District Courts, U.S. District Court for the Eastern District of Virginia, at 7; *Cooper*, 247 F. at 47 (4th Cir. 1917), it would have significantly prejudiced Mr. Comey by allowing skeptical grand jurors to think the government's case was stronger than it appeared at the time.

In a close case like this one, any one of these erroneous instructions could have tipped the balance away from no true bill.  Collectively, they raise at least "'grave doubt' that the decision

16

to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256.

The government's sole argument is that the full context of those statements, as displayed in the grand jury proceeding transcript, shows that Judge Fitzpatrick's characterization is wrong. *See* ECF No. 18-22. But unsurprisingly, it has not provided the defense with the opportunity to review the text it cites in support. Accordingly, it is impossible for the defense to tell whether the government's argument is correct. Of course, Judge Fitzpatrick *did* have the full text in reaching his conclusion.

In fact, the government's argument only highlights why disclosure is critically necessary. As explained in Mr. Comey's Motion for Disclosure of Grand Jury Proceedings, the facially ambiguous indictment and the aberrant procedures leading to the indictment create a risk that Ms. Halligan may have misstated key issues of law to the grand jury. *See* ECF No. 208 at 2-4. Judge Fitzpatrick's findings increase that risk significantly. Given that increased risk, the status quo is untenable—the government cannot be allowed to take the position that context is key to understanding whether Mr. Comey's rights have been violated while preventing Mr. Comey from seeing that context. The only way for Mr. Comey to obtain clarity and determine whether Ms. Halligan did in fact secure the indictment through misrepresentations of fundamental legal principles is to review the transcript.

At bottom, the government's arguments fail to address how there was not "'grave doubt that the decision to indict was free from the substantial influence'" of the government's misstatements of fundamental principles of criminal law, *Stevens*, 771 F. Supp. 2d at 5667 (citing *Peralta*, 763 F. Supp. at 21)—especially in the face of a grand jury that deliberated for over two hours, failed to find probable cause as to one of the government's proposed counts, and only

reached a razor-thin margin of 14 votes as to two others. Judge Fitzpatrick's conclusion that Ms. Halligan's errors in front of the grand jury reasonably formed a basis for the defense to challenge "whether the grand jury proceedings were infected with constitutional error" was sound. ECF 191 at 22.

### D.    The Government's Statements Regarding Judge Fitzpatrick's Ethical Obligations Are Outrageous

The government's suggestion that Judge Fitzpatrick's order is inconsistent with his ethical obligations is the proverbial thirteenth stroke of the clock—suspicious in itself and casting doubt on all that went before. First, it suggests (ECF No. 200 at 18-19) that his order is inconsistent with "Canon 2(A) of the Code of Conduct for United States Judges," which "requires every judge to 'act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary' and to avoid orders that 'misstate or distort the record.'" Second, it suggests (ECF No. 200 at 19) that his order is inconsistent with "Canon 3(A)(4)," which "requires courts to ensure that factual determinations are based on the actual record, not assumptions or misrepresentations."

Those suggestions are baseless.[5] To be sure, a party may argue that a judge is biased or prejudiced. *See* 28 U.S.C. § 455. But even "judicial remarks that are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Belue v. Leventhal*, 640 F.3d 567, 573 (4th Cir. 2011) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The government cannot seriously argue that Judge Fitzpatrick's conduct comes close to meeting that level. Instead, the government's sole basis for citing the Judicial Code of Conduct is its apparent disagreement with Judge Fitzpatrick's

---

[5] Given the shifting factual assertions by the government to Judge Vaala, Judge Currie, Judge Fitzpatrick and this Court as to how the putative indictment was returned—including how many votes were taken by the grand jury—it is ironic that the government is questioning the integrity of judicial officers attempting to navigate its various accounts.

interpretation of the grand jury proceeding transcript. *See* ECF No. 200 at 18-19. And based on that disagreement, it asks this Court to defer to its own interpretation. *Id.* at 19 ("Measured against these obligations and the rule of law, the magistrate's reading of the transcript cannot stand."). Of course, it cites no authority to support that outlandish position.

The Judicial Code of Conduct plainly has no bearing on this appeal, and to suggest otherwise is conduct unbecoming of the government. Judge Fitzpatrick issued a carefully reasoned, factually grounded opinion that "particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." *Loc Tien Nguyen*, 314 F. Supp. 2d at 616. Based on those findings, this Court should deny the government's opposition.

<u>**CONCLUSION**</u>

For the foregoing reasons, the government's opposition should be denied.

Dated: November 21, 2025                    Respectfully submitted,


                                            JAMES B. COMEY, JR.
                                            By Counsel

                                            */s/   Jessica N. Carmichael*
                                            Jessica N. Carmichael (VA Bar No. 78339)
                                            CARMICHAEL ELLIS & BROCK, PLLC
                                            108 N. Alfred Street, First Floor
                                            Alexandria, VA 22314
                                            Telephone: (703) 684-7908
                                            Facsimile: (703) 649-6360
                                            Email: jessica@carmichaellegal.com

                                            Patrick J. Fitzgerald (*pro hac vice*)
                                            (Mich. Bar No. P86579)
                                            P.O. Box 277
                                            New Buffalo, MI 49177
                                            Telephone: (312) 758-4454

                                            Rebekah Donaleski (*pro hac vice*)
                                            COOLEY LLP
                                            55 Hudson Yards
                                            New York, NY 10001
                                            Telephone: (212) 479-6000

                                            Ephraim A. McDowell (*pro hac vice*)
                                            Elias S. Kim (*pro hac vice*)
                                            COOLEY LLP
                                            1299 Pennsylvania Ave. NW, Suite 700
                                            Washington, DC 20004
                                            Telephone: (202) 842-7800

                                            Michael R. Dreeben (*pro hac vice*)
                                            600 New Jersey Ave. NW
                                            Washington, DC 20001
                                            Telephone: (202) 695-2562

                                            *Counsel for Defendant James B. Comey, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 21st day of November, 2025, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/   Jessica N. Carmichael*
Jessica N. Carmichael

*Counsel for Defendant James B. Comey, Jr.*
